## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION OF COLORADO, TENNESSEE CONSOLIDATED RETIREMENT SYSTEM, SJUNDE AP-FONDEN, FJÄRDE AP-FONDEN, and PENSIONSKASSERNES ADMINISTRATION A/S, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> CITIGROUP INC., CHARLES O. PRINCE, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN, TODD S. THOMSON, ROBERT DRUSKIN, THOMAS G. MAHERAS, MICHAEL STUART KLEIN, DAVID C. BUSHNELL, JOHN C. GERSPACH, STEPHEN R. VOLK, GEORGE DAVID and KPMG LLP, <br><br> Defendants. | No. |
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> vs. <br><br> CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN, <br><br> Defendants. | Electronically Filed <br><br> No. 1:07-cv-9901(SHS) <br><br> ECF CASE |
| LENNARD HAMMERSCHLAG, Individually, and On Behalf of All Others Similarly Situated, <br><br> Plaintiff <br> v. <br><br> CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, and GARY CRITTENDEN, <br><br> Defendants. | Electronically Filed <br><br> No. 1:07-cv-10258(SHS) <br><br> ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF THE GLOBAL PENSION FUNDS'
MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS,
AND APPROVAL OF CO-LEAD COUNSEL**

Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200

Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.
SCHIFFRIN BARROWAY TOPAZ
    & KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706

Attorneys for Plaintiffs Public Employees'
Retirement Association of Colorado, Tennessee
Consolidated Retirement System, Sjunde AP-
Fonden, Fjärde AP-Fonden, and Pensionskassernes
Administration A/S

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND ....................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

    I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ............ 4

    II.    THE GLOBAL PENSION FUNDS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS ......................................................................... 5

        A.    The PSLRA Standard For Appointing Lead Plaintiffs .............................. 5

        B.    The PSLRA Mandates That The Global Pension Funds Should Be Appointed Lead Plaintiffs ........................................................................... 6

            1.    The Global Pension Funds satisfied the PSLRA's procedural requirements ................................................................. 6

            2.    The Global Pension Funds possess the largest financial interest in the relief sought by the Class ......................................... 7

            3.    The Global Pension Funds meet Rule 23's typicality and adequacy requirements ...................................................................... 8

            4.    The Global Pension Funds are ideal Lead Plaintiffs ........................ 9

    III.    THE COURT SHOULD APPROVE THE GLOBAL PENSION FUNDS' SELECTION OF CO-LEAD COUNSEL ............................................................. 12

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases**

*Albert Fadem Trust v. Citigroup Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................................................. 4

*Bhojwani v. Pistiolis*,
  No. 06 Civ. 13761, 2007 U.S. Dist. LEXIS 52139 (S.D.N.Y. June 26, 2007) .................... 6, 12

*Constance Sczesny Trust v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y. 2004) ....................................................................................... 10

*In re Drexel Burnham Lambert Group, Inc.*,
  960 F.2d 285 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993) .................................... 10

*Ferrari v. Impath, Inc.*,
  No. 03 Civ. 5667, 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ........................................ 9

*Glauser v. EVCI Career Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ....................................................................................... 7

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ....................................................................................... 9

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ............................................................................................ 4

*Kaplan v. Gelford*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................................... 4

*Metro Servs. Inc. v. Wiggins*,
  158 F.3d 162 (2d Cir. 1998) .............................................................................................. 6

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................... 5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ......................................................................................... 12

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................................... 10

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) ....................................................................................... 9

*Vanamringe v. Royal Group Tech. Ltd.*,
  237 F.R.D. 55 (S.D.N.Y. 2006) ......................................................................................... 12

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
  216, F.R.D. 248 (S.D.N.Y. 2003) ...................................................................................... 9, 10

**Statutes**

15 U.S.C. § 78j(b) .................................................................................................................. 1
15 U.S.C. § 78t(a) .................................................................................................................. 1
15 U.S.C. § 78u-4(a)(1) ......................................................................................................... 5
15 U.S.C. § 78u-4(a)(3)(A)(i) ............................................................................................ 5, 6
15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................ 1, 5, 8
15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................ 5
15 U.S.C. § 78u-4(a)(3)(B)(ii) ........................................................................................... 2, 4
15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................................... 2, 6
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................................................... 6
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ................................................................................... 7
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ......................................................................................... 6
15 U.S.C. § 78u-4(a)(3)(B)(v) .......................................................................................... 3, 12
Section 21D(a)(3)(A)(i) ......................................................................................................... 5
Section 21D(a)(3)(B)(i) ......................................................................................................... 6
Section 21D(b)(3)(B) ............................................................................................................ 1

**Other Authorities**

H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ............. 11
S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 .............................. 11

**Rules**

17 C.F.R. § 240.10b-5 ............................................................................................................ 1
Fed. R. Civ. P. 42(a) .......................................................................................................... 2, 4

iii

Plaintiffs, Public Employees' Retirement Association of Colorado ("Colorado PERA"), Tennessee Consolidated Retirement System ("TCRS"), Sjunde AP-Fonden ("AP7"), Fjärde AP-Fonden ("AP4"), and Pensionskassernes Administration A/S ("PKA") (collectively, the "Global Pension Funds"), on behalf of themselves and the Class defined herein, respectfully submit this memorandum of law pursuant to Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of their Motion for the entry of an order: (1) consolidating the Actions (defined below) and any related actions that may be filed; (2) appointing the Global Pension Funds as Lead Plaintiffs for the Class of all purchasers of Citigroup Inc. ("Citigroup" or the "Company") common stock from January 2, 2004 to November 21, 2007 (the "Class Period"); and (3) approving the Global Pension Funds' selection of the law firms of Entwistle & Cappucci LLP ("Entwistle & Cappucci") and Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") as Co-Lead Counsel.

## PRELIMINARY STATEMENT

Before the Court are three related securities class actions ("Actions") brought on behalf of purchasers of Citigroup common stock. Each of these Actions alleges violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act"), *see* 15 U.S.C. §§78j(b) and 78t(a), and Securities Exchange Commission ("SEC") Rule 10b-5, *see* 17 C.F.R. § 240.10b-5.[1] In connection with the Actions, the Court is required to appoint a plaintiff or group of plaintiffs to lead the Actions ("Lead Plaintiffs"), as mandated by the procedures and presumptions set forth by Congress when it enacted the PSLRA.

---

[1] Although the Actions allege class periods of varying lengths, the cases are obviously related because they concern substantially the same claims. *Compare Saltzman v. Citigroup, Inc.*, No. 1:07-cv-09901-SHS (alleging a class period of April 17, 2006 to November 2, 2007) *with Hammerschlag v. Citigroup, Inc.*, No. 1:07-cv-10258-RJS, alleging a class period of January 1, 2004 to November 5, 2007).

While the selection of the Lead Plaintiffs is the principal issue currently before the Court, under the PSLRA the Court must preliminarily decide whether to consolidate the Actions (as well as any other related actions that may be filed). *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). On this threshold question, little doubt exists. Each of the Actions names Citigroup and certain of the Company's officers and directors as defendants. Furthermore, each of the Actions alleges essentially the same wrongdoing under the anti-fraud provisions of the federal securities laws. Because the Actions raise common issues of fact and law, they should be consolidated into a single action under Federal Rule of Civil Procedure 42(a).

As for the appointment of class representatives to oversee the consolidated action, the Court is to appoint as Lead Plaintiff or Lead Plaintiffs the movant that demonstrates the "largest financial interest in the litigation" and that also meets the typicality and adequacy prerequisites of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Through these measures, Congress adopted a procedure that was designed to encourage the appointment of sophisticated institutional investors, such as the Global Pension Funds, as Lead Plaintiffs to supervise and direct the Actions.

As demonstrated herein, the Global Pension Funds are precisely the type of investors that Congress envisioned leading a case of this nature. With losses calculated on a first-in, first-out ("FIFO") basis of $131,768,996 and losses calculated on a last-in, first-out basis ("LIFO") of $50,471,390, the Global Pension Funds (to the best of counsels' knowledge) have the largest financial interest in the litigation of any movant. Moreover, the Global Pension Funds are typical of the Class they seek to represent in that they possess the same claims and, given their long histories as fiduciaries, are more than able to protect adequately the interests of the Class. The Global Pension Funds have extensive experience in the capital markets as fiduciaries, have

2

approximately seven million members, and manage approximately $140 billion in assets. Indeed, it is hard to imagine a better choice to lead this case.

Lastly, if appointed Lead Plaintiffs, the Global Pension Funds would be entitled to select Lead Counsel for the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Global Pension Funds have engaged the law firms of Entwistle & Cappucci and SBTK for this purpose. Entwistle & Cappucci and SBTK are both highly experienced in litigating securities cases on behalf of investors in both class and direct actions.

For the reasons summarized above and discussed more fully below, the Global Pensions Funds' Motion should be granted in its entirety.

## FACTUAL BACKGROUND

As alleged in the Global Pension Funds' complaint, during the Class Period, the defendants in the Actions knowingly and/or recklessly issued a series of materially false and misleading statements and omissions of material fact concerning Citigroup's exposure to losses based upon the Company's creation and/or sponsorship of numerous off-balance sheet Variable Interest Entities ("VIEs") relating to the sale of mortgage-backed securities. Citigroup's VIEs included collateralized debt obligations ("CDOs"), structured investment vehicles ("SIVs"), asset-backed commercial paper ("ABCP") conduits, and other "structured finance" vehicles. Despite Citigroup's implicit and explicit obligations to provide liquidity and other services to its VIEs, the Defendants failed to disclose such obligations and further failed to account properly for the VIEs.

As Defendants began to disclose the truth regarding Citigroup's exposure to risks associated with its VIEs, the price of Citigroup common stock declined in a series of material steps from $47.10 per share on October 1, 2007 to $30.73 per share on November 21, 2007 as the market digested the true facts. Each such disclosure removed a portion of the artificial inflation

3

in the price of Citigroup's common stock and directly caused Plaintiffs and the other members of the Class to suffer sizeable damages. At the end of the Class Period, Citigroup's common stock had declined by $25.68 (46%) per share from its Class Period high of $56.41, representing an erasure of $122 billion in market capitalization. As a result of the defendants' fraud, Citigroup's common stock was the worst performing stock in the Dow Jones Industrial Average for 2007.

## ARGUMENT

### I.     THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Rule 42(a) of the Federal Rules of Civil Procedure allows the Court to consolidate actions that involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Kaplan v. Gelford*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA recommends courts to make the decision regarding the appointment of lead plaintiffs for the consolidated action "as soon as practicable after [the consolidation] decision is rendered").

The Actions at issue here clearly involve common questions of facts and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by Citigroup and certain of the Company's officers and directors. The Actions allege substantially the same wrongdoing: the defendants issued materially false and misleading statements and omissions that artificially inflated Citigroup's stock price and damaged the Class when the truth emerged and Citigroup's stock price crashed. Therefore, it is appropriate for the Actions to be consolidated. *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998) (consolidating shareholder class actions often benefits both the court and the parties by expediting pretrial proceedings, reducing case duplication, and minimizing the expenditure of time and money by all persons concerned).

## II. THE GLOBAL PENSION FUNDS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS

### A. The PSLRA Standard For Appointing Lead Plaintiffs

The PSLRA sets forth a procedure for selecting Lead Plaintiffs for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B) . Specifically, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class-
>
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is to consider any motion made by class members and is to appoint as Lead Plaintiff the movant that the Court determines to be "*most capable of adequately representing the interests of class members*." *See id.* (emphasis added). As part of the Court's adequacy determination, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the one that:

> (i)     has either filed the complaint or made a motion in response to the aforementioned notice;
>
> (ii)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (iii)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761, 2007 U.S. Dist. LEXIS 52139, at *15 (S.D.N.Y. June 26, 2007). Once the Court has identified the most adequate plaintiff, the presumption may only be rebutted by proof from a class member that the "most adequate plaintiff" (1) will not fairly and adequately protect the interests of the class or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

      **B.**      **The PSLRA Mandates That The Global Pension Funds Should Be Appointed Lead Plaintiffs**

As discussed below, the Global Pension Funds are presumptively the most adequate plaintiffs because they have satisfied all the PSLRA's procedural hurdles, hold the largest financial interest of any movant, and satisfy Rule 23's typicality and adequacy requirements.

      **1.**      **The Global Pension Funds satisfied the PSLRA's procedural requirements**

The Global Pension Funds have filed this Motion to serve as Lead Plaintiffs in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint in the Actions caused notice regarding the pending nature of this case to be published in *Business Wire*, a national, business-oriented news service, on November 8, 2007. Thus, as permitted by Sections 21D(a)(3)(A) and (B) of the Exchange Act, any person who is a member of the proposed Class may apply to be appointed as Lead Plaintiff by the Court within 60 days after publication of the notice, *i.e.*, on or before January 7, 2008. The Global Pension Funds have filed their Motion and Complaint within the required time frame. In addition, pursuant to section 12D(a)(2) of the Exchange Act, the Global Pension Funds have signed and submitted their respective certifications identifying all of their transactions in Citigroup securities during the

6

Class Period, and detailing their suitability to serve as class representatives in this case. *See* Exhibits A-E.[2]

### 2. The Global Pension Funds possess the largest financial interest in the relief sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the entity or entities with the largest financial interest in the relief sought by the class, so long as the movant meets the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Overall, the Global Pension Funds suffered damages of $131,768,996 when calculated using a FIFO methodology, and $50,471,390 in damages when calculated using a LIFO methodology:[3]

|  | FIFO | LIFO |
|---|---|---|
| **Colorado PERA** | $ 17,315,987 | $ 4,369,556 |
| **TCRS** | $ 50,478,043 | $ 8,484,879 |
| **AP7** | $ 12,514,061 | $ 5,965,179 |
| **AP4** | $ 37,339,746 | $ 23,569,306 |
| **PKA** | $ 14,121,159 | $ 8,082,470 |
| **TOTAL** | $131,768,996 | $ 50,471,390 |

The Global Pension Funds are presently unaware of any other movant with a larger financial interest in the outcome of this litigation. Consequently, the Global Pension Funds are entitled to the legal presumption that they are the most adequate plaintiffs, given that they also satisfy Rule 23's typicality and adequacy requirements.

---

[2] All references to Exhibits are references to the exhibits to the Declaration of Andrew J. Entwistle, dated January 7, 2008, filed in support of the Motion.

[3] These calculations are solely for purposes of this Motion and are not meant to represent the amount of, or method of calculation of, damages plaintiffs may present at trial.

### 3. The Global Pension Funds meet Rule 23's typicality and adequacy requirements

15 U.S.C. § 78u-4(a)(3)(B) requires that Lead Plaintiffs satisfy Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) allows members of the Class to sue as representative parties on behalf of the Class provided that: (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class; (3) the claims of the representative parties are typical of the claims of the Class; and (4) the representative parties will fairly and adequately protect the interests of the Class.

Only Rule 23's typicality and adequacy requirements are relevant when determining class representatives. *See, e.g.*, *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216, F.R.D. 248, 252 (S.D.N.Y. 2003). As such, when ruling on a motion to serve as lead plaintiffs, the Court shall only inquire into the typicality and adequacy requirements of Rule 23, with the remaining issues to be addressed at the class certification stage. *Id.* at 252; *accord Ferrari v. Impath, Inc.*, No. 03 Civ. 5667, 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004).

Typicality is demonstrated where the movant's claims "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002); *see also In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993). The movant's claims do not, however, need to be identical to the other Class members' claims. *Weinberg*, 216 F.R.D. at 253; *see also In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) ("The typicality requirement of Rule 23(a)(3) is liberally construed; and 'typical' does not mean 'identical.' . . . The possibility of factual distinctions between claims of the named plaintiffs and

8

those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.").

The Global Pension Funds' claims are clearly typical of the Class's claims. The Global Pension Funds purchased Citigroup securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possess claims against Citigroup under the federal securities laws. Because the factual and legal bases of the Global Pension Funds' claims are similar to those of the Class's claims, the Global Pension Funds necessarily satisfy the typicality requirement. *See id.*

Adequacy is demonstrated where the movant (1) selects class counsel that is qualified, experienced, and generally able to conduct the litigation; (2) does not have any interests that are antagonistic to the Class; and (3) possesses sufficient interest to pursue vigorous prosecution of the claims. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (citations omitted).

The Global Pension Funds are more than adequate to represent the Class. The Global Pension Funds have selected and retained highly competent counsel to litigate the claims on behalf of themselves and the Class. As explained below in Section III, Entwistle & Cappucci and SBTK are highly regarded for their experience, knowledge, and ability to conduct complex securities class action litigation, with the firms recovering literally billions of dollars for shareholders since the PSLRA was enacted. Moreover, the Global Pension Funds' interests are directly aligned with -- and by no means antagonistic to -- the Class. As experienced fiduciaries, the Global Pension Funds have every incentive to maximize the Class's recovery.

### 4. The Global Pension Funds are ideal Lead Plaintiffs

The Global Pension Funds are exactly the kind of institutional investors that Congress intended to take the lead in securities class actions. See H.R. Conf. Rep. No. 104-369, at 34

(1995), reprinted in 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690 (the encouragement of institutional investors to serve as Lead Plaintiff would "ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that institutional investors, which presumptively hold the largest financial stakes in securities class actions, are more apt to manage effectively complex securities lawsuits. *See id.*

To that end, courts in this Circuit and others have noted Congress's preference for appointing institutional investors, like the Global Pension Funds, as Lead Plaintiffs in securities class actions. *See, e.g., Bhojwani*, 2007 U.S. Dist. LEXIS 52139 at *23 (noting that institutional investors, with large holdings at stake, will have interests "most strongly aligned with those of the class members") (citations omitted); *Vanamringe v. Royal Group Tech. Ltd.*, 237 F.R.D. 55, 57 (S.D.N.Y. 2006) (noting that "Congress sought to encourage institutional investors . . . with large amounts at stake to step forward as the ideal lead plaintiffs in private securities litigation") (citations omitted); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (recognizing that "Congress 'intended that the lead plaintiff provision will encourage institutional investors to take a more active role in securities class action lawsuits'") (citations omitted).

As detailed herein, the Global Pension Funds have extensive experience in the capital markets, as fiduciaries, and in monitoring securities litigation on behalf of its beneficiaries.

Colorado PERA, which was established in 1931, operates by authority of the Colorado General Assembly. Colorado PERA provides retirement and other benefits to the employees of more than 400 government agencies and public entities in the State of Colorado. Colorado PERA's membership includes employees of the Colorado state government, most teachers in the

10

State of Colorado, many university and college employees, judges, many employees of Colorado cities and towns, Colorado State Troopers, and the employees of a number of other public entities within the State of Colorado. With approximately $42 billion in assets and more than 230 employees, Colorado PERA is the 25th largest public pension plan in the United States. Moreover, Colorado PERA has extensive experience litigating complex securities class actions, serving as a Lead Plaintiff in *In re Royal Ahold, N.V. Securities & ERISA Litigation*, MDL-01539 (D. Md.), which resulted in a $1.1 billion settlement on behalf of a global class, as well as in *In re Oxford Health Plans, Inc., Securities Litigation*, MDL Dkt. No. 1222 (CLB) (S.D.N.Y.), which resulted in a $300 million settlement for the class.

TCRS was established in 1972 with the consolidation of seven separate retirement systems for state employees, public higher education institution employees, public school teachers, and employees of political subdivisions electing to participate in TCRS. The state of Tennessee is responsible for the pension benefits of state employees and higher education employees, and funds a significant portion of the retirement liability for teachers through the Basic Education Program. Each of the 457 participating political subdivisions is responsible for the pension benefits of its employees. TCRS provides a variety of services to its members including: investing assets; counseling of rights and benefits; publishing newsletters, booklets, pamphlets, and financial statements; processing deductions for retiree insurance programs and federal income tax; calculating death, disability, and retirement benefits; and processing refund and prior service requests. TCRS currently manages approximately $32 billion in assets.

AP7, or the Seventh Swedish National Pension Fund, is based in Stockholm, Sweden and was founded in 1998. AP7 is part of the Swedish National Pension Fund (AP Fund) system and manages a portion of the pension assets of the citizens of Sweden. With assets under

management of approximately $11 billion and over 2 million, AP7 is one of the largest institutional investors in Sweden and one of its most prominent pension funds.

AP4, or the Fourth Swedish National Pension Fund, is based in Stockholm, Sweden and manages a portion of the pension assets of the citizens of Sweden. AP4 is part of the Swedish National Pension Fund (AP Fund) system and was founded in 1998. With assets under management of approximately $32 billion and over four million members, AP4 is one of the largest institutional investors in Scandinavia and one of its most prominent pension funds.

PKA, is one of Denmark's largest pension funds and represents occupational pension funds for those individuals in the public social and health sectors. Founded in 1954 and with assets under management of approximately $23 billion and approximately 210,000 members, PKA is one of the leading pension funds in Denmark.

As entities with a substantial financial stake in this litigation, the Global Pension Funds possess a strong incentive to pursue this case to obtain the best possible recovery for the Class. In fact, the Global Pension Funds have demonstrated their adequacy to date by devoting substantial resources towards the pursuit of this litigation, including by filing with the court (along with their application to be Lead Plaintiffs) a complaint, a motion to partially lift the PSLRA discovery stay, and a motion to compel the defendants to preserve documents at their related entities.

Simply put, the Global Pension Funds are the most adequate plaintiffs to oversee this litigation.

## III.  THE COURT SHOULD APPROVE THE GLOBAL PENSION FUNDS' SELECTION OF CO-LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Lead Plaintiffs are entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. The Global Pension Funds have

selected Entwistle & Cappucci and SBTK to be Co-Lead Counsel for the Class.  As reflected in their firm resumes, Entwistle & Cappucci and SBTK possesses extensive experience litigating securities class actions, having successfully prosecuted some of the largest and highest-profile securities class actions in history.  *See* Exhibits F-G.  In fact, over the last few years, Entwistle & Cappucci and SBTK have obtained literally billions of dollars in recoveries on behalf of defrauded public and private investors.  *See, e.g.*, *In re Tyco Int'l, Ltd. Sec. Litig.*, No. 02-1335-B (D.N.H) (SBTK served as co-lead counsel in case that achieved a $3.2 billion recovery for the class); *In re Royal Ahold, N.V. Sec. & ERISA Litig.*, MDL-01539 (D. Md.) (Entwistle & Cappucci served as sole lead counsel and obtained a $1.1 billion recovery for the Class); *In re CMS Energy Sec. Litig.*, Civ. No. 02-Cv-72004 (E.D. Mich.) (Entwistle & Cappucci served as sole Lead Counsel, and obtained a $200 million recovery for the Class); *In re BankAmerica Sec. Litig.*, MDL 1264 (E.D. Mo.) ($490 million recovery); *In re DaimlerChrysler AG Sec. Litig.*, Civ. No. 3:01-0388 (M.D. Tenn.) ($300 million recovery); *In re Tenet Healthcare Corp. Sec. Litig.*, No. CV-02-8461-RSWL (Rx) (C.D. Cal.) ($216.5 million recovery); *In re Dollar General Corp. Secs. Litig.*,  Civ. No. 3:01-0388 ($162 million recovery).

  Accordingly, the Court should approve the Global Pension Funds' selection of Entwistle & Cappucci and SBTK as Co-Lead Counsel.

## CONCLUSION

For the foregoing reasons, the Global Pension Funds respectfully request that the Court: (1) consolidate the Actions and any related actions that may be filed; (2) appoint the Global Pension Funds as Lead Plaintiffs for the consolidated action; (3) approve the Global Pension Funds' selection of Entwistle & Cappucci and SBTK as Co-Lead Counsel for the Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: January 7, 2008

Respectfully,

**ENTWISTLE & CAPPUCCI LLP**

_____
Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone: (212) 894-7200

Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.
SCHIFFRIN BARROWAY TOPAZ
    & KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

Attorneys for Plaintiffs Public Employees'
Retirement Association of Colorado, Tennessee
Consolidated Retirement System, Sjunde AP-
Fonden, Fjärde AP-Fonden, and Pensionskassernes
Administration A/S

15