# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated, ) ) ) | **CIVIL ACTION NO. 07-9901-SHS** |
| ) | **ECF Filed** |
| Plaintiff, ) ) | |
| vs. ) ) ) | |
| ) | |
| CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN, ) ) ) ) ) | |
| Defendants. ) | |
| LENNARD HAMMERSCHLAG, Individually, and On Behalf of All Others Similarly Situated, ) ) ) | **CIVIL ACTION NO. 07-10258-RJS** |
| ) | |
| Plaintiff, ) ) | |
| vs. ) | |
| CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, GARY CRITTENDEN, ) ) ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE U.S. PUBLIC FUND GROUP FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF COUNSEL AS LEAD COUNSEL AND CONSOLIDATION OF ALL RELATED ACTIONS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF THE FACTS .................................................................................3

ARGUMENT...............................................................................................................7

      A.     The U.S. Public Fund Group Has The Largest Financial
            Interest In The Relief Sought by the Class .............................................. 7

      B.     The U.S. Public Fund Group Is Comprised Of Sophisticated
            Institutional Investors That Satisfy The Requirements Of Rule 23...................... 10

      C.     The Court Should Approve the U.S. Public Fund Group's
            Selection of Lead Counsel ...................................................................... 13

      D.     The Securities Actions Should Be Consolidated and the ERISA
            and Derivative Actions Should Be Coordinated.................................... 14

CONCLUSION............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*City of Brockton Ret. Sys. v. Shaw Group, Inc.*,
No. 06 Civ. 8245(CM)(MHD), 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007) .......................9

*Constance Sczesny Trust v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) ........................................................................................13

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003) ...................................................8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).............................................................................................13

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005).............................................................................................10

*In re Drexel Burnham Lambert Group*,
960 F.2d 285 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993).......................13

*In re Waste Management, Inc. Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ...................................................................................8

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ...................................................................................9, 13, 14

*Pinkowitz v. Elan Corp., PLC*,
No. 02 CIV. 865(WK), 2002 WL 1822118 (S.D.N.Y. July 29, 2002) ...................................14

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*,
229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................................7

*Sofran v. LaBranche & Co.*,
220 F.R.D. 398 (S.D.N.Y. 2004) .......................................................................................15

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) .......................................................................................10

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) .........................................................................................9

*Xianglin Shi v. Sina Corp.*,
No. 05 Civ. 2154, 2005 WL 1561438 (S.D.N.Y. July 1, 2005) ...............................................7

**STATUTES, RULES**

15 U.S.C. § 78j(b) ...........................................................................................................4

15 U.S.C. § 78t(a) ...........................................................................................................4

15 U.S.C. § 78u-4, *et seq.* .................................................................................. *passim*

Fed R. Civ. P. 23 ...............................................................................................2, 10, 12, 13

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. (1995), *reprinted in* 1995
U.S.C.C.A.N. 679 .......................................................................................................10

## PRELIMINARY STATEMENT

The State Teachers Retirement System of Ohio ("Ohio STRS"), the Division of Investment of the Treasury of the State of New Jersey ("New Jersey") and the State Universities Retirement System of Illinois ("SURS") (collectively, the "U.S. Public Fund Group") respectfully submits this memorandum in support of its motion pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (a) appointing the U.S. Public Fund Group as Lead Plaintiff for a class (the "Class") of investors who purchased the publicly traded securities of Citigroup, Inc. ("Citigroup" or "the Company"); (b) approving its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), Berger & Montague, P.C. ("Berger & Montague") and Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Lead Counsel for the Class; and (c) consolidating all related securities class actions.

The underlying litigations are securities class actions brought on behalf of investors who purchased securities of Citigroup against defendants Citigroup and certain of the Company's top officials (collectively, "Defendants"). The two complaints on file allege that Defendants issued false and misleading statements about Citigroup's financial results that artificially inflated the price of Citigroup's common stock. Those misstatements relate to Defendants' concealment of the Company's massive exposure to losses tied to subprime mortgages, and to complex securities, derivative instruments and off-balance sheet entities backed by such mortgages.

The ultimate revelation of the Company's colossal exposure to subprime mortgage losses – including Citigroup's announcement of roughly $18 billion in write-downs related to subprime and other mortgage-backed losses – caused the price of Citigroup stock to plummet, resulting in

a market capitalization loss of more than $60 billion. In the wake of those disclosures, Citigroup's Chairman and Chief Executive Officer, Defendant Prince, resigned.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also makes a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The U.S. Public Fund Group respectfully submits that it is the "most adequate plaintiff" to represent the Class of investors in Citigroup securities by virtue of the massive loss it suffered from its trading in Citigroup shares as a result of Defendants' misconduct. Specifically, the U.S. Public Fund Group incurred a loss of $81.8 million or $44.9 million from its transactions in Citigroup securities depending, as discussed in detail below, on which of the class periods alleged in the two above-captioned actions is applied.[1] In light of the significant transactions and losses reflected in these Exhibits, the U.S. Public Fund Group has an extremely large financial interest in the relief sought by this litigation – an interest presently believed to be greater than that of any competing movant.

Further, the U.S. Public Fund Group satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as its claims are typical of the other members of the proposed Class, and it will fairly and adequately represent the Class. Indeed, the U.S. Public Fund Group is comprised of several of the largest and most sophisticated public pension funds in the nation. Two funds, Ohio STRS and New Jersey, are represented by the Attorneys General of their

---

[1] Copies of the PSLRA-required Certifications submitted by the U.S. Public Fund Group are attached as Exhibits A, B and C to the Declaration of Gerald H. Silk (the "Silk Decl."). These Certifications set forth the transactions of the U.S. Public Fund Group in Citigroup securities during the relevant period. In addition, charts reflecting calculations of the U.S. Public Fund Group's financial losses on Citigroup securities are attached as Exhibits D, E and F to the Silk Decl.

respective states.  The third, SURS, has been an active participant in securities litigation in the past.  Beyond the financial losses incurred by each of these funds, they have also seen the extensive harm caused to the citizens of their states, including their own beneficiaries, by the abusive lending practices that have caused a flood of foreclosures and are at issue in this case.  In addition, the U.S. Public Fund Group has selected and retained Bernstein Litowitz, Berger & Montague and Berman DeValerio, three law firms with substantial experience in prosecuting securities fraud class actions, to serve as Lead Counsel for the Class.

Accordingly, the U.S. Public Fund Group respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## STATEMENT OF THE FACTS

Citigroup is headquartered in New York, New York.  With $2.36 trillion in assets, Citigroup is considered to be the largest bank in the world as measured by assets.  The Company purports to be a diversified financial services holding company that provides a broad range of financial services to consumer and corporate customers around the world.  Citigroup's services include investment banking, retail brokerage, corporate banking and cash management products and services.

Citigroup is undisputedly a dominant force in the subprime mortgage industry, and is involved in every aspect of that industry.  The Company originated high-risk loans to borrowers with poor credit, packaged and securitized those loans into complex instruments such as collateralized debt obligations ("CDOs")[2] and mortgage-backed securities ("MBS"), and then established and managed at least seven off-balance sheet "structured investment vehicles" (the

---

[2]  A CDO is a security backed by pools of assets, such as corporate bonds, residential mortgages-backed securities or even other CDOs.

"SIVs")[3] to which it sold many such CDOs and MBS.  Citigroup was one of the largest players in CDOs backed by subprime bonds and, in 2006, was the second-largest underwriter of such CDOs.  Citigroup is also among the largest SIV operators in the market, and seven SIVs reportedly sponsored by Citigroup held about $100 billion in assets when their existence was first disclosed to investors in September 2007, representing about 25% of the total SIV market. The Company, more than any other player, had its finger on the pulse of the subprime market, and was well positioned to detect changes in the subprime mortgage market in advance of any public disclosure.

Two class action complaints have been filed in this Court.  Both allege that Defendants violated the federal securities laws by issuing materially false and misleading statements which inflated artificially Citigroup's stock price, in violation of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5.  The two actions differ materially only in the class period asserted.  Specifically, *Saltzman v. Citigroup Inc.*, et al., 07-CV-9901, filed on November 8, 2007, asserts a class period of  April 17, 2006 to November 2, 2007 (the "*Saltzman* Class Period"), while *Hammerschlag v. Citigroup Inc.*, et al., 07-CV-10258, filed on November 9, 2007, asserts a class period of  January 1, 2004 to November 5, 2007 (the "*Hammerschlag* Class Period").

Both complaints allege, in essence, that throughout their respective class periods, Defendants issued false and misleading statements which concealed the Company's exposure to subprime assets, the guarantees it provided to purchasers of CDOs, and its ultimate liability for its off-balance sheet SIVs.  Specifically, Citigroup misled investors about its true financial health

---

[3]  An SIV is an investment vehicle formed to make a profit between short term borrowing rates and long term rates. The basic structure of a SIV is that it sells commercial paper backed by assets, including CDOs and MBS to investors, and then uses this money to purchase higher-yielding assets, such as bonds, with longer maturities.

and improperly concealed its exposure to subprime mortgages, both on its own books and via off-balance sheet entities.  The complaints allege, among other things, that Citigroup failed to disclose that it held billions of dollars of CDOs that were backed essentially by subprime mortgages.  Moreover, the Company failed to timely disclose that it had also sold to investors billions more in CDOs that contained "liquidity put options."  Those options gave the investors the right to require Citigroup to purchase the commercial paper issued by those CDOs in the event such paper could not be otherwise sold.  The complaints allege not only that Citigroup failed to disclose the existence of these "liquidity put options" and properly account for the likelihood that the options would be exercised, but that the Company also delayed for months in disclosing that by the summer of 2007, it had purchased billions of dollars of commercial paper backed by those CDOs, the value of which was already impaired.

In addition, Citigroup hid its massive exposure to $100 billion worth of SIVs by not consolidating these vehicles on its balance sheet.  Indeed, the existence of the SIVs was not disclosed until September 2007, and the Company assured investors at that time – and for months thereafter – that the assets held by the SIVs were unimpaired and that Citigroup had neither the obligation nor the intention to consolidate the SIVs onto its balance sheet.

The collapse of the subprime mortgage industry – which was apparent to industry participants such as Citigroup long before it was disclosed to the public – decimated the value of the billions of dollars in subprime and other mortgage-backed assets held, issued or guaranteed by the Company.  The serial disclosures of the truth about Citigroup's exposure to subprime mortgages and subprime-backed CDOs and SIVs sent the Company's stock price into a tailspin.

Specifically, on September 5, 2007, the Company's first disclosure that Citigroup managed $100 billion in SIV assets that it kept off its balance sheet caused the Company's stock

to fall $1.21 per share, a decline of 2.56%, on heavy trading volume.  On October 15, 2007, Citigroup announced its third quarter 2007 financial results, including a $6.4 billion write-down for the third quarter related to the subprime meltdown, including a $1.56 billion write-down tied directly to its CDOs and a reserve increase for losses from subprime loans originated by the Company.  That same day, details were disclosed concerning what was widely viewed to be a bail-out fund for SIVs that Citigroup and other major banks were discussing with the U.S. Treasury Department.  The need for that bail-out fund indicated to investors that the collapse of the market for the subprime-backed assets held by many SIVs threatened these SIVs' financial stability, and would likely require their sponsoring banks, such as Citigroup, to support their SIVs and possibly consolidate the SIVs' assets onto their own balance sheets.  In response to this news, Citigroup shares decreased $1.45 per share, or 3.1%, to close at $44.79 per share on trading volume of 64 million shares.  On November 1, 2007, Citigroup's stock price fell $3.49 per share, or 8.3%, to close at $38.51 per share, after a CIBC World Markets analyst questioned whether Citigroup was undercapitalized, and reported that the Company might have to raise more than $30 billion by either selling assets, slashing its dividend, raising capital or resorting to a mix of these measures.

On Sunday, November 4, 2007, Citigroup revealed the resignation of its Chairman and CEO, Defendant Prince.  The Company then also announced that, in addition to its previously disclosed write-down of assets for the third quarter of 2007, Citigroup expected to take a write-down of approximately $8 billion to $11 billion in assets during the fourth quarter of 2007. Further, on November 5, 2007, Citigroup held a conference call with analysts where it disclosed for the first time the existence of "liquidity put options" that, months earlier, had caused the Company to purchase billions of dollars of illiquid commercial paper backed by CDOs it had

sold.  The market also reacted swiftly to this news.  On November 5, 2007, Citigroup's stock price fell $1.83 per share, or 4.8%, to close at $35.90 per share on heavy trading volume.  After continuing to steadfastly deny that it was responsible for any of the losses incurred by the SIVs or that it would consolidate the SIVs onto its balance sheet, Citigroup, in a stunning reversal, announced on December 13, 2007, that it was going to consolidate the SIVs onto its financial statements.

The first class action complaint was filed on November 8, 2007.  The first notice of the pendency of this action was published on *Business Wire* the same day.  Silk Decl., Exhibit G. The PSLRA permits any member of the purported class to move for appointment as Lead Plaintiff within 60 days of the publication of the first notice that a class action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A).  By the filing of this motion, the U.S. Public Fund Group has timely moved under the PSLRA.

## **ARGUMENT**

### **A.    The U.S. Public Fund Group Has The Largest Financial Interest In The Relief Sought by the Class**

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA establishes a presumption that the "most adequate plaintiff" is the person or group that "has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  "The PSLRA does not state how to determine which plaintiff has the largest financial interest in the relief sought by the class."  *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154, 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) (Buchwald, J.); *see also Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 406-407

(S.D.N.Y. 2004) ("[I]n the absence of statutory guidance or Second Circuit case law, the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court.").

Lacking any direction from the PSLRA, courts generally look first to the losses each movant incurred from transactions in the subject security to identify the presumptive Lead Plaintiff:

> '[T]he district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the presumptively most adequate plaintiff – and hence the presumptive lead plaintiff – the one who has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.' The court should 'compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.'

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003) (Kram, J.), quoting *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (internal quotations omitted).

The U.S. Public Fund Group believes that it has the largest financial interest in the relief sought by the Class and is the presumptive Lead Plaintiff, based on the loss it incurred as a result of its trading in Citigroup stock. As noted above, the two actions filed against the Defendants assert two different class periods. While the court-appointed Lead Plaintiff will bear ultimate responsibility for determining the appropriate class period to assert in a consolidated amended complaint following a thorough investigation, the U.S. Public Fund Group has provided the Court with loss information for each period.[4] *See In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 407 n.1 (S.D. Tex. 2000) ("The proper class period will be determined only

---

[4] The PSLRA itself provides no guidance as to which class period should be used to determine the movant with the largest financial interest when multiple class periods have been alleged, and the Second Circuit has not addressed the issue.

after lead plaintiff is appointed, lead counsel is approved, and an amended complaint is filed."); *Kaplan v. Gelfond*, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) ("[T]he filing of a consolidated complaint, and the determination of class certification each offer opportunities to resolve remaining issues concerning the differing class periods.") (citation omitted). Applying the *Saltzman* Class Period (April 17, 2006 to November 2, 2007), the U.S. Public Fund Group incurred a loss of $44.9 million on a first-in, first-out ("FIFO") basis, and a loss of $32 million on a last-in, first-out ("LIFO") basis.[5] *See* Silk Decl., Exhibits A-F. Applying the *Hammerschlag* Class Period (January 1, 2004 to November 5, 2007), the U.S. Public Fund Group incurred a loss of $81.8 million on a FIFO basis, and a loss of $31.1 million on a LIFO basis. *Id.* Thus, under both class periods, the U.S. Public Fund Group has a substantial financial interest in the relief sought by the Class.

The express language of the PSLRA permits the appointment of a group of class members as the Lead Plaintiff, as courts in this District have long recognized. *See, e.g.*, *City of Brockton Ret. Sys. v. Shaw Group, Inc.*, No. 06 Civ. 8245(CM)(MHD), 2007 WL 2845125, at *3 (S.D.N.Y. Sept. 26, 2007) (Dollinger, M.J.) ("From this language, it is evident that the court may appoint multiple persons – whether individuals or entities – as lead plaintiffs."); *Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (collecting cases). The U.S. Public Fund Group is a small, cohesive group of three sophisticated domestic public pension funds formed at their own initiative, and not at the direction of counsel. *See* Joint Declaration of the Honorable Marc Dann, William J. Neville, John Michael Vazquez, William G. Clark and Dan Slack in Support of the Motion of the U.S. Public Fund Group for Appointment as Lead Plaintiff (the "Joint Declaration"), Silk Decl., Exhibit H.

---

[5] Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward. Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.

In sum, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the U.S. Public Fund Group is the presumptive "most adequate plaintiff" and should be appointed as Lead Plaintiff in this action.

**B.    The U.S. Public Fund Group Is Comprised Of Sophisticated Institutional Investors That Satisfy The Requirements Of Rule 23**

The PSLRA further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).   At the lead plaintiff stage, a movant need only make a *prima facie* showing that the adequacy and typicality requirements of Rule 23 have been met.  *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

The U.S. Public Fund Group has submitted Certifications in which it affirms its understanding of the duties owed to the members of the Class by expressing its commitment to oversee the prosecution of the instant litigation.  Silk Decl., Exhibits A, B and C.  Through these Certifications, the U.S. Public Fund Group accepts the fiduciary obligations it will undertake if it is appointed Lead Plaintiff in this action.

Moreover, the members of the U.S. Public Fund Group are sophisticated institutional investors with a significant financial interest in the litigation, and are among the largest public pension funds in the country.  As such, the U.S. Public Fund Group is precisely the sort of plaintiff Congress envisioned would lead securities class actions when it enacted the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts by improving the quality of representation in securities class actions."); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) (The PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the

case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class.").

Specifically, Ohio STRS is one of the largest pension funds in the nation, managing approximately $75 billion in assets for the benefit of 400,000 active, inactive and retired Ohio public educators. Joint Decl. ¶4. Ohio STRS is also represented in this action by Ohio Attorney General Marc Dann, whose office is and will remain actively involved in the prosecution of this action, and by Ohio STRS General Counsel William J. Neville. Joint Decl. ¶¶2, 3, 5. New Jersey is among the 10 largest public fund managers in the United States. New Jersey manages $83 billion in assets on behalf of 700,000 current and retired employees of the State of New Jersey. Joint Decl. ¶7. New Jersey is also represented in this action by New Jersey Attorney General's Office, which is, and will remain, actively involved in the prosecution of this Action. *Id.* SURS has approximately $16 billion in assets under management, as of June 30, 2006. Joint Decl. ¶10. It was created in 1941 by the Illinois Governor and General Assembly and invests and administers the retirement assets of the employees of the universities, community colleges and state agencies in Illinois. *Id.* The Governor of Illinois appoints the nine-member Board of SURS. *Id.*

The U.S. Public Fund Group was formed at the initiative of Attorney General Dann and Ohio STRS, in recognition of the critical importance of this litigation and the broad impact of Defendants' misconduct upon the institutional investor community. Joint Decl. ¶6. In connection with a policy enforcement initiative in the subprime area with which Ohio STRS has agreed, Attorney General Dann directed his staff to consider the possibility of serving as Lead Plaintiff in this litigation. Joint Decl. ¶5. After determining to seek appointment as Lead Plaintiff and retaining Bernstein Litowitz, Attorney General Dann and Ohio STRS considered

whether the opportunity existed for Ohio STRS to serve as Lead Plaintiff together with certain other United States public pension funds. Joint Decl. ¶6. In response to that directive, the Ohio Attorney General's Office contacted the office of the Attorney General of the State of New Jersey and the office of the Executive Director of SURS. *Id.* As a result of those contacts – which were conducted without the involvement of outside counsel – Ohio STRS, New Jersey and SURS determined to move jointly for appointment as Lead Plaintiff in this litigation. Joint Decl. ¶¶6, 9, 12.

The U.S. Public Fund Group is also adequate to represent the interests of its fellow investors because its members have experience prosecuting other securities class actions. For example, New Jersey served as co-Lead Plaintiff in *In re Nortel Networks Securities Litigation* (S.D.N.Y.), achieving a recovery of $1.3 billion for the class, and served as Lead Plaintiff in *In re Electronic Data Systems Corp. Securities Litigation* (E.D. Tex.), recovering $135 million for the class. Ohio STRS is currently serving as Lead Plaintiff in *In re Fannie Mae Securities Litigation* (D.D.C.), and previously served as co-Lead Plaintiff in *Ohio Public Employees Retirement System v. Freddie Mac* (S.D.N.Y), and recovered $410 million for the class, among other cases. New Jersey and Ohio STRS, together with other Ohio funds, are also presently serving as co-Lead Plaintiffs in *In re Marsh & McLennan Companies, Inc. Securities Litigation* (S.D.N.Y.). SURS is presently serving as Lead Plaintiff in *In re Alstom Securities Litigation* (S.D.N.Y.).

The U.S. Public Fund Group thus has significant financial expertise, possesses substantial resources, understands the complexities of securities litigation and has experience with managing class actions. As institutional investors, the members of the U.S. Public Fund Group have the

qualifications to assume the role of Lead Plaintiff in this securities class action litigation against Citigroup and clearly satisfy the adequacy requirements of Rule 23.

The U.S. Public Fund Group also satisfies the typicality requirements of Rule 23. "The typicality threshold is satisfied 'where the claims arise from the same conduct from which the other class members' claims and injuries arise.'" *Kaplan*, 240 F.R.D. at 94 (internal citation omitted); *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993). The U.S. Public Fund Group's interests are the same as those of other Class members. For instance, the U.S. Public Fund Group, like other Class members, seeks to hold Defendants liable for the consequences of their violations of the federal securities laws. In addition, there are no facts that indicate any conflicts of interest between the U.S. Public Fund Group and the other Class members. Indeed, the events and course of conduct that give rise to the U.S. Public Fund Group's claims are the same events and course of conduct that give rise to the claims of the Class. Since the U.S. Public Fund Group's claims are based on the same legal theories and arise from the same events giving rise to the claims of other Class members, the typicality requirement of Rule 23 is satisfied. *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (Stein, J.).

**C.    The Court Should Approve the U.S. Public Fund Group's Selection of Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (holding that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the Lead Plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class." *See* Statement of Managers – The "Private Securities Litigation Reform Act of 1995," 141 Cong.

- 13 -

Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 35, 104th Cong. 1st Sess. (Nov. 28, 1995).

Here, the U.S. Public Fund Group has selected Bernstein Litowitz, Berger & Montague and Berman DeValerio to serve as Lead Counsel. Bernstein Litowitz, Berger & Montague and Berman DeValerio are highly-experienced in the areas of securities litigation and class actions, and have successfully prosecuted numerous securities fraud class actions and obtained excellent results on behalf of defrauded investors around the country. Further, counsel from Bernstein Litowitz, Berger & Montague and Berman DeValerio have the skill and knowledge that will enable them to prosecute this action effectively and expeditiously. *See, e.g.,* Bernstein Litowitz's, Berger & Montague's and Berman DeValerio's firm biographies attached as Exhibits I, J and K, respectively, to the Silk Decl. The U.S. Public Fund Group believes (and will ensure) that having these highly experienced firms serving as Lead Counsel will not increase the costs to the class and will be effective in battling what will no doubt be an army of attorneys retained by defendants in this litigation. Joint Decl. ¶14. Accordingly, the Court should approve the U.S. Public Fund Group's selection of Bernstein Litowitz, Berger & Montague and Berman DeValerio as Lead Counsel for the Class.

**D.    The Securities Actions Should Be Consolidated and the ERISA and Derivative Actions Should Be Coordinated**

The U.S. Public Fund Group believes that both *Saltzman* and *Hammerschlag* present the same factual and legal issues, as they arise out of the same alleged misstatements regarding the Company's violations of the federal securities laws. Accordingly, consolidation is appropriate here. *See Kaplan*, 240 F.R.D. at 91 (finding that differences in defendant or the class periods "do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by

consolidation"); *Pinkowitz v. Elan Corp., PLC,* No. 02 CIV. 865(WK), 2002 WL 1822118, at *3-4 (S.D.N.Y. July 29, 2002) (granting consolidation despite divergence in the defendants, class periods, and causes of action); *Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 401 (S.D.N.Y. 2004) (consolidation proper where two complaints assert "essentially similar and overlapping claims"). Despite the different class periods and defendants, both of these cases rely on common questions of fact and law; to wit, that Defendants' statements to the investing public misrepresented or omitted to state material facts in violation of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5. In addition, consolidation of these actions would be in the interests of judicial economy.

Defendants also appear to favor consolidation as they filed a motion on December 13, 2007 supporting consolidation of the securities class actions. Defendants also request that the pending class actions filed on behalf of participants in Citigroup's employee retirement plans (the "ERISA Actions") and lawsuits brought seeking derivative relief for Citigroup against its Board of Directors (the "Derivative Actions") be consolidated with the securities class actions for pre-trial proceedings.

The U.S. Public Fund Group opposes *consolidation* of the securities, ERISA and Derivative actions for *all* pre-trial proceedings, but supports *coordination* of all pre-trial proceedings among these various actions. Each action seeks to represent a different constituent of plaintiffs allegedly harmed by various defendants' actions. Each action therefore must have its own separate operative complaint as each bring claims on behalf of different constituents, seeks different remedies and must meet differing pleading requirements. To the extent Defendants' motion seeks consolidation requiring one pleading for all three actions, then the U.S. Public Fund Group opposes that. The U.S. Public Fund Group does agree, however, that all

three actions should be *coordinated* in terms of pre-trial proceedings, including discovery, to insure the efficient prosecution of all three actions.

## CONCLUSION

For all the above reasons, the U.S. Public Fund Group respectfully requests that the Court: (1) appoint the U.S. Public Fund Group as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the PSLRA; (2) approve the U.S. Public Fund Group's selection of Lead Counsel for the Class; (3) consolidate all related securities class actions; and (4) grant such other and further relief as the Court may deem just and proper.

Dated:  January 7, 2008                    Respectfully submitted,

/s/ Gerald H. Silk
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Gerald H. Silk (GS-4565)
Avi Josefson (AJ-3532)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: 212-554-1400
Facsimile:  212-554-1444

**BERGER & MONTAGUE, P.C.**
Merrill G. Davidoff (MD-4099)
Lawrence J. Lederer
Arthur Stock
1622 Locust Street
Philadelphia, Pennsylvania  19103
Telephone: 215-875-3000
Facsimile: 215-875-4604

**BERMAN DEVALERIO PEASE TABACCO**
**BURT & PUCILLO**
Jeffrey C. Block (JB-0387)
Kathleen M. Donovan-Maher
Leslie R. Stern
One Liberty Square
Boston, Massachusetts 02109
Telephone: 617-542-8300
Facsimile: 617-542-1194

*Counsel to the U.S. Public Fund Group and*
*Proposed Lead Counsel for the Class*