# BERGER & MONTAGUE, P.C.

Berger & Montague has been engaged in the practice of complex and class action litigation for over 35 years. The firm was founded in 1970 to concentrate on the representation of plaintiffs in a series of antitrust class actions. Since then, the firm has been instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has recovered billions of dollars for its clients. Currently, the firm consists of approximately 70 lawyers, 14 paralegals, and an experienced support staff. Attached at Tab 1 are the biographies of some of the attorneys who will devote their efforts to this engagement.

Berger & Montague has been recognized by courts throughout the country for its ability and experience in handling major complex litigation and has achieved the highest possible rating by its peers and opponents as reported in *Martindale-Hubbell*. (The firm's many plaudits from judges can be found at http://www.bergermontague.com/judicial-praise.cfm. Also attached at Tab 2 is a summary of some judicial praise the firm has received for its prosecution of complex litigation).

The firm was recently included in *The National Law Journal's* "Hot List" of top plaintiffs' law firms for 2007, as it has been in years past. See Tab 3 (attaching summaries from *The National Law Journal). The National Law Journal* cited the firm's victories in a series of post-trial rulings upholding the $554 million jury verdict in *Rocky Flats*, as well as significant recoveries in securities, antitrust, mass tort and employment fields. The firm has also been singled out by *Chambers USA's America's Leading Business Lawyers*, as one of the top firms in the City of Philadelphia. Chambers "endorsed [Berger & Montague] for its work in complex securities, antitrust and mass torts," and reported that the firm is "[c]onsidered by its competitors as a 'leading light on the plaintiffs' side.'" The firm has also repeatedly been named by Securities Class Action Services/Institutional Shareholder Services as a top ten securities class action firm (ranked by total dollar amount of recoveries).

Berger & Montague also has extensive experience actually trying – and prevailing through verdict in – large, complex cases. For example, on February 14, 2006, the jury returned a verdict of $554 million on behalf of thousands of property owners against the former operators of the *Rocky Flats* nuclear weapons plant, located about 17 miles northeast of Denver, Colorado. The verdict against the contractors, Dow Chemical Company and Rockwell International Corporation, is the largest verdict in Colorado history, and the first time a jury has awarded damages to property owners living near one of the nation's nuclear weapons sites. It includes an award of $200 million in punitive damages. According to *The National Law Journal's* "Top 100 Verdicts of 2006," Berger & Montague's victory in the *Rocky Flats* case was the third largest jury verdict in the United States in 2006. The firm was also co-lead counsel in the *Exxon Valdez* case, with the jury returning a $5 billion judgment after 13 years of litigation (reduced to $2.5 billion on appeal). Both cases remain pending. In a current survey of the 300 largest U.S. law firms and federal court dockets, published in Competition 360 Online (Portfolio Media, Feb. 14, 2007), Berger & Montague ranked No. 3 among the most frequently hired plaintiffs' antitrust firms measured by new cases filed in 2006.

2

## QUALIFICATIONS

*Complex Securities Litigation Involving State or Other Municipal Entities.*  Berger & Montague helped pioneer the representation of state entities in securities litigation matters. Today, it is widely recognized as a leader in the field.  Representative engagements on behalf of state entities since the passage of the PSLRA in 1995 include the following, all of which included claims arising under the federal securities laws or related state law:

- Currently represents the New Jersey Division of Investment/Department of Treasury in an "opt-out" action against *Qwest Communications* and other defendants.  This litigation alleges that Qwest and senior Qwest officials misstated Qwest's financial results over several years.  A related class action case was already settled.  New Jersey's "opt-out" action has recently settled for a very substantial and favorable amount.

- Represented the Pennsylvania State Employees' Retirement System as the lead plaintiff in the *CIGNA Securities Litigation* federal securities fraud class action.  CIGNA allegedly concealed crucial problems concerning its financial operations, which, once revealed, caused the company's stock price to fall precipitously.  The firm obtained a $93 million settlement, which was approved by the Court in May 2007.  This is a remarkable settlement because this litigation contained none of the elements that usually lead to large recoveries.  For example, there were no restatements, government investigations, typical indicators of financial fraud, or insider trading.  The case was settled on the eve of trial.

- Represented the City of Philadelphia Board of Pensions and Retirement in several important PSLRA cases.  For example, *Waste Management* involved claims arising out of alleged violations of GAAP.  The plaintiffs claimed that the company misstated its financial operations and conditions which, in turn, led to financial restatements of its previously reported financial results. Following extensive litigation, the case was settled for $220 million. Similarly, *IKON Office Solutions* also involved claims that the company misstated in reports to investors its financial operations and condition.  The case was settled for a $111 million cash recovery.  Berger & Montague also represented the City of Philadelphia Board of Pensions and retirement in a successful securities law class action case involving *USA Detergents* ($10 million recovery), and currently represents the Board in an action against *KLA-Tencor Corp.* related to the issuance of back-dated stock options.

- Represented the Connecticut Retirement Plans and Trust Funds in *Campbell Soup* ($35 million recovery).  This case involved allegations of channel stuffing, *i.e.,* "stuffing" product on to customers to show growth regardless of

3

whether the customer actually wanted, or could sell, the additional product. This recovery was all the more outstanding given that, like *CIGNA*, there were few, if any, of the traditional indicia of fraud. For example, there was no restatement and no insider selling; in fact, insiders had bought the company's stock during the applicable period, and used that as a defense.

- Represented the Teachers' Retirement System of Louisiana in *Micro Warehouse* ($30 million recovery); *Summit Technology* ($10 million recovery); and *Boston Chicken* ($19.4 million recovery). These cases also involved allegations of financial fraud, including misrepresentations and material omissions concerning these companies' financial operations and condition. For example, *Boston Chicken* was one of the original alleged "off-the-book" accounting frauds. The allegation, among others, was that the company concealed operating losses via entities which it did not consolidate in a timely fashion. Following disclosure of these losses, the company's stock price collapsed.

- Represented the New Hampshire Retirement System in *United Healthcare* ($21 million recovery); *SmartTalk* (a partial settlement of $15 million); *Phycor* ($10 million recovery); and *Ashworth* ($15.25 million recovery plus significant corporate governance changes including, among other things, an increase of independent directors, limits on the length directors may serve, retention by senior management of specified amounts of stock, and the establishment and implementation of a Lead Independent Director).

- Represented the Commonwealth of Pennsylvania AG and four public Pennsylvania funds, including Pennsylvania Public School Employees' Retirement System, Pennsylvania State Employees' Retirement System, Pennsylvania State Workers' Insurance Fund and Pennsylvania Tobacco Settlement Investment Board, in *AOL Time Warner* "opt-out" action ($23 million recovery in June 2006). This litigation involved alleged misstatements concerning the revenues booked by AOL both prior to and following its merger with Time Warner, and the case was resolved at a substantial premium over the class settlement.

***Berger & Montague's Expertise in Other Complex Litigation, Class Actions, and Securities Litigation.*** As a pioneer of class action litigation and one of the leading plaintiffs' litigation firms in the country, Berger & Montague is particularly well-suited to handle securities litigation on a class or individual basis. In addition to the specific cases discussed above, Berger & Montague has vast experience litigating plaintiffs' securities cases and complex litigation throughout the country. The firm's broad experience in many different types of complex litigation bears directly on this litigation, and renders Berger & Montague eminently qualified to represent the lead plaintiff(s) in a major case. In sum, Berger & Montague has:

a)   extensive experience in all forms of securities litigation for over 30 years and, in particular, concealment involving financial operation and performance;

b)   extensive experience specifically litigating securities claims under the PSLRA;

c)   a record of delivering superior results which outperform the results of the typical securities class action;

d)   substantial experience in bankruptcy litigation in conjunction with securities litigation;

e)   substantial experience in obtaining corporate governance relief, both directly in securities cases and in the derivative litigation context;

f)   direct experience in securities and other litigation involving mortgage lending and related subprime lending, including structured finance, including the precedent-setting case of *In re First Alliance Mortgage Co.* summarized below;

g)   extensive experience in non-securities litigation including the prosecution of landmark consumer, environmental and antitrust cases through trial judgment and appeal; and

h)   extensive experience in electronic and other discovery.

Representative cases include:

•   *In re Rite Aid Inc. Securities Litigation*:  Berger & Montague, as co-lead counsel, obtained settlements totaling $334 million against Rite Aid's accounting firm and certain of the company's former officers (99 CV 1349 (E.D. Pa. 2001)).  This case involved a three year accounting restatement in a retail pharmacy chain.  There were more than 20 subtle accounting manipulations alleged, all of which plaintiffs contended led to a gross overstatement of income.  However, at the time the case was commenced, there were no restatements.  The settlement included a $125 million contribution from KPMG, still one of the largest recoveries ever achieved from an accounting firm.  Further, Rite Aid was financially weak and its officer and director insurance was extremely limited.  Berger & Montague negotiated a novel settlement which included equity from the company and a senior note that ultimately secured many millions of dollars more for the class.  The court stated that counsel "were extraordinarily deft and efficient in

5

handling this most complex matter. . . ." *In re Rite Aid Inc. Sec. Litig.*, 269 F. Supp. 2d 603, 611 (E.D. Pa. 2003).

- *In re Sunbeam Inc. Securities Litigation*: As co-lead counsel, Berger & Montague obtained a settlement on behalf of investors of $142 million in an action against Sunbeam's accounting firm and Sunbeam's officers (98 CV 8258 (S.D. Fla. 2001)). The case also involved a complex financial fraud, including allegations of financial misstatement and material omission concerning Sunbeam's operations and results. Following extensive litigation, final settlements were only achieved on the eve of trial (after Merrill Davidoff of Berger & Montague had been designated lead trial counsel).

- *Kelly v. McKesson HBOC, Inc.*: Individual "opt-out" action involving a group of four shareholders who sold their companies to a large publicly-held corporation in exchange for $103.5 million in stock. Subsequently, McKesson acquired HBOC; HBOC announced accounting irregularities; and McKesson HBOC's stock price plummeted. This case subsequently settled for a significant, confidential cash recovery following extensive fact discovery (C.A. No. 99C-09-265 WCC, 2002 Del. Super. LEXIS 39 (Del. Super. Ct. Jan. 17, 2002)).

- *Medaphis/Deloitte*: $96.5 million recovery; Medaphis paid $72.5 million with Deloitte, its auditor, paying $24 million; Berger & Montague represented a large private institutional investor (Carley Capital), among others.

- *Fleming*: $93.95 million recovery; case involved alleged misstatements concerning Fleming's strategic plan to convert its retail stores from traditional grocery stores to warehouse-type stores. Claims included that Fleming employed improper accounting and reported inflated revenue.

- *Xcel Energy*: $80 million recovery; claim was that Xcel falsely reported certain transactions it entered into with its majority-owned subsidiary, NRG Energy; that Xcel and NRG engaged in certain "round-trip" trades; and that Xcel's revenues and financial results were materially overstated.

- *Alcatel Alsthom*: $75 million recovery; represented a large private institutional investor from Paris, France (ABC Arbitrage); claim was that Alcatel concealed poor operating results and inflated its stock price in connection with Alcatel's merger with DSC Communications.

- *Sotheby's*: $70 million recovery; securities class action arising out of Sotheby's alleged antitrust violations and liabilities concerning same.

6

- *Melridge*: Jury verdict of $88.2 million with judgment entered on RICO claims for $239 million; ultimately settled for $57.5 million; one of the few securities class actions ever tried to verdict; complex securities fraud claims including financial misstatements and omissions.

- *Walco Investments, Inc., et al. v. Kenneth Thenen, et al. (Premium Sales)*: Berger & Montague, as a member of the Plaintiffs' Steering Committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme (reported at 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

- *In re Michael Milken and Associates Securities Litigation*: As court-appointed liaison counsel, Berger & Montague was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities (MDL No. 924, M21-62-MP (S.D.N.Y. 1993)).

- *RJR Nabisco Securities Litigation*: In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million (88 Civ. 7905 MBM (S.D.N.Y. 1992)).

- *Presidential Life Insurance Co. v. Milken*: Approving $50 million settlement in novel "global" class action of all previously unasserted claims against some 500 defendants (946 F. Supp. 267 (S.D.N.Y. 1996)).

- *In re Ivan F. Boesky Securities Litigation*: Affirming approval of "first tier" settlements arising out of the Boesky/Levine insider trading scandal totaling approximately $29 million; related "second tier" class, derivative and other settlements subsequently approved totaling in excess of $200 million (948 F.2d 1358 (2d Cir. 1991)).

Additionally, Berger & Montague has also served as lead counsel in multiple other securities class action cases brought under the PSLRA. Other representative examples of Berger & Montague's service as lead counsel in major securities cases are identified below:

*Advanced Micro Devices* (class settlement of $11.5 million);
*BankAmerica* (derivative settlement of $39.25 million);
*Boston Chicken* (class settlement of $21.5 million);
*Bristol-Myers Squibb* (class settlement of $20 million);
*Cephalon* (class settlement of $17 million);
*Crocker Bank* (class settlement of $35 million);

7

*Employee Solutions* (class settlement valued at $15 million);
*Fidelity/Micron* (class settlement of $10 million);
*Genentech* (class settlement of $29 million);
*Global Crossing* (class settlement of $444 million (partial));
*Home Shopping Network* (class settlement of $18.2 million);
*Long Island Lighting* (class settlement of $48.5 million);
*MicroWarehouse* (class settlement valued at $30 million);
*Motorola* (class settlement of $15 million);
*Oak Industries* (class settlement in excess of $35 million);
*Plains All American Pipeline LP* (class settlement of $24.1 million);
*Policy Management* (class settlement of $32 million);
*Policy Management II* (class settlement of $7.75 million);
*Public Service Company of New Mexico* (class and derivative settlements of $33 million);
*Raychem* (class settlement of $19.5 million);
*Safety-Kleen* (class settlement of $44.5 million achieved two days before trial);
*Shopko Stores* (class settlement of $4.9 million);
*SmithKline Beckman* (class settlement of $22 million);
*Summit Technology* (class settlement of $10 million);
*Sunrise Medical* (class settlement of $20 million);
*Subaru* (class settlement of $70 million);
*Synergen* (class settlement of $28 million);
*U.S. Bioscience* (class settlement valued at $15.25 million);
*United HealthCare* (class settlement of $20.1 million); and
*United Telecommunications* (class settlement of $28 million).

Notably, Berger & Montague has also obtained some of the largest securities class action recoveries in terms of percentage per damaged share. For example, in *Alcatel* ($75 million total recovery), *Sotheby's* ($70 million total recovery) and *Melridge* ($57.5 million total recovery), the recoveries as a percentage of damages were estimated to be, respectively, 56%, 54% and 76%. In the recent *Aerosonic* class action, the recovery was 65% <u>after</u> fees and costs. According to a report by *NERA Economic Consulting* in February 2005, the median post-PSLRA percentage recovery of estimated damages is less than 4%.

The firm also has particular expertise in securities litigation within the context of bankruptcy proceedings. For example, in *In re The Drexel Burnham Lambert Group, Inc.*, Berger & Montague was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), *Jointly Administered, reported at, inter alia*, 960 F.2d 285 (2d Cir. 1992),

*cert. dismissed*, 506 U.S. 1088 (1993) ("*Drexel I*") and 995 F.2d 1138 (2d Cir. 1993) ("*Drexel II*")).

Similarly, in the *Boston Chicken* class action litigation, another accounting fraud case, Berger & Montague obtained on behalf of the plaintiff class a recovery from Arthur Andersen and the underwriters of $19.4 million. The company sought bankruptcy protection at the same time that Berger & Montague was continuing to pursue investor claims against the individual officers and directors. Therefore, the plan trustee appointed by the bankruptcy court also initiated claims against Boston Chicken's officers and directors, its accountants and others who were involved in Boston Chicken's public offerings under a "deepening insolvency" theory. Berger & Montague coordinated its litigation against the officers and directors with the Plan Trustee's litigation and succeeded in working through complex issues within the bankruptcy context. Berger & Montague has been retained in other actions representing bankruptcy trustees or Plan Administrators; a recent case, *Erie Power Technologies*, settled for a sum in excess of $10 million.

In Berger & Montague's securities class action against *Fleming*, the company declared bankruptcy shortly after the case was filed. Despite the fact that this would normally terminate any claims against the company, Berger & Montague successfully negotiated with the bankruptcy trustee to preserve the class claims against Fleming once it emerged from bankruptcy. In addition, Berger & Montague navigated Fleming's seven separate layers of D&O insurance to achieve a $31.45 million settlement with the company. Berger & Montague also fought off competing claims against the directors and officers' insurance by Fleming's bankruptcy trustee and obtained for the class five times the recovery received by the trustee.

The firm also has extensive experience in shareholder derivative actions. For example, Berger & Montague has been involved in derivative actions filed on behalf of *J.P. Morgan Chase, Columbia HCA, FPL Group* and *Tyco Corp.*, as well as actions on behalf of *Bank of America* ($39.25 million recovery) and *W.R. Grace & Co.* ($8.5 million recovery).

Berger & Montague has spent months investigating the subprime lending industry, from loan origination through the sale and securitization of such loans into mortgage-backed securities. We also have substantial experience in related accounting issues and in analyzing "off-balance sheet" entities established to issue mortgage-backed securities. In addition, the firm is currently involved directly in litigation relating to the mortgage industry and has substantial experience with cases involving related consumer protection issues. Representative cases include:

> • The firm filed the first action on behalf of an investor in New Century's Series B *Preferred* stock against New Century, certain officers of New Century, and the underwriters of those securities. *Verne v. New Century Financial Corp., et al.*, No. CV07-0320 JVS (C.D. Cal.). The complaint alleges that New Century and the

9

individual defendants artificially inflated the price of New Century's preferred stock through false and misleading statements concerning management of the significant risks inherent in its mortgage lending business, and that the underwriter defendants failed to properly investigate and disclose such practices. On June 26, 2007, the court consolidated the related cases and appointed the New York State Teachers Retirement System as lead plaintiff. The lead plaintiff filed its consolidated amended complaint. On April 6, 2007, New Century filed for bankruptcy, and the case has been stayed as to that defendant as a result of the bankruptcy proceedings, while the claims against the remaining defendants proceed.

- Berger & Montague presently represents retail loan officers of two subprime mortgage companies in several Fair Labor Standards Act lawsuits, seeking unpaid overtime compensation, plus interest, attorneys fees, and statutory penalties. *See, e.g., Chabrier, et al. v. Wilmington Finance, Inc.*, Case No. 06-CV-04176 (E.D. Pa.); *Burt, et al. v. Wilmington Finance, Inc.*, Case No. 07-CV-01593 (E.D. Pa.); *Evansin, et al. v. Wilmington Finance, Inc.*, Case No. 07-CV-01559 (E.D. Pa.); *Greene, et al. v. Wilmington Finance, Inc.*, Case No. 07-CV-01699; and *Bochicchio, et al. Equity One, Inc., et al.*, Civil Action No. 07-CV-440(NLH)(AMD) (D.N.J.). On Dec. 13, 2006, the court in the *Chabrier* case declined to certify a national class and instead certified a collective action class of all loan officers who worked in Wilmington Finance's Cincinnati, Ohio office. As a result of these cases, Berger & Montague has developed a significant amount of information and sources pertaining specifically to the subprime industry.

- In *In re First Alliance Mortgage Co.*, Berger & Montague represented a borrower who filed a class action suit in federal district court in New Jersey, and the case was ultimately transferred to California. The cases were settled for over $80 million, including $10 million from the principal individual defendant. Significantly, the class also obtained a recovery from Lehman Brothers, the primary warehouse lender behind First Alliance, in a landmark case on lender liability that was upheld on appeal by the Ninth Circuit. *In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006).

- In *In re Currency Conversion Fee Antitrust Litig.* ("CCF"), MDL 1409 (S.D.N.Y., Pauley, J.), the firm represents credit card consumers in a class action against Visa, MasterCard, Diners Club and (at the time)

seven of the largest credit card issuers. Plaintiffs alleged that defendants had conspired in violation of the antitrust laws to artificially set and maintain the level of a fee, referred to as the "foreign transaction fee," incurred when a cardholder uses their card to make a transaction in a foreign country or in a foreign currency. Plaintiffs also alleged that in furtherance of the conspiracy the defendants failed to disclose properly the foreign transaction fee to cardholders in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Claims for violation of consumer protection statutes of South Dakota were also alleged. The parties reached a $336 million settlement for these claims, which was preliminarily approved by the court on November 8, 2006. (While the original action concerned credit and charge cards, the settlement provided relief for the benefit of debit cardholders as well.) Class notice and claims submission is occurring and a final hearing will be held in 2008.

- A shareholder of the firm was co-lead counsel in a securities class action case against a bankrupt company, Southern Pacific Funding, which securitized subprime mortgages. The case was brought in the District of Oregon, and the plaintiff class in 2001 obtained a $20 million recovery paid by the company's insurance carrier and majority shareholder (a Canadian bank). The company attempted to make money from the small spreads between the interest rates paid on mortgages and the slightly higher interest rate it attempted to earn on mortgage-backed securities, which resulted in the company ultimately losing money. The complaint alleged the defendants had known the company portfolio was imperiled long before they disclosed the truth.

***Berger & Montague's Success in Achieving Corporate Governance Reforms Through Litigation.*** Berger & Montague has also experienced great success in achieving corporate governance reforms through securities litigation. For example, *Klein, et al. v. Broadhead, et al. and FPL Group, Inc.*, Consolidated Case No. 02-20170-CIV-GOLD (S.D. Fla.), involved a case in which shareholders of a Fortune 500 company, suing derivatively, obtained a recovery of $22,250,000 for the benefit of FPL Group plus significant corporate governance reform on claims of excessive management compensation. The corporate governance improvements include, among others: enhanced power to non-management directors; limits on the tenure of certain board members; limits on related party transactions board members may enter into with FPL; and limits on the directorships of public companies that FPL directors may hold. Berger & Montague served as co-lead counsel in the derivative litigation.

11

As co-lead counsel, representing the New Hampshire Retirement System, Berger & Montague also helped secure substantial corporate governance benefits in the *Ashworth Securities Litigation*, Civil Action No. 99-CV-0121-L (S.D. Cal.). In *In re Ashworth,* as in *FPL Group*, a substantial monetary recovery ($15.25 million) was coupled with wide-ranging corporate governance relief crafted to strengthen the power and discretion of the independent members of the Board of Directors, including among other things, an increase of independent directors, limits on the length directors may serve, retention by senior management of specified amounts of stock, and the establishment and implementation of a Lead Independent Director. Plaintiffs sacrificed nothing to secure the corporate governance relief, and the $15.25 million cash settlement amounted to approximately one-half of the recoverable damages.

In *Roger Copland, et al. v. Fischer & Porter Co., et al.*, C.A. No. 93-8366-09-5 (C.C.P., Bucks Cty. (Pa.)), Berger & Montague's clients alleged that the company's president improperly received a premium for the Class A stock he owned, in excess of the value set for the publicly-traded Class B shares in a friendly takeover he had negotiated. The firm discovered that in connection with a divorce many years earlier, the president had filed a valuation with family court valuing the Class A shares he owned at the same price as Class B shares. That valuation constituted the basis for an equitable distribution. Plaintiffs therefore were able to argue that the principle of judicial estoppel precluded the president from presenting any evidence at trial inconsistent with his earlier in-court statement that the Class A and Class B stock were of equal value. The case settled on the eve of trial, while the motion to preclude evidence was still pending. Class members received 46% of the high-end amount of the damage estimate.

*Korman v. InKine Pharmaceutical Co., Inc.*, March Term 2004, No. 04341 (C.C.P., Phila. Cty.), was a stockholder action on behalf of class members who were denied preemptive rights in several securities offerings by InKine. As sole counsel, Berger & Montague secured a settlement of $9 million. The settlement provided substantial compensation for the preemptive rights denied to class members.

**Other Complex Litigation Involving State or Other Municipal Entities.** Berger & Montague also has a distinguished record of action on behalf of state entities in non-securities cases. For example, Berger & Montague was chosen as one of four firms to act as outside counsel to the State Attorney General representing the State of Connecticut in its lawsuit against Philip Morris, Inc. and other major tobacco companies to recover increased health costs and other damages arising from the tobacco companies' decades-long effort to mislead the public about the health hazards of smoking and nicotine. *State of Connecticut v. Philip Morris, Inc., et al.,* No. 96 0072414 S (Conn. Super.). The case was litigated separately from the other cases brought by other states. Connecticut recovered approximately $3.6 billion (excluding interest) as part of a nationwide settlement in 1998. Although Connecticut eventually joined the national settlement, the particular contributions of its counsel were recognized by being awarded the fifth largest compensation award among the states from the fifty states' Strategic Contribution Fund.

12

***Berger & Montague's Expertise In Other Practice Areas.*** The firm has a broad range of other relevant expertise in complex litigation in the practice areas of consumer protection, antitrust litigation and environmental and mass torts. Berger & Montague's extensive experience in complex litigation further strengthen the firm's ability to represent the Class.

The firm has an active consumer litigation practice which seeks recourse on behalf of consumers who have been the victims of fraudulent conduct, unfair business practices, and faulty products. Berger & Montague has been involved in some of the country's most prominent consumer cases advocating for aggrieved consumers, including, among other cases, litigation against the manufacturers of the unsafe diet drug pills known as Fen-phen, which achieved a substantial settlement for the classes the firm represented.

The firm is currently pursuing litigation against Enterprise Rent-A-Car for the fraudulent and deceptive selling of insurance, against the Chicago and Philadelphia Housing Authorities for housing stock allegedly contaminated with peeling and flaking lead-based paint, against credit bureaus for selling information about individuals to a variety of buyers, as well as several other prominent cases. Berger & Montague is also currently representing consumers in *In re TJX Companies Retail Security Breach Litig.* (D. Mass.), in a proposed class action alleging that TJX violated state law for a data breach caused by a computer "hacker." As a result of TJX's failure to protect its data, customer information was stolen from TJX's computer network that handles a wide range of financial information for millions of customers, including credit cards, debit cards linked to checking accounts and transactions for returned merchandise. A proposed settlement of this litigation has been reached subject to court approval which provides credit monitoring, identity theft insurance, reimbursement of certain costs attributable to identity theft and other relief. The firm has also filed claims against Coca-Cola and Nestlé on behalf of a group of consumers, alleging breach of express and implied warranties and state consumer protection statutes for the marketing of the drink "Enviga." *Melfi v. Coca-Cola, et al.,* Civ. No. 1:07-cv-828 (D.N.J.).

Since its inception, Berger & Montague's antitrust department has represented purchasers and consumers in many of the largest price-fixing and monopolization cases in the United States. In recent years, this practice group has played a leading role in successfully prosecuting civil antitrust cases involving anticompetitive practices in, among other areas, the prescription drug, medical device, infant formula, and credit card industries. The *Infant Formula Antitrust Litigation* involved a recovery of $125 million, and the *Brand Name Prescription Drug Antitrust Litigation* involved a recovery of more than $717 million. Currently, the firm is involved in a series of class actions against drug manufacturers and others charging the suppression of generic competition. Four of these cases have successfully been resolved during the last five years for aggregate recoveries well in excess of $600 million.

In three separate currently pending lawsuits, Berger & Montague serves as lead or co-lead counsel for credit card consumers alleging violations of antitrust laws. In *In re Currency*

*Conversion Fee Antitrust Litig.* (MDL 1409 (S.D.N.Y., Pauley, J.)), discussed above, the complaint alleges violations of antitrust laws, as well as violations of the Truth in Lending Act and violation of state consumer protection statutes for failure to disclose transaction fees. The parties reached a $336 million settlement which has been preliminarily approved. The firm also represents classes of credit card consumers alleging antitrust violations in *Ross and Wachsmuth v. American Express Co., et al.*, 04-cv-5723, a related case in MDL 1409 (S.D.N.Y., Pauley, J.), and *Ross, et al. v. Bank of American, et al.*, 05-cv-7116, a related case in MDL 1409 (S.D.N.Y., Pauley, J.) (on appeal). Berger & Montague is also one of the three Court-approved lead counsel in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, MDL 1720 (E.D.N.Y.), a class action on behalf of merchants against Visa, MasterCard and a number of major banks for fixing prices of interchange fees. This is perhaps the largest pending antitrust class action in the United States.

The firm's environmental and mass torts practice areas have also been active in representing both state and non-state entities in complex class action litigation. In addition to the firm's representation of the Connecticut AG in the tobacco litigation described above, the firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill Litigation* in Anchorage, Alaska, which resulted in a record punitive damages jury award of $5 billion against Exxon, which presently remains on appeal.

The firm more recently (in February 2006) won a $554 million jury verdict on behalf of thousands of property owners whose homes were exposed to plutonium and other toxins from the Rocky Flats (Colo.) Nuclear weapons facility, with the proceedings in that case still continuing. This represents the largest jury verdict ever in a property damage class action. The verdict was also the third largest jury verdict of 2006, according to *The National Law Journal*. The Berger & Montague trial team, which was led by Berger firm senior shareholder Merrill G. Davidoff, was one of the seven finalists for the 2006 "Trial Lawyer of the Year" award from the non-profit foundation Trial Lawyers for Public Justice and has won many other accolades for its trial victory in this case.

***Expertise in Handling Significant Document Review.*** Berger & Montague frequently manages massive document productions and routinely undertakes the review of literally millions of pages of documents in many types of complex commercial cases. For example, millions of pages of documents were produced in many of the firm's celebrated recent cases, including *Foreign Currency* (antitrust), *Exxon Valdez* (consumer/environmental) and *AOL* (securities), to name just three such cases.

Berger & Montague has considerable experience and technical proficiency in managing large document productions, and has worked with many types of computer databases in connection therewith, individually and in coordination with other parties. For example, in the *AOL* securities opt-out case where Berger & Montague represented the Pennsylvania AG and four large state funds, Berger & Montague coordinated with counsel for two other state opt-out

14

plaintiffs (New Jersey and Alaska) to establish a "common" document database and allocate the review of literally millions of pages of documents produced by AOL, Time Warner and other defendants, all of which saved the firm's clients considerable time and expense.

The Berger & Montague IT department is unusual in that it both develops document review and management systems, as well as deploys and maintains products from third party vendors. Accordingly, the firm is able to handle even the most massive document productions, typically without contracting functions out to any third parties. The firm can develop tools to handle new data formats and can scan millions of pages and extract data from them as necessary. Other firms typically have more limited capacities, as they can only do what the specific tools they have purchased from third parties allow them to do. By contrast, Berger & Montague has experience not only setting up an https web server but actually has written an https web server and database engine 'extensions.'

In fact, the IT department of Berger & Montague has vast experience dealing with database technologies, internet and application security, training, and associated support. Team members have presented papers at database and data mining conferences, have written extensively on data security and encryption, and have published articles dealing with database implementations. They are also expert in developing and deploying web and native applications (both server and client side). Berger & Montague has deployed its own proprietary litigation support system internally that has been developed and maintained by the IT department, and various external parties have used this system for document review. The IT department is also flexible and can deploy and manage any other system (Concordance, etc.) that might be required to satisfy specific requirements.

The litigation support system currently in use at Berger & Montague can handle cases that contain Terabytes of data (it currently has over 30 cases loaded and in use). It provides a variety of tools that ensure the data loaded into the system is consistent and correct (so all images have matching OCR text, coding is present for all documents, all images are valid, etc.), thus ensuring as high a quality assurance that can be obtained. These tools can also be used to examine data that comes from other systems, and the IT department has the expertise to analyze data in any format, and to expand the quality assurance capabilities to handle any new format. Thus, quality assurance is maximized by the Berger & Montague IT department (from design, to low and high level implementation, to deployment, to maintenance).

*malta433716-007.wpd*

# Tab 1



**Berger&Montague,P.C.**

**Daniel Berger, Shareholder**
dberger@bm.net

Daniel Berger is presently a senior shareholder of the firm and serves as a Managing Shareholder. Over the last 25 years, he has been involved in complicated commercial litigation including class action securities, antitrust, and bankruptcy cases. In addition, he has prosecuted several important environmental, mass tort and civil rights cases during this period. He currently leads the firm's practice involving the pharmaceutical and medical device industries. He co-chairs the firm's Antitrust Department and leads the firm's employment discrimination practice group. Approximately 20% of his time has been devoted to securities litigation in the most recent five-year period.

In securities litigation, Mr. Berger has frequently represented public institutional investors, including the state pension funds of Pennsylvania and New Jersey in both individual and class action litigation. He led his firm's efforts on behalf of the City of Philadelphia in the Ikon Office Solutions class action, resulting in a recovery of $111 million. He has also litigated securities opt-out cases, obtaining large premiums over class recoveries, including on behalf of the state pension funds of the Commonwealth of Pennsylvania in the AOL/Time Warner litigation.

Mr. Berger graduated with honors from Princeton University and Columbia Law School, where he was a Harlan Fiske Stone academic scholar. He also had done graduate studies in applied micro-economics and macro-economic theory, the business cycle and economic history. He has published law review articles in the Yale Law Journal, the Duke University Journal of Law and Contemporary Problems, the University of San Francisco Law Review and the New York Law School Law Review and has worked with the American Law Institute/American Bar Association program on continuing legal education. He has been affiliated with the Kennedy School of Government through the Shorenstein Center of Media and Public Policy at Harvard University.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy, and the Philadelphia Cultural Fund which was responsible for all City grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the National Endowment for the Humanities makes grants.

**Berger&Montague,P.C.**



**Merrill G. Davidoff,** Shareholder
**mdavidoff@bm.net**

Merrill G. Davidoff, a senior Shareholder and Managing Principal in the firm, received a B.A. degree from the University of Pennsylvania in 1969, and a J.D. from the University of Pennsylvania Law School (cum laude) in 1973. He is admitted to practice law in Pennsylvania, New York, the United States Supreme Court, and numerous federal Courts of Appeal. Mr. Davidoff is Co-Chair of the Antitrust Department with Messrs. Berger and Montague, chairs the Environmental Group, and has litigated and tried a wide range of securities, antitrust, and environmental class actions. He has devoted approximately 25% of his time to securities matters, including class action trials.

Mr. Davidoff was lead counsel in the Revco Securities Litigation, an innovative "junk bond" class action, which settled for $36 million. Mr. Davidoff was lead plaintiffs' counsel and lead trial counsel in the *Melridge Securities Litigation*, tried to jury verdicts for $88 million (securities fraud) and $240 million (RICO). He was one of co-lead counsel in the *Ikon Office Solutions Securities Litigation*, in which a settlement of $111 million was obtained. He was co-lead counsel and designated lead trial counsel in the *Sunbeam Securities Litigation*, where settlements of $142 million were reached. In the *Rocky Flats Nuclear Weapons Plant* class action where Mr. Davidoff is currently lead counsel, the Court held the United States Department of Energy in contempt of court after a one-week trial in November 1995 (reported at 907 F. Supp. 1460 (D. Colo.1995)). In 2005-2006, this class action finally went to trial (with Mr. Davidoff as lead trial counsel) and, in February 2006, the jury returned a special verdict for the plaintiffs for $554 million, the largest property damage class action jury verdict ever. The verdict was the third-largest jury verdict of 2006 in the United States, according to The National Law Journal The Rocky Flats trial team led by Mr. Davidoff was also one of seven finalists for the 2006 "Trial Lawyer of the Year" award from the non-profit foundation Trial Lawyers for Public Justice.

In *In re Foreign Currency Fee Antitrust Litigation*, MDL No. 1409, where Mr. Davidoff is a co-lead counsel, a proposed class action settlement of $336 million with Visa, MasterCard, and a number of their member banks was recently

announced.  In *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720, one of the largest pending antitrust cases in the United States, Messrs. Montague and Davidoff are among Court-appointed co-lead counsel.

During a legal career spanning over 33 years, Mr. Davidoff has represented diverse clients, including the State of New Jersey, the City of Philadelphia, many large and small companies, sports teams, professional organizations, individuals and professional firms.  Mr. Davidoff has been a speaker at American Trial Lawyers Association meetings and seminars, and has addressed the Environmental and Toxic Torts Section at the National Convention of ATLA. He is also a member of the Antitrust and Business Law Sections of the American Bar Association, and served on the subcommittee of the American Bar Association Antitrust Section which prepared the 1985 supplement to the "Antitrust Civil Jury Instructions."  One of his areas of concentration is representation in commodities futures and options matters, and expertise in derivatives. He has represented market-makers on the Philadelphia Stock Exchange, where he owned a member firm in the early 1990s, as well as broker-dealers and market-makers on other exchanges. He has been a lecturer and faculty in many CLE programs.  Most recently, he was lauded by the Common Pleas Judges of Pennsylvania for a program presented by the firm to the trial judges throughout Pennsylvania.

malta433806-004.wpd



**Berger & Montague, P.C.**

**Sherrie R. Savett,** Shareholder
ssavett@bm.net

Sherrie R. Savett is a graduate of the University of Pennsylvania (B.A. 1970, summa cum laude with distinction in English; J.D. 1973) and a member of Phi Beta Kappa. She is a managing principal and shareholder of Berger & Montague as well as Chair of the firm's Securities Litigation Department, supervising more than 25 lawyers.

Ms. Savett is admitted to practice law in the Commonwealth of Pennsylvania and in numerous federal courts throughout the country.

Ms. Savett has lectured at the Wharton School of the University of Pennsylvania and at the Stanford Law School on prosecuting shareholder class actions. Ms. Savett has frequently been a panelist on various American Bar Association, Practicing Law Institute ("PLI"), and Pennsylvania and Philadelphia Bar Associations panels concerning securities class action litigation and the use of class actions in consumer litigation. She is the author of several papers on various aspects of securities and complex litigation. Her writings include: "The Merits Matter Most and Observations on a Changing Landscape Under the Private Securities Litigation Reform Act of 1995," 39 Arizona Law Review 525 (1997); "Everything David Needs to Know to Battle Goliath," American Bar Association, The Brief, Tort & Insurance Practice Section, Spring 1991, Vol. 20, No.3; "Prosecution of Derivative Actions: A Plaintiff's Perspective";"The Derivative Action: An Important Shareholder Vehicle for Insuring Corporate Accountability in Jeopardy"; "Preventing Financial Fraud"; Shareholder Class Actions in the Post-Reform Act Era"; and "Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective." (Published either by the Practising Law Institute or American Bar Association).

In the March 1999 issue of Philadelphia Magazine, Ms. Savett was named as one of the best lawyers in the Philadelphia region based on a 4,000 lawyer survey.

Ms. Savett has served as lead counsel or as a member of the Executive Committee in a large number of important securities class actions in federal and state courts throughout the country.   These include the great majority of the class actions listed under paragraph III. A.a.i and d.i above.

Ms. Savett has established several significant precedents in her 25 years of practice. Among them is Sonnenfeld v. City & County of Denver, 100 F.3d 744(10th Cir. 1996), the municipal securities case cited above, in III. A. a. ii.  In the U.S. Bioscience

securities class action, a  biotechnology case where critical discovery was needed from the federal Food and Drug Administration, the court ruled that the FDA may not automatically assert its administrative privilege to block a subpoena and it may be subject to discovery depending on the facts of the case. (In re U.S. Bioscience Securities Litigation, 150 F.R.D. 80 (E.D. Pa. 1993)). She litigated a seminal consumer class action in New Jersey state court where she obtained an appellate court decision, Delgozzo v. Kenny, 266 N.J. Super. 169, 628 A.2d 1080 (1993), setting forth the standard for establishing a consumer class action in New Jersey.

Ms. Savett has been active in community affairs. Among other directorships in the charitable and civic sector, she is a member of the Board of Trustees of the Philadelphia Bar Foundation.



**Berger&Montague,P.C.**

**Todd S. Collins, Shareholder**
tcollins@bm.net

Todd S. Collins is a graduate of the University of Pennsylvania (B.A. 1973) and the University of Pennsylvania Law School (J.D. 1978). He is a member of the Pennsylvania and Delaware Bars. Since joining Berger & Montague in 1982, following litigation and corporate experience in Wilmington, Delaware and Philadelphia, he has concentrated on complex class litigation, including cases on behalf of securities purchasers, shareholders, trust beneficiaries, and retirement plan participants and beneficiaries. Mr. Collins has served as lead counsel or co-lead counsel in numerous cases that have achieved significant benefits on behalf of the Class. These cases include: In re Aero Systems, Inc. Securities Litigation, Case No. 90-0083-CIV-PAINE (S.D. Fla.) (settlement equal to 90 percent or more of Class members' estimated damages); Price v. Wilmington Trust Company, Case No. 12476, (Del. Ch.) (in litigation against bank trustee for breach of fiduciary duty, settlement equal to 70% of the losses of the Class of trust beneficiaries); In re Telematics International, Inc. Securities Litigation, Case No. 89-6015-CIV-PAINE (S.D. Fla.) (settlements achieved, after extensive litigation, following 11th Circuit reversal of dismissal below); In re Ex-Cell-O Securities Litigation, Case Nos. 86CV 73442 DT and 86 CV 75335 DT (E.D. Mich.); In re Sequoia Systems, Inc. Case No. 92-11431-WD (D. Mass.); In re Sapiens International, Inc. Securities Litigation, Case No. 94 Civ. 3315 (RPP) (S.D. N.Y.); In re Datastream Securities Litigation, Case No. 9-99-0088-13 (D.S.C.); Copland v. Tolson, Case No. 93008366-09-5 (C.P. Bucks County, Pa.) (on eve of trial, in case against corporate principals for breach of fiduciary duty, settlement reached that represented 65% or more of claimants' losses, with settlement funded entirely from individual defendants' personal funds); and In re IKON Office Solutions, Inc. Securities Litigation, Case No. 98-CV-5483 (E.D. Pa.).



**Berger&Montague,P.C.**

**Gary Cantor, Shareholder**
gcantor@bm.net

Gary E. Cantor is a graduate of Rutgers College (B.A. with high honors 1974) where he was a member of Phi Beta Kappa, and the University of Pennsylvania Law School (J.D. 1977), where he was a member of the Moot Court Board and the author of a law review comment on computer-generated evidence. He was admitted to the Pennsylvania bar in 1977.

Since joining Berger & Montague in 1977, he has concentrated more than 90% of his work on complex litigation, particularly securities litigation and securities valuations. Among other cases, Mr. Cantor has served as co-lead counsel in Steiner v. Phillips, et al. (Southmark Securities), Consolidated C.A. No. 3-89-1387-X (N.D. Tex.), which resulted in several payments to the Settlement Fund of $82.5 million, and In re Kenbee Limited Partnerships Litigation, Civil Action No. 91-2174 (GEB), a class action involving 119 separate limited partnerships resulting in cash settlement and debt restructuring with as much as $100 million in wrap mortgage reductions). In addition, he played a major role in: In re Marconi, Plc, Securities Litigation, Civil Action No. 2:01-CV-1259 (W.D. Pa.)($7.1 million settlement approved January 16, 2004); In re Sotheby's Holding, Inc. Securities Litigation, No. 00 Civ. 1041(DLC) (S.D.N.Y.)($70 million class settlement); In re Fidelity/Micron Securities Litigation, Civil Action No. 95-12676-RGS (D. Mass.) ($10 million class settlement); In re Tucson Electric Power Company Securities Litigation, C.A. No. 89-1274 PHX (WPC) (C.D. Ariz.) ($30 million settlement of class and derivative actions). He was also actively involved in the Waste Management Securities Litigation (class settlement of $220 million).

**Berger&Montague,P.C.**



**Robin Switzenbaum, Shareholder**
**rswitzenbaum@bm.net**

Robin Blumenfeld Switzenbaum is a graduate of Barnard College (B.A. cum laude 1976) and the University of Pennsylvania Law School (J.D. 1985). Before law school, Ms. Switzenbaum was engaged in the development of commercial and  residential real estate in Pennsylvania and New Jersey. During that time, Ms.  Switzenbaum served on the board of directors of the Home Owners Warranty Counsel for Southeastern Pennsylvania and the Home Builders Association for Montgomery and Bucks Counties. Before becoming Of Counsel to Berger & Montague in October, 1989, Ms. Switzenbaum was an associate with the Philadelphia firm of Saul, Ewing, Remick & Saul specializing in real estate. Since joining Berger & Montague, Ms. Switzenbaum has concentrated in complex civil litigation, including securities and real estate.   Securities litigation currently accounts for more than 80% of her caseload.  She is a member of the bar in Pennsylvania, New Jersey, Florida, and California and an arbitrator with the New York Stock Exchange.  Ms. Switzenbaum also serves as a volunteer guide at the Philadelphia Museum of Art.



**Berger&Montague,P.C.**

**Lawrence Lederer, Shareholder**
llederer@bm.net

Lawrence J. Lederer concentrates in complex commercial litigation.  He represents plaintiffs and defendants in class and individual actions, particularly in the securities, bankruptcy and contract areas.  In securities litigation, Mr. Lederer participated in several class and individual actions resulting in multi-million dollar recoveries for plaintiff investors, including the celebrated Drexel/Milken/Boesky complex of cases. See, e.g., In re Michael R. Milken and Associates Securities Litigation, MDL Dkt. No. 924, Master File No. M21_62 (MP), 1993 U.S. Dist. LEXIS 14242, 1993 WL 413673 (S.D.N.Y. Oct. 7, 1993) (approving approximately $1.3 billion overall settlement with Michael R. Milken and related persons and entities), aff'd, 995 F.2d 1138 (2d Cir. 1993); Presidential Life Insurance Co. v. Milken, et al., 946 F. Supp. 267 (S.D.N.Y. 1996) ($50 million settlement in novel "global" class action of all previously unasserted claims against some 500 defendants); In re Ivan F. Boesky Securities Litigation, 948 F.2d 1358 (2d Cir. 1991) (affirming district court approval of "first tier" settlements totaling approximately $29 million against Ivan F. Boesky and others; related "second tier" class, derivative and other settlements subsequently approved totaling in excess of $200 million).

More recently, Mr. Lederer was lead counsel for a group of private shareholders who sold their companies to a large publicly-held corporation in exchange for $103.5 million in stock.  Kelly v. McKesson HBOC, Inc., C.A. No. 99C-09-265 WCC, 2002 Del. Super. LEXIS 39 (Del. Super. Jan 17, 2002).  Following extensive discovery, that case was settled on the eve of trial yielding a significant cash recovery for the plaintiff shareholders.  Mr. Lederer also has experience representing large public and private institutional and other investors in "opt out" securities cases.  For example, he was one of the primary attorneys for four Commonwealth of Pennsylvania public funds which, in June 2006, obtained a $23 million recovery in litigation arising out of the AOL-Time Warner merger.  See Commonwealth of Pennsylvania Public School Employees' Retirement System, et al. v. Time Warner Inc., et al., Case No. 002103, July Term, 2003 (Pa. Common Pleas Ct.-Phila. Cty.).  He also was one of the primary attorneys for the plaintiffs in the securities litigation captioned Miller, et al. v. Waste Management Inc., et al., C.A. No. 00C-06-257 RRC (Del. Super. Ct.).

Mr. Lederer has also represented investors in cases arising under the federal securities

laws which have resulted in important judicial decisions regarding jurisdiction and procedure. See, e.g., Ginsburg v. Faragalli, 776 F. Supp. 806 (S.D.N.Y. 1991) (holding that a federal court's jurisdiction over a defendant encompasses the boundaries of the United States under the nationwide service of process provisions of the Securities Exchange Act of 1934, 15 U.S.C. 78aa). Mr. Lederer also has significant experience defending securities cases. For example, he is one of the Berger firm's principal attorneys defending a public company against securities fraud class action litigation. See In re DRDGold Ltd. Securities Litigation, 05 Civ. 5542 (VM), 2007 U.S. Dist. LEXIS 7180 (S.D.N.Y. Jan. 31, 2007) (dismissing securities class action lawsuit). He also assisted in representing an individual charged with "insider trading" through a criminal jury trial in federal court, and in parallel civil proceedings brought by the SEC. United States v. Pileggi, No. 97_CR_612_2, 1998 U.S. Dist. LEXIS 8068 (E.D. Pa. June 3, 1998), aff'd, No. 98-1811, 1999 U.S. App. LEXIS 18592 (3d Cir. July 22, 1999).

In bankruptcy litigation, Mr. Lederer helped obtain hundreds of millions of dollars for investors in the complex Chapter 11 proceedings involving the former investment banking and brokerage firm Drexel Burnham Lambert, including through appeals before the United States Court of Appeals for the Second Circuit and the United States Supreme Court. See, e.g., In re The Drexel Burnham Lambert Group, Inc., 130 B.R. 910 (Bankr. & S.D.N.Y. Aug. 20, 1991), aff'd, 960 F.2d 285 (2d Cir. 1992), cert. denied, 506 U.S. 1088 (1993). Mr. Lederer also served as co-lead counsel in securities class action litigation arising out of the bankruptcy of a physician practice management firm, BMJ Medical Management. See Sapir, et al. v. Delphi Ventures, et al., 99-8086-Civ.-Jordan (S.D. Fla.). Following extensive bankruptcy and related proceedings, that litigation was settled for $3.8 million, with proceeds distributed to investors in the summer of 2002.

Mr. Lederer graduated from Georgetown University Law Center (LL.M. 1988); Western New England College School of Law (J.D. 1987), where he was a member of Western New England Law Review; and the University of Pittsburgh, where he was managing editor of The Pitt News, and co- captain (1983) and captain (1984) of the men's varsity tennis team (B.A. 1984). Mr. Lederer is admitted to practice law in Pennsylvania, the District of Columbia, and several federal courts. Mr. Lederer was selected by Philadelphia Magazine (link) as one of the City's "Super Lawyers".



**Berger&Montague,P.C.**

**Arthur Stock, Shareholder**
astock@bm.net

Arthur Stock is a graduate of Yale University (B.A. with distinction in economics 1984) and the Duke University School of Law (J.D. with high honors 1990), where he served as Articles Editor of the Duke Law Journal. He is the co-author with Sherrie R. Savett of "What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class Action: The Plaintiff's Perspective," Practicing Law Institute, 30th Annual Institute of Securities Regulation, Vol. 2, p. 807 (1998) and author of "Justice Scalia's Use of Sources in Statutory and Constitutional Interpretation: How Congress Always Loses," 1990 Duke L.J. 160. He has also written political commentary for Slate.com magazine. From 1990 to 1991, he served as a law clerk to the Honorable Jackson L. Kiser, United States District Court for the Western District of Virginia.

Since joining Berger & Montague in 1991, Mr. Stock has concentrated 90% or more of his practice in securities litigation. He has litigated numerous significant cases vindicating the rights of investors, including: Blasband v. Rales, 979 F.2d 324, 971 F.2d 1034 (3d Cir. 1992), and 634 A.2d 927 (Del.1993); In re Livent, Inc. Secur. Litig., 78 F. Supp. 2d 194 (S.D.N.Y. 1999); In re Synergen, Inc. Secur. Litig., 863 F. Supp. 1409 (D. Colo. 1994); J/H Real Estate Inc. v. Abramson, 901 F. Supp. 952 (E.D. Pa 1995); In re U.S. Bioscience Secur. Litig., 155 F.R.D. 116 (E.D. Pa. 1994), 150 F.R.D. 80 (E.D. Pa. 1993) and 806 F. Supp. 1197 (E.D. Pa. 1992).   Mr. Stock is admitted to practice law in Pennsylvania.



**Berger&Montague, P.C.**

**Lane L. Vines, Associate**
lvines@bm.net

Lane L. Vines is a graduate of the University of Wisconsin-Madison (B.B.A.-Accounting, Graduated with Distinction, 1988) and Villanova University School of Law (J.D. 1997). During law school, Mr. Vines was a member of the Villanova Law Review and served as a Managing Editor of Outside Works. Prior to joining the Berger firm, Mr. Vines was a law clerk for the Honorable James R. Melinson, Chief U.S. Magistrate Judge for the Eastern District of Pennsylvania. He is admitted to practice in Pennsylvania and New Jersey, as well as several federal courts including the Supreme Court of the United States. He is a member of the Villanova Law J. Williard O'Brien American Inn of Court. Mr. Vines joined the Berger firm in 1999 and concentrates his practice in the area of securities and complex commercial litigation.

Tab 2

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class-actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Securities Litigation*

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said about some of the same lawyers in *U.S. Bioscience*. The results here are outstanding in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice. . . . At the same time, these attorneys have, through the division of their labors, represented the class most efficiently[.]"

> Praising the work of Berger & Montague attorneys, including Sherrie R. Savett, in achieving settlements of over $190 million in *In re Rite Aid Inc. Securities Litigation*, 146 F. Supp.2d 706 (E.D. Pa. June 8, 2001).

From **Judge Marvin Katz**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "Class counsel did a remarkable job in representing the class interests."

> Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S. Collins, Jacob A. Goldberg, and Douglas M. Risen, on the partial settlement for $111 million approved May, 2000, *In Re: IKON Offices Solutions Securities Litigation*, Civil Action No. 98-4286 (E.D. Pa. 2000).

From Judge **Wayne R. Andersen**, of the U.S. District Court for the Northern District of Illinois:

> "...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

> Praising the work of Sherrie R. Savett and Carole A. Broderick, in *In Re: Waste Management, Inc. Securities Litigation*, Civil Action No. 97-C 7709 (N.D. Ill. 1999).

1

From **Judge Clarence C. Newcomer**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "...[C]ounsel has conducted this litigation with skill, professionalism and extraordinary efficiency."

> Praising the work of Sherrie R. Savett and Arthur Stock, *In Re: Unisys Corporation Securities Litigation*, Civil Action No. 99-5333 (E.D. Pa. 1999).

From **Judge Helen J. Frye**, United States District Judge for the United States District Court for the District of Oregon, in *In Re Melridge, Inc. Securities Litigation,* No. CV 87-1426-FR:

> In order to bring about this result [partial settlements then totaling $54.25 million], Class Counsel were required to devote an unusual amount of time and effort over more than eight years of intense legal litigation which included a four-month long jury trial and full briefing and argument of an appeal before the Ninth Circuit Court of Appeals, and which produced one of the most voluminous case files in the history of this District.

> \* \* \*

> Throughout the course of their representation, the attorneys at Berger & Montague and Stoll, Stoll, Berne, Lokting & Shlachter who have worked on this case have exhibited an unusual degree of skill and diligence, and have had to contend with opposing counsel who also displayed unusual skill and diligence.

> Commenting, *inter alia*, on lead counsel, lead trial counsel and lead appellate counsel Merrill Davidoff in awarding fees on April 15, 1996.

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . . , and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

> Commenting on the settlement of a securities case litigated by Sherrie R. Savett and Carole A. Broderick, *In re U.S. Bioscience Securities Litigation*, Civil Action No. 92-0678, (E.D. Pa. 1994).

2

From **Judge Joseph F. Anderson, Jr.**, of the U.S. District Court for the District of South Carolina:

> "I don't have a problem at all approving the settlement.   In light of what you've said today and your submission to the Court and I am familiar with the case ... it was a sharply litigated case, with good lawyers on both sides and I think it's an ideal case for settlement. It's the largest settlement I've been called upon to approve in my eight years as a judge."

> Praising the work of Sherrie R. Savett in achieving a $32 million settlement in *In Re: Policy Management Systems Corporation*, Civil Action No. 3:93-0807-17 (D.S.C. 1993).

From **Judge William K. Thomas,** Senior District Judge for the United States District Court for the Northern District of Ohio:

In the proceedings it has presided over, this court has become directly familiar with the specialized, highly competent, and effective quality of the legal services performed by Merrill G. Davidoff and Martin I. Twersky, Esq. of Berger & Montague...

\* \* \*

> ... Examination of the experience-studded biographies of the attorneys primarily involved in this litigation and review of their pioneering prosecution of many class actions in antitrust, securities, toxic tort matters and some defense representation in antitrust and other litigation, this court has no difficulty in approving and adopting the hourly rates fixed by Judge Aldrich.

> Commenting *In re Revco Securities Litigation*, Case No. 1:89CV0593, Order (N.D. Oh. September 14, 1993).

From **Judge Harry R. McCue**, of the U.S. District Court for the Southern District of California:

> "There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested their special skills and knowledge to vindicate the rights and interests of the thousands of investors who invested their money and placed their trust in the integrity of the securities market. . . .   I conclude that the achievement of plaintiffs' counsel under any of those tests was superior. "

> Concerning the work of Berger & Montague in achieving a $33 million settlement in *In re Oak Securities Litigation*, 1986 U.S. Dist. LEXIS 20942 (S.D. Cal. 1986).

3

From **Judge John F. Keenan**, of the U.S. District Court for the Southern District of New York:

> "The quality of work of plaintiffs' counsel on this case is also demonstrated by the efficient manner of prosecution. . . . At the settlement hearing, defense counsel conceded that plaintiffs' counsel constitute the 'cream of the plaintiffs' bar.' The court cannot find fault with that characterization."

Regarding the work of Sherrie R. Savett and Stephen A. Whinston, *In re Warner Communications Securities Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985).

### *Antitrust Litigation*

From **Judge Charles P. Kocoras**, of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, *5-6 (N.D. Ill. February 9, 2000).

From **Judge Peter J. Messitte**, of the U.S. District Court for the District of Maryland:

> .... although we will visit this again at the time of attorneys' fees, the counsel have been of the highest ability, frankly on both sides, which seems to me to mean not only does one reward able plaintiffs' counsel but they get rewarded because they deal with able defense counsel, more so.

* * *

> Obviously, high skill was required to perform the services here, and I'll revisit the issue of experience and ability in a moment, but this was not the kind of case that an average lawyer without special skill in the class action anti-trust field, it seems to me, could handle.

* * *

4

"The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Concerning lead counsel, Merrill G. Davidoff, as stated in a Settlement Approval Hearing, Oct. 28, 1994. *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624.

From **Judge Donald W. Van Artsdalen**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

Commending the skills of firm chairman David Berger, H. Laddie Montague, Jr., Merrill G. Davidoff, Martin Twersky and other Berger & Montague attorneys, in *Bogosian v. Gulf Oil Corp*, 621 F. Supp. 27 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high. The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions. Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result.

Where the firm and Merrill Davidoff were co-lead counsel in *In re Art Materials Antitrust Litigation*, 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld**, of the U.S. District Court of Connecticut:

5

From **Judge Joseph Blumenfeld,** of the U.S. District Court of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

> Referencing the leadership of managing partner H. Laddie Montague, co-lead counsel, in *In re Master Key Antitrust Litigation*, 1977 U.S. Dist LEXIS 12948 (Nov. 4, 1977).

### *Civil/Human Rights Cases*

From **Deputy Treasury Secretary Stuart E. Eizenstat:**

> "We must be frank.  It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda.  It was their research and their work which highlighted these old injustices and forced us to confront them.  Without question, we would not be here without them. . . .  For this dedication and commitment to the victims, we should always be grateful to these lawyers."

> In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors.

### *Customer/Broker Arbitrations*

**From Robert E. Conner,** Public Arbitrator with the National Association of Securities Dealers, Inc.:

> ". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general.  I wanted to make that known to everyone and to express my particular respect and admiration."

> About the efforts of Berger & Montague partners Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.  The award was in the full amount sought in the proceeding.

### *Miscellaneous*

**From Stephen M. Feiler, Ph.D.,** Director of Judicial Education, Supreme Court of Pennsylvania, Administrative Office of Pennsylvania Courts, Mechanicsburg, PA *on behalf of the Common Pleas Court Judges (trial judges) of Pennsylvania*:

> "On behalf of the Supreme Court of Pennsylvania and AOPC's Judicial Education Department, thank you for your extraordinary commitment to the *Dealing with Complexities in Civil Litigation* symposia. We appreciate the considerable time you spent preparing and delivering this important course across the state. It is no surprise to me that the judges rated this among the best programs they have attended in recent years."

About the efforts of Berger & Montague attorneys Merrill G. Davidoff, Peter Nordberg and David Sorensen in planning and presenting a CLE to trial judges in the Commonwealth of Pennsylvania.