# Exhibit J

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
APR 9 2007
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY CLERK

*In re*

DELL INC., SECURITIES LITIGATION

Case No. A-06-CA-726-SS

## ORDER

BE IT REMEMBERED on the 9th day of April 2007 the Court reviewed the file in the above-styled cause, specifically the motions for appointment as lead plaintiff filed by the Institutional Investor Group [#20, #137], the Pension Fund Group [#25], the Boca Raton Police and Firefighters' Retirement System [#26], Union Asset Management Holding AG [#39], and I.U.O.E Local 68 Pension and Annuity Funds [consolidated complaint]. Having considered these motions, the memoranda filed in support and opposition thereto, the applicable law, and the consolidated case file as a whole, the Court now enters the following opinion and order.

**Background**

This case consolidates four class actions alleging violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, and Rule 10b-5 promulgated thereunder. Plaintiff Marc Abrams filed this action on September 13, 2006, individually and on behalf of all those who purchased common stock of Dell, Inc. ("Dell") between February of 2003 and September of 2006. Abrams claims Dell, during this period, disseminated materially false and misleading statements regarding its earnings and expected growth and reported incorrect financial data in its required SEC filings.

As required by the PSLRA, counsel for Abrams published notice of the pending class action in a "widely circulated national business-oriented publication or wire service" on September 13, 2006. 15 U.S.C. §78u-4(a)(3)(A)(i). On November 13, 2006, several parties moved to be appointed lead plaintiff in this case pursuant to the PSLRA.[1] Abrams moved to appoint the Institutional Investor Group (made up of plaintiffs Wolverhampton City Council and Amalgamated Bank) as Lead Plaintiff with Joe Kendall of Provost & Umphrey LLP and Patrick Coughlin of Lerach Coughlin Stoia Gellar Rudman & Robbins LLP as Co-Lead Counsel. The Pension Fund Group (made up of Plaintiffs Mississippi Public Employees' Retirement System, Sjunde AP-Fonden, Stichting Pensioenfunds ABP, and Pensionskassernes Administration A/S) also moved for appointment as Lead Plaintiff, with counsel from the law firms of Grant & Eisenhofer P.A. and Schiffrin and Barroway, LLP as Lead Counsel. Plaintiff Union Asset Management Holding AG ("Union") moved for appointment as Lead Plaintiff with counsel from the firms of Motley Rice LLC and Byrd, Davis, Furman, LLP as Lead Counsel.[2] The City of Boca Raton Police and Firefighters' Retirement System filed its motion to be appointed Lead Plaintiff, with counsel from the firm of Lieff, Cabraser, Heimann and Bernstein, LLP as Lead Counsel. Plaintiff I.U.O.E Local 68 Pension and Annuity Funds ("I.U.O.E.") filed a parallel complaint on November 13, 2006.

On November 16, 2006, the Court held a hearing regarding consolidation of the Abrams and I.U.O.E. complaints and related ERISA and derivative actions against Dell. The Court issued an

---

[1] On November 13, 2006, the Policemen's Annuity and Benefit Fund of Chicago moved for appointment as Lead Plaintiff, but later withdrew the motion. The DeKalb County Pension Fund likewise moved for appointment as Lead Plaintiff on November 13, 2006, but later withdrew the motion.

[2] Union's motion is marked "filed" on November 16, 2006, but the motion itself is dated November 13, 2006.

Order directing "each group seeking to be lead counsel and represent the named representative plaintiff" in a consolidated action to "file an amended complaint on or before January 31, 2007, specifically alleging the class or classes to be established and the reasons why it should be selected as lead counsel and its client the named representative plaintiff." Order of Nov. 16, 2006. In response, the Pension Fund Group filed a parallel lawsuit on January 31, 2007. The Institutional Investor Group also filed a parallel suit on January 31, 2007. Union Asset Management filed an amended complaint in the *Abrams* action on January 31, 2007.

The Court also requested that all named plaintiffs file affidavits (in addition to the certifications required by the PSLRA, 15 U.S.C. §78u-4(a)(2)(A)) "confirming that the client solicited the attorney or firm to represent him . . . and the client made the first contact with the attorney." Order of Nov. 16, 2006. It appears that Abrams, the Pension Fund Group, and Union have filed such affidavits, but no representative of I.U.O.E. Local 68 Pension and Annuity Funds has done so. The additional filings requested by the Court are intended to aid the Court in determining which movant is the most adequate Lead Plaintiff, but the Court will consider each motion filed in accordance with the PSLRA regardless of whether the movant has filed the affidavits and amended complaint requested in the November 16, 2006 Order. *See* 15 U.S.C. §78u-4(a)(3)(B)(i) (the Court "*shall* consider any motion made by a purported class member in response to the notice") (emphasis added). The Court consolidated the related securities class action complaints on February 28, 2007, and now considers the motions for appointment as Lead Plaintiff.

## Analysis

Where a court has pending before it one or more class actions arising under the Securities Exchange Act of 1934, the PSLRA directs that a Lead Plaintiff be selected early in the case, and that

-3-

the Lead Plaintiff is to select and retain lead counsel, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). One of the main goals of the PSLRA is "to have the plaintiff class, represented by a member with a substantial financial interest in the recovery as incentive, monitor the litigation to prevent its being lawyer-driven." *See In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411-12 (S.D. Tex. 2000).

**I. The Most Adequate Plaintiff**

The PSLRA provides that the Court shall consider all timely-filed motions made by purported class members seeking to be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(1). The Court shall appoint as Lead Plaintiff the member or members of the purported plaintiff class that the court considers most capable of adequately representing the interests of the class members. *Id.* This Lead Plaintiff is termed the "most adequate plaintiff." *Id.*

The PSLRA directs the Court to adopt a presumption that the most adequate plaintiff is the person or group of persons that (1) filed a complaint or a timely motion to be appointed lead plaintiff, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA does not delineate a procedure for determining the "largest financial interest" among the proposed class members. Both the approximate loss claimed and the total number of shares purchased are, however, significant factors in determining the largest financial interest in the litigation. *See, e.g. In re Waste Management, Inc.*, 128 F. Supp. 2d 401, 414 (S.D. Tex. 2000) ("The term 'largest financial interest' . . . should be read broadly in terms of (1) the number of shares purchased, (2) the number of net shares purchased, (3) the total net funds expended by the plaintiff(s) during the class period, and (4) the approximate losses suffered by the

-4-

plaintiff(s).") (citation omitted). Accordingly, the Court considers the number of shares purchased and the total loss claimed by each movant in determining which proposed Lead Plaintiff has the largest financial interest in this litigation.

The Court has five motions for appointment as Lead Plaintiff to consider:

| Proposed Lead Plaintiff | Proposed Lead Counsel | Claimed Losses | Shares Purchased |
|---|---|---|---|
| Pension Fund Group | Grant & Eisenhofer P.A.; Schiffrin Barroway Topaz & Kessler, LLP | $87.93 million | 18.84 million |
| Union Asset Management Holding AG | Motley Rice LLC | $20.25 million | 3.23 million |
| Institutional Investors' Group | Lerach Coughlin Stoia Gellar Rudman & Robbins LLP | $5.86 million | 629,412 |
| I.U.O.E. Local 68 Annuity & Pension Fund | Seeger Weiss LLP | $1.32 million | 59,522 |
| City of Boca Raton Police & Firefighters Retirement System | Lieff Cabraser Heiman & Bernstein LLP | $235,483.98 | 41,300 |

## II. Aggregation of Financial Interests

Several of the proposed Lead Plaintiffs are actually small groups of investors. In particular, the Pension Fund Group ("PFG") is made up of four separate entities: Stichting Pensioenfonds ABP ("ABP"), Mississippi PERS ("Mississippi"), Sjunde AP-Fonden ("AP7"), and Pensionskassemes Administration A/S ("PKA"). The Institutional Investors' Group ("IIG") is made up of two separate entities: Amalgamated Bank and the Wolverhampton City Council. Finally, Union Asset Management Holding AG ("Union") is a fund manager that manages seven different funds ("the

-5-

Union funds"). Each of these groups has claimed losses based on aggregating the total losses suffered by each member. Courts are divided over whether multiple plaintiffs may be aggregated to satisfy the "largest financial interest" requirement. *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1067 (C.D. Cal. 1999) (collecting cases). The majority of courts addressing this issue, however, have permitted the aggregation of claims. *See, e.g., In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 353 (S.D. Cal. 1998) (allowing the aggregation of six plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45-48 (S.D. N.Y. 1998) (appointing three plaintiffs as lead plaintiffs); *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 409 (D. Minn. 1998) (aggregating six plaintiffs). Courts have arrived at this result because the Act expressly permits a court to appoint more than one lead plaintiff. The court "shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

Courts within this Circuit, however, tend to adopt a "strict" view of aggregation, reasoning that although there is "no textual statutory obstacle to considering the [grouped] plaintiffs' financial interests together," *Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. April 17, 2002), the express purpose of the PSLRA is to ensure that securities litigation is overseen by competent interested parties rather than driven by lawyers. *Id.* To ensure the type of proactive representation by plaintiffs envisioned by the PSLRA, a strict definition of appropriate "group" plaintiffs should be adopted, "requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment." *In re Waste Management*, 128 F. Supp. 2d at 413. Under this

"strict" aggregation approach, "[t]he burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group' and . . . failure to provide significant information about the identity of the members other than a conclusory statement of names, transactions for purchase of securities, and largest financial interest should result in denial of their application for appointment as Lead Plaintiff." *Id.* (citing *Switzenbaum v. Orbital Sciences Corp.* ("Orbital I"), 187 F.R.D. 246, 250 (E.D. Va. 1999)).

The Institutional Investors' Group argues the Court should not consider the Pension Fund Group's aggregate loss because this group is "lawyer-driven," cobbled together for the purpose of achieving the greatest aggregated financial interest in the case. This is an interesting argument from a group whose own filings show no evidence whatsoever of any relationship between the entities beyond this litigation, and whose counsel initially represented a totally different named plaintiff (Abrams) whose losses were much smaller. Nevertheless, the Institutional Investors' Group makes a good point. Neither PFG nor IIG has shown any non-litigation relationship between the members of the proposed Lead Plaintiff groups.

PFG argues its members are not an unrelated group because two of its members, ABP and Mississippi, are currently serving together as lead plaintiffs in *In re Delphi Corporation Sec. Litig.*, No. 06-10026 (E.D. Mich.); and AP7 and PKA previously filed a joint lead plaintiff motion in *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-cv-1691-JMR-FLN (D. Minn. May 5, 2006). This argument, however, does little to counter the argument that the Pension Fund Group's relationship is "lawyer-driven" and arises out of litigation alone. The Court also notes that PFG member Mississippi is presumptively disqualified from serving as a lead plaintiff, because it has participated

-7-

as lead plaintiff in more than five securities class actions in the last 3 years. 15 U.S.C. §784-4(a)(3)(B)(5).

Though some courts have adopted group Lead Plaintiffs on the theory that diversity among plaintiffs helps ensure that all class members' interests are represented, *see, e.g. In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998), there is no such diversity in either of the groups proposed by PFG or IIG. All of the members of these proposed groups are institutional investors. With respect to the Lead Plaintiff groups proposed by PFG and IIG, the Court finds no "advantages that outweigh the disservice to the PSLRA's interest in creating a small number of lead plaintiffs to counterbalance the influence of lawyers." *Bell*, 2002 U.S. Dist. LEXIS 6850.

In contrast, Union Asset Management, AG ("Union") is a single fund management company that oversees several different funds. The Court in *In re Waste Management* recognized that "[a]n institutional investor that invests the monies pooled into it from numerous, interrelated funds, . . . under the direction of a single individual" functions as a single investor under the PSLRA. *In re Waste Mgmt.*, 128 F. Supp. 2d at 432. Even if Union is considered as a group of separate investors, aggregation of their losses is appropriate because the funds have "a pre-litigation relationship based on more than their losing investment." *Id.* at 413.

### III. ABP is the Presumptively Most Adequate Plaintiff

Even when considered in the aggregate, however, Union has the second-largest claimed loss in this litigation. The PFG's largest member, Stichting Pensioenfonds ABP ("ABP") purchased 18,484,148 shares of Dell stock during the class period and claims a loss of $68 million. The PFG has requested that ABP be considered as an alternate Lead Plaintiff movant if the Court rejects its

-8-

group motion. Accordingly, the Court considers whether ABP, the movant with the largest financial interest in this litigation, is the most adequate plaintiff under the PSLRA.

"The rebuttable presumption created by the PSLRA, which favors the plaintiff with the largest financial interest, was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49. *See* Although the inquiry at this stage of the litigation in determining the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and the capacity to provide adequate representation for those class members. *In re Waste Management, Inc.*, 128 F. Supp. 2d at 411. Only the typicality and adequacy requirements of Rule 23 are directly relevant to the choice of the Lead Plaintiff in securities fraud cases. *Id.*

The proposed Lead Plaintiff's claims are typical of the class if there are "no differences among the class members that would substantially alter the proof required for one member's claims versus another's." *Bell*, 2002 U.S. Dist. LEXIS 6850 (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)). It is not necessary that a proposed Lead Plaintiff's claims be identical to the claims of other class members. *Id.* ABP, as a member of the PFG, has submitted a complaint alleging it, like other members of the proposed class, purchased Dell securities and lost money as a result of Dell's material misstatements and omissions. Though the class period differs slightly from the period alleged in the other complaints, and ABP is not pursuing some of the defendants and claims at issue in the related cases, there is no significant difference in the proof required to prove

ABP's claims and the claims asserted by other named plaintiffs in these related cases. Therefore, ABP's claims are typical of the proposed class.

"[T]he adequacy requirement mandates an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees[.]" *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (citation omitted). There is no question that APB's chosen counsel is competent and zealous; the detailed complaint and the thorough pleadings filed in connection with ABP/PFG's Lead Plaintiff Motion are ample proof of that. ABP's affidavit, filed in response to this Court's Order of November 16, 2006, establishes that ABP is prepared to take an active role in the litigation.

Because ABP filed a timely motion (as part of the Pension Fund Group) to be appointed Lead Plaintiff, has the largest financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23, ABP is presumptively the "most adequate plaintiff" under the PSLRA. This presumption may be rebutted only by proof by another member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

### IV. Rebutting the Presumption

Union Asset Management and the Institutional Investors' Group present several challenges to ABP's ability to fairly and adequately represent the class and allege ABP is subject to multiple unique defenses.

### a. PriceWaterhouse Coopers

The Pension Fund Group is the only proposed Lead Plaintiff whose complaint does not name Dell's auditor, PriceWaterhouseCoopers, as a defendant. Union and IIG argue this is because the Pension Fund Group's largest member, ABP, uses the auditing services of a European affiliate of PriceWaterhouseCoopers. In response, ABP points out that the Fifth Circuit rejected a similar conflict of interest challenge in *Feder v. Electronic Data Sys. Corp.*, 429 F. 3d 125, 133–34 (5th Cir. 2005). In *Feder*, a defendant argued that the lead plaintiff, the state of New Jersey, was not an adequate class representative because KPMG, a potential defendant, was New Jersey's auditor. Specifically, defendants argued "that New Jersey's failure to name KPMG as a defendant in this case, coupled with the fact that KPMG is New Jersey's auditor, demonstrates a conflict of interest with the class that should disqualify New Jersey from serving as class representative." *Id.* at 134. The Fifth Circuit Court of Appeals flatly rejected this argument and affirmed the District Court's decision finding New Jersey to be an adequate class representative, holding:

> New Jersey is only a client of KPMG-not vice versa-so it has no self-interest in appeasing KPMG .... New Jersey would not necessarily benefit financially by maintaining a good relationship with KPMG. Thus, the Court does not believe there are unique circumstances here that threaten adequacy.

*Id.* at 135 (quoting *In re Electronic Data Sys. Corp. Sec. Litig*, 226 F.R.D. 559, 570 (E.D. Tex. 2005)). However, the *Feder* Court based its decision on the facts of the case: plaintiffs alleged the defendant had "concealed its fraud from the market and from [the auditor]." *Id.* In contrast, the complaints filed by IIG and by Union in this case both allege PriceWaterhouseCoopers was complicit and actively participated in Dell's alleged fraudulent scheme. In particular, many of the securities fraud allegations against Dell rest on its use of non-GAAP accounting procedures in SEC filings;

-11-

PriceWaterhouseCoopers approved Dell's accounting methods and signed off on these filings. In these circumstances, it is somewhat troubling that ABP has not named PriceWaterhouseCoopers as a defendant. Although "generally, failure to join all defendants is a strategy choice, and . . . is probably not grounds for finding inadequacy," *id.* at 135 (quoting *Paper Systems, Incorporated v. Mitsubishi Corporation*, 193 F.R.D. 601 (E.D. Wis. 2000), it is also true that "[t]he omission to sue a potential defendant cannot but prejudice the class." *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990). In these circumstances, "plaintiff is obligated to supply a persuasive reason for the non-joinder." *Id.*

ABP asserts that it is merely following the Court's directive to "be careful whom you sue" and further argues that, if selected as lead plaintiff, it "may well name PwC as a defendant if the circumstances warrant." Reply at 7. ABP points out that in a case pending in the United States District Court for the District of New Jersey, ABP named as a defendant PricewaterhouseCoopers U.K, LLP, a European subsidiary of PriceWaterhouseCoopers. *See Stichting Pensioenfonds ABP V. Royal Dutch Shell plc*, Civil Action No. 06-095. Nevertheless, in light of ABP's relationship with PriceWaterhouseCoopers and the detailed allegations against this auditing firm filed by other proposed Lead Plaintiffs, the Court is troubled by ABP's failure to join PriceWaterhouseCoopers as defendants in their Amended Complaint. The Court need not determine whether this potential conflict of interest is fatal, however, because ABP is also subject to unique defenses that disqualify it as an appropriate Lead Plaintiff.

**b. Short selling**

Union Asset Management asserts that ABP is not the most adequate plaintiff because it adopts both long and short selling strategies and would therefore be subject to unique defenses.

-12-

Several courts have rejected short-sellers as potential lead plaintiffs in securities class actions, even where those plaintiffs also took "long" market positions, reasoning that short sales are inconsistent with the fraud-on-the-market theory on which most securities fraud claims are based. *In re Critical Path*, 156 F. Supp. 2d 1102, 1109-1110 (D. Cal. 2001); see also *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000). "Short sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny." *In re Critical Path*, 156 F. Supp. at 1109. Each of the complaints filed in the related Dell Securities Class Actions relies on the fraud-on-the-market theory. Therefore, ABP's position as a short-seller may well undermine the claims of the other class members.

## V. Union is Entitled to the Presumption

Union, the proposed Lead Plaintiff with the next largest financial interest in this case, has not taken any short positions on Dell stock and its fraud-on-the-market claims would not be subject to this defense. Nor has any other movant identified a potential conflict of interest between Union and the proposed class. Union satisfies the adequacy and typicality requirements of Rule 23. The detailed complaint and affidavit Union filed in response to this Court's Order of November 16, 2006 establish that Union has claims for securities fraud similar to those of the other class members and is prepared to take an active role in the litigation.

The Institutional Investors' Group objects that Union is a foreign entity. IIG argues that foreign entities should be "appointed alongside qualified and experienced American investors" in order to avoid unique defenses and mitigate the inconvenience of long-distance litigation. IIG, however, fails to identify any particular defense or inconvenience that would disqualify Union Asset Management. "There is, of course, a marked difference between affirmatively demonstrating that

-13-

[the presumptive Lead Plaintiff] is not an adequate representative or is subject to unique defenses and simply claiming that [Plaintiff] might be subject to such arguments in the future." *Gluck*, 976 F. Supp. at 547. There is neither a bar nor a presumption against appointing foreign entities to serve as lead plaintiff, particularly where, as here, the defendant is a U.S. company and the foreign entities bought their shares in the United States. *See In Re NPS Pharms., Inc. Sec. Litig.*, No. 2:06-00570, 2006 U.S. Dist. LEXIS 87231, at *13 (D. Ut. Nov. 17, 2006) (rejecting challenge to foreign lead plaintiff movant as inadequate or subject to unique defense, holding "concerns over subject matter jurisdiction and res judicata . . . are not present" where the foreign plaintiffs purchased stock in a United States company via a United States stock exchange). *See also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 153 (D. Del. 2005) (court appointed German investment manager lead plaintiff, calling "res judicata argument a red herring"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No 5:03-2166, 2004 U.S. Dist Lexis 27043 (N.D. Ohio May 12, 2004) (appointing Austrian institution as lead plaintiff, holding "[t]he...attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm...is insupportable."); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002)("In light of today's travel and communication methods, the geographical location of the [foreign lead plaintiff movants] is irrelevant").

Because ABP, the Plaintiff with the largest financial interest in this litigation, is subject to unique defenses, it is not the most adequate plaintiff. Union Asset Management Holding AG has the next largest financial interest in the case, satisfies the typicality and adequacy requirements of Rule 23, and has timely filed a motion to be appointed Lead Plaintiff. Union is therefore presumptively the most adequate plaintiff. No other movant has shown that Union would be subject to unique defenses or would be unable to adequately represent the class. Furthermore, Union's

relationship with its chosen counsel is exactly the type of relationship the PSLRA seeks to sponsor: Union is an institutional investor "dedicated to the strengthening of corporate governance to protect investors." Affid. Gaebel & Von Cornberg, Mot. for Appt. as Lead Pl. Ex. D. After evaluating the merits of the case and the extent of its losses, Union decided to move for appointment as lead plaintiff and selected the firm of Motely Rice as proposed Lead Counsel. *Id.* Union worked with Motley Rice to select Byrd Davis Furman L.L.P. as liason counsel. *Id.* It seems clear from the affidavit of Union's in-house counsel that Union is firmly in the drivers' seat with regard to this litigation. Appointing this institutional investor as Lead Plaintiff and approving its choice of Lead Counsel will serve the PSLRA's goal of encouraging shareholders to protect their interests via securities class actions while discouraging "lawyer-driven" litigation.

## Conclusion

Accordingly,

IT IS ORDERED that the Motion for Appointment of Lead Plaintiff of Union Asset Management Holding AG [#39] is GRANTED.

IT IS FURTHER ORDERED that Union's choice of Lead Counsel and Liason Counsel is APPROVED. The firm of Motley Rice appears to have extensive experience in securities class action litigation, and the local firm of Byrd Davis Furman is amply qualified to assist as liason counsel in this matter. Ronald Motley, Joseph Rice, Lauren S. Antonino, James M. Hughes, and Ann Kimmel Ritter of Motley Rice LLC are appointed Lead Counsel in this case, and Don L. Davis of Byrd Davis Furman is appointed Liason Counsel.

IT IS FINALLY ORDERED that the miscellaneous motions to file supplemental briefing and pleadings over the page limit regarding the Motions for Appointment as Lead Plaintiff [Documents

-15-

#21, #137, #144] are GRANTED. The Court gave full consideration to all arguments on this important threshold issue in the consolidated securities class action.

SIGNED this the 9th day of April 2007.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE