# Exhibit K

Westlaw.

233 F.R.D. 334

Page 1

233 F.R.D. 334, Fed. Sec. L. Rep. P 93,567
**(Cite as: 233 F.R.D. 334)**

C
In re Pfizer Inc. Securities Litigation
S.D.N.Y.,2005.

United States District Court,S.D. New York.
In re PFIZER INC. SECURITIES LITIGATION.
No. 04 Civ. 9866(RO).

Oct. 21, 2005.

**Background:** Multiple security fraud class actions were brought against corporation and individual directors and officers. Several plaintiffs moved to consolidate actions, to be appointed lead plaintiff, and for designation of lead counsel.

**Holdings:** The District Court, Owen, J., held that:

(1) unrelated plaintiffs could not aggregate into artificial group in order to have highest financial interest;

(2) multiple inaccuracies in one movant's damages calculation disqualified it; and

(3) of two remaining parties with roughly equal damages, party with more extensive litigation experience was presumptively most adequate.

Ordered accordingly.

West Headnotes

[1] Federal Civil Procedure 170A ⇐187

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
Unrelated plaintiffs in securities fraud class action could not aggregate into artificial group for sole purpose of creating highest possible "financial interest" figure under Private Securities Litigation Reform Act (PSLRA), and thereby be appointed lead plaintiff; potential lead plaintiffs would be considered only individually. Securities Exchange Act of 1934, § 21D(a)(3)(B)(iii)(I)(bb), 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I)(bb).

[2] Federal Civil Procedure 170A ⇐187

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
For purpose of selecting lead plaintiff in securities fraud class action, noticed class period of initial complaint, rather than unnoticed and longer period contained in complaint of second action that was consolidated with first, was used; longer class period included many more potential class members who had not been apprised of their right to seek to be appointed lead plaintiff. Securities Exchange Act of 1934, § 21D(a)(3)(B), 15 U.S.C.A. § 78u-4(a)(3)(B).

[3] Federal Civil Procedure 170A ⇐187

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
Party would not be appointed lead plaintiff in securities fraud class action even though it stated highest amount of alleged damages, where there were multiple inaccuracies in party's damages calculation, calling into question its reliability. Securities Exchange Act of 1934, § 21D(a)(3)(B),

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

233 F.R.D. 334                                                                                                          Page 2
233 F.R.D. 334, Fed. Sec. L. Rep. P 93,567
**(Cite as: 233 F.R.D. 334)**

15 U.S.C.A. § 78u-4(a)(3)(B).

**[4] Federal Civil Procedure 170A ⇐187**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
Of two parties with roughly equal damages seeking appointment as lead plaintiff in securities fraud class action, party with more extensive litigation experience, having served as lead plaintiff in multiple securities class actions and having overseen sizeable recoveries in several of those, was presumptively most adequate. Securities Exchange Act of 1934, § 21D(a)(3)(B)(iii)(I), 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(I).

**[5] Federal Civil Procedure 170A ⇐187**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak187 k. Stockholders, Investors, and Depositors. Most Cited Cases
Provision of Private Securities Litigation Reform Act (PSLRA) disfavoring "professional plaintiffs" does not apply to institutional investors. Securities Exchange Act of 1934, § 21D(a)(3)(B)(vi), 15 U.S.C.A. § 78u-4(a)(3)(B)(vi).

**\*335** Wolf Haldenstein Adler Freeman & Herz, Christopher S. Hinton, Finkelstein Thompson & Loughran, Donald J. Enright, Michael G. McLellan, for Plaintiffs Showers, CI Funds Group.
Berger & Montague, Phyllis M. Parker, for Plaintiff Steelworkers Pension Trust.
Cadwalader Wickersham & Taft, Gregory A. Markel, Jason M. Halper, Ronit Setton, Michael Firestone, for Pfizer Defendants.
Lerach Couglin Stoia Geller Rudman & Robbins, Robert M. Rothman, Samuel H. Rudman, for Movant Institutional Investor Group.
Pomerantz Haudek Block Grossman & Gross, Murielle Steven Walsh, for Movant Hollywood Police Pension Fund.
Schiffrin & Barroway, Richard S. Schiffrin, Stuart L. Berman, Darren J. Check, for ADR Provider AP4.
Grant & Eisenhofer, Jay W. Eisenhofer, for ADR Providers AP4, TRSL.
Murray Frank & Sailer, Gregory Linkh, for Plaintiffs in related cases.

*OPINION & ORDER*

OWEN, District Judge.
    Before this Court are eleven securities fraud actions against Pfizer, Inc. and certain of its directors and officers, alleging misrepresentations concerning the drugs Celebrex**\*336** and Bextra. The actions are: 04-cv-9866, 9967, 10001, 10224, 10296, and 05-cv-0125, 0983, 2076, 5715, 5716, and 5717. They allege violations of Section 10(b) of the 1934 Exchange Act, Rule 10b-5, and Section 20(a) of the Exchange Act. Six parties have filed competing motions for consolidation of the actions, appointment of lead plaintiff, and designation of lead counsel. The movants, along with their proposed counsel, are as follows:

• A group of unrelated investors comprised of Amalgamated Bank, as Trustee for the Longview Collective Investment Fund, Central States, Southeast and Southwest Areas Pension Fund, Plumbers and Pipefitters National Pension Fund, UNITE National Retirement Fund, and The West Virginia Investment Management Board, (collectively, the "Institutional Investor Group"), represented by Lerach Coughlin Stoia Geller Rudman & Robbins LLP;

• The CI Funds Group, represented by Finkelstein Thompson & Loughran;

• A group of unrelated investors comprised of The Teacher's Retirement System of Louisiana ("TRSL") and Fjaerde AP-Fonden ("AP4") (collectively, "TRSL/AP4"), [FN1] represented by Grant & Eisenhofer P.A. and Schiffrin & Barroway, LLP, respectively;

    FN1. CI Funds Group contends that TRSL/AP4 withdrew its motion at oral argument, and therefore, the motion may

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not be considered by this Court. The relevant portion of the transcript is as follows:

MR. EISENHOFER: Your honor, if I may, we represent Public Pension Group, Teachers Retirement System of Louisiana, and AP4 from Sweden. We are withdrawing our lead plaintiff motion, and we are supporting the Institutional Investor Group represented by Lerach Coughlin at this time. Should your Honor choose not to appoint Institutional Investor Group, we propose that we are the next most qualified movant for lead plaintiff. We are withdrawing in support of them.

THE COURT: All right ..."

Mr. Eisenhofer clearly did not intend a complete withdrawal of his motion. He kept his motion pending, in the event that the Court would not choose Institutional Investor Group. That is the choice that the Court has made. The motion of TRSL/AP4 is still pending.

• The Steelworkers Pension Trust, represented by Wolf Haldestein Adler Freeman & Herz LLP;

• The Hollywood Police Pension Fund, represented by Pomeranz Haudek Block Grossman & Gross LLP;

• and Thomas E. Kuntz and John Rovegno ("Kuntz and Rovegno"), represented by the Law Offices of Curtis V. Trinko, LLP and the Law Office of Alfred G. Yates Jr., PC.

Motions to consolidate are governed by Rule 42(a) of the F.R.C.P., which allows the Court to consolidate "actions involving a common question of law or fact." With multiple actions alleging securities fraud, consolidation is appropriate where the actions involving "the same 'public statements and reports' " and where consolidation would not prejudice defendants. *See The Constance Sczesny Trust v. KPMG LLP, et al.,* 223 F.R.D. 319, 322 (S.D.N.Y.2004) (quoting *Primavera Familienstiftung v. Askin,* 173 F.R.D. 115, 129 (S.D.N.Y.1997)). This is the case here. Defendants would not be prejudiced by consolidation. Accordingly, consolidation of the actions is appropriate.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), providing the requirements for lead plaintiff and lead counsel, creates the rebuttable presumption that the "most adequate plaintiff," among other things, "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." [FN2] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc); *See In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y.1998).

FN2. Rule 23(a) provides that:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties fairly and adequately protect the interests of the class.

*337 Other members of the purported class may rebut the presumption by showing "proof" that:
the presumptively most adequate plaintiff-

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

[1] Several of the putative plaintiffs are aggregated into artificial "groups." Nothing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible " financial interest" figure under the PSLRA. *See*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), and I reject it.
I will consider each potential lead plaintiff individually, and not as artificially grouped by its attorneys.

The inquiry into whether a party should be lead

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiff begins with comparing the party's financial interest with that of the other movants. *See id.* In structuring the inquiry this way, Congress intended that securities class actions, as far as possible, be client-driven and not lawyer-driven. *See In re Razorfish, Inc. Sec. Litig.,* 143 F.Supp.2d 304, 306-307 (S.D.N.Y.2001); *In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 813 (N.D.Ohio 1999) (" [T]he context and structure of the PSLRA evince an intent that a 'group' consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys."). As Judge Cedarbaum stated in *In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157-58 (S.D.N.Y.1997):

> To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff. One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation. Appointing lead plaintiff on the basis of financial interest, rather than on a " first come, first serve" basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers. See H.R. Conf. Rep. No. 104-369, at 31-35 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 730, 730-34. To allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff. *Id.* at 35.

I decline to consider plaintiffs' aggregation.

[2] The noticed class period was from November 1, 2000, through December 12, 2004. On February 14, 2005, the Amalgamated Bank (trustee for the Institutional Investors Group) filed an additional action, *Amalgamated Bank, as Trustee for the Longview Collective Investment Fund, et al. v. Pfizer, Inc. et al.,* No. 05-CV-2076 (S.D.N.Y.). This complaint alleged a class period of December 15, 1999, through December 16, 2004, a period approximately ten and a half months longer than in the initial complaint. The longer class period was not noticed.

I find that the use of the longer, unnoticed class period is improper. This longer class period would include many-perhaps thousands-more potential class members who were not apprised of their right to move to be appointed lead plaintiff in this action. For the purpose of determining lead plaintiff, I use the noticed class period.

The PSLRA does not provide guidance on how to calculate a potential lead plaintiff's financial loss. Here, the relative magnitude of each of the parties' losses is obscured by various competing estimates, unclear methodology,[FN3] and two different proposed class *338 periods. Five of the putative plaintiffs allege losses in eight-figure range.

> FN3. It is not clear, for example, whether all of the parties made their calculations using the "Last In First Out" ("LIFO") methodology, as opposed to FIFO. The latter has fallen out of favor in this District because of its tendency to overstate the losses of institutional investors and to understate gains made from stock sold during the class period. *See In re eSpeed, Inc. Sec. Litig.,* 232 F.R.D. 95 (S.D.N.Y.2005).

Using the noticed class period, Central States has an approximate loss of $22.4 million and Amalgamated $14.3 million; TRSL approximately $22.8 million; and AP4 approximately $18.7 million, of which $3.8 million is subject to question.

The CI Funds group first alleged a loss of $75,768,557.00. Under attack, CI Funds reduced this amount by some $10.7 million. Subsequently, in its reply memorandum, CI Funds re-calculated its losses using methodology similar to that of the other groups and arrived at a loss figure of $32,432,617.

The losses of the other movants are far less.

Courts have used a number of factors to evaluate adequacy. *See Malasky v. IAC/Interactivecorp, et al.,* 2004 WL 2980085

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

233 F.R.D. 334                                                                                                                Page 5
233 F.R.D. 334, Fed. Sec. L. Rep. P 93,567
**(Cite as: 233 F.R.D. 334)**

(S.D.N.Y. Dec.21, 2004).

[3] Though CI Funds has stated the highest amount of alleged damages, *see*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), I pass it by for the multiple inaccuracies in its damage calculations, which call into question its reliability.

[4] Given the probable margin of error involved in the damage estimates before the Court, Central States and TRSL have roughly equal damages. However, I conclude TRSL is the more adequate of the two plaintiffs. It has extensive litigation experience, has served as lead plaintiff in multiple securities class actions, and has overseen sizeable recoveries in several of these. It is precisely the type of plaintiff envisioned under the PSLRA.

[5] TRSL has the largest loss of any potential lead plaintiff, after the elimination of CI Funds and Central States. It is also meets the adequacy requirements of the PSLRA and Rule 23.[FN4] Therefore, it is the presumptively most adequate plaintiff under the PSLRA, *see*15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and nothing before me rebuts that conclusion.

> FN4. Institutional Investors and CI Funds argue that TRSL should not be permitted to be lead plaintiff in this action, because it is a "professional plaintiff" that has been lead plaintiff in multiple class actions in recent years. This argument is without merit. While the PSLRA disfavors "professional plaintiffs" by stating that a person may not be a lead plaintiff in "more than 5 securities class actions ... during any 3-year period," without leave of the court. *See*15 U.S.C. § 78u-4(a)(3)(B)(vi). This provision was not intended to target institutional investors, however. See *In re Fannie Mae Sec. Litig.*, 355 F.Supp.2d 261, 264 (D.D.C.2005) (discussing legislative history).

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). *See, e.g., In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766(DAB), 2002 WL 1268013, at *6 (S.D.N.Y. June 6, 2002). TRSL has moved with AP4 to appoint Grant & Eisenhofer *and* Schiffrin and Barroway as co-lead counsel. However, only TRSL remains. I do not see the need for two law firms. This avoids the danger of unnecessarily duplicative attorney work and, ultimately, a lower recovery for the class. Therefore, I designate Grant & Eisenhofer as sole lead counsel, while reserving the right to modify the lead counsel structure in the best interests of the class.

Accordingly, the actions are hereby consolidated under the caption "In re Pfizer Inc. Securities Litigation," under File Number 04 Civ. 9866(RO). The Court appoints TRSL as lead plaintiff and designates Grant & Eisenhofer P.A. as lead counsel.

SO ORDERED

S.D.N.Y.,2005.
In re Pfizer Inc. Securities Litigation
233 F.R.D. 334, Fed. Sec. L. Rep. P 93,567

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.