KIRBY McINERNEY LLP
Roger W. Kirby
Peter S. Linden
Ira M. Press
830 Third Avenue, 10th Floor
New York, NY   10022  (212) 371-6600

Attorneys for Movant, The ATD Group

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN,<br><br>Defendants. | Civil Action No.<br>07 CIV 9901 (SHS) |
| LENNARD HAMMERSCHLAG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, and GARY CRITTENDEN,<br><br>Defendants. | No. 07 CIV 10258 (SHS) |

**MEMORANDUM OF THE ATD GROUP IN OPPOSITION TO THE
COMPETING MOTIONS FOR LEAD PLAINTIFF APPOINTMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BIOGRAPHIES OF THE COMPETING MOVANTS . . . . . . . . . . . . . . . . . 4

    A.    The ATD Group . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The U.S. Public Fund Group . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    The Global Pension Funds . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    David Garden . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    THE MOTION OF THE ATD GROUP SHOULD BE GRANTED;
    THAT OF THE U.S. PUBLIC FUNDS DENIED . . . . . . . . . . . . . . . . 8

    A.    The U.S. Public Fund Group Is An Improper "Group" . . . . . . . . . . . 8

    B.    The U.S. Public Fund Group Does Not Have the Largest
        Financial Interest in the Litigation . . . . . . . . . . . . . . . . . . . 10

        1.    How the Largest Financial Interest is Determined . . . . . . . . . . 10

        2.    Applying the Applicable Standard, The ATD Group's
            Financial Interest is Greater Than That of the U.S.
            Public Fund Group . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    The Movants Are Otherwise Inadequate . . . . . . . . . . . . . . . . . 15

        1.    Net Sellers Are Not Proper Lead Plaintiffs . . . . . . . . . . . . . 15

        2.    The U.S. Group's Proposed Lead Counsel Structure
            Is Inefficient And Improper . . . . . . . . . . . . . . . . . . . . . 17

II.    THE MOTION OF THE ATD GROUP SHOULD BE GRANTED;
    THAT OF THE GLOBAL PENSION FUNDS DENIED . . . . . . . . . . . . . 18

      A.     **The Global Pension Fund Failed Its Threshold Duty to Provide Transactional Data** . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      B.     **The Global Pension Fund Group Is Not A Proper "Group"** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      C.     **The Global Pension Funds Do Not Have The Largest Financial Interest** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      D.     **The Global Pension Funds Are Otherwise Inadequate** . . . . . . . . . . . . 20

**III.**    **DAVID GARDEN SHOULD NOT BE APPOINTED.** . . . . . . . . . . . . . . . . . 21

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

*CASES*

*Andrada v. Atherogenics,*
  No. 05 Civ. 00061, 2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) . . . . . . . . . . 11, 17

*Barnet v. Elan Corp.,*
  236 F.R.D. 158 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Boyd v. NovaStar Financial, Inc.,*
  07-CV-0139, 2007 WL 2026130 (W.D. Mo. July 9, 2007) . . . . . . . . . . . . . . . 17

*Constance Sczesny Trust v. KMPG LLP,*
  223 F.R.D. 319 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Ferrari v. Impath,*
  No. 03 Civ. 5667, 2004 WL 1637053 (S.D.N.Y. July 20, 2004) . . . . . . . . . . . . 11

*Frank v. Dana Corp.,*
  237 F.R.D. 171 (N.D. Ohio 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Glauser v. EVICI Career College Holding Corp.,*
  236 F.R.D. 184 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Goldberger v. PXRE Group,*
  No. 06-CV-3410, 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007) . . . . . . . . . . . . . . 8

*In re Bausch & Lomb Sec. Litig.,*
  244 F.R.D. 169 (W.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 16

*In re Cable & Wireless, PLC Sec. Litig.,*
  217 F.R.D. 372 (E.D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Cardinal Health Inc. Sec. Litig.,*
  226 F.R.D. 298 (S.D. Ohio 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Comdisco Litig.,*
  No. 01 C 2110, 2004 WL 905938 (N.D. Ill. Apr. 26, 2004) . . . . . . . . . . . . 12, 13

*In re Comdisco Sec. Litig.*,
    150 F. Supp. 2d 943 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 17

*In re Dell Inc., Sec. Litig.*,
    No. 06-726, *slip op.* (W.D. Tex. Apr. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Donnkenny Inc. Sec. Litig.*,
    171 F.R.D. 156 (S.D.N.Y.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F.Supp.2d 398 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re e-Speed Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    No. 5-03 CV 2166, 2004 WL 3314943 (N.D. Ohio May 12, 2004) . . . . . . . . . . 17

*In re Host America Corp. Sec. Litig.*,
    236 F.R.D. 102 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re McKesson HBOC, Inc. Sec. Litig.*,
    97 F. Supp. 2d 993 (N.D. Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Microstrategy Sec. Litig.*,
    110 F. Supp.2d 427 (E.D. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 18, 20

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8, 12, 17, 19

*In re Razorfish Sec. Litig.*,
    143 F. Supp. 2d 304 (S. D. N. Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Veeco Instruments Inc. Sec. Litig.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*In re Vonage Sec. Litig.,*
    No. 07-177, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) . . . . . . . . . . . . . . . . . . . . 13

*In re Waste Management, Inc. Sec. Litig.,*
    128 F.Supp.2d 401 (S.D.Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kapur v. USANA,*
    No. 2:07-CV-177, 2007 WL 3046664 (D. Utah Oct. 17, 2007) . . . . . . . . . . . . . 13

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Labranche & Co.,*
    229 F.R.D. 395 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Richard NMI Bell v. Acendant Solutions, Inc.,*
    01-CV-0166, 2002 WL 638571 (N.D. Tex. Apr. 17, 2002) . . . . . . . . . . . . . . . . 17

*Sofran v. LaBranche & Co.,*
    220 F.R.D. 398 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Strougo v. Brantley Capital Corp.,*
    243 F.R.D. 100 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tanne v. Autobytel,*
    226 F.R.D. 659 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tarragon Corp. Sec. Litig.,*
    No. 07-7972, 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) . . . . . . . . . . . . . . . . . 8

*Teamsters Local 611 Pension and Welfare Funds v. Apollo Group, Inc.,*
    No. 06-cv-2674, 2007 WL 2692217 (D. Az. Sep. 11, 2006) . . . . . . . . . . . . . . . 17

*Vladimir v. Bioenvision Inc.,*
    No. 07 Civ. 6416, 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) . . . . . . . . . 10-13

*Weiss v. Friedman Billings,*
    No. 05-CV-04617, 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) . . . . . . . . . . . . 11

*Weisz v. Calpine,*
    No. C 02-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) . . . . . . . . . . . . 16

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## *STATUTES AND REGULATIONS*

15 U.S.C. §78u-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**INTRODUCTION**

The ATD Group has the largest cognizable financial interest in the relief sought by the class, and, therefore, is presumptively the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). *See*, "A" *infra* at 4, I.B., II.A,C *infra*. The Group comprises longstanding business partners who acquired their shares of Citigroup common stock at market prices in connection with the sale of their business to Citigroup. Unlike the competitor groups, this Group was not formed for this litigation, and it did not *benefit* from the fraud during the class period. Using the LIFO method that is preferred in this district, and that in this instance provides the only accurate image of which movants profited and which movant lost, *The ATD Group members have the largest loss – $76.9 million – even were the aggregation of the unrelated competing investors allowed*. The ATD Group also has a larger loss than any of the individual competing movants if the disfavored FIFO method were used. *See*, Tables at I.B.2 and II.B *infra*; Appendices attached.[1]

The ATD Group's members are impressive. They include Edward Altman, Max L. Heine Professor of Finance at New York University's Leonard N. Stern School of Business and the Vice Chairman of NYU's Salomon Brothers Center for the Study of Financial Institutions. It also includes David Whitcomb, Professor of Finance Emeritus of the Graduate School of Management of Rutgers University. *See* Exs. A & B to accompanying affidavit of Roger W. Kirby ("Kirby Aff."). Unlike the members of the U.S.

---

[1]    The Appendices hereto present all the numbers referred to herein. The underlying data is considerable, and both can and will be submitted should the court so request.

Public Fund Group, the members of The ATD Group will not have their commitment to oversee and prosecute the litigation hampered by the presence of multiple firms representing multiple political entities.

The other movants: (1) The U.S. Public Fund Group consists of two public pension funds from separate states (Ohio and Illinois) that had no pre-litigation relationship.[2] They came together in response to this litigation. *They actually profited by more than $24.2 million from the fraud* (*see*, Table, Col. 3 at I.B.2 *infra*), and their aggregated LIFO losses are $66.3 million less than those of The ATD Group (*Id.*, at Col. 4). The U.S. Public Fund Group's financial interests are significantly less than those of The ATD Group by every measurable scoring system. *See*, I.B, *infra*. That alone precludes its appointment as lead plaintiff. Also, it appears that an excessive, three law firms represent their several interests. (2) The Global Pension Funds is five entities: two U.S.-based pension funds from different states, and three European funds. They do not appear to have had a pre-existing relationship. Their cognizable losses are less than those of The ATD Group. *They too profited from the fraud by about $9 million*, on net class period sales of about 66,000 shares. (3) David Garden is an individual investor with relatively small losses.

The Global Pension Funds lay claim to financial interests that rival those of The ATD Group *only* by (a) improper aggregation of otherwise-unrelated investors

---

[2]     This Group initially comprised three entities. On January 15, 2008, one of its members - The New Jersey Division of Investments - withdrew on account of a conflict of interest. It does not appear however that its law firm withdrew as one of three counsel to the Group. (Dkt. 27).

2

assembled solely to manufacture the largest class period loss, *and* (b) by calculation of their losses by application of the disfavored first-in-first-out ("FIFO") methodology (*see*, I.B.1, *infra* - explanation of how FIFO misleads). That method often impoverishes the meaning of financial interest because, as happened here, shares had been acquired before the deceptive information was introduced into the market and then sold profitably when the prices remained inflated as a result of the fraud. For these reasons, FIFO tends to invest as lead plaintiff persons who actually benefitted from the wrongdoing. That is the condition of both the Global Funds Group and the U.S. Public Fund Group. Class period profits alone disqualify a lead plaintiff movant. Regardless, the absence of a pre-existing relationship among the constituents of these groups defeats any presumption of Global's adequacy, as well as that of the U.S. Public Fund Group.

The Global Funds Group has an additional fatal infirmity. Its papers did not disclose its start-of-class-period holdings. It is therefore impossible to determine which class period sales are matched against that opening balance. Its FIFO claims are thus inadmissible for this reason as well, and its failure to have provided necessary data is basis by itself to reject its application. *See, In re Microstrategy Sec. Litig.*, 110 F. Supp.2d 427, 436-437 (E.D. Va. 2000). The Global Funds performed yet another questionable maneuver. It filed papers seeking lead on the basis of an improperly long class period and without giving proper notice to the class.[3]  (Dkt. 10-12.)   By this tact, Global initially inflated its claimed losses and

---

[3]      *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005). Judge Owen wrote: "I find that the use of the longer, unnoticed class period is improper. This longer class period

masked that its members were net class period sellers. The Group has subsequently conceded the exaggeration by its supplemental declaration filed January 14, 2008. (*See*, Supplemental Entwistle Decl., Dkt. 26.) Regardless, whether measured by LIFO or upon disaggregation, the Global Group does not have the largest cognizable financial interest.

Finally, for The ATD Group this litigation will not be a minor part of a larger campaign addressed to the length and breadth of the subprime pandemic.[4] As lead plaintiff, The ATD Group will focus solely on the prosecution of this action, and its members, including chaired economics professors, are especially well suited for the task.

## BIOGRAPHIES OF THE COMPETING MOVANTS

### A.    The ATD Group

The ATD Group includes two individuals and two married couples. The Group members had known one another for years before the lawsuit. (Press Decl., Ex. E, Dkt. 16.) They had been among the owners of a company called Automated Trading Desk ("ATD"). They jointly sold that company in June 2007 to Citigroup in consideration for, *inter alia*, 3,919,526 shares of Citigroup stock priced exactly as it was then trading on the New York Stock Exchange. They disposed of none of their Citigroup shares during the class period.

_____

would include many - perhaps thousands - more potential class members who were not apprised of their right to move to be appointed lead plaintiff in this action. For the purpose of determining lead plaintiff, I use the noticed class period."

[4]      *See* Joint Declaration of Marc Dann, William J. Nevel, John Vascas, William Clark, and Dan Slack in Support of U.S. Pension Fund Group Motion (Silk Decl. Ex. H.) ("Public's Joint Decl.") at ¶¶5,8.

The ATD Group's net class period expenditure was $203,980,364 ($52.04 X 3,919,526), and its loss during the class period (January 1, 2004 through November 5, 2007), however calculated, is $76,859,111.00.

### B.    The U.S. Public Fund Group

This purported group is an artificial aggregation of different public pension funds having what appears to be three, separate counsel (*see*, n. 2 *supra*). However measured, this "group's" financial interests are less than that of ATD, *see*, Tables at I.B.2, *infra*, and, moreover, they decided to aggregate only after this action had commenced. *See* Public's Joint Decl. at ¶6.

No member of this *ad hoc* "group" lost more than $6 million using the preferred LIFO methodology. On an aggregated basis, the LIFO losses are $10.5 million, about $66 million less than ATD. As an aggregate, the Group also was a net seller of Citigroup shares during the class period. It sold 3,733,281 shares at artificially inflated class period prices, while purchasing just 3,291,916. Its class period sales proceeds *exceeded* purchase expenditures by *$24.2 million*.[5] *See*, Tables at I.B.2, *infra*.

### C.    The Global Pension Funds

The Global Pension Funds is a litigation-driven collection of two Swedish funds, a Danish fund, and public funds from Colorado and Tennessee. They have been put together for this litigation for the sole purpose of aggregating their losses. This is precisely

---

[5]    SURS Illinois purchased more shares than it sold, 27,567, for a net class period expenditure of just $2,878,274, *more than $200 million less than The ATD Group.*

the sort of activity and purpose that many courts have rejected as obviously contrary to The Private Securities Litigation Reform Act of 1995 ("PSLRA"). Their aggregated (and, of course, disaggregated) net shares purchased, net fund expenditures, and LIFO losses are significantly less than The ATD Group. *See* Table at II. B, *infra*.

The greatest individual LIFO loss by any of this Group's numbers is $21.9 million, about $55 million less than that of The ATD Group. Aggregated, its collective losses under the preferred LIFO method are $47.1 million, about $30 million less than The ATD Group. By the disfavored FIFO method, no single Global Group member claims a loss of more than $48.5 million. The Colorado and Tennessee funds actually were *net sellers* of Citigroup stock during the class period, having sold 986,986 more Citigroup shares than they purchased. As a result, they benefitted from the fraud complained of by having received $48.3 million more from sales of Citigroup stock at artificially inflated prices during the class period than they spent on purchases, and, again, aggregated the Group profited from the fraud. *Id.*

As net sellers, Colorado and Tennessee, together with their claimed losses, must be stricken from that Group, or any other for that matter. That leaves the Swedish and Danish funds, whose FIFO losses are believed to be substantially less than ATD's. Again, this Group did not provide data that would permit others to test its claims respecting its FIFO losses. The failure to provide this data is fatal to their motion. *See In re Microstrategy Sec. Litig.*, 110 F. Supp.2d at 436-437 ("the evidence [the institutional investor] submitted did not

permit a confident conclusion that its loss was as large as it averred: While the other candidates set forth in clear terms the specific transactions that led to a loss, Wolverine submitted a conclusory affidavit"). Finally, for emphasis, under the much favored LIFO process that accurately identifies the greater financial interest here, ATD's losses are greater than an aggregated Global, even with Tennessee and Colorado. When the Global Funds are aggregated, Colorado and Tennessee's net sales of 986,986 shares makes the Group net class period sellers of 65,862 shares, from which they reaped net proceeds of $8,978,429. *See* Table at II.B, Appendices.

**D.    David Garden**

David Garden is an individual. He claims to have lost $2,130,405 during the class period from a purchase of 206,000 shares of Citigroup common stock and a net purchase of 160,000 shares, for which his net expenditure was $7,271,205.

The foregoing demonstrates that, when the improperly-assembled groups are disaggregated, or when the proper LIFO method is used, The ATD Group has the largest financial interest.

7

## ARGUMENT

### I.    THE MOTION OF THE ATD GROUP SHOULD BE GRANTED; THAT OF THE U.S. PUBLIC FUNDS DENIED

The ATD Group has a larger financial interest than the U.S. Public Fund Group, both in its aggregated and disaggregated forms, and this apart from the undeniable reality that the U.S. Public Fund Group is not a proper "group" at all.

#### A.    The U.S. Public Fund Group Is An Improper "Group"

Courts in this district and elsewhere have held that the PSLRA's reference to a "group" of plaintiffs means persons who had had a relationship concerning the investment in question that predates the lawsuit. That institutions may be involved is of no moment.[6] Cases in this district that have rejected litigation-motivated groups include: *Goldberger v. PXRE Group*, No. 06-CV-3410, 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007); *Glauser, supra,* 236 F.R.D. at 190; *In re Doral Fin. Corp. Sec. Litig., supra,* 414 F. Supp.2d at 401; *In re Pfizer Sec. Litig., supra,* 233 F.R.D. at 337; *In re Veeco Instruments, Inc. Sec. Litig., supra,* 233 F.R.D. at 334; *Constance Sczensny Trust, supra,* 223 F.R.D. at 323. "Artificially

---

[6]      *Tarragon Corp. Sec. Litig.*, No. 07-7972, 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y.1997) (rejecting the aggregation of "unrelated institutional and individual investors")); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. at 337 (declining to consider groups of institutional investors); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Labranche & Co.*, 229 F.R.D. 395, 411 (S.D.N.Y. 2004) (CalPERS could not aggregate its shares with other class members); *In re Waste Management, Inc. Sec. Litig.*, 128 F.Supp.2d 401, 432 (S.D. Tex. 2000) (court rejects two groups of institutional plaintiffs because each did not act "as a single investor").

created" entities are routinely spurned, *In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 457 (S.D. Tex. 2002).

As the court said in *In re Enron Corp. Sec. Litig., Id.* at 455, a group of otherwise-unrelated pension funds could not aggregate to serve as a lead plaintiff when "there is ... no clear or persuasive reason why [the] funds have joined together to apply for Lead Plaintiff in this litigation other than an effort to amalgamate their losses to be greater than their competitors." U.S. Public Fund Group member, the State Teachers Retirement System of Ohio, was among the pension funds that unsuccessfully tried to aggregate into a group in the *Enron* action.

The U.S. Public Fund Group is an "artificially created" entity here as well. The Group's joint declaration establishes that its constituents are separate entities from separate states represented by separate counsel overseen by separate boards who joined together *after* this action was commenced and for the *sole* purpose of aggregating their members' claimed financial interest.[7] It also admits that, only after this lawsuit was initiated and after these funds had separately looked into seeking to serve as lead plaintiff, did Ohio's Attorney

---

[7]    The Ohio Fund retained the law firm of Bernstein Litowitz Berger & Grossmann (*see* Public's Joint Decl., at ¶5); and the Illinois Fund retained the law firm of Berman DeValerio Pease Tobacco Berman & Pucillo (*id.* at ¶11). New Jersey retained Berger & Montague (*id.,* at ¶8), and it seems that firm will travel with the Group notwithstanding New Jersey's withdrawal from the Group (*see* n. 2 *supra*). In its declaration announcing withdrawal from the contest, New Jersey asserted through counsel that the conflict (the State's investment in Citigroup) came into being only in the week following filing of lead plaintiff papers. (Dkt. 27.) Press accounts suggest that the events leading to the investment had begun before New Jersey moved for lead with the U.S. Public Fund Group (Kirby Aff., Ex. C).

General contact New Jersey and Illinois to draft them for joint service as lead plaintiff (Public's Joint Decl., ¶6). *In breve*, the U.S. Public Fund Group's financial interest should not be considered jointly, but severally.

The participation of each group member in this litigation is further complexified because they are being overseen by separate boards of trustees (Kirby Aff., Exs. D, E, F, G ,H, and I), and by different government officials; STRS Ohio's by the Ohio Attorney General, Illinois' by a director of the State University Retirement System of Illinois. *See* Public's Joint Decl., ¶¶2,10, 13.

By favorable contrast, The ATD Group is an authentic collective. Its members enjoyed a mutual substantive relationship that predates this lawsuit. They acted together in acquiring Citigroup stock. *See*, David Whitcomb's (one of ATD Group members) previous declaration dated December 31, 2007 ("Whitcomb Decl.") (Ex. E to Press Affidavit, Dkt. 16), which confirms that ATD Group members had been partners long before this litigation commenced.

## B.    The U.S. Public Fund Group Does Not Have the Largest Financial Interest in the Litigation

### 1.    How the Largest Financial Interest is Determined

The PSLRA establishes a presumption in favor of the movant with the largest financial interest. It neither "define[s] the term 'largest financial interest' nor provide[s] a method for determining which plaintiff has the largest financial interest in the relief sought by the class," *Vladimir v. Bioenvision Inc.*, No. 07 Civ. 6416, 2007 WL 4526532, at *4

(S.D.N.Y. Dec. 21, 2007). *See also In re Bausch & Lomb Sec. Litig.*, 244 F.R.D. 169, 172 (W.D.N.Y. 2007).

Courts, including this one, have, as a consequence, developed and commonly use a four factor test. This test considers: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period. *In re Bausch & Lomb, supra*, 244 F.R.D. at 172; *Vladimir, supra*, 2007 WL 4526532, at *4-5; *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007); *Glauser v. EVICI Career College Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006); *Weiss v. Friedman Billings*, No. 05-CV-04617, 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006); *In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 332 (S.D.N.Y. 2005); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005); *Andrada v. Atherogenics,* No. 05 Civ. 00061, 2005 WL 912359, at *3 (S.D.N.Y. Apr. 19, 2005); *Ferrari v. Impath,* No. 03 Civ. 5667, 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004); *Constance Sczesny Trust v. KMPG LLP,* 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (Stein, J.).

Three of the four factors are not subject to interpretation. The fourth, "approximate losses", requires some explanation, because "loss" calculations may differ depending on whether class period sales are matched to purchases by a FIFO method, or by LIFO. FIFO often and surely here allows for weird anomalies that disregard that the sales benefitted from the fraud. Consequently, as the court noted in *In re Bausch & Lomb, supra,*

244 F.R.D. at 173 n.4, "LIFO, not FIFO, is the preferred methodology in these determinations." FIFO "has fallen out of favor in this district because of its tendency to overstate the losses of institutional investors and to understate gains made from stock sold during the class period." *In re Pfizer Sec. Litig.*, 233 F.R.D. at 337 n.3. *See also In re e-Speed Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005); *accord In re Doral Fin. Corp. Sec. Litig.*, 414 F.Supp.2d 398, 403 n.7 (S.D.N.Y. 2006); *and see Vladimir, supra,* 2007 WL 4526532, at *5.

    The court in *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945 (N.D. Ill. 2001), also rejected FIFO methodology, characterizing it as "a mirage" designed to conceal that the movant's "Class Period sales at inflated prices caused it to derive unwitting benefits rather than true losses from the alleged securities fraud." In a later opinion, *In re Comdisco Litig.*, No. 01 C 2110, 2004 WL 905938, at *2-3 (N.D. Ill. Apr. 26, 2004), the court explained how this is so. It then provided further explanation of why FIFO accounting cannot justify ignoring class period sales when calculating a lead plaintiff movant's loss. ("[F]ocal point of inquiry must begin (for standing purposes and otherwise) with purchases or sales - or both - *during* the class period...that focus calls for a primary concentration on class period transactions, which is consistent with LIFO rather than FIFO treatment"). *Id.*

    At risk of gilding the point, FIFO would compel treating as equals the investor who purchased 1,000 shares during the class period at artificially inflated prices and sold none – thus sustaining a fraud-driven loss – with the investor who, already owning 10,000 shares

before the class period, purchased a further 1,000 during the class period at inflated prices

while profitably selling 10,000 during the same time at the same inflated prices. The former

lost money by the fraud; the latter made money (the profits from the 10,000 shares sold

during the class period more than offsetting the loss from the 1,000 shares purchased then).

Yet, FIFO would treat them as one. Elsewhere, this illustration may represent a logical

extreme.[8] But it is precisely the experience of The ATD Group in relation to the other group

movants.

> ### 2.    Applying the Applicable Standard, The ATD Group's Financial Interest is Greater Than That of the U.S. Public Fund Group

Courts first determine which movant has the largest financial interest. That

Ohio and Illinois do not have the largest financial interest alone warrants denial of their

application. Absent compelling evidence of the presumptive lead's inadequacy, a court may

not appoint a movant who lacks the largest financial interest. *See, e.g., In re Cavanaugh*, 306

F.3d 726, 729-31 (9th Cir. 2002); *accord In re Host America Corp. Sec. Litig.*, 236 F.R.D.

102, 105 (D. Conn. 2006). *See also Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402

(S.D.N.Y. 2004); *accord Vladimir, supra*, 2007 WL 4526532, at *6. That the Ohio and

Illinois movants are institutional investors does not alter the juridical calculus; *see also*, n.

6 *supra*.[9]

---

[8]    *See Comdisco*, 2004 WL 905938, at *2-3.

[9]    The PSLRA expresses no preference for institutions, and the word "institution" appears nowhere in the PSLRA text. Accordingly, courts have held that an institutional movant may

Applying the four factor test and the preferred LIFO method, The ATD Group has a larger financial interest than the U.S. Public Fund Group, both in its aggregated and disaggregated forms, and this apart from the undeniable reality that the U.S. Public Fund Group is not a proper "group" at all.

### The ATD Group Prevails on All Four Factors
### Against the Disaggregated U.S. Group

| Movant | Shares Purchased During the Class Period | Net Shares Class Period Purchased (sold) | Net Class Period Expenditures (proceeds) | LIFO Loss |
|---|---|---|---|---|
| ATD Group | 3,919,526 | 3,919,526 | $203,980,364 | $76,859,111 |
| STRS Ohio | 2,602,761 | (468,932) | ($27,088,565) | $5,161,066 |
| SURS Illinois | 689,155 | 27,567 | $2,878,274 | $5,376,065 |

### The ATD Group Prevails on All Four Factors
### Against the Improperly Aggregated U.S. Group

| Movant | Shares Purchased During the Class Period | Net Shares Class Period Purchased (sold) | Net Class Period Expenditures (proceeds) | LIFO Loss |
|---|---|---|---|---|
| ATD Group | 3,919,526 | 3,919,526 | $203,980,364 | $76,859,111 |
| Aggregated U.S. Group | 3,291,916 | (441,365) | ($24,210,291) | $10,537,131 |

---

not be appointed in the face of an application by a non-institutional movant with a larger financial interest and without rebuttable factors. *Kapur v. USANA*, No. 2:07-CV-177, 2007 WL 3046664, at *2 (D. Utah Oct. 17, 2007); *In re Vonage Sec. Litig.*, No. 07-177, 2007 WL 2683636, at *11 n.15 (D.N.J. Sept. 7, 2007); *Tanne v. Autobytel*, 226 F.R.D. 659, 670-71 (C.D. Cal. 2005). In this event, the ATD movants are demonstrably and especially capable individuals. *See* Exs. A & B to Kirby Aff. for information about The ATD Group members.

14

Every single penny spent and lost by The ATD Group is attributable solely to and caused entirely by the fraud alleged. They purchased shares during the class period, and sold none. This explains why their net purchases are the same as their gross purchases, and their net class period expenditure is the same as their gross class period expenditure. The ATD Group's FIFO loss of $76,859,111 also exceeds the FIFO losses of any of the individual and the aggregate U.S. Public Fund Group members. (STRS Ohio has a FIFO loss of $37,988,494; SURS Illinois is $12,855,433.34, a total of $50,843,927 - approximately $25 million less than that of The ATD Group.)

So great is ATD's larger interest that, even when the Ohio and Illinois funds improperly inflate their claimed financial stakes by (a) aggregating their financial interest, and (b) by using FIFO methodology to ignore profitable class period sales at artificially inflated prices, The ATD Group has the largest financial interest under applicable tests.

### C.    The Movants Are Otherwise Inadequate

#### 1.    Net Sellers Are Not Proper Lead Plaintiffs

On an aggregate basis, the U.S. Public Fund Group members have benefitted by approximately $24.2 million by the class period inflation. The Ohio Fund was a net class period seller, by 468,932 shares. It enjoyed net proceeds of more than $27 million from its class period transactions. These profitable transactions alone preclude their service here as lead plaintiffs. Net sellers of the securities during the class period cannot serve as lead

plaintiffs. They have benefitted rather than been harmed by the artificial inflation of the stock price.

"Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices." *In re Bausch & Lomb Inc. Sec. Litig.*, *supra,* 244 F.R.D. at 173, citing *Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006); *In re Cardinal Health Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005). In *Weisz v. Calpine,* No. C 02-1200, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002):

> The Court notes that [plaintiff] purchased 64,100 shares of Calpine stock, *but sold almost twice that amount –* 152,000 shares – during the Class Period. (*Id.* Ex. 1.) This fact undermines [plaintiff's] contention that it has the largest financial interest in this case aside from [competing movant]. *See In re Critical Path*, 156 F. Supp. at 1108 ("the number of net shares purchased during the class period is determinative" of which party has the "largest financial interest"). Indeed, it is apparent that [plaintiff] may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price. *See Comdisco*, 150 F. Supp. at 945-46 (finding that plaintiff which sold more shares than it purchased during the class period was "totally out of the running for designation as lead plaintiff"). Therefore, the court removes [plaintiff] from consideration for appointment as lead plaintiff.

*Id.* (emphasis in original). *See also In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 378 (E.D. Va. 2003), where the court, following *Weisz* and *Comdisco*, rejected the lead plaintiff application of a fund that sold more shares than it purchased.

In *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996-997 (N.D. Cal. 1993), the court reasoned that "a net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed. By contrast a net seller has arguably *profited* more from the fraud than it has been injured, possibly reducing its incentive to litigate" (emphasis in original). *See also Andrada, supra,* 2005 WL 912359, at *4; *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5-03 CV 2166, 2004 WL 3314943, at *4 (N.D. Ohio May 12, 2004); *In re Comdisco, supra.*

### 2. The U.S. Group's Proposed Lead Counsel Structure Is Inefficient And Improper

If New Jersey's counsel remains among the Group's counsel, *see* n. 2 *supra,* then the lead counsel structure will include three firms. Courts have rejected similar attempts to have prosecution of the lawsuit led by three, separate, "lead counsel" firms.[10] The ATD Group proffers a single firm as lead counsel.

---

[10]    *See e.g., Richard NMI Bell v. Acendant Solutions, Inc.,* 01-CV-0166, 2002 WL 638571, at *6-7 (N.D. Tex. Apr. 17, 2002); *Boyd v. NovaStar Financial, Inc.,* 07-CV-0139, 2007 WL 2026130, at *5 (W.D. Mo. July 9, 2007); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,* 209 F.R.D. 447 (C.D. Cal. 2002); *In re Pfizer Inc. Sec. Litig., supra,* 233 F.R.D. at 337-38; *In re Razorfish Sec. Litig.,* 143 F. Supp. 2d 304, 311-312 (S.D.N.Y. 2001); *Weltz v. Lee,* 199 F.R.D. 129 (S.D.N.Y. 2001); and *Teamsters Local 611 Pension and Welfare Funds v. Apollo Group, Inc.,* No. 06-cv-2674, 2007 WL 2692217, at *7 (D. Az. Sep. 11, 2006).

II.    **THE MOTION OF THE ATD GROUP SHOULD BE GRANTED; THAT OF THE GLOBAL PENSION FUNDS DENIED**

A.    **The Global Pension Fund Failed Its Threshold Duty to Provide Transactional Data**

This Group offered bare conclusions regarding its FIFO losses (Dkt.10-12, 26). Knowledge of their opening positions is necessary to test that conclusion. It was not provided, a failure that warrants rejection of its application. *Microstrategy*, 110 F. Supp. 2d at 436-437.[11]

B.    **The Global Pension Fund Group Is Not A Proper "Group"**

The "Global Pension Funds" is five unrelated entities; two separate state pension funds who appear to be represented by one law firm, which have combined with three separate European funds who are represented by a second firm. There is nothing in the Global Pension Funds' submission to suggest a relationship that predates this litigation, certainly not in respect of the Citigroup investment. Groupings of this variety are rejected routinely. *See*, I.A and n.6, *supra*.

What pre-litigation nexus exists between Global members reinforces the impropriety of their aggregation, for this marks the third time that Global members Sjunde AP-Fonden and Pensionskassernes Administration have sought to aggregate artificially with

---

[11]    This Group also late filed a complaint that would have enlarged the class period that would have allowed it to inflate their losses and veil that its members were class period sellers. The expansion was done the very day that the lead plaintiff motions were due and without notice to class members. *See*, pp. 3-4 *supra*. *See* Entwistle Supplemental Decl., Dkt. 26. *See*, *Pfizer*, 233 F.R.D. at 337 *supra*.

18

other investors for appointment as lead plaintiff. These funds had moved *unsuccessfully* for appointment as lead plaintiff in class action litigation against *Dell* and *United Health. See* Exs. J & L to the Kirby Aff. The court order in *Dell* expressly rejected the proposed aggregated group involving these two funds. *In re Dell Inc., Sec. Litig.*, No. 06-726, *slip op.* at 5-8 (W.D. Tex. Apr. 9, 2007). The Global Pension Fund Group's Fjarde AP-Fonden had its lead plaintiff application rejected by the court in the *Pfizer* litigation for improper aggregation. *See* Ex. K to the Kirby Aff., *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334. There is no basis for a different outcome here.

### The ATD Group Prevails on All Four Factors Against Dis-Aggregated Members of The Global Group and On Three When Aggregated

| Movant Name | Shares Purchased During the Class Period | Net Shares Purchased (sold) Class Period | Net Funds Expenditures (Proceeds) in Class Period | LIFO Loss |
|---|---|---|---|---|
| ATD Group | 3,919,526 | 3,919,526 | $203,980,364 | $76,859,111 |
| PERA Colorado | 1,036,050 | (741,782) | ($36,101,199) | $3,888,981 |
| Tennessee CRS | 3,016,500 | (245,204) | ($12,182,705) | $7,823,847 |
| SJUNDE | 682,322 | 304,257 | $15,466,278 | $5,753,858 |
| FJARDE | 3,017,500 | 148,200 | $1,385,172 | $21,896,184 |
| Pensionskassernes | 832,700 | 468,667 | $22,454,025 | $7,747,024 |

If one accepted the Group's naked assertions of FIFO losses, The ATD Group's loss remains larger than that of any of the funds that are improperly trying to aggregate.[12]

### C.    The Global Pension Funds Do Not Have The Largest Financial Interest

The Global Pension Funds have not supplied the data needed to verify FIFO losses. They have not told us when the shares were acquired. This failure is made the more remarkable because Global already has filed a declaration correcting the period for which it supplied the limited data that it did. (Dkt. 26).    Alone, Global's data failures warrant rejection. *See, In re Microstrategy Sec. Litig.*, 110 F. Supp.2d at 436-437. Moreover, because the Global Pension Funds are not a proper "group," the funds' financial stake must be disaggregated. Regardless, this group still does not have the largest financial interest under the preferred LIFO methodology. Their purported aggregate loss is $47,109,894 – well short of The ATD Group's loss of $76,859,111.

### D.    The Global Pension Funds Are Otherwise Inadequate

Two of the funds, PERC and TCRS, are net class period sellers, and on an aggregate basis, the Global Pension Funds are net sellers. (*See* immediately preceding Table, Col. 3).

---

[12]    The largest FIFO loss in this group is claimed by Tennessee CRS ($48,524,084). None of the others claim a FIFO loss as high as $36 million.

Only if these five separate funds from three different countries improperly may a) aggregate as one "group" solely for the purpose of achieving the largest financial stake; and b) calculate their losses pursuant to FIFO, a method which cloaks much of the $423 million of proceeds received from class period sales at artificially inflated prices, and c) ignores the Group's fatal failure of not having supplied the data needed to verify the FIFO claims, can this Group lay claim to any of the four factors test.  But, even then, The ATD Group has a greater a) number of net shares purchased during the class period (the Global Funds were net sellers of 65,862 shares); and b) a larger total net expenditure during the class period (as the Global Funds reaped net proceeds of $8,978,429).

## III.    DAVID GARDEN SHOULD NOT BE APPOINTED.

Mr. Garden is an individual who purchased just 206,000 shares of Citigroup's stock.  His net share purchase was just 160,000 and his net class period expenditure was $7,271,205.  His claimed loss under LIFO (as well as FIFO) is just $2,130,405.  Mr. Garden does not have the largest financial interest in this claim and should not be appointed.

## CONCLUSION

For all the foregoing reasons, the motion of The ATD Group should be granted,

and the others denied. The ATD Group should be appointed lead plaintiff, and its counsel,

Kirby McInerney LLP, lead counsel.

Dated:      New York, New York
              January 28, 2008

Respectfully submitted,

**KIRBY McINERNEY LLP**

By: _____

Roger W. Kirby (RK 4503)
Peter S. Linden (PL 8945)
Ira M. Press (IP 5313)
830 Third Avenue, 10th Floor
New York, NY   10022
Tel: (212) 371-6600

*Proposed Lead Counsel*

**ALLEN BROTHERS, P.L.L.C.**
Kenneth Gold
James Allen, Sr.
400 Monroe, Suite 220
Detroit, MI   48226
Tel: (313) 962-7777

*Additional Counsel for Movant, The ATD Group*

22

**Appendix A**



# Appendix B
## The Four Factors Test
## Citigroup Lead Plaintiff Movants

| Movant | No. Shares Purchased | Net Shares Purchased | Net Funds Expended | LIFO Loss |
|---|---|---|---|---|
| **ATD Group** | | | | |
| *Edward and Elaine Altman* | 307,559 | 307,559 | $ 16,006,016.00 | $ 6,178,752.64 |
| *Jonathan Butler* | 1,260,736 | 1,260,736 | $ 65,611,349.00 | $ 23,280,264.63 |
| *M. David Diamond* | 300,556 | 300,556 | $ 15,641,565.00 | $ 6,020,767.85 |
| *David and Henrietta Whitcomb* | 2,050,675 | 2,050,675 | $ 106,721,434.00 | $ 41,379,326.77 |
| **Total** | **3,919,526** | **3,919,526** | **$ 203,980,364.00** | **$ 76,859,111.89** |
| | | | | |
| **Global Pension Funds** | | | | |
| *Public Employees' Retirement Association of Colorado* | 1,036,050 | -741,782 | -$36,101,199.00 | $ 3,888,981.00 |
| *Tennessee Consolidated Retirement System* | 3,016,500 | -245,204 | -$12,182,705.00 | $ 7,823,847.00 |
| *Sjunde AP-Fonden* | 682,322 | 304,257 | $ 15,466,278.00 | $ 5,753,858.00 |
| *Fjarde AP-Fonden* | 3,017,500 | 148,200 | $ 1,385,172.00 | $ 21,896,184.00 |
| *Pensionskassernes Administration A/S* | 832,700 | 468,667 | $ 22,454,025.00 | $ 7,747,024.00 |
| **Total** | **8,585,072** | **-65,862** | **-$8,978,429.00** | **$ 47,109,894.00** |
| | | | | |
| **U.S. Public Fund Group** | | | | |
| *State Teachers Retirement System of Ohio* | 2,602,761 | -468,932 | -$27,088,565.00 | $ 5,161,065.66 |
| *State Universities Retirement System of Illinois* | 689,155 | 27,567 | $ 2,878,274.00 | $ 5,376,065.35 |
| **Total** | **3,291,916** | **-441,365** | **-$24,210,291.00** | **$ 10,537,131.01** |
| | | | | |
| **David Garden** | **206,000** | **160,000** | **$ 7,271,205.00** | **$ 2,130,405.00** |



Appendix C