**DECLARATION OF ANNEGRETE BIRCK JAKOBSEN AND MICHAEL NELLEMANN PEDERSEN IN FURTHER SUPPORT OF THE MOTION OF THE GLOBAL PENSION FUNDS FOR CONSOLIDATION, FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR THE APPROVAL OF LEAD PLAINTIFFS' CHOICE OF COUNSEL**

**ANNEGRETE BIRCK JAKOBSEN AND MICHAEL NELLEMANN PEDERSEN**

pursuant to 28 U.S.C. § 1746 and under the laws of the United States of America, declare as follows:

1. We, Annegrete Birck Jakobsen and Michael Nellemann Pedersen, are Directors of Pensionskassernes Administration A/S ("PKA"), and are authorized to direct this litigation on behalf of PKA.

2. We respectfully submit this Declaration in support of the Motion of PKA, the Public Employees' Retirement Association of Colorado ("Colorado PERA"), Tennessee Consolidated Retirement System ("TCRS"), Sjunde AP-Fonden ("AP7") and Fjärde AP-Fonden ("AP4") (collectively, the "Global Pension Funds") to serve as Lead Plaintiffs in the above-captioned actions (the "Actions") against Citigroup Inc. ("Citigroup" or the "Company") and related defendants and for the approval of the Global Pension Funds' selection of Entwistle & Cappucci LLP ("Entwistle & Cappucci") and Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") (together, "Proposed Lead Counsel") to serve as Co-Lead Counsel, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

3. PKA purchased its Citigroup common stock that is the subject of this action on the New York Stock Exchange. PKA understands that by filing a complaint and seeking Lead Plaintiff status, PKA is subject to the jurisdiction of this Court and is bound by all of its rulings.

4. PKA is based in Hellerup, Denmark and was created in 1954 by a collective of occupational pension funds which currently consists of: (1) The Office Staff Pension Fund (Pensionskassen for Kontorpersonale); (2) The Medical Laboratory Technologists' Pension Fund

(Pensionskassen for Bioanalytikere); (3) The Danish Diet and Nutrition Officers' Pension Fund (Pensionskassen for Kost- og Ernæringsfaglige); (4) The Medical Secretaries' Pension Fund (Pensionskassen for Lægesekretærer); (5) The State Registered Nurses' Pension Fund (Pensionskassen for Sygeplejersker); (6) The Social Workers' and Social Pedagogues' Pension Fund (Pensionskassen for Socialrådgivere og Socialpædagoger); (7) The Occupational Therapists' and Physiotherapists' Pension Fund (Pensionskassen for Ergoterapeuter og Fysioterapeuter); and (8) The Midwives' Pension Fund (Pensionskassen for Jordemødre). PKA serves as the sole manager and administrator for each of these funds and is permitted to take all legal actions on behalf of each fund regarding its investments, including filing a motion for lead plaintiff.

5. PKA has previously engaged SBTK to serve as its outside securities litigation counsel. In this capacity, SBTK regularly monitors PKA's securities portfolio and advises PKA regarding any potential or existing securities claims.

6. In its capacity as PKA's monitoring counsel, SBTK advised PKA that it had suffered a significant financial loss related to its investment in Citigroup. SBTK further advised that a fraud claim existed against Citigroup and others to recover for these losses. SBTK provided PKA a detailed memorandum to substantiate these allegations, which is protected by the attorney-client privilege and attorney work product doctrine. Considering the size of PKA's financial loss and the meritorious nature of the claims against Citigroup, SBTK advised PKA that it could seek an active role as Lead Plaintiff in this litigation.

7. SBTK also advised PKA that it had been retained by AP7 and AP4 to pursue a Lead Plaintiff application on their behalf. Having previously filed a Lead Plaintiff motion with AP7 in both *In re Dell, Inc., Sec. Litig.*, No. 06-726-SS (W.D. Tex.) and *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-1691 (JMR/FLN) (D. Minn.), PKA was familiar with AP7 and its securities

litigation goals and objectives. PKA was also familiar with AP4 and its status as one of Sweden's largest National Pension Funds. PKA also understood that AP4 had previous experience with the PSLRA lead plaintiff process having filed a joint lead plaintiff application with a U.S. public pension fund in *In re Pfizer Inc. Sec. Litig.*, No. 1:05-md-1688-RO (S.D.N.Y.). SBTK further informed us that both AP7 and AP4 had already expressed a desire to work with other institutional investors as Lead Plaintiffs and, in particular, U.S. based public pension funds. To that end, SBTK informed us that AP7 and AP4 had authorized SBTK to explore the possibility of such a global lead plaintiff group.

8. After determining that AP7 and AP4 shared similar goals and objectives for prosecuting this litigation with PKA, PKA informed SBTK of its intentions to seek appointment as Lead Plaintiff in any consolidated action against Citigroup along with AP7 and AP4. PKA also informed SBTK that like AP7 and AP4, it desired to seek Lead Plaintiff status along with U.S. public pension funds that shared similar goals and objectives, if possible.

9. As our lead plaintiff motion and related filings were being prepared, PKA learned that Colorado PERA, and TCRS had suffered significant losses in connection with their purchases of Citigroup securities and had retained the law firm of Entwistle & Cappucci to represent them in seeking appointment as Lead Plaintiffs in the Citigroup litigation. PKA further learned that each of these sophisticated institutional investors was interested in working with other sophisticated institutional investors to seek appointment as Lead Plaintiffs in this litigation. After determining that Colorado PERA, the Tennessee Attorney General's Office and TCRS shared similar goals and objectives for prosecuting this litigation, PKA authorized SBTK to seek Lead Plaintiff with AP4, AP7 and the U.S. institutions.

10. PKA further agreed to the filing of a detailed complaint and a motion requiring the preservation of documents at Citigroup's Structured Investment Vehicles ("SIVs") and other related entities as well as a motion seeking a partial lifting of the PSLRA discovery stay in connection with our Lead Plaintiff application. We understand that to date, the Global Pension Funds' Complaint is the only complaint in these securities actions that even mentions Citigroup's Class Period issuance of Liquidity Puts, let alone develops the critical facts and accounting provisions related to these guarantees that the Defendants failed to disclose, in any way, until November 5, 2007.

11. PKA also agreed that Entwistle & Cappucci and SBTK would work together as our proposed Co-Lead Counsel to prosecute this action vigorously and efficiently in the best interest of the Class. PKA was familiar with the Entwistle & Cappucci firm from its role in *In re Royal Ahold Securities & "ERISA" Litigation*, MDL 01539 (U.S. Dist. Ct., D. Md.) where it represented a worldwide class of investors and where Colorado PERA served as Lead Plaintiff.

12. While PKA has previously entered into a retainer agreement with SBTK, we have subsequently agreed to enter into a superseding Joint Prosecution Agreement that PKA, Colorado PERA, the Tennessee Attorney General, TCRS, AP4, AP7, Entwistle & Cappucci and SBTK have executed in connection with this litigation.

13. The Joint Prosecution Agreement provides, among other things, a ceiling on our Proposed Co-Lead Counsel's hourly rates as well as a ceiling on total fees that counsel may request from the Court if we obtain a recovery that the Global Pension Funds believe to be in the best interests of the Class warranting the Court's approval. We understand and acknowledge that the ultimate award of attorney's fees and expenses is in the Court's discretion.

14. The Joint Prosecution Agreement also requires the Global Pension Funds' consent to non-routine litigation expenses, such as retaining experts, and provides that the Global Pension

Funds will review, comment upon, and authorize all filings made with this Court. In addition, this Joint Prosecution Agreement provides for regular telephone conferences among the Global Pension Funds during which we will discuss and determine litigation strategies and make any decisions that we believe are required to ensure that we and Proposed Lead Counsel continue to represent the best interests of the Class. The Global Pension Funds have also agreed on how we will work together in this litigation and how we will resolve disputes if they should arise.

15. The Global Pension Funds treat their Joint Prosecution Agreement as protected by the attorney-client privilege, but are pleased to submit it for the Court's *in camera* review if such submission will aid the Court in its consideration of the Lead Plaintiff applications.

16. Since deciding to seek appointment as Lead Plaintiffs and authorizing and directing our Proposed Lead Counsel to file the Complaint and motions for interim relief for the Class, as discussed above, the Global Pension Funds have engaged in several telephone conferences concerning the competing lead plaintiff motions, our responses thereto, and our goals for continuing to prosecute the claims against Citigroup and the other defendants named in our Complaint in the best interests of the Class that we seek to represent.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25 day of January, 2008.

Pensionskassernes Administration A/S

By: _____
Annegrete Birck Jakobsen
*Director*

By: _____
Michael Nellemann Pedersen
*Director*

ANTAI S.06