**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN,<br><br>Defendants. | CIVIL ACTION NO. 07-9901-SHS |
| LENNARD HAMMERSCHLAG, Individually, and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br>CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, GARY CRITTENDEN,<br><br>Defendants. | CIVIL ACTION NO. 07-10258-RJS |

**DECLARATION OF PROFESSOR BRUCE A. GREEN IN SUPPORT OF THE MOTION OF THE OHIO STATE TEACHERS RETIREMENT SYSTEM FOR DISQUALIFICATION OF COUNSEL**

I, Bruce A. Green, declare:

1.    I am the Stein Professor at Fordham University School of Law, and a member of the bars of New York State and the Southern District of New York, among others. I have been retained on behalf of the Ohio Attorney General's Office and the Ohio State Teachers Retirement System ("Ohio STRS") to render an objective expert opinion in support of Ohio STRS's motion to disqualify the law firms of Schiffrin Barroway Topaz & Kessler LLC ("Schiffrin Barroway")

and Entwistle & Cappucci LLP ("Entwistle") from serving as counsel for "the Global Pension Funds," a group of parties seeking appointment as Lead Plaintiff in this action.

## QUALIFICATIONS

2.      A copy of my professional vita is attached. Since 1987, I have been a member of the full-time faculty of Fordham University School of Law, where I direct the Louis Stein Center for Law and Ethics. I previously served as a law clerk to Judge James L. Oakes of the U.S. Court of Appeals for the Second Circuit, as a law clerk to Justice Thurgood Marshall of the U.S. Supreme Court, and as an Assistant United States Attorney for the Southern District of New York.

3.      I have regularly taught courses in the area of legal ethics at Fordham and elsewhere since 1987, I speak frequently at CLE programs on the subject of legal ethics, and I have authored a variety of scholarly articles and other writings in the area of legal ethics, including on the subject of conflicts of interest in litigation. *See, e.g.*, Bruce A. Green, *Conflicts of Interest in Litigation: The Judicial Role*, 65 Fordham L. Rev. 71 (1996).

4.      I have engaged in various other professional work relating to legal ethics. Nationally, I serve as a member of the Multistate Professional Responsibility Examination drafting committee, and I co-chair the ABA Criminal Justice Section's Committee on Ethics, Gideon and Professionalism. I have previously served as chair of the ABA Litigation Section's Committee on Ethics and Professionalism, as a member of the ABA Litigation Section's Task Force on Settlement Ethics, as reporter to the ABA Commission on Multijurisdictional Practice, and as chair of the Section on Professional Responsibility of the Association of American Law Schools.

5.      On the state and local level, I currently serve as a member and past chair of the New York State Bar Association's Committee on Professional Ethics and as a member of the New York State Bar Association's Committee on Standards of Attorney Conduct. I previously served as a member of the Departmental Disciplinary Committee of the New York State Supreme Court, Appellate Division, First Department, and as a member of the Committee on

Professional and Judicial Ethics of the Association of the Bar of the City of New York. However, I render opinions in my individual capacity and do not speak on behalf of any of these or other entities.

## RELEVANT FACTS

6.    For purposes of rendering an opinion, I have reviewed the Declaration of Marc Dann and William J. Neville ("Declaration"). I have been asked to assume that the facts set forth therein are true and that there are no significant additional facts. Additionally, I have reviewed the memoranda of law in support of the respective competing motions of the U.S. Public Fund Group and the Global Pension Funds for appointment as Lead Plaintiff.

## DISCUSSION

7.    This Court set forth some of the general principles governing disqualification motions in *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273 (S.D.N.Y. 2004), in which it disqualified a law firm from representing the plaintiffs because the defendants had previously confided relevant information to the law firm in a substantially related representation. Among other things, this Court observed that the relevant disciplinary rules "provide valuable guidance" but "are not binding," and that doubts should be resolved in favor of disqualification. *Id.* at 275. Further, this Court referred to the Second Circuit's earlier observation in *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979), that "disqualification is generally appropriate" in "two types of cases."

8.    The Second Circuit's opinion in *Bd. of Educ. v. Nyquist, supra*, referred to two situations where disqualification is most likely to be appropriate. The first is where the law firm is adverse to a current client, thereby raising questions about the firm's loyalty and the vigor of its representation. *Nyquist*, 590 F.2d at 1246. As the Second Circuit recently reaffirmed in *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005), "it is 'prima facie improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." The other, more common type of case, of which *Blue Planet Software* was an example, is "where the attorney is at least potentially in a position to use

3

privileged information concerning the other side through prior representation . . . thus giving his present side an unfair advantage." *Nyquist*, 590 F.2d at 1246.

9.      As discussed below, Ohio STRS's motion presents both grounds for disqualification, because Schiffrin Barroway is directly adverse to a current client in a proceeding in which it can use the current client's confidences to disadvantage it.  Schiffrin Barroway currently represents Ohio STRS in the Merrill Lynch securities class action in which Ohio STRS seeks appointment as Lead Plaintiff, which action is part of the Ohio Attorney General's broader enforcement efforts relating to misconduct in the mortgage lending and finance industries. Schiffrin Barroway has consulted with the Ohio Attorney General's Office directly and through other outside counsel about the broader efforts, including the Citigroup action.  In the context of the representation, the law firm received confidential information of the Ohio Attorney General's Office and Ohio STRS concerning Ohio STRS's financial interest and strategy in the Citigroup action.  In now representing the Global Pension Funds seeking Lead Plaintiff status in the instant Citigroup securities class action, and opposing Ohio STRS's application and that of others in the U.S. Public Fund Group to serve as Lead Plaintiff, Schiffrin Barroway represents one set of clients adversely to another current client in one of the very matters in which it has conferred with the current client.

*Adversity to current clients*

10.      The rules of professional conduct forbid a lawyer from representing a party that is directly adverse to another current client unless both clients consent.  In the New York Code of Professional Responsibility ("New York Code"),[1] the applicable provision is Disciplinary Rule ("DR") 5-105; in the ABA Model Rules of Professional Conduct ("ABA Model Rules"), the applicable provision is Rule 1.7(a).  Rule 1.7(a)(1) explicitly provides that a lawyer has a conflict, requiring client consent, if "the representation of one client will be directly adverse to

---

[1] The local rules of the Southern District of New York require lawyers in federal district court proceedings to comply with the New York Code, as interpreted by the federal courts of the district. *See* Local Civil Rule 1.5(b)(5).

another client." DR 5-105 does not explicitly incorporate this concept, but it is well understood to do so implicitly. *See, e.g.*, Ass'n of the Bar of the City of New York, Comm. on Prof'l and Jud. Ethics, Formal Op. 2001-3 (2001) ("In New York . . . a lawyer is precluded, at least prima facie, from representing one client in a matter directly adverse to another current client, even though the representation of the other client is in an entirely unrelated matter."); *see also* Restatement (Third) of the Law, The Law Governing Lawyers, § 128, cmt. e (2000); *Stratagem Dev. Corp. v. Heron Int'l N.V.*, 756 F. Supp. 789 (S.D.N.Y. 1991)*; Ambac Indem. Corp. v. Bankers Trust Co.*, 546 N.Y.S.2d 265, 269 (App. Div. 3d Dept. 1989); *Aerojet Properties Inc. v. State of New York*, 530 N.Y.S.2d 624 (App. Div. 3d Dept. 1988). One reason for the restriction is that "[t]he client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively." ABA Model Rules, Rule 1.7, cmt [6]. The conflict is imputed to all members of a law firm. *See* New York Code, DR 5-105(D); ABA Model Rules, Rule 1.10(a); *see also Hempstead Video, Inc.*, 409 F.3d at 133 ("An attorney's conflicts are ordinarily imputed to his firm based on the presumption that 'associated' attorneys share client confidences.") (citing New York Code, DR 5-105(D)).

11.    In this lawsuit, Schiffrin Barroway represents applicants for Lead Plaintiff status who are directly adverse to other current clients, the Ohio Attorney General's Office and Ohio STRS. This is true even though the law firm's clients and Ohio STRS are not opposing parties in the lawsuit but, as potential Lead Plaintiffs, are generally aligned in interest. It is enough to implicate the conflict-of-interest rules that the respective parties are directly adverse with respect to the competing applications to serve as Lead Plaintiff. The case law and professional literature firmly establish that the need for client consent to represent one client that is directly adverse to another is not limited to cases in which parties are on opposite sides of a litigation as plaintiff and defendant, but includes contexts where the parties are opposed with respect to a particular stage of the litigation. For example, direct adversity is present when a lawyer, on behalf of a party, will cross-examine a current client who is an adverse witness. *See, e.g., Hernandez v.*

5