*Paicius*, 134 Cal. Rptr. 2d 756, 766 (Cal. App. 2003) ("The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship."); *Burgos v. Giannakakos*, No. 970344178S, 1998 Conn. Super. LEXIS 3328 (Conn. Super. Nov. 23, 1998); *Narel Apparel Ltd. v. American Utex Int'l.*, 460 N.Y.S.2d 125 (N.Y. App. Div. 1983). Likewise, direct adversity exists when the lawyer's client seeks discovery from another current client that opposes providing the material being sought. *See, e.g.*, ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-367 (1992) ("A lawyer who in the course of representing a client . . . conducts third party discovery of [another] client in such a matter, will likely face a conflict that is disqualifying in the absence of appropriate client consent. Any such disqualification will also be imputed to other lawyers in the lawyer's firm."); *In Re Suard Barge Services, Inc.*, No. 96-3185, 1997 U.S. Dist. LEXIS 12364 (E.D. La. Aug. 18, 1997) (finding that merely moving for disclosure of records by a current client was not directly adverse to the client, but that subsequently moving to compel disclosure and for sanctions was). Indeed, there need not be litigation at all to trigger the conflict rule. A lawyer's representation of a client in negotiations with another party is "directly adverse" to the other party. Ass'n of the Bar of the City of New York, Comm. on Prof'l and Jud. Ethics, Formal Op. 2001-3; ABA Model Rule 1.7, cmt. [7]; Roy Simon, *Simon's New York Code of Professional Responsibility Annotated* 771 (2006 ed.). Similarly, there is direct adversity "where one client seeks the lawyer's advice as to his legal rights against another client whom the lawyer represents on a wholly unrelated matter." ABA Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 05-434 (2004) (observing that "a lawyer would be precluded by Rule 1.7(a) from advising a client as to his rights under a contract with another client of the lawyer, or as to whether the statute of limitations has run on potential claims against, or by, another client of the lawyer" because "[s]uch conflict involves the legal rights and duties of the two clients vis-á-vis one another.").

      12.    That Schiffrin Barroway's clients in this case are public entities does not change the analysis. This is not a situation where a law firm is adverse to a different government

department or agency from the one it currently represents. *Compare Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp.2d 276 (S.D.N.Y. 2001). Here, Schiffrin Barroway is adverse to the same government entities that it currently represents in another case and with which it previously consulted about this case. Ohio's Attorney General and Ohio STRS have the same right to demand its lawyers' loyalty and confidentiality, and to assert the protection of the conflict rules, as any other client. *See, e.g., British Airways, PLC v. The Port Authority of N.Y. and N.J.*, 862 F.Supp. 889 (E.D.N.Y. 1994) (disqualifying law firm from representing plaintiff in a negligence action against the Port Authority while simultaneously defending it in personal injury actions).

13. This is not a case where the movant delayed seeking disqualification or is simply seeking a tactical advantage. The Declaration of Ohio's Attorney General and Ohio STRS's General Counsel reflect that their formal procedures for retaining counsel identify their concern about conflicts of interest; that they perceive Schiffrin Barroway's representation of the competing applicants as not only disloyal but also as involving the potential exploitation of confidential client information; and that they immediately objected to Schiffrin Barroway's involvement and sought to persuade the law firm to withdraw.

14. It would not be a legitimate solution for Schiffrin Barroway to withdraw from representing Ohio STRS in the Merrill Lynch matter so that it will no longer be litigating against a current client. A law firm may not drop a current client like a "hot potato" in order to represent another client against it. *See Stratagem Dev. Corp. v. Heron Int'l., N.V., supra; Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.*, 345 F. Supp. 93 (S.D.N.Y. 1972); Restatement (Third) of the Law Governing Lawyers § 132, cmt. c (2000).

15. Further, even if Schiffrin Barroway properly may end its representation of Ohio STRS (which it may not), the representation of competitors for Lead Plaintiff status in this case would still be improper under the former-client disqualification rules because the Ohio Attorney General and Ohio STRS conferred with Schiffrin Barroway and reposed relevant confidences in the firm. Schiffrin Barroway consulted with the Ohio Attorney General and Ohio STRS

7

regarding Ohio's general enforcement initiative, including regarding the current action against Citigroup, Inc., and disclosed information in confidence that could be used on behalf of Schiffrin Barroway's current clients, and adversely to Ohio STRS, in proceedings over who should serve as Lead Plaintiff. DR 5-108(A) of the New York Code, which governs representations adverse to a former client, provides: "[A] lawyer who has represented a client in a matter shall not, without consent of the former client after full disclosure . . . [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." The rule is designed to protect against the misuse of the former client's confidential and privileged information. *See Fierro v. Gallucci*, No. 06-CV-5189 (JFB) (WDW), 2007 U.S. Dist. LEXIS 89296 *17-18 (E.D.N.Y. Dec. 4, 2007); *see also Blue Planet Software, Inc. v. Games Int'l, LLC, supra.*

16.     A court might be tempted in a case such as this one simply to refer Schiffrin Barroway's conduct to the relevant disciplinary authorities, on the theory that the law firm's adversity to a current client will end once the Court selects a Lead Plaintiff; that the law firm's potential misuse of client confidences has already occurred and its current clients are unlikely to obtain any further advantage from Schiffrin Barroway's access to the confidences of the Ohio Attorney General and Ohio STRS; and that disqualifying the law firm will prejudice its current clients. However, this approach would also overlook both (1) the unfairness to Ohio STRS of being opposed by its own law firm, Schiffrin Barroway, in a proceeding in which the law firm's application for appointment of a competing Lead Plaintiff presumptively exploited Ohio STRS's confidential information; and (2) the risk that Schiffrin Barroway's continued opposition to Ohio STRS's application in this lawsuit will further erode its lawyer-client relationship with the Ohio Attorney General's office and Ohio STRS in the Merrill Lynch securities class action and thereby impair the lawyer's ability to represent the client effectively.

*Disqualification of co-counsel*

17.     Assuming that the Court disqualifies Schiffrin Barroway in this lawsuit, the question remains whether it must also disqualify Entwistle. Unlike Schiffrin Barroway, Entwistle does not currently represent the Ohio Attorney General and Ohio STRS in another lawsuit, and in general, the disqualification of one law firm in a litigation does not require disqualifying other law firms that serve as co-counsel. The disqualification of co-counsel is appropriate, however, if the disqualified lawyer has conveyed prejudicial, confidential information about the moving party to co-counsel, or if the disqualified law firm's relationship with co-counsel is so close that it presumably transmitted such information. *See Patriot Scientific Corp. v. Moore*, No. 05-1452, 2006 U.S. App. LEXIS 9285 (Fed. Cir. Apr. 12, 2006); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977); *Burnett v. Olson*, No. Civ. A 04-2200, 2005 U.S. Dist. LEXIS 4849 (E.D. La. Mar. 18, 2005). In this case, after the Ohio Attorney General's Office and Ohio STRS conveyed relevant strategic information to Schiffrin Barroway but decided not to retain either firm as potential lead counsel, Schiffrin Barroway and Entwistle evidently collaborated in forming a Lead Plaintiff 'group' with the specific intention to defeat Ohio STRS' Lead Plaintiff motion (Declaration at ¶ 12). If the Court finds that in the course of this endeavor, the two law firms would likely have shared and made joint use of the movants' confidences, it would be appropriate to disqualify Entwistle along with Schiffrin.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on January 25, 2008

_____
Bruce A. Green

**BRUCE A. GREEN**
Louis Stein Professor of Law
Fordham University School of Law
140 West 62nd Street
New York, NY 10023
(212) 636-6851; (212) 636-6899 (FAX)
bgreen@law.fordham.edu

### Bar Admissions

New York State (since 1982)
U.S. District Courts for the Southern and Eastern Districts of New York
U.S. Court of Appeals for the Second Circuit
U.S. Supreme Court

### Education

**Columbia University School of Law**: J.D. 1981
    Honors: James Kent Scholar; Harlan Fiske Stone Scholar
    Associate Editor, *Columbia Law Review*

**Princeton University**: A.B. 1978, *summa cum laude*

### Current Legal Employment

**Fordham University School of Law**:
    Louis Stein Professor of Law, since 1997
    Professor, 1996-97; Associate Professor, 1987-96
    Director, Louis Stein Center for Law and Ethics, since 1997
    Director, Stein Center for Ethics and Public Interest Law, 1992-97
    Responsible for teaching courses in the areas of legal ethics, criminal law and criminal procedure, and for overseeing the Stein Scholars Program

**New York University School of Law**: Visiting Professor: January-May 2007

### Prior Full-time Legal Employment

**Office of the United States Attorney for the Southern District of New York**:
    October 1983 to August 1987, Assistant United States Attorney
    Deputy Chief Appellate Attorney, 1986-87; Chief Appellate Attorney, 1987

**U.S. Supreme Court**: Law clerk to Justice Thurgood Marshall, 1982-83

**U.S. Court of Appeals for the Second Circuit**: Law clerk to Judge James L. Oakes, 1981-82

## Other Legal Positions

**Departmental Disciplinary Committee, App. Div., 1st Department**: Member, 1997-2002

**New York City Conflicts of Interest Board**: Member, Nov. 1995 to March 2005

**Handschu Authority**: Civilian member, July 1994 to Nov. 1995

**Office of Investigations Officer (U.S. v. I.B.T.)**: Special Counsel (part-time), 1991

**Office of Independent Counsel Lawrence Walsh**, Associate Counsel (part-time), 1988-91

**New York State Commission on Government Integrity**: Consultant and special investigator, 1988-90

**Columbia University School of Law**: Adjunct Professor (part-time), 1990

**Office of the United States Attorney for the Southern District of New York**: Special Assistant United States Attorney (part-time), September 1987 to June 1988

**Fordham University School of Law**: Adjunct Assoc. Professor (part-time), 1985-87

## Professional Service

**American Bar Association**:
    Criminal Justice Section:
        Ethics, Gideon and Professionalism Committee: co-chair, 2006 to present
    Commission on the American Jury Project: member, 2006 to present
    Commission on Multijurisdictional Practice: reporter, 2000-02
    Coordinating Group on Bioethics and the Law: member, 1997-2003
    Death Penalty Representation Project: member, 2006 to present
    Section of Litigation:
        Task Force on the Litigation Research Fund: Chair, 2007 to present
        Division VII (Task Forces): Co-Director, 2007 to present
        Council member, 2004-07
        Committee on Law Faculty Involvement: co-chair, 1998-2001, 2003-04
        Civil Justice Institute: member, 2001-03
        Task Force on Ethical Guidelines for Settlement Negotiations: member, 2000-02
        Ethics 2000 Task Force: member, 1999-2000
        Committee on Ethics and Professionalism: co-chair, 1995-98
        Task Force on the Independent Counsel Act: reporter, 1997-99
        Rep. to Sec./Div. Committee on Professionalism and Ethics, 1996-2003
        Committee on Amicus Curiae Briefs: chair, 1991-95

**American Bar Association (continued)**:
    Standing Committee on Professionalism: reporter, 2000-2001
    Steering Committee for the Symposium on the Multijurisdictional Practice of Law: reporter, 1999-2000
    Task Force on the Attorney-Client Privilege: reporter, 2004 to present
    Task Force on Law Schools and the Profession: consultant, 1991-92

**Association of American Law Schools:** Chair, Section of Professional Responsibility, 1999

**Association of the Bar of the City of New York**:
    Delegate to NYS Bar Association, 2003-07
    Committee on Professional and Judicial Ethics: member, 1994-97, 2003-06
    Nominating Committee: member, 2005
    Ethics 2000 Committee: member, 1999-2001
    Jt. Committee on the Legal Referral Service: chair, 1993-96; member, 1996-2000
    Committee on International Access to Justice: member, 1999-2000
    Committee on Disaster Plan: member, 1996-97
    Marden Lecture Committee: member, 1991-94
    Criminal Law Committee: member, 1991-94
    Task Force on Lawyer Training: member, 1992-94
    Corrections Committee: member, 1988-91

**Criminal Law Bulletin**: Contributing editor, 1988-98

**Evan B. Donaldson Adoption Institute**: Ethics Advisory Committee: member, 1998-2001

**Federal Bar Council**:
    Second Circuit Courts Committee: member, 1994-97; chair, Subcommittee on Criminal Law and Ethics
    *Federal Bar Council News*: member of the Editorial Board, 1995 to present
    Inn of Court: master, 2000-02

**Fund for the City of New York:** Member of Advisory Committee for the New York Housing Court Online Preparation System (COPE), 1999

**National Conference of Bar Examiners:** Member of MPRE Drafting Committee, 2001 to present

**New York County Lawyers' Association**:
    Director, 2004-07
    Member of Justice Center advisory board, 2003 to present