KIRBY McINERNEY LLP
Roger W. Kirby
Peter S. Linden
Ira M. Press
830 Third Avenue, 10th Floor
New York, NY  10022
(212) 371-6600

Attorneys for Movant, The ATD Group

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN,<br><br>Defendants. | Civil Action No.<br>07 CIV 9901 (SHS) |
| LENNARD HAMMERSCHLAG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, and GARY CRITTENDEN,<br><br>Defendants. | No. 07 CIV 10258 (SHS) |

**REPLY MEMORANDUM OF THE ATD GROUP IN FURTHER
SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

## TABLE OF CONTENTS

Page No.

**TABLE OF AUTHORITIES** .................................................................. ii

**ARGUMENT** .................................................................................. 1

I.    THE ATD GROUP HAS THE LARGEST FINANCIAL INTEREST, AND IS PRESUMPTIVELY THE MOST ADEQUATE PLAINTIFF ........... 1

II.    THERE IS NEITHER TRUTH NOR MERIT TO THE ATTACKS ON THE ATD GROUP'S TYPICALITY .................... 3

    A.    The ATD Group Had No Non-Public Information ................. 4

    B.    No Member of The ATD Group Is A Director or Officer of ATD or any other Citigroup Entity .......................... 7

    C.    The Other Challenges Are Without Merit, If Not Frivolous ......... 8

**CONCLUSION** ............................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Constance Sczesny Trust v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) .................................................. 5

*CooperSmith v. Lehman Bros., Inc.*,
   344 F. Supp. 2d 783 (D. Mass. 2004) ............................................ 7

*Ferrari v. Impath, Inc.*,
   No. 03-5567, 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ............... 5, 10

*Grace v. Perception Tech. Corp.*,
   128 F.R.D. 165 (D. Mass. 1989) .................................................. 6

*Grand Lodge of Pa. v. Peters*,
   No. 07-479, 2007 WL 1812641 (M.D. Fl. June 22, 2007) .................... 1

*In re Century Bus. Servs. Sec. Litig.*,
   202 F.R.D. 532 (N.D. Ohio 2001) ................................................ 1

*In re Critical Path, Inc. Sec. Litig.*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) .......................................... 7

*In re Indep. Energy Holdings PLLC Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) .................................................. 6

*In re Livent Inc. Noteholders Sec. Litig.*,
   211 F.R.D. 219 (S.D.N.Y. 2002) .................................................. 7

*In re Network Assocs. Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ........................................... 7

*In re Oca, Inc. Sec. Litig.*,
   No. 05-2165 (E.D. La. Nov. 18, 2005) ........................................... 9

*In re Oxford Health Plans, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) .................................................. 3

*In re Peregrine Sys. Inc. Sec. Litig.*,
   No. 02-870, 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) . . . . . . . . . . . . . . . . . 7

*In re Star Gas Sec. Litig.*,
   No. 04-cv-1766, 2005 WL 818617 (D. Conn. April 8, 2005) . . . . . . . . . . . . . . . 1

*In re Veeco Instruments Sec. Litig.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Vivendi Universale, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re WorldCom Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mallet v. Li & Fung, Ltd.*,
   No. 95-8917, 1997 WL 621111 (S.D.N.Y. Oct. 6, 1999) . . . . . . . . . . . . . . . . . . 5

*Montoya v. Herley Indus. Inc.*,
   No. 06-2596, 2006 WL 3337485 (E.D. Pa. Nov. 14, 2006) . . . . . . . . . . . . . . . . 9

*Pirelli Armstrong Tire Corp. v. Labranche & Co., Inc.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Schoenfield v. Dendreon Corp.*,
   No. 07-800, 2007 WL 2916533 (W.D. Wash. Oct. 4, 2007) . . . . . . . . . . . . . . . . 6

*Shiring v. Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sofran v. LeBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Strougo v. Brantley Capital Corp.*,
   243 F.R.D. 100 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vladimir v. Bioenvision, Inc.*,
   No. 07 Civ. 6416, 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) . . . . . . . . . . . 10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) .................................... 10

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ......................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iv) ........................................... 9

# ARGUMENT

The ATD Group is the only one of the movant groups with pre-litigation mutual interests, its members number persons of significant attainments, its financial interests are greater than those of the USPF[1] however measured, and of the GPF however properly measured. The ATD Group is the only movant that was a net purchaser of Citigroup shares during the class period, and neither of the other groups is a proper aggregate.[2] There is no basis for rebuttal of the presumption that The ATD Group is the most adequate plaintiff, a subject to which we now turn.

## I.   THE ATD GROUP HAS THE LARGEST FINANCIAL INTEREST, AND IS PRESUMPTIVELY THE MOST ADEQUATE PLAINTIFF

We have nothing to add beyond what was said in our opposing brief that, however measured, The ATD Group's loss of $ 70.7 million (*see* II.A, *infra*) represents the largest financial interest relative to the other movants. Whether aggregated or not, whether measured by FIFO or LIFO, The ATD Group prevails over the USPF on each of the four

---

[1] "USPF" refers to the U.S. Public Fund Group, "GPF" to the Global Pension Funds. "ATD Opp Br" refers to the ATD Group's January 28, 2008 Opposition Brief. "USPF Opp Br" to the USPF's January 28, 2008 Opposition Brief. "GPF Opp Br" refers to the GPF's January 28, 2008 Opposition Brief. "Linden Reply Aff" refers to the February 7, 2008 Reply Affidavit of Peter Linden filed herewith.

[2] To mask its net seller status, the USPF contends that it should not be considered a net class period seller because the Court should only consider the shorter of the two class periods for which notice was provided to the class. *See* USPF Opp. Br at 1. Courts, however, routinely reject such procrustean efforts by utilizing the most inclusive alleged class period for which notice was provided to the class when measuring competing lead plaintiff movants' financial interests. *See Grand Lodge of Pa. v. Peters*, No. 07-479, 2007 WL 1812641, at *2 (M.D. Fl. June 22, 2007); *In re Star Gas Sec. Litig.*, No. 04-cv-1766, 2005 WL 818617, at *7 (D. Conn. April 8, 2005); *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001).

pertinent factors. (*See,* ATD's Opp. Br. at I.B.) Similarly, by application of the favored LIFO method, The ATD Group prevails on all four factors against the dis-aggregated GPF, and on three of four when aggregated. (*See,* ATD's Opp. Br. at II.C.) The Chart below recreates Appendix A to ATD's opposition brief, *ex* Professor Altman (*See* II.A, *infra*), and graphically displays the magnitude by which ATD's financial interests surpass those of the competitor movants. (*See also,* Appendices hereto.) The movants do not offer contest to these quantitative verities. (*See,* ATD Opp Br at I.B.1.)



We have little to add to what we said about how the USPF and the GPF are improper groups because they have been assembled solely in response to the litigation. (*See,* ATD Opp. Br. at I.A, II.B.) We do however note that the USPF endorses the view that the GPF is an improper group (USPF Opp Br at II.A, B), leaving us to wonder why recognition

2

of the same underlying principle has not prompted the USPF to concede its own disaggregation. We endorse and join in the USPF's particular criticism of the role of one of the GPF counsel in the formation of that made-for-litigation assembly.

## II. THERE IS NEITHER TRUTH NOR MERIT TO THE ATTACKS ON THE ATD GROUP'S TYPICALITY

Because The ATD Group has the largest financial interest and, therefore, is presumptively the most qualified plaintiff, the other movants are left to contend that it is not typical for the various reasons addressed immediately below. The touchstone for typicality is whether the putative representative has suffered "the same or similar injuries arising out of or being caused by defendants'...conduct" as has the other class members. *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). *See*, GPF Opening Br at 8-9 (collecting authorities to same effect).

All agree that the root claims in this proceeding are that defendants concealed (a) Citigroup's exposure to subprime losses, (b) the guarantees that were provided to purchasers of CDOs, and (c) Citigroup's ultimate liability for its off-balance sheet SIVs, which caused Citigroup's stock to trade at artificially inflated prices (*see* USPF 1/7/08 Opening Br at 4-5; GPF 1/7/08 Opening Br at 3-4). These are precisely the claims of The ATD Group. Its injuries in respect of the value of the publicly traded and NYSE priced Citigroup securities that its members acquired were caused by precisely the same misconduct

that caused injuries to every other class member.[3] We now turn to the other contentions of the competing movants.

### A. The ATD Group Had No Non-Public Information

Our opening papers supplied the declaration of David Whitcomb, a Finance Professor at Rutgers University and former ATD Chairman. He swore under penalty of perjury that neither he nor any other member of the Group received any non-public information, and were confined to Citigroup's SEC filed materials: "To put a sharp point on it, neither I, nor any of the other members of The ATD group, was provided with access to any non-public information concerning Citigroup's finances, assets, business, or value. Nor did we receive any non-public representations concerning Citigroup's financial condition or prospects." (1/7/08 Press Aff Ex. E, at 2.) In response to the speculation *contra* by the other movants, each and every member of the Group has executed and filed his or her own declaration affirming the same (*see*, ¶2 of the declarations of H. Whitcomb, Professor and Mrs Altman, Jonathan Butler and David Diamond, attached as Exs. B-D to the Linden Reply Aff. Although he had no non-public information, because Professor Altman provides intermittent consulting to an array of institutions, including Citigroup, he and his wife are

---

[3] The USPF's argument that the ATD Group did not acquire Citigroup shares at the public market price (*see* USPF Opp Br at p. 18, n.16) is clearly incorrect and contradicted by documents in the record. The ATD Group did not receive their shares until after the October 2007 closing of the ATD transaction, but the price was set by agreement dated June 30, 2007 – a fact expressly referenced by the previously-filed declaration of David Whitcomb. All of The ATD Group members previously filed plaintiff certifications that reference that they purchased their Citigroup shares on June 30, 2007. *See* 1/7/08 Press Aff Ex. C. There is no dispute that Citigroup stock was then trading in $52 per share range. *See* Linden Reply Aff Ex. E.

withdrawing from the Group to preclude any possible controversy whatsoever. This withdrawal effects no material change for The ATD Group's supremacy in respect of the factors considered in measuring financial interest (*See,* Chart *supra*; Appendices hereto).

The competing movants are thus left to speculate that, nevertheless, The ATD Group is atypical, because it *may have* received inside information. Mere speculation respecting a presumptive lead plaintiff cannot defeat the presumption, especially in the face of sworn statements to the contrary. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requring "proof" of inadequacy or atypicality); *Ferrari v. Impath, Inc.*, No. 03-5567, 2004 WL 1637053, at *6 (S.D.N.Y. July 20, 2004) (speculation insufficient); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (Stein, J.) (conclusory assertions insufficient); *Sofran v. LeBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (same). Courts also repeatedly reject speculative challenges that an investor might be subject to unique reliance defenses because the investors "might" have "relied on their own conversation with ... management," etc., absent evidence that "any of the named plaintiffs had access to non-public information and learned that there was a fraud afoot and decided nonetheless to invest." *In re WorldCom Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003).[4] Where, as here, the movant unequivocally denies having received any non-public information, courts

---

[4]   The notion that The ATD Group received material non-public information is counterintuitive. Who would acquire Citigroup stock at $52 knowing of information that would soon send the stock below $30? *See also Mallet v. Li & Fung, Ltd.*, No. 95-8917, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1999) ("if the plaintiff has received information from company insiders that confirms . . . publicly available market information, that plaintiff is an appropriate class representative").

also consistently disregard challenges based on speculation that a movant is atypical because of personal discussions with management or acquisitions through private transactions. *See, e.g., Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007) (challenge rejected despite evidence of relationships with defendants' chairman, where movant "maintains that this relationship had no impact on its ability to represent the interest of the Class here"); *Schoenfield v. Dendreon Corp.*, No. 07-800, 2007 WL 2916533, at *4-5 (W.D. Wash. Oct. 4, 2007) (rejected reliance-based challenges to movant who had connections to defendant board members where movant filed declaration rebutting inferences of inside information); *In re Vivendi Universale, S.A. Sec. Litig.*, 242 F.R.D. 76, 89-90 (S.D.N.Y. 2007) (Court rejected challenge to representative who was a cousin of defendants, where the defendants "do not point to any evidence...of the receipt of non-public information.").

None of the cases relied by USPF or GPF disqualified a movant in the face of declarations from all movants denying receipt of non-public information and describing what they did receive. In fact, some of competing movants' purported "authorities" actually stand for the rejection of the very challenges they raise here.[5] ATD Group member David

---

[5] While denying the applications of plaintiffs who received non-public information, courts granted applications of other plaintiffs who were not shown to have received such information through their allegedly unique transactions or relationships. In *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 168-169 (D. Mass. 1989), the court denied challenges to (a) a movant who was a personal friend of one of defendant's employees and (b) another who performed consulting services for defendant, where plaintiffs insisted that they invested on the basis of public information, and there was no proof otherwise. Similarly, in *In re Indep. Energy Holdings PLLC Sec. Litig.*, 210 F.R.D. 476, 483-84 (S.D.N.Y. 2002) movants appointed notwithstanding conversations with insiders where plaintiffs "testified that they never had any communications with [the defendant] regarding [the stock in question]."

Whitcomb described the public materials that the Group members had access to in connection with their transactions, and confirms that these materials were the "sole sources of information" that the Group members had. The other ATD Group members have confirmed this to have been so. *See* Linden Reply Aff Exs. B-D. Defendants' proffered authorities for disqualification involved evidence that the movant had received non-public information or no clear assertion *contra*.[6]

### B.    No Member of The ATD Group Is A Director or Officer of ATD or any other Citigroup Entity

The USPF alleges that one or more members of the Group has remained a director or officer of ATD and thus has been privy to Citigroup inside information or is otherwise conflicted. (*See*, USPF Opp Br at 18.) The challenge is unfounded, as each of the members of the Group has sworn in declarations accompanying this submission. (*See*, Linden

---

[6]   *See Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007) ("plaintiff conceded" that information from face-to-face meetings with defendants "influenced his decision to purchase"); *In re Network Assocs. Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (evidence of "confidential information" provided by defendants); *In re Razorfish Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (plaintiff acquired her shares pursuant to a divorce settlement with one of the founders of a company whose "integration into *Razorfish* is the central disputed issue in this case."); *CooperSmith v. Lehman Bros., Inc.*, 344 F. Supp. 2d 783, 788 (D. Mass. 2004) (no indication that plaintiff submitted evidence of reliance on only public information); *In re Peregrine Sys. Inc. Sec. Litig.*, No. 02-870, 2002 WL 32769239, at *5-7 (S.D. Cal. Oct. 11, 2002) (only half of the group members submitted declarations attesting to the issue of reliance, and only one definitively states that he saw only public information.); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2001) (declaration of plaintiff did not describe the information actually relied upon.); *In re Livent Inc. Noteholders Sec. Litig.*, 211 F.R.D. 219, 222-23 (S.D.N.Y. 2002) (plaintiffs admitted non-reliance on the misleading financial documents, and no efficient market presumption was available.)

7

Reply Aff Ex. A, ¶2, and Exs. B-D, ¶4.)[7] Mr Whitcomb also declares that "Chairman Emeritus" means just that; he is "retired,"(Linden Reply Aff Ex. A, ¶4), and Professor Altman is withdrawing from the Group to avoid any appearance of conflict on account of his occasional consultancy (*See*, II.A, *supra*).

### C. The Other Challenges Are Without Merit, If Not Frivolous

Opponents' remaining arguments are too insubstantial to warrant any but the shortest shrift. The intimation that the ATD Citigroup transaction might make ATD members "potentially liable to Citigroup investors" (USPF Opp Br at 17, 19) is offered without any citation, and were it not preposterous otherwise, ignores that no member of The ATD Group sold any of the acquired Citigroup shares during the class period. (*See* Ex. C to 1/7/08 Press Aff.) USPF's claim does, however, obliquely concede that the Citigroup shares acquired by The ATD Group members are the same as those acquired by all class members.

The charge that Mr Whitcomb's class period statement that he believed that the loss of Citigroup's market cap to then represent an over-reaction or that the underlying instruments were not that bad (USPF Opp Br at 20; GPF Opp Br at 15), if anything, merely confirms his alignment with the class. As Mr Whitcomb points out in his reply declaration (¶5), he made the statement before the full extent of the writedowns was revealed, and before he had become "aware of the bases for the charges that the writedowns and SIV losses

---

[7] As Mr Whitcomb points out, the website opponents rely on is "obsolete", as confirmed by the absence from it of any mention of the ATD Citigroup transaction and also by the absence of any post closing events. (Linden Reply Aff Ex. A, ¶3.) The site bears a 2008 copyright, which appears to have been automatically amended by Citigroup, which controls it.

themselves had been fraudulently accounted for or concealed. When writedowns are accompanied by issues respecting the financial probity of the entity, in my experience it is a convention that reductions in market capitalization reflect both the fact of the writedowns and the loss of confidence in the integrity of what continues to be reported. Given that, the continuing markdown of Citigroup's market capitalization is entirely comprehensible, and unfortunate." In short, both what he did not know and how he was injured by what Citigroup had been doing and concealing[8] mark Mr Whitcomb as entirely at one with the class. Opponents' authorities that claim that Mr Whitcomb's statement precludes a showing of loss causation do no such thing. They merely hold that sales prior to disclosures do not satisfy loss causation. No ATD member however did that.[9]

Finally, the charge that The ATD Group has failed a PSLRA duty to provide discovery (USPF Opp Br at 23-24) ignores that the PSLRA generally prohibits discovery at this stage, and for good reason.[10] As was pointed out to USPF, entitlement to discovery

---

[8] GPF's own pleading expressly pleads numerous material disclosures concerning Citigroup's misconduct subsequent to November 5, 2007 (*see* Linden Reply Aff Ex. F, at ¶¶ 277-285).

[9] *See, In re Veeco Instruments Sec. Litig.*, 233 F.R.D. 330 (S.D.N.Y. 2005); *In re Oca, Inc. Sec. Litig.*, No. 05-2165, *slip op.* at 11-13 (E.D. La. Nov. 18, 2005) (Ex. 12 to 1/28/08 Entwistle Decl.)

[10] The PSLRA itself provides that discovery is not permitted unless the proponent "first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv). Speculation that a lead plaintiff movant might be able to find evidence of a competing movant's inadequacy by use of discovery is not sufficient basis to compel discovery. *See, e.g., Montoya v. Herley Indus. Inc.*, No. 06-2596, 2006 WL 3337485, at *2 n.2 (E.D. Pa. Nov. 14, 2006) (discovery into legality of movant's short sales is not warranted by SEC charges that movant entered into illegal short sales

would open the door to extensive inquiry into the organization and possibly extraneous purposes of its group.[11]

## CONCLUSION

The ATD Group has the greatest financial interest, and is presumptively the lead plaintiff. There is no basis for rebuttal of the presumption that it is the most adequate plaintiff, and, accordingly, The ATD Group should be appointed lead plaintiff, and its counsel, Kirby McInerney LLP, lead counsel.

Dated:     New York, New York
           February 7, 2008

---

elsewhere); *Ferrari*, 2004 WL 1637053, at *7 (no discovery despite discussions with management concerning possible acquisition). Accordingly, although there have been more than 2,600 securities class actions commenced since the advent of the PSLRA (*see* Linden Reply Aff Ex. H) competing movants can point to fewer than two dozen – less than 1% – in which a movant was permitted to take discovery at the lead plaintiff appointment stage. Courts have made clear that the PSLRA does not permit a wide ranging evidentiary inquiry at the lead plaintiff appointment stage: "a wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Vladimir v. Bioenvision, Inc.*, No. 07 Civ 6416, 2007 WL 4526532, at *14 (S.D.N.Y. Dec. 21, 2007); *Pirelli Armstrong Tire Corp. v. Labranche & Co., Inc.*, 229 F.R.D. 395, 411-12 (S.D.N.Y. 2004) (same).

[11]    *See* Linden Reply Aff Ex. G.

**KIRBY McINERNEY LLP**

By: _____
Roger W. Kirby (RK 4503)
Peter S. Linden (PL 8945)
Ira M. Press (IP 5313)
830 Third Avenue, 10th Floor
New York, NY 10022
Tel: (212) 371-6600

*Proposed Lead Counsel*

**ALLEN BROTHERS, P.L.L.C.**
Kenneth Gold
James Allen, Sr.
400 Monroe, Suite 220
Detroit, MI 48226
Tel: (313) 962-7777

*Additional Counsel for Movant, The ATD Group*

11

Appendix A



# Appendix B
# The Four Factors Test
# Citigroup Lead Plaintiff Movants

| Movant | No. Shares Purchased | Net Shares Purchased | Net Funds Expended | LIFO Loss |
|---|---|---|---|---|
| **ATD Group (ex Altman)** | | | | |
| Jonathan Butler | 1,260,736 | 1,260,736 | $ 65,611,349.00 | $ 23,280,264.63 |
| M. David Diamond | 300,556 | 300,556 | $ 15,641,565.00 | $ 6,020,767.85 |
| David and Henrietta Whitcomb | 2,050,675 | 2,050,675 | $ 106,721,434.00 | $ 41,379,326.77 |
| **Total** | **3,611,967** | **3,611,967** | **$ 187,974,348.00** | **$ 70,680,359.25** |
| | | | | |
| **Global Pension Funds** | | | | |
| Public Employees' Retirement Association of Colorado | 1,036,050 | -741,782 | -$36,101,199.00 | $ 3,888,981.00 |
| Tennessee Consolidated Retirement System | 3,016,500 | -245,204 | -$12,182,705.00 | $ 7,823,847.00 |
| Sjunde AP-Fonden | 682,322 | 304,257 | $ 15,466,278.00 | $ 5,753,858.00 |
| Fjarde AP-Fonden | 3,017,500 | 148,200 | $ 1,385,172.00 | $ 21,896,184.00 |
| Pensionskassernes Administration A/S | 832,700 | 468,667 | $ 22,454,025.00 | $ 7,747,024.00 |
| **Total** | **8,585,072** | **-65,862** | **-$8,978,429.00** | **$ 47,109,894.00** |
| | | | | |
| **U.S. Public Fund Group** | | | | |
| State Teachers Retirement System of Ohio | 2,602,761 | -468,932 | -$27,088,565.00 | $ 5,161,065.66 |
| State Universities Retirement System of Illinois | 689,155 | 27,567 | $ 2,878,274.00 | $ 5,376,065.35 |
| **Total** | **3,291,916** | **-441,365** | **-$24,210,291.00** | **$ 10,537,131.01** |
| | | | | |
| **David Garden** | 206,000 | 160,000 | $ 7,271,205.00 | $ 2,130,405.00 |



Appendix C