**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN,<br><br>Defendants. | **CIVIL ACTION NO. 07-9901-SHS**<br><br>**ECF Filed** |
| LENNARD HAMMERSCHLAG, Individually, and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br>CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, GARY CRITTENDEN,<br><br>Defendants. | **CIVIL ACTION NO. 07-10258-SHS** |

**THE U.S. PUBLIC FUND GROUP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT.....................................................................................................................3

I. The U.S. Public Fund Group Is The Most Adequate Plaintiff............................................ 3

II. The Global Pension Funds Should Not Be Appointed Lead Plaintiffs............................... 5

A. The Global Pension Funds Were Joined Together By Their Lawyers To Aggregate Their Losses ................................................ 5

B. The Global Pension Funds Lack Cohesion................................................. 8

C. ColPERA and TCRS Are Subject To Unique Defenses Not Applicable To the U.S. Public Fund Group......................................... 9

CONCLUSION..................................................................................................................11

**PRELIMINARY STATEMENT**

Of the three competing groups seeking appointment as Lead Plaintiff, the U.S. Public Fund Group is the most adequate plaintiff and should be appointed as the Lead Plaintiff.[1] The extensive record before the Court establishes that the U.S. Public Fund Group is the only institutional movant that is subject to no unique defenses threatening to derail the litigation to the detriment of the Class. In contrast to other movants, the U.S. Public Fund Group is also the only movant that has provided the Court with a factual basis for concluding that it has and will continue to appropriately monitor and supervise its counsel's conduct of the litigation. Accordingly, with losses exceeding $50 million from its trading in Citigroup shares, the U.S. Public Fund Group has the largest financial interest of any appropriate movant and should be appointed as Lead Plaintiff under the PSLRA.

The application of the "Global Pension Funds" presents a very different story—one that is entirely inconsistent with the PSLRA. The twelve disparate entities from two continents that seek appointment as the Global Pensions Funds have provided no evidence that they are a proper group whose losses can be aggregated for purposes of calculating financial interest under the PSLRA. The evidence that the Global Pension Funds have submitted establishes that they are far from the Lead Plaintiffs envisioned by the PSLRA: an unwieldy aggregation of investors brought together by their lawyers within hours of the Lead Plaintiff deadline in order to surmount the U.S. Public Fund Group's motion. To lend the Court's sanction to such lawyer-driven litigation by appointing the Global Pension Funds as Lead Plaintiffs would undermine the very purpose of the PLSRA. *See, e.g., In re Tarragon Corp. Sec. Litig.*, No. 07-CV-7972, 2007 U.S. Dist. LEXIS 91418, at *4 (S.D.N.Y. Dec. 6, 2007) ("To allow an aggregation of unrelated

---

[1] The U.S. Public Fund Group is comprised of the State Teachers Retirement System of Ohio ("Ohio STRS") and the State Universities Retirement System of Illinois ("SURS").

plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff. One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation.") (*quoting In re Donkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997)). The Global Pension Funds are likewise tainted by their failure to properly monitor their counsel who, as the record before the Court demonstrates, brought the Global Pension Funds together based on improperly obtained information concerning the financial interest and identity of the members of the U.S. Public Fund Group. Moreover, the Global Pension Funds have failed to oversee their counsel, as one of their counsel had been actively seeking to represent a different class of parties injured by Citigroup's conduct—the ERISA plaintiffs—while simultaneously pursuing appointment as Lead Counsel in this securities action. It was not until after the Lead Plaintiff filings were made in the securities action that this counsel abandoned the ERISA case in favor of the securities case—demonstrating that counsel, and not the clients, are controlling the litigation.

Furthermore, the members of the Global Pension Funds are, taken individually, inadequate to serve as Lead Plaintiffs. The ten foreign members of that group (from Sweden and Denmark) will likely be challenged based on the questionable effect a judgment of this Court will have in their home jurisdictions. Additionally, the eight Danish members of the group have failed to submit the required Certifications, instead trying to skirt that requirement by having an "administrator" appear on their behalf. Finally, the two U.S. funds (from Colorado and Tennessee) are subject to unique defenses as they both profited from their trading in Citigroup shares during the class period alleged in their very own complaint.[2]

[2] The many deficiencies of another movant, the ATD Group – which acquired Citigroup unregistered shares through a merger transaction and whose members are still affiliated with Citigroup and have made statements adverse to the Class – similarly preclude its appointment.

**ARGUMENT**

**I. The U.S. Public Fund Group Is The Most Adequate Plaintiff**

The U.S. Public Fund Group is the paradigmatic "most adequate plaintiff" under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B). The U.S. Public Fund Group consists of two sophisticated public institutional investors of the precise sort contemplated by Congress as Lead Plaintiffs under the PSLRA. *See, e.g.*, H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 730.

The U.S. Public Fund Group has also placed before the Court a detailed factual record—including several declarations from public officials, such as the Ohio Attorney General, who will be directly involved in supervising class counsel—reflecting that the U.S. Public Fund Group is entirely client-directed rather than "lawyer-driven." The U.S. Public Fund Group thus satisfies the PSLRA.[3] As shown by the U.S. Public Fund Group's submissions, unlike the Global Pension Funds, the members of the U.S. Public Fund Group came together on their own initiative without the prodding of counsel; its members had numerous direct communications with each other (and without the participation of outside counsel) and determined that they could work jointly ***prior*** to making the lead plaintiff filing; they submitted a single declaration with their moving papers, reflecting their cohesiveness; and have a strong track record and are highly motivated to prosecute this case.[4]

---

[3] *See, e.g.*, *Smith v. Suprema Specialities, Inc.*, 206 F. Supp. 2d 627, 635 (D.N.J. 2002) ("[T]o sustain a group of proposed lead plaintiffs, courts have established protocols to insure that the group will be effective. Such protocols include requiring declarations or affidavits to demonstrate that the proposed lead plaintiffs can work effectively as a group."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class.").

[4] *See* Joint Declaration of the Honorable Marc Dann, William J. Neville, John Michael Vazquez, William G. Clark, and Dan Slack in Support of the Motion of the U.S. Public Fund Group for Appointment as Lead Plaintiff, attached as Exhibit H to the Declaration of Gerald H. Silk in Support of the Motion of U.S. Public Fund Group for Appointment as Lead Plaintiff, Approval of Its Selection of Counsel as Lead Counsel and Consolidation of All Related Actions, at ¶¶5-14 (Dkt. # 24).

In contrast, the Global Pension Funds assert that their "group" is entitled to the PSLRA's statutory presumption as the "most adequate plaintiff" because their asserted financial interest is a facially larger number. The argument misapprehends the law. The PSLRA's presumption is not triggered by the assertion of an aggregated financial interest where the group asserting that interest has not provided any factual basis supporting the aggregation—*i.e.*, where the supposed "group" has "not proven its own existence." *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 91418, at *3-4 (declining to consider asserted aggregated financial interest of movant "group" where there was "no showing that the members of either 'group' have, in fact, functioned as a group. Neither 'group' is therefore in a position to direct and control counsel.").[5]

Indeed, as members of the Global Pension Funds well know from their experiences in other cases, they themselves bear the burden of establishing that they are a cohesive group that was not cobbled together by their lawyers. *See, e.g.*, Lead Plaintiff Order in *In re Dell Inc., Sec. Litig.*, No. 06-Civ-726 (W.D. Tex.), dated April 9, 2007, at 7 (declining to appoint a group consisting of several movants herein (the Danish movants and AP7) with other U.S. and European funds because they were "lawyer-driven" and had not demonstrated the "cohesiveness" of their group.).[6] The Global Pension Funds have plainly failed to meet that burden in this case as well. Rather, as discussed below, in contrast to the extensive factual showing provided by the U.S. Public Fund Group, the Global Pension Funds' submissions raise more questions than they answer and, ultimately, support the conclusion that the U.S. Public Fund Group is the only movant that can adequately lead this securities class action.

---

[5] *See also Constance Sczezny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (Stein, J.) (declining to consider an asserted aggregated financial interest where the movant "has not proffered sufficient evidence that the support of the other shareholders he points to is adequate to support aggregation of the financial interests of that putative group of shareholders for purposes of determining which moving party has the largest financial interest.").

[6] Attached as Exhibit J to the Affidavit of Roger W. Kirby Supplying Exhibits in Support of the Memorandum of the ATD Group and in Opposition to The Competing Motions for Lead Plaintiff Appointment (Dkt. # 32).

## II. The Global Pension Funds Should Not Be Appointed Lead Plaintiffs

### A. The Global Pension Funds Were Joined Together By Their Lawyers To Aggregate Their Losses

The Global Pension Funds group is a product of the very type of lawyer-driven litigation Congress sought to dispel through the enactment of the PSLRA. The Global Pension Funds now acknowledge (through their belated declarations) that their group was formed by lawyers; it was Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin Barroway") that went to the Swedish and Danish movants and suggested that they move together. AP4 Decl. ¶¶4, 9; AP7 Decl. ¶¶8, 9; PKA Decl. ¶¶7, 8.[7] Separately, the law firm of Entwistle & Cappucci LLP ("Entwistle") advised TCRS that it could join together with ColPERA. TCRS Decl. ¶¶6, 7. Notably absent from these declarations is any clear statement of how, when, or why the Schiffrin Barroway group of foreign entities came together with the Entwistle group of U.S. pension funds.[8] Of course, had the "how, when, or why" been consistent with the PSLRA, it is likely that those facts would have been stated unequivocally.

Further, while the declarations state that the Global Pension Funds have spoken "since" deciding to seek appointment as Lead Plaintiffs (AP4 Decl. ¶17; AP7 Decl. ¶17; PKA Decl. ¶16; ColPERA Decl. ¶17; TCRS Decl. ¶16), they are tellingly devoid of ***any*** evidence that the members of the Global Pension Funds group had direct contact with the others ***before*** their lawyers spliced them together, stating only that they "determined" that the other funds "shared similar goals and objectives." AP4 Decl. ¶¶4, 9; AP7 Decl. ¶¶8, 9; PKA Decl. ¶¶7, 8; *see also*

[7] Notably, the eight Danish funds that actually purchased the Citigroup shares at issue have not submitted declarations or given any indication as to how they will work together with the two Swedish and two U.S. funds with which they have been proffered as Lead Plaintiffs.

[8] Interestingly, the foreign funds claim familiarity with Enwistle based on that firm's representation of ColPERA in *In re Royal Ahold N.V. Sec. & "ERISA" Litig.*, 1:03-MDL-01539 (N.D. Md.). In that case, ColPERA and Entwistle argued that foreign entities should not serve as Lead Plaintiffs. Reply Memorandum in Further Support of the Motion of the Public Employees' Retirement Association of Colorado and Generic Trading of Philadelphia, LLC, at 5, *In re Royal Ahold N.V. Sec. & "ERISA" Litig.*, 1:03-MDL-01539 (N.D. Md. filed July 18, 2003), attached as Exhibit D to the Supp. Silk Decl.

TCRS Decl. ¶¶10, 11 (including similar language); ColPERA Decl. ¶¶11, 12 (same). No explanation is provided as to how that determination was made or what those shared goals and objectives might be.

The declarations submitted by the U.S. Public Fund Group confirm that the Global Pension Funds had not been formed as of January 4, 2008.[9] Indeed, as of late that day, Schiffrin Barroway was still endeavoring to hitch its European clients to Ohio STRS, and had given no indication that the European funds intended to partner with any other funds. Thus, it was only after Ohio STRS rejected the attempt to couple its foreign clients with Ohio STRS that Schiffrin Barroway's group and Entwistle's group could have come together. How these twelve disparate funds spread across two continents came together over the weekend between January 4 and January 7 without speaking remains a mystery. The reasons they did so are undeniable.

First, through its attorney-client relationship with Ohio STRS in *Life Enrichment Foundation v. Merrill Lynch*, No. 07-CV-9633 (LBS) (S.D.N.Y.) ("*Merrill Lynch*"), Schiffrin Barroway obtained confidential information concerning Ohio STRS financial interest as well as the identity of it co-movants. After learning from the Attorney General of Ohio that Ohio STRS was unwilling to allow Schiffrin Barroway's European funds to join with Ohio STRS, Schiffrin Barroway determined to group its clients with other funds it knew (by virtue of the confidences gleaned from Ohio) would create a facially larger financial interest in order to defeat Ohio STRS and its co-movants.

Second, by tying themselves to Entwistle's U.S. funds, Schiffrin Barroway's ten foreign funds sought to deflect the anticipated argument that they are subject to the unique defense that

[9] *See, e.g.*, Declaration of the Honorable Marc Dann and William J. Neville in Further Support of the U.S. Public Fund Group's Motion for Appointment as Lead Plaintiff, attached as Exhibit B to the Supplemental Declaration of Gerald H. Silk in Further Support of the Motion of the U.S. Public Fund Group for Appointment as Lead Plaintiff and in Opposition to All Competing Motions, at ¶5 (Dkt. # 37).

this Court's judgments will not be recognized in their home jurisdictions. Indeed, Schiffrin Barroway's foreign clients stress in their respective declarations that they specifically sought to move jointly with U.S. investors. AP4 Decl. ¶¶6, 10 (AP4 had a "stated preference to work with U.S. public pension funds"); AP7 Decl. ¶¶7, 10 (same); PKA Decl. ¶¶8 (same). They do not explain why, however. The obvious answer is that these funds recognized that courts in this District and elsewhere have rejected foreign Lead Plaintiffs because of the unique defenses they face, and sought to inoculate themselves from that challenge by partnering with domestic funds.[10] The Global Pension Funds provide no other explanation for why these twelve funds came together.

Thus, despite submitting five separate declarations, the Global Pension Funds have failed to address the most critical question in determining whether the losses of several movants can properly be aggregated to claim a larger financial interest: "why its members combined into [a] group in the first place." *Schriver v. Impac Mortgage Holdings, Inc.*, No. SACV-06-31, 2006 U.S. Dist. LEXIS 40607, at *27 (C.D. Cal. May 1, 2006). This failure confirms that the "purpose of the combination was to secure lead plaintiff status for the group and appointment of lead counsel status for their attorneys." *Id.*; *accord In re Cendant Corp. Litig.*, 264 F.3d at 265-66 (cited *supra)*.[11]

---

[10] *See, e.g., Borochoff v. GlaxoSmithKline, PLC,* 246 F.R.D. 201, 203-05 (S.D.N.Y. 2007); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 105 (S.D.N.Y. 2007)*; In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003). The ten Swedish and Danish funds that comprise the Global Pension Funds cannot remedy their shortcomings by partnering with two U.S. institutions. Defendants are likely to challenge these foreign funds on the basis that they cannot serve as representative parties when it is unknown whether the Court's judgments will be recognized in their home courts. This challenge will occur and distract them from the litigation regardless of whether they have U.S. funds as co-movants. Finally, any effort by these investors to submit expert affidavits concerning this issue would be a concession demonstrating that this issue will be a distraction to these investors and the Class.

[11] The Global Pension Funds' suggestion that their filing of a complaint and discovery motion is somehow relevant to their adequacy to serve as Lead Plaintiffs is specious. The determination of the Lead Plaintiff is based on the relative financial interest of the movants ***that satisfy Rule 23***, which the Global Pension Funds do not. Any benefit they claim to have conferred on the Class through their complaint is irrelevant (and, in any event, they concede they

**B. The Global Pension Funds Lack Cohesion**

The Global Pension Funds' declarations also fail to establish how these twelve entities will work together to manage this complex litigation. The dizzying leadership structure this group proposes – twelve entities overseen by twelve independent boards of directors, eight of which operate in connection with a separate administrator, two of which are represented by in-house counsel, and which will be represented by two law firms – requires an established protocol to ensure that significant decision making does not fall to outside counsel by default. A chart of the Global Pension Funds' proposed leadership structure reveals that having these twelve entities manage this complex litigation is unteneble. *See* Chart of Global Pension Funds Decision-Making Apparatus, attached hereto as Exhibit A. Here, the Global Pension Funds have refused to disclose how they will work together, claiming that the information is confidential. Since it is clearly their burden to establish adequacy, the decision to withhold this critical information is fatal to the Global Pension Funds' application.

Understanding how these twelve funds will oversee their U.S. counsel is particularly important given their failure to exercise that oversight thus far in this litigation. Specifically, the Global Pension Funds' counsel, Schiffrin Barroway, was actively representing employees of Citigroup and seeking to be appointed Lead Counsel in an ERISA class action against Citigroup ***at the same time*** that it was filing papers seeking appointment as Lead Counsel in this litigation on behalf of the Global Pension Funds.

In fact, on January 4, 2008, knowing full well that it was intending to submit a Lead Plaintiff motion in the securities case, Schiffrin Barroway filed a memorandum in further support of its bid for appointment as Lead Counsel in the ERISA action. Not until reply briefs were due

---

will amend if they are appointed (*See* Global Pension Funds' Memorandum of Law in Further Support, at 7 (Dkt. #36)). *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001).

in the ERISA action on January 10, 2008—which presumably provided Schiffrin Barroway enough time to survey the landscape and identify the case in which it preferred to be appointed Lead Counsel—did it withdraw its application to be Lead Counsel in the ERISA action. *See* Plaintiffs Shaun Rose's and Mark Geroulo's Reply, at 1, *Gray v. Citigroup, Inc., et al.*, 07 Civ. 9790 (SHS) (S.D.N.Y. filed Jan. 10, 2008) (Dkt. # 48). Schiffrin Barroway is also concurrently representing Ohio STRS – which is adverse to the Global Pension Funds in this litigation – as proposed Lead Counsel in *Merrill Lynch*. Schiffrin Barroway ultimately abandoned its Citigroup ERISA clients and has since abandoned Ohio STRS in *Merrill Lynch* to pursue its preferred opportunities in this action.

### C. ColPERA and TCRS Are Subject To Unique Defenses Not Applicable To The U.S. Public Fund Group

ColPERA and TCRS are subject to the unique defense that they derived a net benefit from the sale of their Citigroup stock at artificially inflated prices. "Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices." *In re Bausch & Lomb, Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (citing cases).[12]

Indeed, during the Class Period set forth in their own complaint (January 1, 2004 through November 21, 2007), ColPERA sold 718,082 more shares than it purchased and received ***$35 million*** more than it spent to buy Citigroup shares, while TCRS sold 210,204 more shares than it purchased during this period and received ***$11 million*** more than it spent. Thus, based on their own allegations, ColPERA and TCRS could be the subject of challenge by the defendants on the

---

[12] *See also*, *GlaxoSmithKline*, 246 F.R.D. at 205 (holding that Lead Plaintiff applicant did not adequately represent the proposed class because it was a "net seller"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D.N.Y. 2005) ("courts usually reject these so-called net gainers as lead plaintiffs**,** opting for net losers that will have less trouble proving damages").

grounds that they have zero financial interest in this litigation and have actually benefited during the period of the misconduct set forth in their very own complaint.

The same cannot be said of the U.S. Public Fund Group. SURS is ***not*** a net seller or net gainer in any class period alleged.[13] SURS ***is the only domestic lead plaintiff applicant that does not suffer from any infirmity or challenge to its adequacy or typicality***. Ohio STRS is ***not*** a net seller or net gainer in the first filed and noticed Class Period (April 17, 2006 to November 2, 2007), which is alleged in half of the complaints filed to date, but does have net sales and gains during the longer Class Period allegeds in two of the filed complaints.[14] Ohio STRS and SURS will, once appointed, conduct a full investigation and determine the appropriate Class Period. The participation of SURS – which is not a net seller under any Class Period – ensures that there will be no question that the Class Period alleged is based ***only*** on the facts uncovered in the investigation. In contrast, ColPERA and TCRS have already filed their complaint, and it will be difficult for them to abandon their allegation that the Class Period begins in 2004, as opposed to the two shorter class periods beginning in 2006, without facing accusations by defendants that the decision was made to suit the needs of their own trading pattern.

---

[13] The four complaints filed in this litigation allege three different Class Periods. The first filed and noticed action, *Saltzman v. Citigroup, Inc.*, No. 07-9901, alleges a Class Period of April 17, 2006 to November 2, 2007. *Hammerschlag v. Citigroup, Inc.*, No. 07-10258, alleges a Class Period of January 1, 2004 to November 5, 2007. The Global Pension Funds' complaint, for which the PSLRA-required notice was not published, alleges a Class Period of January 1, 2004 to November 21, 2007. *Fisher v. Citigroup, Inc.*, No. 08-0136, alleges the same class period set forth in *Saltzman*. It will fall to the Court-appointed Lead Plaintiff to determine the Class Period alleged in the operative complaint. The Global Pension Funds implicitly concede that, at the Lead Plaintiff stage, the Court may consider the different Class Periods that have been alleged, as their brief discussed their claim losses under two different Class Periods. *See* Global Pension Funds' Memorandum of Law in Further Support, at 8-9 (Dkt. #36).

[14] ColPERA and TCRA are similarly net gainers in both of the longer Class Periods that have been alleged. Utilizing the *Hammerschlag* class period, which ends the class period on November 5, 2007, ColPERA had net gains of **$*36 million*** and TCRS had net gains of **$*12 million***.

**CONCLUSION**

For all the above reasons, the U.S. Public Fund Group respectfully requests that the Court appoint the U.S. Public Fund Group as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the PSLRA.

Dated: February 7, 2008

Respectfully submitted,

/s/ Gerald H. Silk

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Gerald H. Silk (GS-4565)
John P. Coffey (JC-3832)
Avi Josefson (AJ-3532)
Noam Mandel (NM-0203)
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: 212-554-1400
Facsimile: 212-554-1444

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
Jeffrey C. Block (JB-0387)
Kathleen M. Donovan-Maher
Leslie R. Stern
One Liberty Square
Boston, Massachusetts 02109
Telephone: 617-542-8300
Facsimile: 617-542-1194

Michael J. Pucillo
Anne O'Berry
Esperante Building
222 Lakeview Avenue, Suite 900
West Palm Beach, FL 33401
Telephone: 561-835-9400
Facsimile: 561-835-0322

*Counsel to the U.S. Public Fund Group and Proposed Lead Counsel for the Class*