interview: Tony Gelderman

# Class action impacts on European investors



Alex Beveridge asks Tony Gelderman of law firm BLB&G to explain how class action has crossed over to Europe and how pension funds can take advantage

**ALEX BEVERIDGE:** Class action is now firmly on the agenda for many large pension funds in Europe. But are some pension funds still missing out on settlements?

**TONY GELDERMAN:** More than a few. According to a recent study, only about 30% of those eligible for settlement funds are actually filing the necessary claims forms. The figure is probably below 30% in the UK and Europe.

This is a pretty basic breach of fiduciary duty that is widespread. With US$18bn in class action settlements last year, real money is being left on the table by investors.

**ALEX BEVERIDGE:** Class action has been a part of institutional shareholders' investment tools in the US for many years. Why is it only really coming of age in Europe now?

**TONY GELDERMAN:** It's really evolutionary. Keep in mind that the Private Securities Litigation Reform Act, or the PSLRA, only went into effect in 1996 in the US.

This is the law passed by the US Congress that drew large US pension systems into the role of lead plaintiff in class actions and it was several years after the Act's message that the US pension funds actually got involved in a meaningful way.

It only stands to reason that UK and European investors would wait to see how these new investor led class actions would turn out.

Since the experience has proved fruitful for US investors – who have demonstrated that institutional investors can dramatically increase recoveries and reduce fees when they serve as lead plaintiff in a class action – the practice of getting involved as a lead plaintiff is now spreading to the UK and Europe.

**ALEX BEVERIDGE:** Are there any unique aspects to representing a European or non-US pension fund over US-based pension funds?

**TONY GELDERMAN:** There are certain legal challenges that defendants can raise against non-US investors to try and bar their participation in US class actions.

While addressing these challenges presents an additional hurdle when representing non-US pension funds, it also reinforces the importance of having such funds take an active role in US litigations.

Without the involvement of sophisticated non-US investors to advocate on behalf of all international investors in responding to these legal challenges, it is possible for defendants to preclude non-US investors from participating in US litigations, and from sharing in the recoveries that are obtained for the class.

**ALEX BEVERIDGE:** You speak to pension funds from all around Europe about class actions. Which countries do you see as most advanced in using this legal tool?

**TONY GELDERMAN:** In these formative years, you see the most activity coming out of the Netherlands, Germany, the UK and the Nordic countries.

However, over time I think that the recognition of the benefits of US securities litigation will become commonplace throughout the European Union.

Larger investors generally tend to be more sophisticated about US securities litigation, so you will likely see a clustering of activity among the larger asset pools.

**ALEX BEVERIDGE:** The threat of class actions is sometimes used to explain the growth of listings outside of the US. Is this fair?

**TONY GELDERMAN:** Not at all. The rise of listings outside of the US is an indication of the maturing of emerging markets, the sometimes higher cost of US-based underwriting, and the advantages of listing closer to home.

Geography has especially helped the London Stock Exchange, with listing from former Soviet Bloc countries.

It's also worth noting that many of the new listings on foreign exchanges would not have satisfied the listing requirements of the US exchanges.

The US securities markets remain the deepest and strongest, and the rise of other markets does not signal the decline of markets in the US, but rather the ascension of newer markets.

**ALEX BEVERIDGE:** One persistent concern amongst some pension funds is that they fear devaluing companies they own stock in if they sue them. Why is this not the case?

**TONY GELDERMAN:** For starters, meritorious securities fraud claims almost always involve an action against a company that is already in serious trouble, possibly even on the verge of bankruptcy, as a result of the corporate misconduct that gives rise to the litigation.

The resolutions of these cases, where institutional investors are the lead plaintiff, regularly involve corporate governance reform designed to prevent future incidents of securities fraud.

Moreover, these actions will be litigated regardless of whether institutions take an active leadership role.

But only by taking on the role of a lead plaintiff can a pension fund seek to balance the interests of long term holders of the security in question against the interests of those who have sold their interest in the security in question, and use litigation as a tool to improve corporate governance in addition to making investors whole.

**ALEX BEVERIDGE:** Do you see any possibility of class actions becoming part of the European legal landscape?

**TONY GELDERMAN:** Some aspects may become part of the landscape. As a starting premise, no one likes to be sued. But from a corporate standpoint, having claims aggregated is more appealing than dealing with hundreds of smaller cases, and the ability to settle a claim on a class-wide basis allows companies to buy global peace and move on with their business. It is simply more efficient.

**ALEX BEVERIDGE:** Some pension funds fear that they could be dragged into lengthy and time consuming administration if they become embroiled in a class action. To what extent is this justified?

**TONY GELDERMAN:** To say there is no time commitment to serving as a lead plaintiff is misleading.

However, the time commitment can be limited if you are well represented by highly qualified counsel, who can assist the funds in reviewing documents and answering limited discovery requests, and who will fight to limit the burdens on their clients.

Attending important mediations and potentially participating in depositions should be factored in any decision to become a lead plaintiff in these cases. I would, on balance, describe the average time commitment for a lead plaintiff in these cases as modest.

**ALEX BEVERIDGE:** Please tell our readers about the difference between a passive and active approach to class actions.

**TONY GELDERMAN:** Passive refers to simply staying in a class as a member of the class and filing for your portion of the settlement at the end of the class.

Passive class members can share in any recovery achieved, but have no ability to influence the size of the recovery or to limit fees.

An active approach would mean working with counsel to actively monitor your portfolio for losses in meritorious securities class actions and moving for lead plaintiff in those cases where facts support such a motion.

By taking an active role, it has been shown that institutional investors obtain higher recoveries for the class while reducing fees.

**ALEX BEVERIDGE:** There are a number of firms vying for the attention of European pension funds. What should a pension fund look for when choosing a class action lawyer?

**TONY GELDERMAN:** I'd sum it up in one word: reputation. How is the firm perceived in the US? What is the record the firm has established in past class actions?

A European or UK pension fund should talk to their US counterparts and ask them their views on the various firms. I also suggest that defence firms be questioned by institutional investors looking to hire securities counsel.

The firms that defend the companies that are sued are in a unique position to rate their adversaries and in most cases will do so.

By asking the pension funds and the defence firms active in this area in the US, you will have a pretty good idea of which firms have truly outstanding reputations.

If a pension fund is looking for an objective measure of a law firm's success, I'd say that the best metric is the average size of the recoveries in the cases the firm prosecutes. Not the number of cases a firm is involved with, or the total amount a firm might recover in a given year – both of which might identify a firm that is not carefully screening the cases it advises its clients to bring – but the size of the average recovery achieved.

■ *Tony Gelderman is counsel at Bernstein, Litowitz, Berger & Grossmann*