Case 1:07-cv-09901-SHS   Document 49-7   Filed 02/07/2008   Page 1 of 2

# BLB&G Bernstein Litowitz Berger & Grossmann LLP

# advocate

Issue No 1 January 2008 | A NEWSLETTER ABOUT US CORPORATE GOVERNANCE FOR EUROPEAN INVESTORS



It is a great pleasure to present to you the first edition of our Advocate for European Institutional Investors. With this publication we will regularly be providing you with updates on current issues related to US corporate governance and securities litigation.

*Tony Gelderman, Counsel
Responsible for Institutional Investor Outreach*

**Contact details: e-mail: tony@blbglaw.com
Phone: +1-504-899-2339**

# Claims Administration:
## European Investors Are Leaving Money Behind

**The Facts:**

- During 2007, securities class actions resulted in a total of USD 9.4 billion in settlements.
- Less than 30% of institutional investors with provable losses secure their claims.
- There is currently an estimated USD 15.7 billion (as of 1 Jan 2008) available to potential claimants.
- International investors are expected to claim only 5% of this total, despite owning about 30% of the US equity market by market cap.

### Why do so many international institutions fail to file claims?

We don't have the data yet to be sure exactly why so few non-US investors claim the funds they are owed. We do know, however, that international institutions are not alone as the majority of institutional investors in the US also fail to file claims. It seems that many institutions, both within and outside the US, have not put into place sufficient mechanisms and organizational systems to know when these funds are available. The claims process is quite demanding and time consuming and we suspect that institutions will work more closely with their custodial banks in the future to ensure that they can track the monies recovered in these litigations and can participate in the claims process in a timely manner.

### Do European investors have the same right to claim as US investors?

Yes, they have exactly the same rights.

### What happens to the claims that my institution does not file?

If you do not file a claim, you are not entitled to any funds. The first step in the claims process is for all potential class members to submit claims within a defined time period. Once the deadline for filing claims has passed, the total settlement fund is divided pro-rata among all class members that have filed claims.

### What is the best solution for claims administration for international investors?

This is an issue that I know that many European institutional investors are struggling with. My answer is that this is best done by your custodian. They are experts on securities data processing and have full access to your fund's trading records. All major global custodians have started to include claims administration services in their standard custodial service platform, although in some cases this information does not seem to have reached all of their European clients. If you have a European-based custodian, they will typically have a relationship with a US subcustodian to manage your fund's US holdings. Claims administration should be a part of the service provided.

### Some law firms offer claims administration services. BLB&G does not – why?

Why replicate a service that your custodian will already do for you, can probably do well and is based on data that the custodian already has the systems to process? There is no value added in having your legal counsel do the custodian's job. Additionally, your custodian will generally handle these processes for no extra charge to the fund.

### Can I really trust my custodian to secure all claims?

In most cases, we believe yes. We have done studies for our clients regarding their custodians' completeness and efficiency in performing claims administration. Each time, we have been able to conclude that the custodian was doing a creditable job of filing all claims to which the investor was entitled and was doing so accurately and in a timely manner. As part of the portfolio monitoring and legal counseling service we provide, we frequently do this kind of analysis for our clients. I highly recommend that funds ask their counsel to perform such "audits" on their custodial bank's performance – our clients have found it to be of great value.

### How much money could claims filing amount to for a typical institution?

That's hard to answer, as the amount is based on many variables – including size of portfolio, market cap profile of the equity investments and exposure to US versus non-US names. But, as an example, the State of Wisconsin Investment Board – with USD 93 billion in assets under management – reports that it has recovered USD 7 million per year as a result of filing claims. Since the funds can generally be recovered through the custodian at little cost, it really is the fund's fiduciary duty to pursue these recoveries.

**US Corporate Governance News**

# Case Briefing:
## UnitedHealth Group, Inc.

Pension funds successfully challenge executive compensation abuse with a record recovery in a case related to stock options back-dating. The recovered assets are the largest ever in a case against individual directors and company officials, a so-called derivative action.

On December 6, 2007, on behalf of six large pension fund clients, BLB&G announced a record breaking recovery in excess of USD 920 million from executives of UnitedHealth Group Inc, one of the largest health insurers in the US. This recovery is subject to shareholder comment and Court approval.

It includes a USD 615 million settlement by Dr. William W. McGuire, UnitedHealth's former CEO, to resolve the claims against him. This payment is more than 46 times the total combined amounts recovered from individual defendants in the Enron case.

Similar recoveries are being obtained from UnitedHealth's former COO and current CEO Stephen Hemsley, who will pay some USD 240 million, and former General Counsel David Lubben, who will pay USD 30 million.

A shareholder derivative lawsuit allows investors to launch legal action on behalf of a Company, in the absence of action by its Board of Directors, against individual officers or directors who are deemed to have harmed the Company through some form of fiduciary malfeasance. Derivative lawsuits are difficult to bring and the successful UnitedHealth Group case has set important corporate governance standards for Directors everywhere:

- In response to the lawsuits, UnitedHealth's Board of Directors established a special litigation committee to determine its fiduciary responsibility in the matter. This committee has been widely recognized for its effectiveness, particularly in seeking shareholder views on the problems at UnitedHealth, and has set the bar higher for other companies facing similar litigation.

- BLB&G's successful recovery should encourage company Boards to institute repayment provisions, or "clawbacks", in all employment agreements with senior executives and to enforce them.

- Following the initiation of this lawsuit, UnitedHealth agreed to set up a committee representing long-term institutional investors to advise on the candidates and qualifications for its Board of Directors.

For more information about the UnitedHealth case, please contact
**BLB&G Partner Chad Johnson (+1-212-554-1400; chad@blbglaw.com).**

### Who we are

Founded in 1983, BLB&G is widely recognized as the leading US law firm specializing in securities and other complex class litigation. We represent institutional shareholders worldwide in US securities fraud class actions, helping our clients recover losses and achieve governance reform. We are over fifty highly experienced lawyers practicing out of offices in New York, California, Louisiana and New Jersey.

**For more information see our website www.blbglaw.com**

### International shareholders in protest against the SEC

In reaction to the limited nature of shareholder rights in the US, a group of international investors have started to lobby the US Securities and Exchange Commission. The current issue concerns the right of shareholders to nominate board candidates by including them on the proxy ballot. In October, the International Corporate Governance Network (ICGN) wrote a letter to the SEC criticizing a current proposal that would limit shareholders' ability to influence the resolutions put forward to the Annual General Meeting. "International experience of shareholder access to the proxy suggests that such rights are used responsibly and constructively", says the ICGN.

### New Pay Disclosure Rules adopted by the SEC

Amid growing disquiet about executive pay and the options-backdating scandal, the US Securities and Exchange Commission (SEC) has introduced new rules that require US listed companies to disclose more details of executive compensation in the proxy statement to shareholders. The new rules have resulted in lengthy reports. For example, IBM's statement covered 47 pages. The SEC is now criticizing companies for being too vague, especially about individual performance goals and targets. The Commission has sent letters to nearly 300 companies critiquing disclosures and demanding more information. The letters are expected to lead to enhanced executive-pay revelations in the 2008 proxy statements.

### Shareholders demand say on executive pay

Last spring the US House of Representatives approved a bill by a vote of 269 to 134 to give shareholders the right to cast nonbinding votes on the pay of top company executives. "An expression of widespread shareholder dissatisfaction would provide a valuable signal to the board," Lucian Bebchuk, director of the corporate governance program at Harvard Law School, said in prepared testimony to Congress. "The fact that the outcome of the vote would be publicly known would apply some pressure on the board to take the shareholders' preferences into account."

The White House opposes the bill and the prospects for the bill in the Senate are uncertain. Investors are hoping that even if the bill fails to become law, it will prompt companies to voluntarily introduce advisory votes.

Disclaimer: Advocate for Institutional Investors is published by Bernstein Litowitz Berger & Grossmann LLP, 1285 Avenue of the Americas, New York, NY 10019, +1-212-554-1400 or +1-800-380-8496. The materials in this newsletter have been prepared for information purposes only and are not intended to be, and should not be taken as, legal advice.
© 2008. ALL RIGHTS RESERVED. Quotation with attribution permitted.