USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/8/08

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ROBERT CORWIN, on behalf of        :
himself and all others similarly
situated,                          :

                Plaintiff,         :      07 Civ. 6728 (DC)

        - against -                :

BERND R. SEIZINGER et al.,         :

                Defendants.        :

- - - - - - - - - - - - - - - - - -x

ISTVAN TEMESFOI, on behalf of      :
himself and all others similarly
situated,                          :

                Plaintiff,         :      MEMORANDUM DECISION

        - against -                :      07 Civ. 7016 (DC)

GPC BIOTECH AG et al.,             :

                Defendants.        :

- - - - - - - - - - - - - - - - - -x

AUDREY DANG, individually and on   :
behalf of all others similarly
situated,                          :

                Plaintiff,         :      07 Civ. 7476 (DC)

        - against -                :

GPC BIOTECH AG et al.,             :

                Defendants.        :

- - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**   (See last page)

**CHIN, D.J.**

In these three securities cases, plaintiffs allege that defendants violated §§ 10(b) and 20(a) of the Securities Exchange

Act of 1934 and Rule 10b-5 promulgated thereunder. Plaintiffs contend that defendants made material misrepresentations that artificially inflated the price of the stock of GPC Biotech AG ("GPC"), a publicly traded biopharmaceutical company that specializes in the development of anti-cancer drugs. Plaintiffs sue, in all three cases, on behalf of a class of all persons who purchased or otherwise acquired GPC securities during the period from December 5, 2005 through July 24, 2007 (the "Class Period") and who suffered damages as a result. (Corwin Compl. ¶ 1; Temesfoi Compl. ¶ 51; Dang Compl. ¶¶ 1, 52).

Before the Court are three competing applications from shareholders seeking appointment as lead plaintiff and the appointment of their attorneys as lead counsel. All three sets of shareholders also seek consolidation of the three actions, as well as any subsequently-filed related actions.

## DISCUSSION

**A.   Consolidation**

The requests for consolidation are granted. All three cases involve securities claims brought on behalf of purchasers of GPC securities during the Class Period. The cases assert similar claims based on the same legal theories and the same underlying facts. No opposition to consolidation has been filed. Hence, the three cases are hereby consolidated for all purposes. See, e.g., Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 322 (S.D.N.Y. 2004) (consolidating nine related securities class actions).

**B.     Appointment of Lead Plaintiff**

    **1.     Applicable Law**

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires the court to appoint a "lead plaintiff" in private securities class actions.  15 U.S.C. § 78u-4(3)(B)(i). The "lead plaintiff" is "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  Id. This provision of the PSLRA was intended to ensure that parties with "significant financial interests in the litigation" would oversee securities class actions and control the management of such suits, including the selection of counsel.  See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBrance & Co., 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998) (quoting H.R. Rep. No. 104-369, at 32 (1995) (Conf. Rep.)., reprinted in 1996 U.S.C.C.A.N. at 731)).

The PSLRA sets forth detailed procedures for the filing of securities class actions and the selection of a lead plaintiff.

First, each plaintiff seeking to serve as a representative party on behalf of a class must file, with the complaint, a sworn certification that makes certain representations and disclosures, including that the plaintiff has reviewed the complaint and authorized its filing, the plaintiff did not purchase the securities at the direction of counsel or to

- 3 -

participate in a lawsuit, and setting forth all transactions of the plaintiff in the securities during the class period. 15 U.S.C. § 78u-4(a)(2).

Second, the plaintiff who files the first action must publish, within twenty days after the complaint is filed, a notice informing class members of the pendency of the action and their right to move, within sixty days after publication of the notice, for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). Motions to be appointed lead plaintiff may be made by any purported class member, including one not individually named as a plaintiff in any complaint. 15 U.S.C. § 78u-4(a)(3)(B)(i).

Third, within ninety days after publication of the notice or, where multiple actions are filed, as soon as practicable after the consolidation of multiple related cases (if consolidation occurs after the ninety-day period), the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B).

The determination of the "most capable" class representative entails a two-step process.

First, the PSLRA sets forth a rebuttable presumption that "the most adequate plaintiff" is "the person or group of persons" that (a) filed the initial complaint or moved for appointment as lead plaintiff, (b) has "the largest financial

interest in the relief sought by the class," and (c) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Hence, the court must first determine which member (or group of members) of the class is entitled to this statutory presumption. See, e.g., Constance Sczesny Trust, 223 F.R.D. at 323. In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," courts consider four factors: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss." In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (citing In re Crayfish Co. Sec. Litig, No. 00 Civ. 6766, 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002)); accord Constance Sczesny Trust, 223 F.R.D. at 323 (quoting Ferrari v. Impath, Inc., 03 Civ. 5667, 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004) (citing In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998))). As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23. In re Initial Pub. Offering Sec. Litig., 214 F.R.D. at 121 (quoting In re Crayfish Co. Sec. Litig, 2002 WL 1268013, at *4); see also Constance Sczesny Trust. 223 F.R.D. at 323-24.

Second, once the court determines which class member (or group of members) is entitled to the presumption, other members of the purported class may try to rebut the presumption

by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is, because of "unique defenses," incapable of adequately representing the class. Id.; see 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Court has the discretion to appoint more than one lead plaintiff and can aggregate the losses suffered by the members of a group of investors. Constance Sczesny Trust. 223 F.R.D. at 323.

### 2. **Application**

The first of the three cases, Corwin, was filed on July 26, 2007. Attached to the Corwin complaint was the certification of plaintiff Robert Corwin declaring that he had purchased 200 shares of GPC stock and otherwise making the representations required by the PSLRA, 15 U.S.C. § 78u-4(a)(2). (See Corwin Compl. ¶ 14 & Att.).

The same day (and well within twenty days of the filing of the complaint), Corwin published a notice informing class members of the pendency of the action and their right to move, within sixty days after publication of the notice, for appointment as lead plaintiff, as required by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A). (See Kaboolian Decl. ¶ 2 & Ex. A).

Within sixty days after publication of the notice of the Corwin action, the three instant applications for appointment as lead plaintiff (or plaintiffs) were filed:

    -- Axxion S.A. Luxemburg ("Axxion"), through its Akrobat Fund-Value, purchased 150,000 shares of

> GPC stock and sold none during the Class Period. (Ellman Decl. Ex. A).[1] It spent some $3,963,658 to purchase these shares. (Id.). It claims losses of $1,832,888.35. (Id. at Ex. B). Axxion is represented by Labaton Sucharow LLP.
>
> -- Agamemnon Chua, Dhruvajyoti Biswas, Koernig Kron, and Frank Von Tempelhoff (collectively, the "Chua Group") purchased a total of 59,410 shares of GPC stock and sold 47,910 of those shares during the Class Period. (Chua Group Mem. 1; Kaboolian Decl. Ex. F).[2] The Chua Group spent net funds of approximately $278,999. (See Kaboolian Decl. Ex. F).[3] All told, the Chua Group claims losses of

---

[1] Axxion is an investment firm established under Luxemburgian law. It manages assets totaling approximately 1.7 billion euros. It establishes and manages investment funds, such as the Akrobat Fund, which are separate legal entities from Axxion and other funds managed by Axxion, and has authority to sue on behalf of its funds. The Akrobat Fund-Value and the Akrobat Fund-Europa are "special assets/partial funds in the umbrella Akrobat Fund," and are "legally independent entities." Axxion is proceeding in this case only on behalf of its Akrobat Fund-Value, but the Akrobat Fund-Europa also had certain purchases and sales in GPC stock during the Class Period and claims losses of some $650,335.96. (Mertes 10/13/07 Decl. ¶¶ 2-6 & Ex. A).

The Akrobat Fund-Value sold 104,000 shares of its GPC stock after the Class Period. (Ellman Decl. Ex. A).

[2] The Chua Group sold another 9,400 shares of its GPC stock after the Class Period. (Kaboolian Decl. Ex. F)

[3] Exhibit F to the Kaboolian Declaration does not provide a total for net sums spent, and some amounts are given in dollars and some in euros. The Court converted the euros to dollars using, for simplicity, an exchange rate of 1.3. The Court then added up the net amounts spent by each member of the group

    approximately $174,351. The Chua Group is represented by Abbey Spanier Rodd & Abrams LLP.

-- Istvan Temesfoi, Stefan Ganswindt, Tobias Wenk, Elmar Rempel, and Matthias Lenardt (collectively, the "Temesfoi Group") purchased (for themselves or on behalf of relatives) a total of 67,518 shares of GPC stock and sold 31,088 of those shares during the Class Period. (Stone Affirmation Ex. 2).[4] The Temesfoi Group spent net funds of approximately $1,280,108. (Id.).[5] The Temesfoi Group also bought and sold certain options in GPC stock. (Id.). All told, the Temesfoi Group claims losses of approximately $928,150.40. (Id.). The Temesfoi Group is represented by Shalov Stone Bonner & Rocco LLP.

  I consider which of the three candidates for lead plaintiff is entitled to the statutory presumption that it is "the most adequate plaintiff."

  Based on the available information, I conclude that Axxion has "the largest financial interest in the relief sought

---

(amounts spent on purchases minus amounts received from sales during the Class Period) to obtain a total net amount in dollars.

[4] The Temesfoi Group sold an additional 17,000 shares of the GPC stock after the Class Period. (Stone Affirmation Ex. 2).

[5] Exhibit 2 to the Stone Affirmation does not provide a total for net funds expended, and most of the figures are in euros. The Court has calculated net funds expended during the Class Period following the same methodology used for the Chua Group.

by the class."  Of the three competing groups, it purchased the most shares, both on a gross basis and on a net basis, during the Class Period.  It spent, by far, the most net funds of the three -- $3.9 million as compared to $1.28 million for the Temesfoi Group and only $278,999 for the Chua Group.  It claims, again by far, the greatest net loss of the three -- almost double the loss claimed by the Temesfoi Group and more than ten times the amount claimed by the Chua Group.  I also conclude, preliminarily, that Axxion meets the typicality and adequacy requirements of Rule 23.  Axxion appears to have a claim typical of other members of the proposed class -- it purchased or acquired GPC securities during the Class Period at prices allegedly artificially inflated by defendants' purported materially false and misleading statements and/or omissions, and suffered damages when the truth was disclosed to the market.  Axxion's interests are aligned with the interests of other shareholders and there appear to be no conflicts.  Axxion is a sophisticated institutional investor with the resources necessary to litigate a securities class action, and it is represented by able and experienced counsel.  Accordingly, Axxion is entitled to the statutory presumption.

Finally, I consider whether any other class members have rebutted the presumption by showing that Axxion will not adequately and fairly protect the interests of the proposed class.  I conclude they have not.

The Temesfoi Group argues that Axxion is an inadequate and atypical plaintiff, based largely on what it contends is a

"problematic and inconsistent" certification.  Although Axxion's initial certification did not completely track the language of the PSLRA and it did not adequately explain the relationship between Axxion and the Akrobat Fund-Value, the Temefoi Group's concerns are largely speculative.  In any event, the concerns have been adequately addressed in Axxion's follow-up declaration, which explains the relationship between Axxion and the Akrobat Fund-Value and confirms that Axxion has the authority to sue on behalf of its funds.  See Kaplan v. Gelfond, 240 F.R.D. 88, 95 (S.D.N.Y. 2007) (investment manager has standing to sue on behalf of fund investors as long as it has attorney-in-fact authority and unrestricted decision-making authority).  Although Axxion did not initially disclose its GPC holdings in its Akrobat Fund-Europa, the Akrobat Fund-Value and the Akrobat Fund-Europa are legally independent entities and Axxion was not required to include the Europa holdings in its application.  If they were included, Axxion's alleged losses would be even larger.

The Chua Group argues that it is the most adequate plaintiff because it includes both United States and foreign investors,[6] while Axxion and the Temesfoi Group are foreign investors that purchased securities of a foreign company on the German exchange.  It contends that both Axxion and the Temesfoi

---

[6] Apparently, Chua and Biswas are U.S. investors. (Chua Reply Mem. 2).  Chua, however, purchased only 200 shares during the Class Period (selling none), for a total net expenditure of $5,314.  (Kaboolian Decl. Ex. B).  Biswas purchased a total of 5,000 shares during the Class Period, selling 2,000 of those share during the Class Period, for a net amount expended of some $102,830.  (Id. at Ex. F).

Group are potentially subject to a defense of lack of subject matter jurisdiction.  Alternatively, the Chua Group argues that Chua and Biswas should be appointed co-lead plaintiffs with one of the other proposed lead plaintiffs.

The Chua Group's arguments are rejected.  Other courts in this District have appointed foreign investors as class representatives in securities class actions that included both foreign and U.S. purchasers of a foreign company's shares.  See, e.g., In re Nortel Networks Corp. Sec. Litig., No. 01 Civ. 1855 (RMB), 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003) (certifying class action brought by Canadian union pension trust fund alleging fraud in connection with securities of Canadian company).  While defendants may raise a subject matter jurisdiction defense, such a defense would not be "unique" to Axxion, as it appears that many (if not most) of the class members would be foreign investors.  Axxion elected to file suit here, and there is no reason to doubt its ability to respond to a motion to dismiss for lack of subject matter jurisdiction, should such a motion be made.

Moreover, without prejudging the issue, the Court notes that plaintiffs have alleged substantial acts in the United States in furtherance of the alleged fraud.  For example, the Corwin complaint alleges that GPC maintains clinical facilities in the United States, its lead product (Satraplatin) was and is under review by the United States Federal Drug Administration (the "FDA"), GPC makes filings with the United States Securities

and Exchange Commission (the "SEC"), and certain GPC securities are traded on an American exchange, the NASDAQ. (<u>Corwin</u> Compl. ¶¶ 3, 15, 22). Plaintiffs further allege that defendants had been trying to bring Satraplatin to market for several years and faced financial and other pressures, and that, during the Class Period, they made public statements falsely suggesting that FDA approval of the marketing of Satraplatin was coming soon when they purportedly knew, from facts and developments in the FDA approval process that they failed to disclose, that FDA approval would not be coming any time soon. (<u>Dang</u> Compl. ¶ 3; <u>Corwin</u> Compl. ¶¶ 2-5). The alleged misstatements and omissions involved the FDA approval process, and thus necessarily had a substantial connection to the United States.

As for the Chua Group's alternative suggestion that I appoint two of its members -- Chua and Biswas -- co-lead plaintiffs, I decline to do so. Chua's interest is miniscule, as he purchased only 200 shares. While Biswas's interest is somewhat more substantial (he purchased 5,000 and sold 2,000 shares during the Class Period), it still is relatively minor. It would defeat the goals of the PSLRA to take two members of one proposed group with minor or relatively minor holdings and simply tack them on as co-lead plaintiffs when I am not otherwise satisfied that they indeed qualify as the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B).

Accordingly, the statutory presumption has not been

overcome, and I will appoint Axxion as the lead plaintiff in these securities class actions. Axxion's choice of counsel is approved.

## CONCLUSION

For the reasons set forth above, these three actions are consolidated, Axxion is appointed lead plaintiff, and its choice of counsel is approved.

The Court will enter the proposed order previously submitted by Axxion.

SO ORDERED.

Dated:   New York, New York
         January 8, 2008

                                            _____
                                            DENNY CHIN
                                            United States District Judge

**APPEARANCES**

For Plaintiff Axxion:

    LABATON SUCHAROW LLP
        By:  Christopher J. Keller, Esq.
            Ira A. Schochet, Esq.
    140 Broadway
    New York, NY  10005


For Plaintiff The Chua Group:

    ABBEY SPANIER RODD & ABRAMS LLP
        By:  Nancy Kaboolian, Esq.
    212 East 39th Street
    New York, NY  10016


For Plaintiff The Temesfoi Group:

    SHALOV STONE BONNER & ROCCO LLP
        By:  Amanda Claire Scuder, Esq.
            Ralph M. Stone, Esq.
            Thomas George Ciarlone, Jr., Esq.
    485 Seventh Avenue, Suite 1000
    New York, NY  10018


For Defendants GPC Biotech AG, Bernd Seizinger, Martine George, and Marcel Rozencweig:

    MORGAN LEWIS & BOCKIUS LLP
        By:  Bernard J. Garbutt III, Esq.
    101 Park Avenue
    New York, NY  10178