**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IN RE CITIGROUP INC.<br>SECURITIES LITIGATION | No. 07 Civ. 9901 (SHS)<br><br>**ECF CASE** |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CERTIFICATION OF
THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT AND
(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

KIRBY McINERNEY, LLP
Ira M. Press
Peter S. Linden
Andrew M. McNeela
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: 212-371-6600
Facsimile: 212-751-2540

*Interim Lead Counsel for Plaintiffs*

Dated: August 29, 2012

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS ................. 1

       A.     Procedural Background ............................................................................... 1

       B.     Substantive Allegations ............................................................................. 3

III.   REASONS FOR THE SETTLEMENT ...................................................................... 4

IV.    THE TERMS OF THE SETTLEMENT ..................................................................... 5

V.     ARGUMENT ...................................................................................................... 5

       A.     The Settlement Should Be Preliminarily Approved ................................... 5

              1.     The Settlement Was Negotiated at Arm's-Length and Is Supported by
                     Plaintiffs and Experienced Counsel ............................................... 7

              2.     The Settlement Terms Are Fair, Reasonable and Adequate Under the
                     *Grinnell* Factors ........................................................................... 7

                     a.     Continued Litigation Would Be Complex, Expensive, and
                            Protracted ........................................................................ 8

                     b.     Plaintiffs Have Sufficient Information to Make an Informed
                            Decision as to Settlement ................................................. 8

                     c.     Lead Plaintiffs Faced Significant Risks in Establishing Liability
                            and Damages ..................................................................... 9

                     d.     Risks of Maintaining Class Action Status Through Trial ............. 10

                     e.     Ability to Withstand Greater Judgment ........................................ 11

                     f.     The Settlement Amount Is in the Range of Reasonableness
                            in Light of the Best Possible Recovery and All the Attendant
                            Risks of Litigation .......................................................... 11

       B.     A Settlement Class Should Be Certified ................................................... 12

              1.     Numerosity ..................................................................................... 13

              2.     Commonality ................................................................................... 14

              3.     Typicality ........................................................................................ 14

              4.     Adequacy ........................................................................................ 15

          5.     Predominance of Common Questions and Superiority to Other Methods of Adjudication ........................................................................ 16

C.     The Form of Notice Should be Approved............................................................ 17

          1.     The Proposed Schedule and Form of Notice ............................................ 17

          2.     The Proposed Method of Class Notice Is Appropriate ............................. 18

VI.    CONCLUSION.......................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597,
 2004 WL 2750089 (S.D.N.Y. Dec. 02, 2004) ................................................... 9

*Amchem Prods., Inc. v. Windsor,*
 521 U.S. 591 (1997) ............................................................................. 12, 15, 16

*In re Am. Med. Sys., Inc.,*
 75 F.3d 1069 (6th Cir. 1996) ......................................................................... 13

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
 No. 1500 MDL, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...... 8, 9

*In re Ashanti Goldfields Sec. Litig.,*
 No. 00 Civ. 717, 2004 WL 626810 (E.D.N.Y. Mar. 30, 2004) ........................................ 13

*In re Baldwin-United Corp. Litig.,*
 122 F.R.D. 424 (S.D.N.Y. 1986) ................................................................... 15

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207,
 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ................................................... 8

*Buxbaum v. Deutsche Bank AG,*
 216 F.R.D. 72 (S.D.N.Y. 2003) ................................................................ 18, 19

*Chatelain v. Prudential-Bache Sec., Inc.,*
 805 F. Supp. 209 (S.D.N.Y. 1992) .............................................................. 6, 10

*Cinelli v. MCS Claim Servs., Inc.,*
 236 F.R.D. 118 (E.D.N.Y. 2006) ................................................................... 9

*In re Citigroup Inc. Sec. Litig.,*
 753 F. Supp. 2d 206 (S.D.N.Y. 2010) .......................................................... 2, 3

*City of Detroit v. Grinnell Corp.,*
 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*
 by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................... 7, 8, 9, 11

*Comer v. Cisneros,*
 37 F.3d 775 (2d Cir. 1994) ............................................................................. 13

*Consol. Rail Corp. v. Town of Hyde Park,*
 47 F.3d 473 (2d Cir. 1995) ............................................................................. 13

iii

*County of Suffolk v. Long Island Lighting Co.*,
    710 F. Supp. 1422 (E.D.N.Y. 1989) ............................................................................ 12

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)...................................................................................... 7, 11

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)....................................................................................... 12

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) ............................................................................... 13

*In re Drexel Burnham Lambert Group*,
    960 F.2d 285 (2d Cir. 1992)....................................................................................... 16

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ................................................................................... 15

*In re Frontier Ins. Group, Inc. Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997) ................................................................................. 13

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982)................................................................................................... 15

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................... 9, 10, 18

*In re Globalstar*, No. 01 Civ. 1748,
    2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ............................................................. 13

*Hicks v. Stanley,* No. 01 Civ. 10071,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................................................. 8

*In re Indus. Diamonds Antitrust Litig.*,
    167 F.R.D. 374 (S.D.N.Y. 1996) ............................................................................... 15

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ............................................................................. 5, 6

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................. 14

*In re Ivan F. Boesky Sec. Litig.*,
    948 F.2d 1358 (2d Cir. 1991)....................................................................................... 6

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)........................................................................... 13, 14, 15

*In re Marsh & McLennan Sec. Litig.*,
    No. 04 Civ. 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).............................. *passim*

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F. 3d 423 (2d Cir. 2007)........................................................................... 18

*In re Milken and Assoc. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................... 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    No. 94 Civ. 3996, 1999 WL 395407 (S.D.N.Y. June 15, 1999)........................................ 18

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)............................................................................. 6

*In re Nortel Networks Corp. Sec. Litig.*,
    No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003) .................................... 13

*In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013,
    2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) .................................................... 13

*In re Omnicom Group, Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010)........................................................................... 10

*In re Oxford Health Plans, Inc.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ...................................................................... 15

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997).............................. 10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)................................ 18

*Saddle Rock Partners Ltd. v. Hiatt*,
    No. 96 Civ. 9474, 2000 WL 1182793 (S.D.N.Y. Aug. 21, 2000) .................................... 13

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................... 6

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................... 6

*In re Traffic Exec. Ass'n*,
    627 F.2d 631 (2d Cir. 1980)............................................................................. 6

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993)..................................................................... 6

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM),
      2007 WL 4115809, (S.D.N.Y. Nov. 7, 2007) ................................................... 11

*In re Vivendi Universal S.A.*,
      242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
      396 F.3d 96 (2d Cir. 2005)...................................................................... 5, 8, 11

*Weinberger v. Kendrick*,
      698 F.2d 61 (2d Cir. 1982)............................................................................ 12

**Statutes**

Federal Rules of Civil Procedure Rule 23 ........................................................ *passim*
Securities Exchange Act of 1934, 15 U.S.C. ............................................................ 1

**Other Authorities**

Manual for Complex Litigation, Fourth § 21.632 (2004)........................................... 5
Newberg on Class Actions, (4th ed. 2002) .................................................... 5, 6, 12

## I.   INTRODUCTION

Plaintiffs[1] in the above-captioned putative class action (the "Action") respectfully submit that the proposed $590 million cash settlement satisfies all of the relevant legal standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure.   The Settlement[2] is eminently fair considering the substantial recovery to the Settlement Class and the risks and costs attendant to further, protracted litigation. The Settlement resulted from intensive arm's-length negotiations during two face-to-face mediation sessions before a retired federal judge, the Honorable Layn Phillips ("Judge Phillips" or the "Mediator").   The Settlement reflects a reasoned compromise based on Plaintiffs' and Interim Lead Counsel's[3] knowledge of the strengths and weaknesses of the case gained through an extensive pre-complaint investigation, motion practice, consultations with damages experts, and voluminous discovery.

## II.   PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### A.   Procedural Background

On November 8, 2007, a putative class action captioned *Salztman v. Citigroup, Inc., et al.*, No. 07 Civ. 9901, was filed in this Court alleging violations §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), against Citigroup and certain of its officers and directors.   Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4, *et seq.*, several putative class members moved for appointment as lead plaintiffs and approval of lead counsel.   By Order dated August 19, 2008, the Court appointed Jonathan Butler, M. David Diamond, David K. Whitcomb and

---

[1]  Plaintiffs include:   (i) Lead Plaintiffs Jonathan Butler, M. David Diamond, David K. Whitcomb and Henrietta C. Whitcomb; and (ii) co-plaintiffs John A. Baden III, Warren Pinchuck, Anthony Sedutto, Edward Claus, Carol Weil, Joseph DiBenedetto, and the Tennessee Consolidated Retirement Systems and the Public Employees' Retirement Association of Colorado.

[2]  All capitalized terms not otherwise defined shall carry the meaning set forth in the Stipulation and Agreement of Settlement, dated August 28, 2012 ("the Stipulation"), as Exhibit 1, to the accompanying Declaration of Ira M. Press ("Press Decl.") dated August 29, 2012.

[3]  "Interim Lead Counsel" refers to Kirby McInerney LLP, whom the Court appointed interim lead counsel  for the putative class by Order dated August 19, 2008.

Henrietta C. Whitcomb (the "ATD Group") as interim Lead Plaintiffs, and the law firm of Kirby McInerney LLP as Interim Lead Counsel.   *See* Dkt. No. 59.[4]

On February 24, 2009, interim Lead Plaintiffs filed their Amended Consolidated Class Action Complaint the ("Complaint") on behalf of a putative class of all persons who acquired Citigroup common stock from January 1, 2004 through January 15, 2009 inclusive (the "Class Period").   The Complaint asserted claims under §§ 10(b) and 20(a) of the Exchange Act against Citigroup and several individual defendants[5] (collectively, the "Defendants") in connection with, *inter alia*, the Defendants' Class Period misrepresentations and omissions concerning Citigroup's exposure to collateralized debt obligations ("CDOs").

By Order and Opinion dated November 9, 2010, the Court denied the Defendants' motion to dismiss:   (i) for the period February 2007 through November 3, 2007, the § 10(b) claims against Citigroup and the §§ 10(b) and 20(a) claims against Messrs. Prince, Crittenden, Druskin, Maheras, Klein, Bushnell and Rubin related to CDO exposure; and (ii) for the period November 4, 2007 to April 2008, the § 10(b) claims against Citigroup and the §§ 10(b) and 20(a) claims against Mr. Crittenden related to CDO-related misstatements and omissions.   *See In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 249 (S.D.N.Y. 2010).   The Court dismissed the Complaint's remaining claims.

Defendants filed their answer to the Complaint on January 14, 2011, and Plaintiffs filed their motion for class certification on July 15, 2011, which is currently pending.   Promptly after the Court's decision on the motion to dismiss, Plaintiffs commenced extensive discovery. Plaintiffs have gathered almost 40 million pages of documents from Defendants and third parties

---

[4] In the same Order, the Court consolidated several affiliated actions, and assigned 07 Civ. 9901 as the Lead Case.   *See* Dkt. No. 59.

[5] The Complaint named the following individual defendants:   Charles Prince, Gary Crittenden, Robert Druskin, Thomas Maheras, Michael Klein, David Bushnell, Robert Rubin, Lewis Kaden, Sallie Krawcheck, Steven Freiberg, Todd S. Thompson, John Gerspach, Stephen Volk, and Vikram Pandit.

and deposed over 30 of Defendants' witnesses.   In all, Plaintiffs deposed or defended over 50 witnesses in this matter.

During the pendency of Plaintiffs' motion for class certification, the parties agreed to mediation and retained Judge Phillips to assist them in exploring a negotiated resolution.   After two face-to-face sessions and additional negotiations, on April 25, 2012, Judge Phillips made a mediator's proposal to settle the Action for $590 million, subject to the execution of a formal stipulation and the Court's approval.   Shortly thereafter, the parties accepted the mediator's proposal.   The Stipulation of Settlement ("Stipulation) together with exhibits and certain other documents referred to herein, has been duly executed by the undersigned signatories on behalf of their respective clients, and reflects the final and binding agreement between the parties. *See* Press Decl., Ex. 1.

### B.    Substantive Allegations

The factual allegations of the Complaint have been set forth at length in the Court's decision on Defendants' motion to dismiss.   *See In re Citigroup Inc.*, 753 F. Supp. 2d at 249. Plaintiffs pled that prior to November 4, 2007, Defendants wrongfully concealed that Citigroup held tens of billions of dollars of so-called "super senior" tranches of CDOs, and that Defendants failed to take timely write-downs on those CDOs throughout the Class Period.   *Id.* at 217-23.

Specifically, Plaintiffs alleged that Defendants were aware of both the massive size of Citigroup's CDO holdings and their impairment long before either of these matters was disclosed to the market, because Citigroup:   (i) itself had created the CDOs underlying its retained Super Senior positions; (ii) engaged in a series of maneuvers by which it created new CDOs to buy its unmarketable Super-Senior tranches; (iii) as early as February 2007, had purchased credit protection from monoline insurers for its CDO holdings; and (iv) beginning in July 2007, held daily risk exposure meetings regarding its CDOs, which were attended by top Citigroup executives.   Moreover, Plaintiffs alleged that Citigroup's own analysts had issued statements during the Class Period predicting that the subprime meltdown would devastate CDOs backed by residential mortgage backed securities, such as its Super-Senior tranches.

3

### III.   REASONS FOR THE SETTLEMENT

The principal reason for the Settlement is the significant benefit that it provides to the Settlement Class now.   This benefit must be weighed against the risk that the Settlement Class would receive no recovery had Plaintiffs elected to continue litigating and been defeated at the class certification or summary judgment phases, trial, or appeal.

Plaintiffs' decision to settle this matter was fully informed and the product of Interim Lead Counsel's rigorous prosecution of this matter through the date of the parties' agreement. Specifically, in assessing whether the Settlement is in the best interest of the Settlement Class, Plaintiffs and Interim Lead Counsel evaluated:   (i) the merits of the parties' claims and defenses in light of their review of tens of millions of pages of documents from Defendants and third parties and the depositions of 33 of Defendants' witnesses; and (ii) the likelihood of defeating any *Daubert* or summary judgment motions, and prevailing at trial.

Although Plaintiffs believe that the Defendants knowingly or recklessly misrepresented Citigroup's CDO exposure and valuation, Defendants have raised a host of factual and legal challenges increasing the uncertainty of a favorable outcome absent settlement.   Securities fraud litigations like this action are notoriously complex and difficult to prove:   rarely is there concrete direct evidence of fraudulent intent.   Moreover, although several of Plaintiffs' claims survived dismissal, Plaintiffs still faced the possibility that the Court would not grant (or would severely curtail) class certification or reject Plaintiffs' damages analysis under *Daubert*.   By settling the action now, Plaintiffs and the Settlement Class can share in what would be one of the largest settlements in a subprime-related securities action to date.

Similarly, although Defendants deny each and all of Plaintiffs' claims and contentions, they nevertheless have concluded that it is desirable to fully and finally resolve this litigation in the manner and on the terms set forth in the Stipulation.   For Defendants, resolution of the Action limits further expense and inconvenience and eliminates the uncertainty and risks inherent in any litigation.

Accordingly, Plaintiffs and Interim Lead Counsel respectfully submit that the Court should preliminarily approve the proposed Settlement because it represents a significant all-cash compensation for the Settlement Class and will eliminate the significant risk that continued litigation may result in a smaller recovery or possibly no recovery at all. Defendants do not oppose this motion for preliminary approval of the proposed class action Settlement.

## IV.   THE TERMS OF THE SETTLEMENT

The Settlement resolves all claims of the Plaintiffs and the Settlement Class against all Released Parties.   *See* Press Decl., Ex. 1.   The Defendants have agreed to cause $590,000,000 to be paid into a Settlement Fund on behalf of Plaintiffs and the Settlement Class. The Settlement Fund will be deposited into an escrow account within ten business days after the entry of the Preliminary Approval Order in accordance with the payment instructions to be provided by Interim Lead Counsel and will then earn interest until distributed to the Settlement Class.

The Stipulation also provides for the form and manner of class notice, the proof of claim procedures, the procedures by which potential Settlement Class members may seek exclusion or object to any terms of the Settlement, and the procedure by which Interim Lead Counsel will apply for attorneys' fees and reimbursement of expenses incurred in prosecuting this Action.

## V.   ARGUMENT

### A.   The Settlement Should Be Preliminarily Approved

The law expresses a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal citation and quotations omitted).

A court's review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent fairness hearing. *See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (citing *Manual for Complex Litigation, Fourth* § 21.632 (2004)). *See also* Fed. R. Civ. P. 23(e); 4 *Newberg on Class Actions,* §§ 11.22, *et. seq.* (4th ed. 2002).   At the preliminary approval stage, a court will review the proposed settlement and make an initial determination as to its fairness, reasonableness, and adequacy. "Where the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Initial Pub. Offering*, 226 F.R.D. at 191. These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests.

Whether a proposed settlement is fair is a determination left to the trial court's sound discretion. *See In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972). When exercising its discretion, a court should review the proposed settlement in light of the strong judicial and public policies that favor settlements. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999). There is a strong initial presumption that a proposed settlement negotiated during the course of litigation is fair and reasonable. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (citation omitted). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgement of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. To grant preliminary approval, a court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). "Courts determine the fairness of a settlement by looking both at the terms of the settlement and the negotiation process leading up to it." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008).   As detailed below, both the negotiation process and the terms of the Settlement support a finding of fairness.   As such, preliminary approval is warranted.

1.    **The Settlement Was Negotiated at Arm's-Length and Is Supported by Plaintiffs and Experienced Counsel**

The Settlement was negotiated at arm's-length by counsel who are experienced in complex securities litigation and who were acting in an informed manner.   During the mediation process, the parties submitted confidential mediation statements and participated in two full day face-to-face mediation sessions.   After the conclusion of the mediation, the parties accepted Judge Phillips' proposal to settle and release all claims for $590 million in cash.   *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement . . . ensure[d] that the proceedings were free of collusion and undue pressure").

Interim Lead Counsel and Plaintiffs consider the proposed settlement to be an excellent outcome for the Settlement Class in light of their understanding of the Action's strengths and weaknesses.   That understanding arises from Interim Lead Counsels': (i) rigorous pre-filing investigation; (ii) review of tens of millions of pages of documents; (iii) deposition of 33 of Defendants' witnesses; (iv) consultations with damages experts; and (v) analysis of the law applicable to the parties' claims and defenses.   These circumstances give rise to a presumption of fairness.

2.    **The Settlement Terms Are Fair, Reasonable and Adequate Under the *Grinnell* Factors**

In determining whether the substantive terms of a settlement are fair, reasonable, and adequate, courts in this Circuit look to the *Grinnell* factors.[6]   An evaluation of these factors weighs in favor of preliminary approval of the proposed settlement.

---

[6] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).   Because the second *Grinnell* factor -- the reaction of the class to the settlement -- is only applicable at the "fairness hearing" stage, it is not addressed below.

### a.   Continued Litigation Would Be Complex, Expensive, and Protracted

Courts have consistently recognized that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a securities class action.   *See, e.g.*, *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 1500 MDL, 02 Civ. 5575, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *5-6 (S.D.N.Y. Oct. 24, 2005).

Reaching a settlement at this juncture avoids the uncertainty of the class certification and summary judgment phases of the litigation, and, assuming Plaintiffs' success at these stages, a complex and costly trial, and likely appeals. Throughout this process Plaintiffs would face numerous hurdles such as compelling challenges to loss causation, and arguments that there were no actionable misrepresentations during the Class Period and no recoverable damages.

Moreover, even if Plaintiffs were to prevail at all stages of the litigation, any potential recovery (in the absence of a settlement) would occur years in the future, substantially delaying payment to the Settlement Class.   By contrast, the Settlement offers the opportunity to provide definite recompense to the Settlement Class now.   *See Hicks*, 2005 WL 2757792, at *6 ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

### b.   Plaintiffs Have Sufficient Information to Make an Informed Decision as to Settlement

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal."   *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010).   As noted above, the proposed Settlement follows voluminous discovery, including Plaintiffs' review of tens of millions of pages of documents and depositions of over 30 witnesses.   Accordingly, this factor also supports approval of the Settlement.

c.   **Lead Plaintiffs Faced Significant Risks in Establishing Liability and Damages**

In analyzing the risks concerning liability, the Court does not "need to decide the merits of the case or resolve unsettled legal questions." *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (internal quotations and alterations omitted).   Rather, the Court weighs the likelihood of success on the merits against the relief provided by the Settlement. *See id.* Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability.   *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

In assessing the Settlement, the Court should balance the benefits afforded the Settlement Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463.   Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.   *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in a securities action presented significant hurdles to proving liability).

While Interim Lead Counsel believes that they would prove Plaintiffs' claims, they also recognize that they would face substantial hurdles.   First, Plaintiffs would bear the burden of showing that the evidence they elicited during discovery was sufficient to establish their claims despite any credible defenses.   Although Lead Plaintiffs believe that the documentary and testimonial evidence would support their claims, there is no way to determine without substantial additional litigation whether such evidence would withstand a summary judgment motion, and would convince a jury to accept Plaintiffs' theory over Defendants' competing narrative. Among other factual defenses, Defendants have argued that Citigroup's senior management: (i) believed that the risk of Super Senior losses was remote; and (ii) selected a pricing model that they believed best reflected the Super Senior's value, and not because it minimized write-downs.

Second, Plaintiffs would also face the risk that they would be unable to prove loss causation and damages.   *See In re Milken and Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997).   To prevail on those issues, Plaintiffs would be required to prove with the assistance of an expert that Defendants' misleading statements inflated Citigroup's stock price, as well as the amount of the artificial inflation.

Defendants would counter with their own expert(s) and would challenge the scientific validity of Plaintiffs' expert's report.   *See, e.g., In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010).   At the summary judgment and/or *Daubert* motion stages, Defendants would likely also challenge Plaintiffs' calculation of damages or argue that any decline in Citigroup's stock price resulted from market, industry, or other non-case-related ("confounding") factors, such as the global financial crisis.   Even if the Action were permitted to go to trial, it is not possible to determine which parties' expert the jury would find more credible.

Accordingly, the proposed class faces a very real risk of no recovery, possibly after years of additional proceedings absent settlement. Conversely, the Settlement will provide tangible, certain and substantial relief to the proposed class now, "without subjecting them to the risks, complexity, duration, and expense of continuing litigation." *In re Global Crossing*, 225 F.R.D. at 456-57.

### d.      Risks of Maintaining Class Action Status Through Trial

Interim Lead Counsel is confident that it would have obtained class action status and maintained that status through trial.   Nonetheless, Defendants have raised challenges to class certification, and may move to de-certify the Class before trial or on appeal at the conclusion of trial. *See* Fed. R. Civ. P. 23(c); *Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time.").

e.        **Ability to Withstand Greater Judgment**

While there is no basis to believe that Defendants are incapable of withstanding a greater judgment, that factor alone is insufficient to defeat approval of the Settlement, especially where, as here, the other *Grinnell* factors weigh in support of approving the Settlement.   *See D'Amato*, 236 F.3d at 86 (the ability to withstand higher judgment, "standing alone, does not suggest that the settlement is unfair"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 WL 4115809, at \*11 (S.D.N.Y. Nov. 7, 2007) (defendant's substantial net worth "alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied").

f.        **The Settlement Amount Is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The size of the Settlement provides support for its reasonableness when viewed in light of the best possible recovery and all of the risks of litigation. *See Wal-Mart*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion") (internal citation omitted).

According to a 2012 report by Cornerstone Research entitled "Securities Class Action Settlements: 2011 Review and Analysis" ("Cornerstone Report"), 97.3% of all PSLRA cases settled for *less* than $250 million.   *See* Press Decl. Ex. 2 at 4.   Accordingly, the $590 million settlement here is well-within the top 2.7% of all securities class action settlements since 1996. The Cornerstone Report also provides that between 1996 and 2010 in cases where plaintiffs' estimated damages were in excess of $5 billion, the median settlement was only 1% of estimated damages.   *See id.* at 7.   The Settlement represents a recovery well in excess of the median securities class action settlement in recent years.

The Settlement is therefore favorable in comparison to other securities class action settlements and represents a significant recovery.

11

**B.      A Settlement Class Should Be Certified**

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

It is well-settled that a court may certify a class for settlement purposes, *see Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009), provided that the court conducts an inquiry under Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). While a class generally must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus."   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619, 622 (1997).[7]  The Court should: make a determination that the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b); and provisionally certify the settlement class, and appoint Interim Lead Counsel as Lead Class Counsel and the Plaintiffs as class representatives.

Applying the allocations of the Settlement Amount developed for the Plan of Allocation, Class Members would receive $0.19 per share before Court-approved fees and expenses and costs of notice and claims administration.   This figure also assumes that every eligible Class Member asserts a valid claim.   The actual claim rate is likely to be much less than 100%, making the proportional recovery per claimant much higher.

As discussed below, all of the certification requirements for settlement purposes are met for this proposed settlement class, and Defendants consent to provisional certification (for settlement purposes only). *See* Press Decl., Ex. 1 (Stipulation of Settlement) at ¶¶ 2, 5-6.[8]

---

[7]  In determining whether to certify a settlement class, the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem*, 521 U.S. at 593.

[8]  *See Newberg*, § 11.27 at 11-40 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting*

### 1.      Numerosity

The numerosity requirement is satisfied when a plaintiff can demonstrate that "the class is so numerous that joinder of all members is impracticable." *Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir. 1994) (quoting Fed. R. Civ. P. 23).   In satisfying the numerosity requirement, "a plaintiff need not show that joinder is impossible.   Nor need the plaintiff know the exact number of class members."   *Saddle Rock Partners Ltd. v. Hiatt*, No. 96 Civ. 9474, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000) (citations omitted).   Rather, while "[t]here is no strict numerical test for determining impracticability of joinder[,] . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).[9]   Judicial consensus is that a class with as few as 40 members satisfies the requirement.[10]   Moreover, "[i]n securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855, 2003 WL 22077464, at *2 (S.D.N.Y. Sept. 8, 2003) (quoting *In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997)).[11]

---

*Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd*, 907 F.2d 1295 (2d Cir. 1990).

[9]  *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The district court found that the numerosity requirement of Rule 23(a)(1) was easily met, as the 'class would number well over 100,000'") (citing *Marisol A. Giuliani*, 929 F. Supp. 662, 689-90 (S.D.N.Y. 2006)).

[10]  *See, e.g., Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013, 2006 WL 330113, at *5 (S.D.N.Y. Feb. 14, 2006).

[11]  *See In re Globalstar,* No. 01 Civ. 1748, 2004 WL 2754674, at *3 (S.D.N.Y. Dec. 1, 2004) ("based upon the number of shares outstanding . . . it is reasonable to assume that the number of class members is in the hundreds, if not thousands. Plaintiffs need not set forth an exact class size as a precondition to show numerosity"); *Dietrich v. Bauer*, 192 F.R.D. 119, 123 (S.D.N.Y. 2000); *In re Ashanti Goldfields Sec. Litig.*, No. 00 Civ. 717, 2004 WL 626810, at *11-12 (E.D.N.Y. Mar. 30, 2004).

Lead Plaintiffs believe that the Settlement Class consists of many thousands of members. Throughout the Class Period, investors actively traded Citigroup common stock on the NYSE, with approximately 5 billion shares issued and outstanding, and average weekly trading volume of approximately 18.9 billion shares. *See* Declaration of Gregg A. Jarrell dated July 15, 2011 in support of Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification, at page 9 of 48 [D.E. 102]. Thus, numerosity is readily established.

### 2.   Commonality

Rule 23(a)(2) requires that, in order for an action to be properly maintained as a class action, there must be questions of law or fact common to the class.   The Second Circuit has held that the commonality requirement is satisfied if the named plaintiffs share at least one question of fact or law in common with the purported class. *See Marisol A.*, 126 F.3d at 376. Federal securities cases like this one easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *Initial Pub. Offering*, 243 F.R.D. at 85. There are numerous questions of law or fact common to plaintiffs and the Settlement Class including: (a) whether the federal securities laws were violated by defendants' acts as alleged herein; (b) whether statements disseminated by defendants to the investing public during the Class Period omitted and/or misrepresented material facts about Citigroup's business and operations; (c) whether defendants acted willfully or recklessly in omitting and/or misrepresenting material facts; (d) whether defendants' non-disclosures and/or misrepresentations constituted a fraud on the market by artificially inflating the market prices of Citigroup common stock during the Class Period; and (e) whether the members of the Settlement Class have sustained damages and, if so, what is the proper measure of such damages.   These issues are prototypical examples of those which have been found to present "common questions" of law or fact meriting class certification.

### 3.   Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement is readily met

where "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal S.A.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation omitted); *see In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000); *In re Baldwin-United Corp. Litig*., 122 F.R.D. 424, 428 (S.D.N.Y. 1986). In this regard, the requirements of commonality and typicality tend to merge.   *See Marisol A.*, 126 F.3d at 376.   In essence, "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Id*. (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). There is no requirement, however, that the claims of all members of a purported class be identical. *In re Marsh*, 2009 WL 5178546, at *10; *In re Indus. Diamonds Antitrust Litig*., 167 F.R.D. 374, 379 (S.D.N.Y. 1996); *Dura-Bilt Corp. v. Chase Manhattan Corp*., 89 F.R.D. 87, 99 (S.D.N.Y. 1981) (internal citations omitted).

The allegations in this case include a common course of unlawful conduct by the Defendants.   Plaintiffs, like all who comprise the putative Settlement Class, acquired Citigroup shares at prices that were artificially inflated by Defendants' alleged misrepresentations or concealment of Citigroup's CDO exposure.   Plaintiffs and their fellow Settlement Class members were all damaged when the value of Citigroup stock declined materially beginning in late-2007 and continuing for months thereafter, allegedly owing to numerous incremental public disclosures concerning Citigroup's true CDO exposure. Accordingly, Plaintiffs' and the Settlement Class' interests are directly aligned and Plaintiffs' claims are typical of the proposed Settlement Class.

### 4.   Adequacy

Federal Rule of Civil Procedure Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class."   The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citing *Falcon*, 457 U.S. 147, 157-58, n.13).   The requirement is met

15

if it appears that: (1) the named plaintiffs' interests are not antagonistic to the class' interests; and (2) the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); *In re Marsh*, 2009 WL 5178546, at *10.

Interim Lead Counsel is eminently qualified, experienced and able to conduct this litigation. Kirby McInerney LLP specializes in class action and complex securities litigation in courts throughout the country, as documented in its résumé. *See* Press Decl., Ex. 3.   Moreover, as discussed above, because Plaintiffs and the Settlement Class were injured by the same alleged misconduct, their interests and claims are coextensive.

### 5.   Predominance of Common Questions and Superiority to Other Methods of Adjudication

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Marsh*, 2009 WL 5178546, at *11.   The Supreme Court has defined this inquiry as establishing "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.   This inquiry is "similar" to Rule 23(a)(3)'s typicality requirement. *Id*. at 623 n.18.   The Court added that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id*. at 625.

Here, the predominance requirement is readily satisfied.   The essence of the Complaint is that Citigroup's disclosures concerning its Super-Senior CDO positions were false and misleading. Under these circumstances, Lead Plaintiffs' § 10(b) claim is susceptible of proof applicable to all class members.   Lead Plaintiffs will prove each element of their claim through common evidence of Defendants' public statements, Citigroup's internal business practices and procedures, and the impact of corrective disclosure on Citigroup stock which traded on an efficient market.

16

Rule 23(b)(3) also sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). Courts have recognized that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *In re Marsh*, 2009 WL 5178546, at *12.

The scope and complexity of Plaintiffs' claims against Defendants, together with the high cost of individualized litigation, make it unlikely that the vast majority of the Settlement Class Members would be able to obtain relief without class certification. Moreover, it is clearly desirable to concentrate the claims of all Settlement Class Members in this forum, and Lead Plaintiffs do not foresee any difficulties in the management of this Action as a class action. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

## C.   The Form of Notice Should be Approved

### 1.   The Proposed Schedule and Form of Notice

If the Court preliminarily approves the Settlement, Plaintiffs propose two forms of notice, a long form notice ("Notice") and a summary notice ("Summary Notice"). The Notice will be sent by mail to all identifiable Settlement Class Members at their last known address, and the Summary Notice will be published once in the national edition of the *Wall Street Journal* and issued electronically over the *PR Newswire*, an internet wire service for those Settlement Class Members whose addresses cannot be identified.   Substantively, the Notices: describe the Action and define the Settlement Class; describe the claims, defenses, and issues on which the parties disagree; notify Settlement Class Members of their rights to appear, object, and opt out; clearly explain the binding nature of the settlement; and set forth the plan of allocation pursuant to

which the Net Settlement Fund would be allocated among Settlement Class Members. *See generally* Exs. B and C to the Stipulation. Consistent with the PSLRA, the Notices also provide the relevant statements of recovery, potential outcomes of the case, fees and expenses sought, attorney information, and the reasons for the Settlement. *See* 15 U.S.C. § 78u-4(a)(7).

### 2.   The Proposed Method of Class Notice Is Appropriate

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."   Accordingly, the Second Circuit has held that the adequacy of a class action settlement notice is "measured by reasonableness." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007).[12]

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B).   Where "the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." *In re Global Crossing*, 225 F.R.D. at 448.   Rule 23(c)(2) requires the "best practicable notice," while Rule 23(e) requires notice that is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).   Neither Rule 23 nor due process requires actual notice to each possible class member.[13]

---

[12]  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member." *Id.* (internal citations omitted).

[13]  *See In re Marsh,* 2009 WL 5178546, at *23-24; *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 80-81 (S.D.N.Y. 2003); *In re NASDAQ Market-Makers Antitrust Litig.,* No. 94 Civ. 3996, 1999 WL 395407, at *2 n.3 (S.D.N.Y. June 15, 1999).

A combined notice under Rule 23(c)(2) and Rule 23(e) must include the following information: (1) notification that the Court will exclude a class member if he so requests by a certain date; (2) notification that the judgment will include all members of the class who do not request exclusion; (3) notification that any class member who does not request exclusion may enter an appearance through counsel; (4) the nature of the pending litigation; (5) the settlement's general terms; (6) notification that complete information is available from the court files; and (7) notification that any class member may appear and be heard at the Fairness Hearing. The PSLRA imposes additional requirements for notice in securities fraud actions.[14]

Here, the proposed Notice and Summary Notice, *see* Stipulation Exs. B & C, satisfy Rule 23, and the PSLRA's statutory requirements.   Moreover, due process is satisfied because the notice program includes both individual notice and general publication.   *See, e.g.*, *In re Marsh*, 2009 WL 5178546, at *23-24; *Buxbaum*, 216 F.R.D. at 81. Because the Notices give absent Settlement Class Members reasonable notices of their rights, the Court should approve them.

---

[14]  These additional requirements are: (a) the amount of the settlement proposed to be distributed to the parties as determined in the aggregate and on an average per-share basis; (b) if the parties do not agree on the average amount of damages per share that would be recoverable in the event plaintiffs prevailed, as is the case here, a statement from each settling party concerning the issue(s) on which the parties disagree; (c) a statement indicating which parties or counsel intend to make an application for attorneys' fees and costs, the amount that will be sought, and a brief explanation in support of the request; (d) the name, telephone number, and address of one or more representatives of counsel for the Class who will be reasonably available to answer questions concerning any matter contained in the notice; (e) a brief statement explaining why the parties are proposing the settlement; and (f) such other information as may be required by the Court. 15 U.S.C. § 78u-4(a)(7).

## VI.   CONCLUSION

For the reasons set forth in this memorandum, the Court should enter an order: (1) granting preliminary approval of the proposed Settlement; (2) conditionally certifying the Settlement Class for settlement purposes; (3) appointing Interim Lead Counsel as Lead Class Counsel; (4) approving the parties' proposed form and method of giving notice of the pendency of this Action and the Settlement to the Settlement Class; (5) directing that notice be given to the Settlement Class members; and (6) scheduling a hearing at which the Court considers (a) the parties' request for final approval of the Settlement Class, the Settlement, the Plan of Allocation, and entry of the Judgment and (b) Interim Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses.

Dated: August 29, 2012     Respectfully Submitted,

            KIRBY McINERNEY LLP

            By:___/s/ Ira M. Press_____
            Ira M. Press
            Peter S. Linden
            Andrew M. McNeela
            825 Third Avenue, 16th Floor
            New York, NY 10022
            Tel:   (212) 371-6600
            Fax:   (212) 751-2540

            *Interim Lead Counsel for Plaintiffs*

            Andrew J. Entwistle
            ENTWISTLE & CAPPUCCI LLP
            280 Park Avenue
            26th Floor West
            New York, NY 10017
            Tel.: (212) 894-7200
            Fax: (2121) 894-7272

James Allen, Sr.
ALLEN BROTHERS, P.L.L.C.
400 Monroe Street, Suite 200
Detroit, MI 48226
Tel.: (313) 962-7777
Fax: (313) 962-0581

Kenneth Gold
490 Griffith Street
Saugatuck, MI 48226
Tel.: (248) 310-9870

Lionel Glancy
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel.: (310) 201-9150
Fax: (310) 201-9160

William Narwold
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel.: (843) 216-9000
Fax: (843) 216-9450

Alan L. Kovacs
LAW OFFICE OF ALAN L. KOVACS
2001 Beacon Street, Suite 106
Boston, MA 02135
Tel.: (617) 964-1177
Fax: (617) 332-1223

Kenneth A. Elan
LAW OFFICE OF KENNETH A. ELAN
217 Broadway, Suite 606
New York, NY 10007
Tel.: (212) 619-0261
Fax: (212) 835-2707

*Additional Plaintiffs' Counsel*