**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CITIGROUP<br>SECURITIES LITIGATION | No. 07 Civ. 9901 (SHS)<br><br>**ECF Case** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**
**AND APPROVAL OF PLAN OF ALLOCATION**

KIRBY McINERNEY, LLP
Ira M. Press
Peter S. Linden
Andrew McNeela
Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Lead Counsel for Plaintiffs*

*Additional Plaintiffs' counsel on
signature page*

Dated: December 7, 2012

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS ............................ 2

    A.    Procedural Background ................................................................ 2

    B.    Substantive Allegations ............................................................... 2

REASONS FOR THE SETTLEMENT ..................................................................... 3

ARGUMENT ................................................................................................. 5

I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND FINAL
    APPROVAL SHOULD BE GRANTED ............................................................ 5

    A.    The Applicable Standard ............................................................. 5

    B.    The Settlement Is Procedurally Fair as It Was Negotiated at Arm's-Length
        and Is Supported by Plaintiffs and Experienced Counsel ..................................... 7

    C.    The Settlement Satisfies the Second Circuit's *Grinnell* Factors for Approval ....... 8

        1.    The Complexity, Expense and Likely Duration of the Action
            Justifies the Settlement .............................................................. 9

        2.    Reaction of the Class To the Settlement .................................................. 10

        3.    Plaintiffs Had Sufficient Information to Make Informed
            Decisions as To Settlement ........................................................... 12

        4.    Plaintiffs Faced Significant Risks in Establishing Liability .................... 13

        5.    Plaintiffs Faced Significant Risks in Establishing Damages .................. 16

        6.    Risks of Maintaining Class Action Status Through Trial ......................... 17

        7.    Ability to Withstand Greater Judgment .................................................. 18

        8.    The Settlement Amount Is in the Range of Reasonableness in
            Light of the Best Possible Recovery and All the Attendant
            Risks of Litigation ..................................................................... 19

    D.    The Plan of Allocation Should Be Approved as It Is Fair, Reasonable, and
        Adequate ................................................................................ 22

    E.    Notice To the Class Satisfies Due Process Requirements .................................. 24

CONCLUSION ................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    722 F.2d 988 (2d Cir. 1983).............................................................................. 6

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).......................... 19

*In re Alloy, Inc. Sec. Litig.*,
    No. 03 Civ. 1597 (WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ..................... 7, 14

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. MDL 1500, 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......... 9, 13, 14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................... 17

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010), *reconsideration denied*,
    No. 09 MD 2058 (PKC), 2010 WL 4237304 (S.D.N.Y. Oct. 8, 2010) ........................... 21

*In re Barclays Bank PLC Sec. Litig.*,
    No . 09 CIV. 1989 (PAC), 2011 WL 31548 (S.D.N.Y. Jan. 5, 2011),
    *reconsideration denied*, 2011 WL 2150477 (S.D.N.Y. May 31, 2011) ......................... 22

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
    No. 07 Civ 2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ...................................... 12

*Blackmoss Invs. Inc. v. ACA Capital Holdings Inc.*,
    No. 07 Civ. 10528 (RWS), 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ........................ 22

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................................. 17

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992)................................................................... 6, 18

*Cinelli v. MCS Claim Servs., Inc.*,
    236 F.R.D. 118 (E.D.N.Y. 2006) ..................................................................... 13

*In re Citigroup ERISA Litig.*,
    No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009),
    *aff'd*, 662 F.3d 128 (2d Cir. 2011) ................................................................. 21

*In re Citigroup Inc. Sec. Litig.*,
    753 F. Supp. 2d 206 (S.D.N.Y. 2010)................................................................ 2

*In re Citigroup Inc. S'holder Deriv. Litig.*,
788 F. Supp. 2d 211 (S.D.N.Y. 2011) ............................................................................ 21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................................................................................. 7, 14, 18

*Copeland v. Fortis*,
685 F. Supp. 2d 498 (S.D.N.Y. 2010), *clarified on denial of reconsideration*,
No. 08 CIV. 9060 (DC), 2010 WL 2102454 (S.D.N.Y. May 20, 2010) ......................... 22

*In re Countrywide Financial Corp. Sec. Litig.*,
No. CV 07-05295 (MRP) (MANx) C.D. Cal.) .................................................................. 1

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ...................................................................................... 7, 8, 18

*In re Datatec Sys., Inc. Sec. Litig., Master*,
File No. 04-cv-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ......................... 23

*In re Deutsche Bank AG Sec. Litig.*,
No. 09 Civ. 1714 (DAB), 2012 WL 3297730 (S.D.N.Y. Aug.  10, 2012),
*on reconsideration*, No. 09 Civ 1714 (DAB) 2011 WL 3664407
(S.D.N.Y. Aug. 19, 2011) ............................................................................................... 22

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) .................................................................................................. 24, 25

*EXCESS In re Excess Value Ins. Coverage Litig.*,
No. M-21-84RMB, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) .................................. 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................. 11

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... 6, 9, 13, 14, 22

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................................... 22

*Hicks v. Stanley*,
No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 9, 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................................ 16

*In re Ivan F. Boesky Sec. Litig.*,
948 F.2d 1358 (2d Cir. 1991) .......................................................................................... 5

iii

*Joel A. v. Giuliani*,
　　218 F.3d 132 (2d Cir. 2000) ............................................................................. 5

*In re Milken and Assoc. Sec. Litig.*,
　　150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................... 16

*Mullane v. Central Hanover Bank & Trust Co.*,
　　339 U.S. 306 (1950) ....................................................................................... 25

*In re Omnicom Group, Inc. Sec. Litig.*,
　　597 F.3d 501 (2d Cir. 2010) ........................................................................... 16

*In re PaineWebber Ltd. P'ship Litig.*,
　　171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 7, 17

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
　　694 F. Supp. 2d 287 (S.D.N.Y. 2010) ............................................................ 22

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*,
　　753 F. Supp. 2d 166 (S.D.N.Y. 2010) ............................................................ 22

*In re Royal Bank of Scotland Group PLC Sec. Litig.*,
　　No. 09 CIV. 300 (DAB), 2012 WL 3826261 (S.D.N.Y. Sept. 4 , 2012) ........ 21

*S.E.C. v. Citigroup Inc.*,
　　No. 10-cv-1277-ESH (D.D.C.) .................................................................. 20, 21

*S.E.C v. Stoker*,
　　No. 11-cv-7387 (S.D.N.Y. 2011) .................................................................... 16

*In re Security Capital Assurance Ltd. Sec. Litig.*,
　　No. 07 Civ. 11086 (DAB), 729 F. Supp. 2d 569 (S.D.N.Y. 2010) and
　　2011 WL 4444206 (S.D.N.Y. Sept. 23, 2011) ............................................... 21

*In re Societe Generale Sec. Litig.*,
　　No. 08 Civ. 2495(RMB), 2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010) ....... 22

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
　　No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ..... 7, 10, 18

*Strougo v. Bassini*,
　　258 F. Supp. 2d 254 (S.D.N.Y. 2003) .......................................................... 9, 10

*In re Sumitomo Copper Litig.*,
　　189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................... 6

*In re Telik, Inc. Sec. Litig.*,
　　576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................ 6, 22

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993)........................................................................ 6

*In re UBS Sec. Litig.*,
    No. 07 CIV. 11225 (RJS), 2011 WL 4059356 (S.D.N.Y. Sept. 13, 2011)...................... 21

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989)...................................................................... 6

*United States  v. Cioffi and Tannin*,
    No. 08-CR-415 (E.D.N.Y. 2009) .................................................................. 15-16

*United States v. Glens Falls Newspapers, Inc.*,
    160 F.3d 853 (2d Cir. 1998)................................................................................ 10

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................... 11, 19, 23

*In re Visa Check/MasterMoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................. 5

*In re Wachovia Preferred Securities and Bond/Notes Litig.*,
    No. 09 Civ. 6351 (RJS) (S.D.N.Y.) ...................................................................... 1

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................... 5, 6, 7, 12, 19

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)............................................................................. 18

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)..................................................................... 17

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)................................................................................. 7

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ............................................................................ 11

## Statutes

Fed. Prac. & Proc. § 1797.1 ............................................................................... 11

Fed. R. Civ. P. 23 (e)(1)-(2)................................................................................. 5

## INTRODUCTION

Plaintiffs[1] in the above-captioned class action (the "Action") respectfully submit that the proposed $590 million settlement satisfies all of the relevant standards for final approval under Rule 23 of the Federal Rules of Civil Procedure.

To the best of Plaintiffs' and Lead Counsel's knowledge, this Settlement is the largest settlement ever in any case relating to CDO exposures or CDOs, the third-largest in any case arising from the subprime crisis, and the 18th largest securities class action settlement brought pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), no matter the specific allegations – placing it in the top 1.5% of all PSLRA settlements and likely in the top 1% of securities class action settlements of all time.  Joint Decl.[2] at ¶¶ 119-23.

Lead Counsel is aware of only 17 PSLRA cases that have settled for more.  *Id.* at Ex. M. However, unlike this Action, 16 of the 17 larger PSLRA settlements stemmed from cases that involved non-scienter claims (obviating the need to establish *scienter* in order to prevail), and/or earnings restatements (thereby conceding *ab initio* two elements of plaintiffs' claims – falsity and materiality).[3]  Joint Decl. at ¶¶ 18-19, 122-23.  This Action did not have the benefit of any such tailwinds.

---

[1]  All capitalized terms not otherwise defined shall carry the meaning set forth in the Stipulation and Agreement of Settlement, dated August 28, 2012, as amended (the "Stipulation"), and filed with the Court on August 29, 2012 [Dkt. No. 155-1], and as modified by the Court's September 28, 2012 order further amending the preliminary approval order [Dkt. No. 159].

[2]  "Joint Decl." refers to the concurrently-filed Joint Declaration of Ira M. Press and Peter S. Linden in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and (B) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

[3]  While two subprime crisis-related suits – *In re Wachovia Preferred Securities and Bond/Notes Litig.*, No. 09 Civ. 6351 (RJS) (S.D.N.Y.) and *In re Countrywide Financial Corp. Sec. Litig.*, No. CV 07-05295 (MRP) (MANx) C.D. Cal.) – settled for more, both included non-scienter based claims brought under the Securities Act of 1933 ("Securities Act") and multiple corporate settling defendants.

The Settlement resulted from intensive arm's-length negotiations during two face-to-face mediation sessions before, and subsequent substantial negotiations through, a retired federal judge, the Honorable Layn Phillips ("Judge Phillips" or the "Mediator").  The Settlement reflects a reasoned compromise based on Plaintiffs' and Lead Counsel's knowledge of the strengths and weaknesses of the case gained through an extensive pre-complaint investigation, motion practice, consultations with damages experts, and voluminous discovery.

By any and all measures, this Settlement is an excellent recovery for the Class.

For the reasons set forth in this memorandum, it is respectfully submitted that the Court should enter an order granting Plaintiffs' motion for (a) final approval of the proposed Settlement; and (b) final approval of the proposed Plan of Allocation of the settlement proceeds.[4]

## PROCEDURAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### A.    Procedural Background

The Joint Declaration, which accompanies this motion, details the factual and procedural background of this case and the events that led to the Settlement.

### B.    Substantive Allegations

The factual allegations of the Complaint have been set forth at length in the Court's decision on Defendants' motion to dismiss.  *See In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 249(S.D.N.Y. 2010).  Plaintiffs pled that prior to November 4, 2007, Defendants wrongfully concealed that Citigroup held tens of billions of dollars of so-called "super senior" tranches of CDOs, and that Defendants failed to take timely write-downs on those CDOs throughout the Class Period.  *Id.* at 217-23.

---

[4] Concurrently, Plaintiffs' Lead Counsel is filing a motion for approval of award of attorneys' fees and reimbursement of litigation expenses.

Specifically, Plaintiffs alleged that Defendants were aware of the massive size of Citigroup's CDO holdings and of the risk to and impairment of such holdings before any of these matters was disclosed to the market, because Citigroup:  (i) itself had created the CDOs underlying its retained Super Senior positions; (ii) after near-invariably retaining exposure to the super senior tranches of its CDOs between 2003 and 2006, thereafter, no later than February 2007, *switched* its fundamental orientation to super senior exposure and risk and thereafter began a concerted effort to offload its super senior tranche exposures, including (a) by purchasing credit protection from monoline insurers on Citigroup's super senior tranches, and (b) creating new special purpose vehicles to which Citigroup could offload further of its super senior exposures; and (iii) beginning in July 2007, held daily risk exposure meetings regarding its CDOs attended by top Citigroup executives.  Moreover, Plaintiffs alleged that Citigroup's own analysts had issued statements during the Class Period predicting that the subprime meltdown would devastate the value of CDOs backed by subprime residential mortgage-backed securities.  Joint Decl. at ¶¶ 32, 49, 59.

## REASONS FOR THE SETTLEMENT

The principal reason for the Settlement is the significant benefit that it provides to the Class now.  This benefit must be weighed against the risk that the Class would receive a much smaller recovery or even no recovery had Plaintiffs elected to continue litigating through class certification, summary judgment, trial or appeal.

Plaintiffs' decision to settle this matter was informed through full understanding of the strengths and weaknesses of the claims and defenses in the Action, gained through extensive and rigorous prosecution of this matter.  In assessing whether the Settlement is in the best interest of the Class, Plaintiffs and Lead Counsel evaluated, among others: (i) the cash benefit to Settlement Class Members under the terms of the Stipulation; (ii) the difficulties and risks involved in proving

elements of the complex claims, such as scienter and the materiality and falsity of the alleged misstatements and omissions, and whether the alleged fraud caused the Class's losses; (iii) the likelihood of defeating any *Daubert* or summary judgment motions, and prevailing at trial; (iv) the delays inherent in such litigation, including appeals; and (v) the uncertainty in Plaintiffs' theory of damages, even assuming that Plaintiffs could establish Defendants' liability.

Although Plaintiffs believe that the Defendants knowingly or recklessly misrepresented Citigroup's CDO exposure and valuation, Defendants have raised a host of factual and legal challenges increasing the uncertainty of a favorable outcome absent settlement.  Securities fraud actions are notoriously complex and difficult to prove:  rarely is there concrete direct evidence of fraudulent intent; and the unparalleled complexities of CDOs further magnify such difficulties.  Moreover, although several of Plaintiffs' claims survived dismissal, Plaintiffs still faced the possibility that the Court would not grant (or would severely curtail) class certification or reject Plaintiffs' damages analysis, or that Defendants would prevail on summary judgment or at trial.  By settling the Action now, Plaintiffs and the Class can share in what would be one of the largest cash settlements ever in a securities class action – and, more relevantly, the largest settlement ever in any case turning on CDO exposure.

Further, although Defendants deny each and all of Plaintiffs' claims and contentions, they have concluded that it is desirable to fully and finally resolve this Action in the manner and on the terms set forth in the Stipulation.  For Defendants, resolution of the Action limits further expense and inconvenience and eliminates the uncertainty and risks inherent in any litigation.

Having considered the foregoing and evaluating Defendants' defenses, Plaintiffs and Lead Counsel respectfully submit that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Class.  At minimum, the Settlement appropriately balances the risks, costs,

and delays inherent in complex cases, falls within the range of reasonableness, and warrants approval. The Settlement provides significant all-cash compensation for the Class and eliminates the significant risk that continued litigation may result in a smaller recovery or possibly no recovery at all.

Plaintiffs also retained John C. Coffee, Jr., the Adolfe A. Berle Professor of Law at Columbia University Law School ("Coffee Decl."), and Geoffrey P. Miller, Stuyvesant P. Comfort Professor of Law Director, Center for Financial Institutions at New York University Law School ("Miller Decl."), both widely-recognized experts in securities litigation, to opine, *inter alia*, on the Settlement. As set forth in their accompanying declarations concurrently-filed herewith, each expert found, after extensive analysis, that the Settlement was fair, reasonable, and adequate.

## ARGUMENT

I.  **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND FINAL APPROVAL SHOULD BE GRANTED**

A.  **The Applicable Standard**

The settlement of claims brought by a certified class is subject to court approval after reasonable notice and a hearing. *See* Fed. R. Civ. P. 23 (e)(1)-(2). A court will approve settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted).

This determination falls within a court's sound discretion. *See Joel A. v. Giuliani*, 218 F.3d 132, 139 (2d Cir. 2000); *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003). In exercising such discretion, a court should be mindful of the "strong judicial policy in favor of

settlements." *Wal-Mart*, 396 F.3d at 116 (internal quotations omitted).[5]

"Courts determine the fairness of a settlement by looking both at the terms of the settlement and the negotiation process leading up to it." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008); s*ee also Wal-Mart*, 396 F.3d at 116 (citations omitted). With respect to process, a class action settlement enjoys a strong "presumption of fairness" where it is the product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery. *See Wal-Mart*, 396 F.3d at 116.[6] Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993). This is particularly true in complex class actions, where "the courts have long recognized that such litigation 'is notably difficult and notoriously uncertain,' and that compromise is particularly appropriate." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (internal citations omitted).

As to the substantive terms of a settlement, courts in this Circuit examine the fairness, adequacy and reasonableness of a class action settlement utilizing the "*Grinnell* factors" to the extent they are applicable: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best

---

[5] *See also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 997 (2d Cir. 1983).

[6] *See also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted)).  In applying the *Grinnell* factors, a court should not substitute its judgment for those of the parties who negotiated the settlement, or conduct a "mini-trial" on the action's merit.  *See Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

Here, the proposed Settlement is fair, reasonable and adequate when measured under the *Grinnell* factors.  Counsel for the parties have thoroughly weighed the strengths and weaknesses of the claims and defenses thereto and, after formal mediation and extensive negotiations facilitated by an independent and experienced mediator, have reached an informed compromise.

### B.   The Settlement Is Procedurally Fair as It Was Negotiated at Arm's-Length and Is Supported by Plaintiffs and Experienced Counsel

A strong initial presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations.  *See Wal-Mart*, 396 F.3d at 116; *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *5 (S.D.N.Y. May 1, 2008) ("*Sony*"); *see also In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *1-2 (S.D.N.Y. Dec. 2, 2004).  A court should find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted).[7]

This initial presumption of fairness and adequacy applies here.  The Settlement was negotiated at arm's-length, by counsel who are experienced in complex securities litigation and

---

[7] *See also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

who were acting in an informed manner.  Further, the Settlement was reached at a time when the parties had a thorough understanding of the strengths and weaknesses of their respective positions, and following intensive face-to-face mediation sessions with the substantial assistance of Judge Phillips as well as additional negotiations facilitated by Judge Phillips after the former mediation sessions.  Joint Decl. at ¶¶ 96-97.  After the conclusion of the mediation process, the parties accepted Judge Phillips's proposal to settle and release all claims for $590 million in cash.  *Id.* at ¶ 98; *see also D'Amato*, 236 F.3d at 85 ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").  The proposed Settlement also received the full endorsement of Judge Phillips.  *See* concurrently-filed Declaration of Former United States District Court Judge Layn R. Phillips Regarding Approval of Settlement, dated November 19, 2012.

In addition, no question exists that Lead Counsel – after nearly five years of vigorous litigation, including a comprehensive, intensive and original pre-filing investigation, extensive briefing on Defendants' motion to dismiss as well as nine additional letter briefs regarding legal and factual developments during the pendency of the motion, extensive discovery which included analyzing and reviewing approximately 40 million pages of documents, and a thorough evaluation of Plaintiffs' claims – were fully informed of the strengths and weaknesses of the case by the time the Settlement was reached.  Joint Decl. at ¶¶ 33-95.  Thus, under these circumstances, a presumption of fairness attaches to the Settlement.

## C.    The Settlement Satisfies the Second Circuit's *Grinnell* Factors for Approval

Courts in this Circuit look to the *Grinnell* factors to determine whether the substantive terms of a settlement are fair, reasonable, and adequate.  All nine factors need not be satisfied.  Instead, the court should look at the totality of these factors in light of the specific circumstances

involved. *Global Crossing*, 225 F.R.D. at 456.  As demonstrated below, the Settlement satisfies the *Grinnell* factors.  *See also* Miller Decl. at ¶¶ 17-29 (analyzing reasonableness of settlement under *Grinnell* factors).  Accordingly, the Settlement clearly warrants this Court's final approval.

### 1.    The Complexity, Expense and Likely Duration of the Action Justifies the Settlement

Courts have consistently recognized that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement, especially in a securities class action.  *See, e.g., In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).[8]

As with many other securities cases involving thousands of investors with alleged losses of many hundreds of millions of dollars, the claims and defenses in this Action are complex; but as this Action turned on CDOs, the complexities were magnified far above the norm.  The parties have disagreed on a number of key factual and legal issues including, *inter alia*, the existence of scienter, any false or misleading statements, causation and damages.  If this Action were to continue, and presuming Plaintiffs' class certification motion was granted, additional issues relating to damages and loss causation would require extensive expert discovery and testimony, adding considerably to the complexity, expense and duration of the Action and calling on the jury to determine a "battle" of experts.  Continuing with this Action would have necessitated the briefing of motions for summary judgment, pre-trial proceedings, trial itself, and possible appeals.

---

[8] *See also Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5-6 (S.D.N.Y. Oct. 24, 2005); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'") (citation omitted).

Thus, while this case has already been pending for nearly five years, recovery by any means other than settlement would require additional years of litigation.[9]

Further, even if Plaintiffs were to prevail on appeal, any potential recovery (in the absence of a settlement) would occur years in the future, substantially delaying payment to Class Members. By contrast, the Settlement offers the opportunity to provide definite recompense to the Class now – making the instant Settlement a particularly valuable "bird in the hand." *See Sony*, 2008 WL 1956267, at *6; *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery") (citation omitted).[10]

There is no question that, had the Settlement not been reached, the factual and legal questions at issue would continue to be the subject of lengthy, complex and highly adversarial litigation.  Numerous issues would be involved in proving liability, damages, scienter, materiality, loss causation, and falsity, as set forth below in section I.C.3 and I.C.4, *infra*.  These issues further confirm the magnitude of the challenge faced by Plaintiffs and Lead Counsel.

Accordingly, a $590 million settlement at this juncture results in an immediate and substantial tangible recovery without the considerable risk, expense and delay of trial and likely appeals.  Lead Counsel submit that this factor weighs heavily in favor of the proposed Settlement.

### 2.    Reaction of the Class To the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness

---

[9] *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that a "principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

[10] *Hicks*, 2005 WL 2757792, at *6 ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

and adequacy. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED),
2010 WL 4537550, at *16 (S.D.N.Y. Nov. 8, 2010); *In re Veeco Instruments Inc. Sec. Litig.*, No.
05 MDL 0165 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). Pursuant to the Court's
September 6, 2012 Preliminary Order, Class Members were notified that they had until December
6, 2012 to request exclusion from the Class and until December 21, 2012 to object to the
Settlement.

Here, Class reaction to the Settlement appears overwhelmingly positive.  As of December
6, 2012 (the Court-ordered deadline for submission of exclusion requests), we have received a
total of 135 requests, which represents only .006% of the over 2.1 million notices notice packets
mailed. *See* Cirami Aff.[11] at ¶¶ 15, 21 (Joint Decl., Ex. A).  Many of those exclusion requests were
from investors who in their requests asserted that they acquired Citigroup common stock during
the Class Period.

Following preliminary approval, a class action settlement is considered "presumptively
reasonable" and those objecting to the Settlement bear "a heavy burden of demonstrating that [it] is
unreasonable."  *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) (citations omitted); *see
also* 4 NEWBERG ON CLASS ACTIONS § 11:58 (4th ed. 2002) (general objections without factual or
legal substantiation do not carry weight); Fed. Prac. & Proc. § 1797.1 (proving that in class action
settlement dispute "[o]nly clearly presented objections . . . will be considered").  With that
standard in mind, objections will be addressed in a supplemental filing.  (Currently, nearly two
months after notice was furnished to the Class, and just two weeks prior to the deadline to object,
two objections have been received from Class Members. Joint Decl. at ¶¶ 21, 184-85).  Plaintiffs

---

[11] "Cirami Aff." refers to the concurrently-filed Affidavit of Stephen J. Cirami Regarding (A) Premailing
Administrative Activity; (B) Mailing of the Notice and Claim Form; (C) Publication of the Summary Notice; (D)
Implementation of Toll Free Hotline and Website; and (E) Requests for Exclusions dated December 7, 2012.

will respond to those, and any other timely filed objections in a January 4, 2013 submission.

### 3.   Plaintiffs Had Sufficient Information to Make Informed Decisions as To Settlement

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, focuses on whether the plaintiffs "obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010).

Lead Counsel and Plaintiffs consider the proposed Settlement to be an excellent outcome for the Class in light of their understanding of the Action's strengths and weaknesses. That understanding arises from Lead Counsel's vigorous efforts, which included, among other things: (1) a comprehensive, intensive, original and independent pre-filing investigation, *see* Joint Decl. at ¶¶ 33-37, 44; (2) filing the initial consolidated complaint and the operative Complaint, which exceeded 500 pages in length, *id.* at ¶¶ 29-30; (3) preparing and filing a 75-page brief in opposition to Defendants' motion to dismiss, as well as nine additional letter briefs regarding legal and factual developments during the pendency of the motion, *id.* at ¶¶ 47-49; (4) propounding and serving extensive discovery on Defendants and 27 third-parties, *id.* at ¶¶ 64-65; (5) reviewing and analyzing approximately 40 million pages of documents, *id.* at ¶¶ 66-72; (6) retaining and consulting with experts in areas regarding specialized knowledge, *id.* at ¶¶ 86-87, 90-91, 93-95; (7) preparing and taking the depositions of over 30 of Defendants' witnesses, *id.* at ¶¶ 75-79; (8) fully litigating a motion for class certification, which included taking the deposition of Defendants' expert, defending three depositions of two of Plaintiffs' experts, and defending 16 depositions of proposed class representatives and their employees, *id.* at ¶¶ 84-92; (9) fully litigating a motion to

compel discovery, *id.* at ¶¶ 80-83;[12] (10) marshaling the evidence to prepare for a comprehensive mediation concerning the claims at issue in this litigation, *id.* at ¶ 97; (11) participating in two days of intensive, arm's-length negotiation sessions before Judge Phillips, *id.* at ¶ 96; (12) negotiating the terms of the Stipulation, *id.* at ¶ 99; and (13) preparing papers in support of preliminary approval of the Settlement.

Accordingly, Lead Counsel was extremely knowledgeable of the relevant issues, strengths and weaknesses of the Action, and had sufficient information to intelligently negotiate the terms of the Settlement.  *See Global Crossing*, 225 F.R.D. at 458 ("the question is whether the parties had adequate information about their claims"); *AOL Time Warner*, 2006 WL 903236, at *10 ("The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, 2004 WL 1724980, at *12 (S.D.N.Y. July 30, 2004) ("The investigation, discovery, and motion practice conducted to date provide Plaintiffs with sufficient information to make an informed judgment on the reasonableness of the settlement proposal.") (citation omitted).

### 4.    Plaintiffs Faced Significant Risks in Establishing Liability

In analyzing the risk to plaintiffs in establishing liability, the Court does not "need to decide the merits of the case or resolve unsettled legal questions." *Cinelli v. MCS Claim Servs., Inc.*, 236 F.R.D. 118, 121 (E.D.N.Y. 2006) (internal quotations and alterations omitted).  Rather, the Court weighs the likelihood of success on the merits against the relief provided by the

---

[12] On August 30, 2012, the Court entered an order dismissing as moot Plaintiffs' pending motion to compel and motion for class certification due to the Court's August 29, 2012 Preliminary Order approving the parties' proposed Settlement.  *See* Dkt. No. 157.

Settlement.  *Id.* Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability. *See Global Crossing*, 225 F.R.D. at 459.

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 463.   Securities class actions present hurdles to proving liability that are difficult for plaintiffs to meet.  *See AOL Time Warner*, 2006 WL 903236, at *11 (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"); *In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (finding that issues present in a securities action presented significant hurdles to proving liability).

While Lead Counsel believes that they would prove Plaintiffs' claims, they also recognize that they would face substantial hurdles.  At the time the proposed Settlement was reached, Plaintiffs' motion for class certification was fully briefed and pending before the Court.  In the event that that motion was granted, there remains an inherent uncertainty that Plaintiffs and Lead Counsel would face in proving that Defendants acted with fraudulent intent for their Exchange Act claim.  Plaintiffs have taken into account that the claims made in the Complaint may not have survived a motion for summary judgment by Defendants.  Plaintiffs would also bear the burden of showing that the evidence they elicited during discovery was sufficient to establish their claims despite any credible defenses.  Although Plaintiffs believe that the documentary and testimonial evidence would support their claims, there is no way to determine without substantial additional litigation whether such evidence would withstand a summary judgment motion, and convince a jury to accept Plaintiffs' theory over Defendants' competing narrative.  Jury reactions to Plaintiffs' proofs (and the Defendants' responses thereto) on the types of complex issues in this Action are inherently difficult to predict.

14

Although Plaintiffs were confident that they would have been able to support their claims with qualified and persuasive expert testimony, Defendants would have almost certainly retained highly experienced experts to argue their various defenses to liability.  For example, Defendants raised serious challenges to Plaintiffs' proof regarding the elements of falsity and scienter. Defendants argued that the global financial crisis caused market conditions to change in unprecedented and unforeseeable ways.  Joint Decl. at ¶¶ 111-12.  Defendants maintained that Citigroup's Class Period CDO disclosures satisfied all applicable financial disclosure standards and were not false or misleading and that Citigroup was not obligated to disclose detailed line-item information about its super senior CDOs.  *Id.* at ¶ 113.  Furthermore, Defendants asserted that the risk of material write-downs to Citigroup's super senior CDO tranches was neither known nor knowable by Citigroup management until the rating agencies' October 2007 downgrades.  *Id.* at ¶ 114.  Until such time, Defendants argued, Citigroup's senior management in good faith and reasonably believed that any risks associated with Citigroup's super senior CDO exposures were remote.  *Id.*  Additionally, according to Defendants, Citigroup's management selected a pricing model for the CDOs in good faith because they believed the model appropriately reflected those instruments' value and not because the model minimized write-downs.  *Id.*  Defendants were also expected to argue that Citigroup's management was entitled to rely on the accuracy of Citigroup's financial statements as audited by KPMG.  *Id.*

The government's trial record with respect to CDO-related claims further highlights the inherent risk and difficulties in proving liability.  In 2009, two former Bear Stearns fund managers were acquitted of criminal charges brought by the U.S. Department of Justice after a jury rejected prosecutors' arguments that the two men committed fraud by misrepresenting the hedge funds' exposures and the value of the CDOs in the funds.  *U.S. v. Cioffi and Tannin*, No. 08-CR-415

(E.D.N.Y. 2009). Similarly, in July 2012, a former Citigroup Inc. manager was found not liable of civil charges brought by the U.S. Securities and Exchange Commission ("SEC") in connection with a $1 billion Citigroup CDO transaction in 2007. *S.E.C. v. Stoker*, No. 11-cv-7387 (S.D.N.Y. 2011).

**5.      Plaintiffs Faced Significant Risks in Establishing Damages**

Loss causation and damages in securities litigation are often difficult to establish, and proof is typically reduced to a battle of the experts. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *3-4 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases); *In re Milken and Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of a small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"). To prevail on those issues, Plaintiffs would be required to prove with the assistance of an expert that Defendants' misleading statements inflated Citigroup's stock price, as well as the amount of the artificial inflation.

Defendants would counter with their own expert(s) and would challenge the scientific validity of Plaintiffs' expert's report. Joint Decl. at ¶¶ 159-61. At the summary judgment and/or *Daubert* motion stages, Defendants would likely challenge plaintiffs' calculation of damages. Defendants would likely rely on *In re Omnicom Group, Inc. Securities Litigation*, 597 F.3d 501 (2d Cir. 2010) in challenging the disclosure events relied upon by Plaintiffs' damages expert and the scientific validity of any event study employed by Plaintiffs' expert. Defendants would also likely argue that any decline in Citigroup's stock price (during a time of unprecedented turmoil in the securities markets generally, and the banking industry specifically) resulted from market,

16

industry, or other non-case-related ("confounding") factors.[13]   Joint Decl. at ¶ 112, 160. Defendants also argued that Plaintiffs could not disaggregate fraud-related factors from Company-specific news that was not fraud-related (such as losses arising from non-CDO exposures).  Even if the Action were permitted to go to trial, it is not possible to determine which parties' expert the jury would find more credible.[14]

Accordingly, there was a very real risk that the Class would have recovered an amount significantly less than the $590 million – or even nothing at all.  In light of the risks in proving damages, approval of the Settlement is warranted.

### 6.    Risks of Maintaining Class Action Status Through Trial

Plaintiffs believe this case is appropriate for class treatment and would continue to be through trial.  However, at the time Settlement was reached, the class had not yet been certified although Plaintiffs had filed their motion for class certification, and both sides filed numerous submissions with the Court in fully briefing this motion.  *See* Dkt. Nos. 101-04, 109-11, 122-26, 147-48.  Defendants have raised challenges to class certification, and may move to de-certify the class before trial or on appeal at the conclusion of trial.  And since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time, there is no assurance

---

[13] *See, e.g., In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (jury verdict entered in favor of plaintiffs in subprime-related securities case set aside by the court in post-trial ruling because plaintiffs' damages expert had failed to "disaggregate" the effect on the company's share price decline of the other negative information that was revealed at the same time the supposedly fraudulent information was revealed; thus plaintiffs failed to adequately prove the loss caused by the disclosure of defendants' misrepresentations and of the damages attributable to the misrepresentations).

[14] *See, e.g., In re PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non-actionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

it would have been maintained if initially certified.[15]  Thus, there always remains a risk that this Action may not have been able to be maintained on a class basis through trial.  Approval of the Settlement obviates this risk.

### 7.   Ability to Withstand Greater Judgment

The court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement.  *See Grinnell*, 495 F.2d at 463.  At present, Citigroup may or may not be in a position to pay more but that ability alone would not render the Settlement unreasonable.  *See D'Amato*, 236 F.3d at 86 (the ability to withstand higher judgment, "standing alone, does not suggest that the settlement is unfair"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 WL 1956267, at *8 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate") (citation omitted).  Were this case not settled now, it is unclear what Citigroup's financial condition will be in the future at the end of trial and likely post-trial appeals.  Recent history teaches that the solvency, and thus ability to pay large judgments, of even the largest financial institutions is not something that can be assumed.  Indeed, this case relates in part to Citigroup's flirtation with insolvency in late 2008-early 2009 as its subprime CDO and related exposure became untenable.  *See* Joint Decl. at ¶ 31 and n.6.  Thus, resolving the case now, while Citigroup clearly can afford it, is another benefit of the settlement.

---

[15] *See* Fed. R. Civ. P. 23(c); *Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class would face the risk of decertification. This factor indicates that settlement is advantageous to the class at this time.").

      **8.**     **The Settlement Amount Is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

In general, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion. *Veeco*, 2007 WL 4115809, at *11. The size of the Settlement provides support for its reasonableness when viewed in light of the best possible recovery and all of the risks of litigation. *See Wal-Mart*, 396 F.3d at 119 ("there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.") (internal citation omitted).

The Settlement here easily satisfies this test. It is the largest settlement in any case ever relating to CDO exposures or CDOs, the third-largest in any case arising from the subprime crisis, and the 18th largest PSLRA securities class action settlement whatsoever, no matter the specific allegations – placing it in the top 1.5% of all PSLRA settlements and likely in the top 1% of securities class action settlements of all time. Joint Decl. at ¶¶ 119-23.[16]

Lead Counsel is aware of only 17 PSLRA cases that have settled for more. *Id.* at Ex. M. However, unlike this Action, 16 of the 17 larger PSLRA settlements stemmed from cases that involved non-scienter claims (obviating the need to establish *scienter* in order to prevail), many of which asserted violations of the Securities Act (where plaintiffs do not bear the burden of proving

---

[16] Relatedly, according to a 2012 report by Cornerstone Research entitled "Securities Class Action Settlements: 2011 Review and Analysis" ("Cornerstone Report"), 97.3% of all PSLRA cases settled for *less* than $250 million. Joint Decl. Ex. C at 4.

19

loss causation either), and/or earnings restatements (thereby conceding *ab initio* two elements of plaintiffs' claims – falsity and materiality).  Moreover, most had more than one corporate settling party (increasing the ability to fund a larger recovery).  Joint Decl. at ¶¶ 18-19, 122-23.

This Action did not have the benefit of any such tailwinds.

The $590 million recovery is also exceptional when: (i) one considers that it was achieved without the benefit of any "parallel" governmental investigation or prosecution of scienter-based claims under the Exchange Act involving facts overlapping with those alleged in this Action; (ii) it is compared to similar actions against Citigroup during the same relevant time period as this Action, and (iii) it is compared to similar actions against other financial institutions alleged to have engaged in the similar misconduct concerning their CDO exposures.

First, Plaintiff's detailed allegations here led, rather than followed, regulatory action.  In April 2010, *fourteen months* after Plaintiffs filed their Complaint, the Financial Crisis Inquiry Commission ("FCIC") investigated Citigroup.  Joint Decl. at ¶ 12.  The FCIC publicly examined six present and former Citigroup executives regarding, *inter alia*, Citigroup's CDO dealings and exposures leading up to the financial crisis.  *Id*. at ¶ 12.  Then, in July 2010, *seventeen months* after Plaintiffs filed their Complaint, the SEC filed a civil enforcement proceeding against Citigroup and two of its executives charging them with making misleading statements regarding Citigroup's CDO exposures between mid-July 2007 and October 2007, *i.e.*, a portion of the Class Period alleged in Plaintiffs' Complaint.  *Id*. at ¶ 13; *S.E.C. v. Citigroup Inc.*, No. 10-cv-1277-ESH (D.D.C.).  However, unlike this Action, the SEC alleged only "non-scienter fraud" claims under Section 17 of the Securities Act against Citigroup. Joint Decl. at ¶ 13.

Second, the Settlement is an excellent result especially in light of the challenges that parallel suits against Citigroup have experienced to date based on the same underlying facts and

exposures.  For example, the above-mentioned SEC action ultimately settled for $75 million on claims that, as noted, did not require scienter.  *Id.* at ¶ 13.[17]  Likewise, in late 2009, the Abu Dhabi Investment Authority ("Abu Dhabi") commenced an arbitration against Citigroup alleging that its $7.5 billion investment in Citigroup in November 2007 - within this Action's Class Period - had been made on the basis of fraudulent statements by Citigroup.  Joint Decl. at ¶ 128.  Abu Dhabi had sought $4 billion in damages.  On October 14, 2011, the arbitration panel ruled in favor of Citigroup and against Abu Dhabi on all claims.[18]  Abu Dhabi recovered nothing.  Furthermore, this Court dismissed derivative and ERISA actions against Citigroup relating to the subject matter of this case.  *See In re Citigroup Inc. S'holder Deriv. Litig.*, 788 F. Supp. 2d 211 (S.D.N.Y. 2011); *In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), *aff'd*, 662 F.3d 128 (2d Cir. 2011).

Third, the $590 million recovery here is the largest recovery in any action against any financial institution concerning CDO exposures.  Where many other class actions asserting securities claims against publicly traded companies for misrepresentations concerning CDO exposures were ultimately dismissed without any recovery at all (including the recent dismissal of investor claims against UBS, also pending in the Southern District of New York, stemming from CDO exposures of the same magnitude as Citigroup's),[19] Plaintiffs here overcame the risk of

---

[17] *See also S.E.C. v. Citigroup Inc.*, 10-cv-1277-ESH, slip op. (D.D.C. Oct. 8, 2010) (final judgment order) (submitted herewith as part of compendium of unpublished opinions, Joint Decl. Ex. N).

[18] *See* Citigroup SEC Form 10-Q for the quarterly period ended September 30, 2011 at 202, *available at* http://sec.gov/Archives/edgar/data/831001/000104746911009017/a2206106z10-q.htm.

[19] *See In re UBS Sec. Litig.*, No. 07 CIV. 11225 (RJS), 2011 WL 4059356, at * 1 (S.D.N.Y. Sept. 13, 2011) (CDO exposure exceeding $50 billion).  *See also In re Royal Bank of Scotland Group PLC Sec. Litig.*, No. 09 CIV. 300 (DAB), 2012 WL 3826261, at *1 (S.D.N.Y. Sept. 4 , 2012) (CDO exposure exceeding $20 billion; government bailout required); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 269 (S.D.N.Y. 2010), *reconsideration denied*, No. 09 MD 2058 (PKC), 2010 WL 4237304 (S.D.N.Y. Oct. 8, 2010) (CDO exposure exceeding $20 billion; government bailout required); *In re Security Capital Assurance Ltd. Sec. Litig.*, No. 07 Civ. 11086 (DAB), 729 F. Supp. 2d 569 (S.D.N.Y. 2010) (granting motion to dismiss with leave to replead) and 2011 WL 4444206 (S.D.N.Y. Sept. 23, 2011) (dismissing with prejudice) (CDO exposure exceeding $16 billion; institution

(*footnote continued on next page*)

dismissal due to their unique and superior pleading – and proceeded to obtain a recovery in this Action larger than obtained in any other action concerning CDO exposure.

Furthermore, as set forth in the accompanying Coffee and Miller Declarations, a recent study by the National Economic Research Associates ("NERA") found that for class actions that claimed investor losses between $5 and $10 billion, the mean recovery was 2.2% and the median recovery was 1%. *See* Coffee Decl. at ¶ 20; Miller Decl. at ¶ 28. By these metrics, the $590 million recovery obtained here is more than 9 times the median recovery. *Id.*

Accordingly, the Settlement is favorable in comparison to other securities class action settlements and represents a significant recovery.

### D.      The Plan of Allocation Should Be Approved as It Is Fair, Reasonable, and Adequate

When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel. "When formulated by competent and experienced class counsel," a plan for allocation of net settlement proceeds "need have only a reasonable, rational basis." *Telik*, 576 F. Supp. 2d at 580 (quoting *Global Crossing*, 225 F.R.D. at 462 (internal quotation omitted)). "A reasonable plan may consider the relative strength and values of different categories of claims." *Id.*; *see also In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992) (plan of allocation that distributes greater part of settlement proceeds to those most injured is

---

seized by regulators); *Blackmoss Invs. Inc. v. ACA Capital Holdings Inc.*, No. 07 Civ. 10528 (RWS), 2010 WL 148617, at *1 (S.D.N.Y. Jan. 14, 2010) (CDO exposure exceeding $12 billion; institution seized by regulators); *In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714 (DAB), 2012 WL 3297730, at *1 (S.D.N.Y. Aug.  10, 2012), *on reconsideration*, No. 09 Civ 1714 (DAB) 2011 WL 3664407 (S.D.N.Y. Aug. 19, 2011) (CDO exposure exceeding $10 billion; *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 290 (S.D.N.Y. 2010) (CDO exposure exceeding $10 billion); *In re Barclays Bank PLC Sec. Litig.*, No . 09 CIV. 1989 (PAC), 2011 WL 31548, at *1 (S.D.N.Y. Jan. 5, 2011) (CDO exposures of ~$10 billion), reconsideration denied, 2011 WL 2150477 (S.D.N.Y. May 31, 2011); *In re Societe Generale Sec. Litig.*, No. 08 Civ. 2495(RMB), 2010 WL 3910286, at *1 (S.D.N.Y. Sept. 29, 2010) (CDO exposure of ~$10 billion); *Copeland v. Fortis*, 685 F. Supp. 2d 498, 499 (S.D.N.Y. 2010), *clarified on denial of reconsideration*, No. 08 CIV. 9060 (DC), 2010 WL 2102454 (S.D.N.Y. May 20, 2010) (CDO exposure exceeding $6 billion; government bailout required); *Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*, 753 F. Supp. 2d 166, 182 (S.D.N.Y. 2010) (CDO exposures of ~$1 billion).

reasonable).  Because they tend to mirror the complaint's allegations, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-cv-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007).

If approved by the Court, the proposed Plan of Allocation, fully described in the Notice, will govern how the Net Settlement Fund will be distributed among the Class members who submit timely and valid Claim Forms (the "Authorized Claimants").  Lead Counsel developed the Plan of Allocation in close consultation with Plaintiffs' damages experts.  Joint Decl. at ¶¶ 25, 134. The Plan of Allocation reflects Plaintiffs' damages experts' analyses, including a review of publicly available information regarding Citigroup and statistical analyses of the price movements of Citigroup stock and the price performance of relevant market and industry indices, under the demanding standards set forth in the relevant case law regarding loss causation.  *Id.* at ¶ 134. Plaintiffs and Lead Counsel believe the plan provides a fair and reasonable method to equitably allocate the Net Settlement Fund among the Authorized Claimants.  *Id.* at ¶¶ 135-36.  *See In re Veeco*, 2007 WL 4115809, at *13.

Here, the proposed Plan of Allocation is rational and consistent with Plaintiffs' theory of the case.  The Plan reimburses claimants largely based on when they bought or sold Citigroup common stock, taking into account the alleged amount of artificial inflation present in the stock price at those times (including the amount by which, according to Plaintiffs' damage expert, the level of inflation was reduced by various alleged corrective disclosures).  Plaintiffs and Lead Counsel submit that the Plan of Allocation represents a fair and equitable method for allocating the Net Settlement Amount among the members of the Class, and should be given final approval by the Court.

### E.     Notice To the Class Satisfies Due Process Requirements

The Notice program provides the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (citing Fed. R. Civ. P. 23(c)(2)).  In accordance with the Preliminary Approval Orders, the Claims Administrator, GCG, Inc. ("GCG"), caused the Court-approved Notice and Proof of Claim forms to be mailed by first class mail, postage prepaid to more than 2.1 million potential Class Members.  Joint Decl. at ¶ 21, Ex. A (Cirami Aff. at ¶ 15).  As of December 6, 2012, GCG has disseminated a total of 2, 157, 742 Notice Packets to potential Class members.  Cirami Aff. at ¶ 15).

On October 23, 2012, the Court-approved Summary Notice was published in *The Wall Street Journal* and issued electronically over *PR Newswire*. *Id.* at ¶ 16.  The Notice and Proof of Claim, along with other important documents related to the Settlement, were also posted on the Claims Administrator's website www.citigroupsecuritiessettlement.com (the "Website") for easy downloading by interested investors. *Id.* at ¶ 18.  The Website also allows individuals and entities to submit electronic claims. *Id.*  GCG also established an email address, questions@citigroupsecuritiessettlement.com, to allow Class members to obtain information about the Settlement, request a Notice Packet, and/or seek assistance with their claims. *Id.* at ¶ 19.

As of the date of the Cirami Affidavit, GCG has handled hundreds of emails from claimants, brokers and nominees. *Id.* at ¶ 3).  GCG also established a toll-free telephone hotline with a recorded message and live operators to assist potential Class members with questions about the Settlement. *Id.* at ¶ 17.  GCG has received 8,222 calls. *Id.*  Of these calls, 4,485 were transferred to live operators.  All calls to the toll-free telephone hotline have been responded to in a timely manner. *Id.*

Moreover, as is required in class actions, the Class has been given notice of the proposed Settlement and Plan of Allocation, as well as the rights of Class members and the method and dates by which they can object to, or opt-out of, the Settlement.  Joint Decl. at ¶¶ 102-03.  Further, the Class has been advised of the date of the final fairness hearing, at which time they will have an opportunity to be heard with respect to any objection raised.  *Id.* at ¶ 101.

Lastly, the notice procedures utilized in this case - publication and direct mail - were "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).  Thus, the method of notice described above satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.  *See Eisen*, 417 U.S. at 173.

## CONCLUSION

For all of the reasons set forth herein and in the Joint Declaration, Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate; approve the Plan of Allocation as fair, reasonable, and adequate; and enter the accompanying corrected and proposed Final Judgment and Order of Dismissal with Prejudice.

Dated: December 7, 2012

Respectfully Submitted,

KIRBY McINERNEY LLP

By:     */s/ Ira M. Press*     
        Ira M. Press
        Peter S. Linden
        Andrew S. McNeela
        Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Tel:  (212) 371-6600
Fax:  (212) 751-2540

*Lead Counsel for Plaintiffs*

25

Andrew J. Entwistle
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, NY  10017
Tel.: 212-894-7200
Fax: 212-894-7272


James Allen, Sr.
ALLEN BROTHERS, P.L.L.C.
400 Monroe, Suite 220
Detroit, MI   48226
Tel.: (313) 962-7777
Fax: (313) 962-0581


Kenneth Gold
439 Griffith Street
Saugatuck, MI 49453
Tel: (248) 310-9870


Lionel Glancy
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East. Suite 2100
Los Angeles, CA 90067
Tel.: (310) 201-9150
Fax: (310) 201-9160


William Narwold
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel: 843.216.9000
Fax: 843.216.9450


Alan L. Kovacs
LAW OFFICE OF ALAN L. KOVACS
2001 Beacon St., Suite 106
Boston, MA 02135
Tel.: (617) 964-1177
Fax.: (617) 332-1223

Kenneth A. Elan
LAW OFFICE OF KENNETH A. ELAN
217 Broadway, Suite 606
New York, NY 10007
Tel.: (212) 619-0261
Fax.: (212) 385-2707

*Additional Plaintiffs' Counsel*