**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE CITIGROUP
SECURITIES LITIGATION

No. 07 Civ. 9901 (SHS)

**ECF Case**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

KIRBY McINERNEY, LLP
Ira M. Press
Peter S. Linden
Andrew McNeela
Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

*Lead Counsel for Plaintiffs*

*Additional Plaintiffs' counsel on signature
page*

Dated: December 7, 2012

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

STATEMENT OF THE FACTS ......................................................................... 3

ARGUMENT ...................................................................................................... 3

I.   PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS'
     FEES AND REIMBURSEMENT OF EXPENSES FROM THE COMMON FUND ....... 3

     A.   Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the
          Common Fund ................................................................................................ 3

     B.   The Court Should Award a Reasonable Fee to Plaintiffs' Counsel ...................... 4

     C.   The Request is Reasonable Under the Lodestar Method ...................................... 5

     D.   The Request is Reasonable Under the Percentage Method .................................. 9

     E.   The *Goldberger* Factors Support the Requested Award of Attorneys' Fees ........ 10

          1.   The Time and Labor Expended by Plaintiffs' Counsel, Including a
               "Lodestar Crosscheck," Support the Requested Fee ................................. 10

          2.   The Magnitude and Complexity of the Litigation Weigh in Favor of
               Approval ................................................................................................ 11

          3.   The Risks of the Litigation Warrant Approval ......................................... 12

          4.   The Quality of the Representation Favors Approval of Plaintiffs'
               Counsel's Fees ....................................................................................... 17

          5.   The Requested Fee in Relation to the Settlement Is Reasonable .............. 19

          6.   Public Policy Considerations ................................................................... 21

          7.   The Class's Reaction to the Fee Request .................................................. 23

II.  PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR REASONABLY
     INCURRED LITIGATION EXPENSES ......................................................... 23

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
No. 03 MDL 1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ............................ 6, 7, 9, 21

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
No. 03 MDL 1529, 2008 WL 4128702 (S.D.N.Y. Sept. 3, 2008) ............................................ 8

*Anixter v. Home-State Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ................................................................................................ 14

*Anwar v. Fairfield Greenwich Ltd.*,
No. 11 Civ. 813, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) .................................... 19, 21, 24

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008) .................................................................................................... 5

*In re Ashanti Goldfields Sec. Litig.*,
No. 00 Civ. 717, 2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005) ............................................ 21

*In re BankAmerica Corp. Sec. Litig.*,
228 F. Supp. 2d 1061 (E.D. Mo. 2002) ................................................................................ 7, 9

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
No. 07 Civ. 61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................... 14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ................................................................................................................ 22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................................. 3

*In re Bristol-Myers Squibb Sec. Litig.*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005) .............................................................................. 11, 22

*In re Cardinal Health, Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ............................................................... 5-6, 7, 9, 21

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ..................................................................................................... 4

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) ........................................................................................ 14

*In re Citigroup ERISA Litig.*,
   No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009),
   *aff'd*, 662 F.3d 128 (2d Cir. 2011) ............................................................... 18

*In re Citigroup Inc. Sec. Litig.*,
   753 F. Supp. 2d 206 (S.D.N.Y. 2010) ........................................................... 18

*In re Citigroup Inc. S'holder Derivative Litig.*,
   788 F. Supp. 2d 211 (S.D.N.Y. 2011) ............................................................ 18

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .......................................................................... 13

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
   No. 98 Civ. 4318, 2001 WL 709262 (S.D.N.Y. June 22, 2001) ..................... 12

*In re Dynegy Inc. Sec. Litig.*,
   No. 02 Civ. 1571, slip op. at 1 (S.D. Tex. July 7, 2005) ................................. 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02 Civ. 3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................ 11, 13

*Fogarazzo v. Lehman Bros., Inc.*,
   No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ........... 11

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 5, 24

*Goldberger v. Integrated Res.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................... *passim*

*In re HealthSouth Corp. Stockholder Litig.*,
   No. 03 Civ. 1500, slip op. at 2 (N.D. Ala. Feb. 12, 2008) ..................... 7, 9, 21

*Hicks v. Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............... 4, 17

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) .................................................................... 11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ........................................................... 23

*In re Initial Public Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) .............................................................. 9, 19

*Jones v. Amalgamated Warbasse Houses, Inc.*,
   721 F.2d 881 (2d Cir. 1983) ........................................................................... 7-8

*In re Lehman Brothers Sec. & ERISA Litig.*,
   No. 09-md-2017-LAK-GWG, slip op. at 2 (S.D.N.Y. June 29, 2012) ..................... 20

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) .............................................................. 7, 9, 21

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997) ................................................................................ 7

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................... 3, 6, 18, 22, 23

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 8

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) .............................................................................. 10

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................... 8

*In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.*,
   No. 07 Civ 9633, 2009 WL 2407551 (S.D.N.Y. Aug. 4, 2009) ............................... 7

*In re Microstrategy, Inc. Sec. Litig.*,
   172 F. Supp. 2d 778 (E.D. Va. 2001) ................................................................... 6

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) .................................................................................... 6, 19

*In re Nortel Networks Corp. Sec. Litig.*,
   539 F.3d 129 (2d Cir. 2008) ............................................................................... 6

*Ohio Pub. Empl. Ret. Sys. v. Freddie Mac*,
   No. 03 Civ. 4261, 2006 U.S. Dist. LEXIS 98380 (S.D.N.Y. Oct. 26, 2006) .............. 9

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   MDL No. 1222, 2003 U.S. Dist. LEXIS 26795 (S.D.N.Y. June 12, 2003) ................. 9

*In re Philip Servs. Corp. Sec. Litig.*,
No. 98 Civ. 835, 2007 WL 959299 (S.D.N.Y. Mar. 28, 2007)..................................... 4

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) ............................................................................. 5

*In re Qwest Commc'ns Int'l Inc., Sec. Litig.*,
No. 01-cv-1451, 2006 U.S. Dist. LEXIS 71267 (D. Colo. Sept. 29, 2006), 625 F. Supp. 2d
1143 (D. Colo. 2009)................................................................................................... 7

*In re Raytheon Co. Sec. Litig.*,
No. 99 Civ. 12142, slip op. at 9 (D. Mass. Dec. 6, 2004) ........................................ 7

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
818 F.2d 278 (2d Cir. 1987)...................................................................................... 24

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)...................................................................................... 23

*Robbins v. Koger Props. Inc.*,
116 F.3d 1441 (11th Cir. 1997).................................................................................. 14

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
No. 03-MD-1539, slip op. at 1 (D. Md. Nov. 2, 2006) .............................................. 7

*SEC v. Citigroup Inc.*,
No. 10 Civ. 1277-ESH (D.D.C.) ............................................................................... 15

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................... 8, 21, 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .................................................................................................. 22

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
No. 02-MD-1335, slip op. at 40 (D.N.H. Dec. 19, 2007) .......................................... 7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................................. 6

*In re UnitedHealth Group Inc. PSLRA Litig.*,
643 F. Supp. 2d 1094 (D. Minn. 2009) ..................................................................... 7

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) *aff'd sub nom.*
*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)................... 24

v

*In re Wachovia Preferred Sec. and Bond/Notes Litig.*,
No. 09 Civ. 6351, 2012 WL 2589230 (S.D.N.Y. Jan. 3, 2012) ................................................ 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................................................ 4, 24

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................ 4, 21

**Statutes**

Fed. R. Civ. P. 23(h) ................................................................................................................ 1

Fed. R. Civ. P. 54(d) ................................................................................................................ 1

**Secondary Authorities**

7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure*: §1803 (2d ed. 1986) ........................................................ 3

Third Circuit Task Force on Selection of Class Counsel Report
74 Temp. L. Rev. 689 (Winter 2001) .................................................................................... 13

## INTRODUCTION

Plaintiffs' Lead Counsel[1] respectfully submits this memorandum of law in support of its motion pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure for an award of attorneys' fees and reimbursement of litigation expenses to be paid out of the Settlement Fund, including interest at the same rate as the Settlement Fund's rate.

This settlement is the product of an extraordinary effort by Lead Counsel over a five-year period to independently investigate and plead the factual and legal claims asserted in this Action, without assistance of a prior governmental investigation, and then vigorously litigate those claims to an excellent result. This effort required counsel to engage in intensive litigation, conducting a massive amount of discovery, extensive motion practice and settlement negotiations, all against one of the largest and most well-respected law firms in the country. During this time, Counsel has spent a total of 115,342.33 hours (at a lodestar value of $51,438,451.15) and expended $2,842,841.59 out of pocket – all with a substantial risk of non-recovery.

These efforts have produced a most impressive result – an agreement to settle the Action for $590 million. This recovery ranks as the largest recovery in any CDO-related case ever, the 18th largest in dollar amount of all time, and is in the top 1.5% settlements under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* concurrently-filed Plaintiffs'

---

[1] Unless otherwise indicated, all capitalized terms herein have the same meaning as is ascribed in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court on August 29, 2012 (Dkt. No. 155-1), and as modified by the Court's order dated September 28, 2012 (Dkt. No. 159).

Memorandum in Support of Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation ("Settlement Brief") at I.C.(8);  Joint Decl.[2] at ¶¶18, 119-20.

Lead Counsel, assisted in this litigation by other Plaintiffs' counsel[3] (collectively with Lead Counsel, "Plaintiffs' Counsel"), respectfully seeks an award of attorneys' fees amounting to a lodestar multiplier of approximately 1.89, which would represent approximately 16.5% of the Settlement Amount, plus any accrued interest, and reimbursement of $2,842,841.59 in litigation expenses actually incurred.

As set forth below, this request is well within the range of fees that has been awarded in other PSLRA settlements of this size, and is amply supported by each of the relevant factors identified by the Second Circuit in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) to determine the appropriateness of a fee award.  Plaintiffs' Counsel submit that their fee request is reasonable given that they achieved an exceptional recovery in the face of significant risk and in the absence of: (i) any "parallel" government action or indictments involving scienter-based claims available to Plaintiffs prior to filing their complaint; (ii) restatement of financial results by the Company; or (iii) any report from an internal investigation, or information provided by a whistleblower.

The requested fee award (16.5%, and less than two times lodestar) is below the average for fee awards on settlements of this size, when measured as a percentage of recovery or as a

---

[2] "Joint Decl." refers to the concurrently filed Joint Declaration of Ira M. Press and Peter S. Linden in Support of (A) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and (B) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

[3] These law firms include: Entwistle & Cappucci LLP; Allen Brothers, P.L.L.C.; Kenneth Gold; Glancy Binkow & Goldberg LLP; Motley Rice LLC; Law Office of Alan L. Kovacs; and Law Office of Kenneth A. Elan.  The Joint Declaration also includes as exhibits the separate fee and expense declarations submitted by each of these firms, which contain additional details concerning the amount of time expended and expenses incurred by each Plaintiffs' Counsel firm in prosecuting this Action.

multiple of counsel's lodestar.  The requested expenses are also reasonable because they are of the kind that are regularly reimbursed by courts within this Circuit and were necessary for the prosecution of the Action.

## STATEMENT OF THE FACTS

The Joint Declaration, which accompanies this motion, details the factual and procedural background of this case and the events that led to the Settlement.

## ARGUMENT

**I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FROM THE COMMON FUND**

**A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund**

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The court's authority to reimburse the parties stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*: §1803, at 493-94 (2d ed. 1986).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to prevent the unjust enrichment of persons who benefit from a lawsuit without shouldering its costs. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

In addition, courts have recognized that awards of attorneys' fees from a common fund should serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and therefore to discourage future alleged misconduct of a

3

similar nature.  *See Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y.

Oct. 24, 2005).  Further, "attorneys who alone discover grounds for a suit, based on their own

investigation rather than on public reports, legitimately create a benefit for the class" and "should

generally be compensated out of the class's recovery."  *In re Cendant Corp. Sec. Litig.*, 404 F.3d

173, 196-97 (3d Cir. 2005).

**B.     The Court Should Award a Reasonable Fee to Plaintiffs' Counsel**

Where "an attorney succeeds in creating a common fund from which members of a class

are compensated for a common injury inflicted on the class, as . . . in a securities class action

litigation, the attorney is entitled to the reasonable value of the services performed in creating

that class recovery, as set by the court." *In re Philip Servs. Corp. Sec. Litig.*, No. 98 Civ. 835,

2007 WL 959299, at *1 (S.D.N.Y. Mar. 28, 2007) (internal citations and quotations omitted).  As

the Second Circuit observed in *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*:

> Courts may award attorneys' fees in common fund cases under either the
> "lodestar" method or the "percentage of the fund" method.  The lodestar method
> multiplies hours reasonably expended against a reasonable hourly rate.  Courts in
> their discretion may increase the lodestar by applying a multiplier based on
> factors such as the riskiness of the litigation and the quality of the attorneys.

396 F.3d 96, 121 (2d Cir. 2005) (internal citation omitted).

Regardless of whether a court applies the lodestar method or the percentage method, its

ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances.

*Goldberger*, 209 F.3d at 47.   The determination of "reasonableness" is within the Court's

discretion.  *Id.*; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005).  The

Second Circuit has instructed that, in the exercise of such discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in
> determining a reasonable common fund fee, including: "(1) the time and labor
> expended by counsel; (2) the magnitude and complexities of the litigation; (3) the
> risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in

4

relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (citation omitted).

For the reasons set forth below and in the Joint Declaration, Plaintiffs' Counsel respectfully submit that the exceptional results achieved here, in the face of huge risks, would justify the requested award of fees and expenses as reasonable under both the lodestar and percentage methods, and when viewed in light of the *Goldberger* factors.

Plaintiffs also retained John C. Coffee, Jr., the Adolfe A. Berle Professor of Law at Columbia University Law School, and Geoffrey P. Miller, Stuyvesant P. Comfort Professor of Law Director, Center for Financial Institutions at New York University Law School, both widely-recognized experts in securities litigation, to opine on the Settlement and Plaintiffs' Counsels' fee request. As set forth in their accompanying declarations (respectively "Coffee Decl." and "Miller Decl."), each expert found, after extensive separate analysis, that the Settlement is reasonable, adequate, and that the requested fee is eminently fair.

### C.      The Request is Reasonable Under the Lodestar Method

Application of the lodestar method confirms the reasonableness of the fee request. The lodestar is comprised of the number of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997). Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id*. (citing *Goldberger*, 209 F.3d at 47); *In re*

5

*Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007) ("the Court rewards [] lead counsel that takes on more risk, demonstrates superior quality, or achieves a greater settlement with a larger lodestar multiplier"); *In re Microstrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001) ("to achieve the other objectives of a fair and reasonable fee award under the PSLRA, namely, to reward lead counsel for the favorable result achieved for the class and to provide an incentive for competent lawyers to pursue such actions in the future on an essentially contingent basis, the ultimate award must be *substantially greater* than the lodestar figure") (emphasis added).

In this entirely contingent action, Plaintiffs' Counsel collectively expended more than 115,342.33 hours of professional time in investigating, prosecuting and ultimately settling these claims (excluding time spent on the instant fee and expense application).  *See* Joint Decl. at ¶¶ 140-144, Exs. D-L.  Plaintiffs' Counsel's total lodestar, derived by multiplying these hours by each firm's current hourly rates[4] for its attorneys, paralegals, and other professional staff, comes to $51,438,451.15.  *Id.*  The total requested fee here represents a lodestar multiplier of 1.89, which is well within the range of multipliers that are typically awarded in this Circuit.[5]  The multiplier requested here is also within the range of multipliers that have been recently awarded

---

[4] The Supreme Court has approved use of current rather than historical rates in the lodestar calculation. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989). Using current rates helps "compensate for the delay in receiving compensation, the inflationary losses, and the loss of interest."  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (citation omitted).

[5] *See, In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 134 (2d Cir. 2008) (holding that a $34 million fee, representing a 2.04 multiplier, was "toward the lower end of reasonable fee awards"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (awarding fee equal to 21.4% and 2.89 multiplier in case involving recovery of $455 million); *Wal-Mart*, 396 F.3d at 123 (multiplier of 3.5 approved on appeal); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier as "well within the range awarded by courts in this Circuit and courts throughout the country").

in securities class actions settling above $400 million.[6]

More precisely, the requested multiplier is *lower* than the average lodestar multiplier of comparable securities class action settlements.  *See* Coffee Decl. at ¶¶ 17-18 (determining average lodestar multiplier of 2.29 for securities class action cases settling between $490-$690 million); Miller Decl. at ¶ 58 and Table 13 (determining average lodestar multiplier of 2.13 for securities class action cases settling between $550-$800 million).

In calculating Plaintiffs' Counsel's lodestar, the hourly rates "should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) (internal quotations omitted).  Awards in comparable cases are an appropriate measure of the market value of counsel's time.  *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881,

---

[6] *See, e.g.*, *In re Qwest Commc'ns Int'l Inc., Sec. Litig.*, No. 01-cv-1451, 2006 U.S. Dist. LEXIS 71267, at *13 (D. Colo. Sept. 29, 2006), 625 F. Supp. 2d 1143, 1154 (D. Colo. 2009) (awarding fee equal to 3.3 multiplier and 15% in case involving $445 million recovery); *In re HealthSouth Corp. Stockholder Litig.*, No. 03 Civ. 1500, slip op. at 2 (N.D. Ala. Feb. 12, 2008) (awarding fee equal to 3 multiplier in case involving $445 million recovery) (Dkt. No. 1112, submitted herewith as part of compendium of unpublished opinions, Joint Decl. Ex. N) *In re Adelphia Commc'ns. Corp. Sec. & Deriv. Litig.*, No. MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008)  (McKenna, J.), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008) (awarding fee equal to 2.89 multiplier on total recovery of $455 million); *In re Raytheon Co. Sec. Litig.*, No. 99 Civ. 12142, slip op. at 9 (D. Mass. Dec. 6, 2004) (awarding fee equal to 3.14 multiplier in case involving $460 million recovery) (Dkt. No. 645) (Ex. N) and Dkt. No. 626 (plaintiff's fee brief) at 20; *In re Dynegy Inc. Sec. Litig.*, No. 02 Civ. 1571, slip op. at 1 (S.D. Tex. July 7, 2005) (awarding fee equal to 4.07 multiplier on total recovery of $474,050,000) (Dkt. No. 686) (Ex. N) and Dkt. No. 677 (plaintiff's fee brief) at 17 ; *In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.*, No. 07 Civ. 9633, 2009 WL 2407551, at *1 (S.D.N.Y. Aug. 4, 2009) (awarding fee equal to 2.26 multiplier on total recovery of $475 million) and Dkt. No. 245 (plaintiff's fee brief) at 21; *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1065-66 (E.D. Mo. 2002) (granting 18% of $490 million combined settlement fund, resulting in multiplier of 3.2 for counsel representing one set of plaintiffs and 2.91 for another); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442-43 (D.N.J. 2004) (awarding fee equal to 17% and 2.13 multiplier on $517 million recovery); *In re Cardinal Health*, 528 F. Supp. 2d at 767-70 (awarding fee equal to 5.9 multiplier in case involving recovery of $600 million); *In re Wachovia Preferred Sec. and Bond/Notes Litig.*, No. 09 Civ. 6351, 2012 WL 2589230, at *3 (S.D.N.Y. Jan. 3, 2012) (awarding fee equal to 2.3 lodestar multiplier in case involving $627 million recovery); *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (awarding fee equal to 6.5 multiplier in case involving $925,500,000 recovery); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, No. 03-MD-1539, slip op. at 1 (D. Md. Nov. 2, 2006) (awarding fee of 12% or 2.57 multiplier in case involving $1.1 billion) (Dkt. No. 798) (Ex. N); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. 02-MD-1335, slip op. at 40, 54 (D.N.H. Dec. 19, 2007) (awarding fee equal to 14.5% and 2.697 in case involving $3.2 billion settlement) (Dkt. No. 1184) (Ex N).

885 (2d Cir. 1983).[7]

The rates billed by Plaintiffs' Counsel, ranging from $275 to $850 per hour, (*See* Joint Decl. Exs. E-L), are comparable to peer plaintiff and defense-side law firms litigating matters of similar magnitude.  Miller Decl. at ¶¶ 38-42 and Tables 1-3 therein.[8]  Similar billing rates have been approved by judges in this District in the last 2-5 years, and market rates have risen since then. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y. 2010) (court was "satisfied that the lodestar [was] reasonable" where rates ranged from $125 for administrative personnel to $775 for senior lawyers);  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589-90 (S.D.N.Y. 2008) (noting that hourly rates of $700-$750 for partners and $300-$550 for associates were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (hourly rates of $650-$850 for partners and $515 for senior associates were "not inordinate for top-caliber New York law firms").

Accordingly, Plaintiffs' Counsel submit that their calculated lodestar of $51,438,451.15 represents the appropriate amount on which to apply a multiplier to reflect the contingent nature of the fee and risk incurred by Plaintiffs' Counsel.

---

[7] As has been the practice approved by numerous courts in class action cases, Lead Counsel also request that they be granted the discretion to allocate any attorneys' fees and expenses awarded by the Court among Plaintiffs' Counsel in a manner which, in the opinion of Lead Counsel reflects their view regarding the contributions and value of the work of Plaintiffs' Counsel to the results obtained in this Action. *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2008 WL 4128702, at *1-3 (S.D.N.Y. Sept. 3, 2008) (lead counsel allocating fees in the first instance).  In making that determination, Lead Counsel will take into account the lodestars reported by each firm as one factor in determining the allocation of fees awarded by the Court.  In so doing, Lead Counsel may determine that adjustments to the reported lodestars are appropriate.

[8] "[T]he best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) .

## D.     The Request is Reasonable Under the Percentage Method

Plaintiffs' Counsel is seeking a fee award that is 16.5% of the Settlement Amount.  This fee request is well within what is typically awarded in similar actions -- especially where the lodestar multiplier is less than 2.  *See also* Coffee Decl. at ¶ 18 (determining average fee percentage of 16.69% for securities class action cases settling between $490-$690 million); Miller Decl. at ¶ 58 (determining average fee percentage of 17.34% for securities class action cases settling between $550-$800 million).  In other securities class actions in this District that have settled in the multi-hundred million dollar range, courts have awarded attorneys' fees ranging as high as 33⅓%.  *See In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) ("*IPO*") (awarding 33⅓% fee on total recovery of $586 million); *In re Adelphia Commc'ns. Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (awarding 21.4% fee on total recovery of $455 million); *Ohio Pub. Empl. Ret. Sys. v. Freddie Mac*, No. 03 Civ. 4261, 2006 U.S. Dist. LEXIS 98380, at *4 (S.D.N.Y. Oct. 26, 2006) (awarding 20% fee on total recovery of $410 million); *In re Oxford Health Plans, Inc., Sec. Litig.*, MDL No. 1222, 2003 U.S. Dist. LEXIS 26795, at *13 (S.D.N.Y. June 12, 2003) (awarding 28% fee on total recovery of $300 million). Other courts have awarded comparable fee awards in similar cases settling in the multi-hundred million dollar range.[9]

In fact, Plaintiffs' Counsel are not aware of a single PSLRA case in which the court denied an attorneys' fee request that was less than 17% and less than 2 times lodestar.

---

[9] *See In re HealthSouth Corp. Stockholder Litig.*, No. 03-cv-1500, slip op. at 2 (awarding 17.5% fee in case involving $445 million recovery) (Dkt. No. 1112) (Ex. N); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d at 442 (awarding 17% fee on $517 million recovery); *In re Cardinal Health*, 528 F. Supp. 2d at 767-70 (awarding 18% fee in case involving recovery of $600 million); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1065-66 (E.D. Mo. 2002) (granting 18% fee on $490 million combined settlement fund).

E.      The *Goldberger* Factors Support the Requested Award of Attorneys' Fees

Under either the lodestar multiplier approach or the percentage of the common fund approach, the "*Goldberger* factors" ultimately determine the reasonableness of a common fund fee. *Goldberger*, 209 F.3d at 50.  They include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.*; *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417, 422-26 (2d Cir. 2010) (confirming the continued availability of both lodestar and percentage-of-the-fund methods and the applicability of the "*Goldberger* factors").

Although none of the *Goldberger* factors is controlling, *each* of the foregoing factors weighs strongly in favor of approving the requested fee.  An analysis of these factors further demonstrates that Plaintiffs' Counsel's fee request is reasonable.

1.      The Time and Labor Expended by Plaintiffs' Counsel, Including a "Lodestar Crosscheck," Support the Requested Fee

Plaintiffs' Counsel collectively devoted 115,342.33 hours to this Action (excluding time devoted to preparing this submission), yielding a combined "lodestar" amount of $51,438,451.15.  Joint Decl. at ¶¶ 140-44, and Exs. D-L. The many hours expended by Plaintiffs' Counsel, which resulted in the highly favorable Settlement, are plainly reasonable in view of the work performed in this complex securities action as described in depth in the accompanying Joint Declaration.  *See* Joint Decl. at ¶¶ 5, 29, 33-52, 61-99.  The work, spanning nearly five years, included numerous motions and more than thirty depositions, as well as extensive review and analysis of the 40 million pages of documents produced by Defendants and third-parties. Lead Counsel directly supervised day-to-day litigation work, to ensure efficiency and minimize

unnecessary duplication.   The significant time and effort devoted to this case by Plaintiffs'
Counsel, and their commitment to the efficient management of the litigation, support approval of
the requested award.

Based on a 16.5% fee, Plaintiffs' Counsel's combined lodestar of $51,438,451.15 would
yield a multiplier of approximately 1.89.   Joint Decl. at ¶ 140.   As noted above, this lodestar
multiplier is lower than average for settlements of this size even though, as detailed in the Joint
Decl. and below, the quality of work here was decidedly above average.

### 2.    The Magnitude and Complexity of the Litigation Weigh in Favor of Approval

Courts have long recognized that securities class actions are notoriously complex and
difficult to prove.   *See, e.g., Fogarazzo v. Lehman Bros., Inc.*, No. 03 Civ. 5194 (SAS), 2011 WL
671745, at *3 (S.D.N.Y. Feb. 23, 2011) ("securities actions are highly complex"); *In re Flag
Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400, 2010 WL 4537550, at *27 (S.D.N.Y. Nov.
8, 2010) (courts have long recognized that securities class litigation is "notably difficult and
notoriously uncertain") (citation omitted).   Moreover, a securities fraud class action's magnitude
and complexity must be evaluated in comparison to similarly complex cases.   *See In re Bristol-
Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 234 (S.D.N.Y. 2005).   As recognized by the court
in *In re Ikon Office Solutions, Inc. Sec. Litig.*, in a class action for violation of Section 10(b) and
Rule 10b-5, "[t]here were the legal obstacles of establishing scienter, damages, causation . . . .
The court also acknowledges that securities actions have become more difficult from a plaintiff's
perspective in the wake of the PSLRA . . . . The Act imposes many new procedural hurdles . . . .
It also substantially alters the legal standards applied to securities fraud claims in ways that
generally benefit defendants rather than plaintiffs." 194 F.R.D. 166, 194-95 (E.D. Pa. 2000).

11

This case, given that it centered on exposures of unparalleled complexity (CDOs), was significantly more complex still.  As detailed in the Joint Declaration, virtually every aspect of this Action confirmed its complexity.  For example, as reflected in the 536-page Complaint, this Action alleged a long list of factually and legally complex claims.  Being able to adequately plead *any* of these claims -- without relying on evidence from a parallel government investigation -- was in itself an enormously complex undertaking, which involved, among other things: (a) intensive, comprehensive, original and independent investigation conducted by Lead Counsel, *see* Joint Decl. at ¶¶ 33-37, 44; (b) synthesizing the information mined from various sources to reconstruct the record of Citigroup's collateralized debt obligations ("CDOs") issuance from 2003 through 2007, which allowed Lead Counsel to make a series of significant factual discoveries critical to Plaintiffs' ability to plead the elements of its 10b-5 claim, *id.* ¶ 38-43, 45; and (c) consulting with accounting and damages and loss causation experts, *id.* ¶¶ 86-87, 90-91, 93-95.  Further, this Action involved complex legal and factual issues relating to the banking industry, banking regulations, mortgage loans, residential mortgage backed securities, CDOs, Citigroup's CDO exposure and valuation during the Class Period, in addition to inherently complex Exchange Act issues regarding, *inter alia*, materiality, scienter, causation and damages.

### 3.    The Risks of the Litigation Warrant Approval

An evaluation of the risks undertaken by Plaintiffs' Counsel in prosecuting this Action also supports the reasonableness of their fee request.  "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys fees."  *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 WL 709262, at *6, (S.D.N.Y. June 22, 2001).  As the Second Circuit has observed, "No one expects a lawyer whose

compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).  Further, in evaluating the contingent litigation risk, the Third Circuit Task Force on Selection of Class Counsel has specifically recognized that:

> It is plaintiffs' counsel who work to obtain whatever recovery any member of the class who has not opted out of the litigation will receive.  The fact that there will be no payment if there is no settlement or trial victory means that there is greater risk for plaintiffs' counsel in these class action cases than in cases in which an hourly rate or flat fee is guaranteed.  The quid pro quo for the risk, and for the delay in receiving any compensation in the best of circumstances, is some kind of risk premium if the case is successful.

Report, 74 Temp. L. Rev. 689, 691-92 (Winter 2001) (footnote omitted).  *See also Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Am. Bank Note Holographics Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

Here, Plaintiffs' Counsel undertook representation of Plaintiffs and the Class on a wholly contingent basis, investing substantial time and funds to prosecute this Action without any guarantee of compensation or of recovering out-of-pocket expenses, which total $2,842,841.59.  Joint Decl. at ¶¶ 187-91.  Plaintiffs' Counsel also devoted 115,342.33 hours to the Action.[10]  "In numerous class actions . . . plaintiffs' counsel have expended thousands of hours and advanced

---

[10] Plaintiffs' Counsel's efforts do not end with approval of this Settlement.  Indeed, Lead Counsel will continue to supervise the claims administration process in the coming months and, upon completion of such process, prepare and file a motion for distribution of the Net Settlement Fund to members of the Class.

significant out-of-pocket expenses and received no remuneration whatsoever." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *18 (S.D.N.Y. Dec. 23, 2009).

There is a real risk of no recovery in complex securities litigation cases such as this one. Over the last four years, more than 40% of all securities class actions have been dismissed on motions before trial,[11] and when the cases went to trial, defendants were as likely as plaintiffs to prevail.[12] Indeed, many suits stemming from alleged misrepresentation of CDO exposures at other institutions were dismissed with no class recovery at all. *See* Settlement Brief at I.C.(8) and n. 20; Joint Decl. at ¶¶ 125-126. Moreover, "even a victory at trial does not guarantee recovery," *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695, 2007 WL 4115808, at *6, n.6 (S.D.N.Y. Nov. 7, 2007) (citing numerous cases where jury verdicts were overturned),[13]

This case presented risks and uncertainties far beyond those typically encountered, which made it far from certain that any recovery, let alone the substantial Settlement benefits, would be achieved. First, this was not a case where there had been a government indictment pending or government investigation-related materials available to Plaintiffs when they pled their Complaint, which would have indicated a likelihood of establishing liability. To the contrary,

---

[11] *See* Renzo Comolli, Ron Miller, John Montgomery and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2012 Mid-Year Review" (NERA July 2012) at 21, 22, attached as Joint Decl. Ex. B.

[12] *Id.* at 37.

[13] *See,also, In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07 Civ. 61542, 2011 WL 1585605, at *6, *20 (S.D. Fla. Apr. 25, 2011) (although the jury found that certain statements violated section 10(b) of the Exchange Act, the court entered judgment as a matter of law in favor of the defendants as to all claims and statements, on the ground that plaintiffs had failed to present evidence from which the jury could reasonably find loss causation); *See, e.g., Robbins v. Koger Props. Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million judgment in plaintiffs' favor and entering judgment in favor of defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation and remanding for new trial in light of intervening Supreme Court decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)).

Plaintiffs' efforts led those of regulators.  Fourteen months after Plaintiffs filed the Complaint, in April 2010, the Financial Crisis Inquiry Commission ("FCIC") publicly examined six present and former Citigroup executives regarding Citigroup's CDO exposure in the time period preceding and leading up to the financial crisis.  Joint Decl. at ¶ 51.  Further, seventeen months after Plaintiffs filed the Complaint, on July 29, 2010, the U.S. Securities and Exchange Commission ("SEC") commenced a civil enforcement proceeding against Citigroup and two of its executives charging them with making misleading statements regarding Citigroup's CDO exposures in earnings calls between mid-July and October 2007, *i.e.*, a portion of the Class Period alleged in Plaintiffs' Complaint.  *Id.* at ¶¶ 51, 54; Coffee Decl. at ¶ 24; *SEC v. Citigroup Inc.,* No. 10 Civ. 1277-ESH (D.D.C.).  However, unlike this Action, the SEC alleged only "non-*scienter* fraud" claims under Section 17 of the Securities Act of 1933 ("Securities Act") against Citigroup.  That action ultimately settled for $75 million.  Joint Decl. at ¶ 55.

While Plaintiffs' case on the merits is much stronger now than at the time of filing, the relevant date for measuring litigation risk must be "measured as of when the case is filed," not when the fee application is adjudicated.  *Goldberger*, 209 F.3d at 55.  Lead Counsel prepared the Complaint prior to the SEC and FCIC proceedings, at which time there was virtually no information or analysis about CDOs (much less about Citigroup's CDOs) in the public domain.  Joint Decl. at ¶¶ 33-35.  Further, though Plaintiffs' Counsel believes that the evidence confirms Defendants' wrongful conduct, Defendants steadfastly denied any wrongdoing.  In any event, substantial questions concerning, class certification, loss causation, and damages existed at the time the Settlement was achieved, creating a substantial risk that in the absence of a settlement, the Class' recovery would have been commensurately smaller, or nonexistent.  Notwithstanding these risks, Plaintiffs' Counsel committed significant resources to the vigorous prosecution of

15

this Action and Plaintiffs' Counsel have not yet received any compensation.

Furthermore, Plaintiffs' Counsel believe that the liability case against Defendants was relatively strong but not without risks. As more fully discussed in the accompanying Settlement Brief and Joint Declaration, *see* Settlement Brief at I.C.(4) and Joint Decl. at ¶¶ 159-62, Plaintiffs and their counsel faced substantial hurdles in proving Defendants' liability. For example, Defendants raised serious challenges to Plaintiffs' proof regarding the elements of falsity and scienter including that: (i) Defendants argued that the global financial crisis caused market conditions to change in unprecedented and unforeseeable ways; (ii) Defendants maintained that Citigroup's Class Period CDO disclosures satisfied all applicable financial disclosure standards and were not false or misleading and that Citigroup was not obligated to disclose detailed line-item information about its super senior CDOs; (iii) Defendants asserted that the risk of material write-downs to Citigroup's super senior CDO tranches was neither known nor knowable by Citigroup management until the rating agencies downgraded these instruments in October 2007, and until such time, Defendants argued, Citigroup's senior management in good faith and reasonably believed that any risks associated with Citigroup's CDOs were remote; and (iv) Citigroup's management selected a pricing model for the CDOs in good faith because they believed the model appropriately reflected those instruments' value and not because the model minimized write-downs.

In addition to the complex issues of law and fact inherent in securities class actions generally, Plaintiffs' Counsel had to analyze and assimilate a wide range of complicated legal issues (*e.g.*, corporate scienter) and facts that would need to be comprehensively presented to a jury. *Id.* at ¶¶ 153-54; *see also* Coffee Decl. at ¶¶ 26-27; Miller Decl. at ¶ 23. Even if Plaintiffs were to overcome the foregoing risks and were successful in establishing liability, there were

substantial risks in proving damages or the extent of damages.  *See* Settlement Brief at I.C.(5); Joint Decl. at ¶ 160.

At trial, the "battle of the experts" between Plaintiffs' and Defendants' experts would undoubtedly involve sophisticated analyses and methodologies.  It is always possible that a jury might simply reject Plaintiffs' experts' analyses.  *See Hicks*, 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("battle[s] of the experts" invariably "create[] a significant obstacle to plaintiffs"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d at 426-27 ("[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses").  Indeed, the difficulty of prevailing at trial on such complex, CDO-related claims is highlighted by the fact that the two CDO-related trials of which Lead Counsel is aware (both brought by the government) ended in verdicts for defendants.  Joint Decl. at ¶ 165.

Thus, the risk of non-payment to Plaintiffs' Counsel and the risks involved in proving both the liability and damages were great and cannot be underestimated.  This factor weighs in favor of the requested fee.

### 4.    The Quality of the Representation Favors Approval of Plaintiffs' Counsel's Fees

Plaintiffs' Counsel also submit that the quality of their representation supports the reasonableness of the requested fee.  Plaintiffs' Counsel have many years of experience in the complex litigation of securities and other class actions.  Joint Decl. Exs. E-L.

Moreover, unique circumstances here provide concrete demonstration of the quality of Lead Counsel's representation.  As further detailed in Settlement Brief at I.B., C.(8) and in the Joint Declaration, Lead Counsel's prosecution of the Action, in the absence of any tailwinds

17

provided by governmental action or Defendants' concessions, was alone responsible for the $590 million recovery here. *See* also Coffee Decl. at ¶ 22. This recovery is literally top-notch, by any measure.

First, where many other CDO-related cases were dismissed outright (including against institutions whose CDO exposures rivaled those of Citigroup), Lead Counsel's uniquely-detailed and insightful pleading – unsurpassed before or since in any similar case relating to CDO exposures – was instrumental in allowing this Action to survive dismissal. Joint Decl., ¶ 59; *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 235-38 (S.D.N.Y. 2010).

Second, Lead Counsel guided the Action to a more successful result than obtained in any other CDO exposure case ever. Joint Decl. at ¶ 119.

Third, Lead Counsel demonstrably outperformed other actions proceeding against Citigroup arising from the same underlying facts (*i.e.*, Citigroup's CDO exposures). This Court itself dismissed parallel derivative and ERISA proceedings. *See In re Citigroup Inc. S'holder Derivative Litig.*, 788 F. Supp. 2d 211 (S.D.N.Y. 2011); *In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), *aff'd*, 662 F.3d 128 (2d Cir. 2011). Abu Dhabi Investment Authority, alleging $4 billion of Citigroup investment losses in separate arbitration proceedings, recovered nothing. The SEC action settled for $75 million.

Fourth, the $590 million recovery here compares favorably against the largest PSLRA settlements of all time. *See* Joint Decl. at ¶¶ 120-22.

Another consideration for assessing the quality of services rendered by Plaintiffs' Counsel is the quality of the opposing counsel in the case. *See Maley*, 186 F. Supp. 2d at 373. Defendants were represented by skilled and highly regarded counsel from Paul, Weiss, Rifkind, Wharton & Garrison LLP, one of the most prominent national defense firms with well-deserved

reputations for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, No. 11 Civ. 813, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (considering "the quality and vigor of opposing counsel"); *IPO*, 671 F. Supp. 2d at 510 (finding plaintiffs' counsel's prosecution against "such formidable opponents . . . an impressive feat"); *Marsh & McLennan*, 2009 WL 5178546, at *19 (reasonableness of fee was supported by fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations"). That Lead Counsel was able to negotiate an outstanding recovery in the face of such formidable (and well-financed) opposition is a telling testament to the skill and dedication that they brought to every phase of this Action.

### 5.    The Requested Fee in Relation to the Settlement Is Reasonable

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *See Goldberger*, 209 F.3d at 47. The Supreme Court has held that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

The fee requested here – 16.5% of the settlement and 1.89 times lodestar – is justified by the extraordinary recovery achieved. This is the largest recovery in a CDO-related case ever and one of the largest securities class action recoveries of any kind ever. The requested fee is below the average of multipliers that have been awarded in securities class actions settling for comparable amounts. *See* Miller Decl. at ¶ 48 and Table 6 (Lodestar Multiplier in Mega Cases);

*accord* Coffee Decl. at ¶ 30 and Table 5 (Recent Multipliers); *see also* cases cited *supra* in footnotes 5 and 6.  Similarly, as discussed above, the fee percentage requested by Plaintiffs' Counsel, 16.5%, is also well below the average of percentage fees awarded and elsewhere for comparable recoveries in PSLRA cases. *See* Coffee Decl. at ¶ 18; Miller Decl. at ¶¶ 56-58.

Plaintiffs' Counsel respectfully submit that a closer review of the "comparable" cases considered above only highlights several of the many respects in which the fee request here compares quite favorably to those awarded by other courts.  For example, most of the securities class actions that have recovered larger cash settlements had the benefit of non-fraud claims, including claims brought under the Securities Act, where plaintiffs are relieved of the need to prove defendants' fraudulent intent, or loss causation – two elements of 10(b) claims that are among the most difficult to prove.  Moreover, this Settlement was achieved without the benefit of a "parallel" government investigation, criminal prosecution and/or large SEC settlement into similar scienter-based claims.  Thus, Plaintiffs' Lead Counsel had to develop these complex claims on their own – unlike plaintiffs' counsel in many other cases, who can rely to a large degree on regulators' work product (*see, e.g., In re Lehman Brothers Sec. & ERISA Litig.*, No. 09-md-2017-LAK-GWG, slip op. at 2 (S.D.N.Y. June 29, 2012) attached as Joint Decl. Ex. N). Lastly, unlike nearly all of the 17 securities class actions that have ever settled for more than $590 million, plaintiffs here did not have the benefit of an accounting restatement (which, when present, relieves plaintiffs of the burden of proving the existence of a material misrepresentation). *See* Joint Decl. Ex. M.

Indeed, some of the largest securities class action cases – including cases involving fee awards either equal to or significantly *greater* than that requested here – involved major government investigations, non-scienter claims (*e.g.*, '33 Securities Act or proxy claim), and/or a

20

large accounting restatement. *Compare, e.g., In re Cardinal Health*, 528 F. Supp. 2d at 767-70 (awarding fee equal to 18% and 5.9 lodestar multiplier on $600 million recovery in case involving both government action and restatement); *In re Lucent*, 327 F. Supp. 2d at 442-43 (awarding fee equal to 17% and 2.13 multiplier on $517 million recovery in case involving restatement); *In re Adelphia*, 2006 WL 3378705, at *3, *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008) (awarding fee equal to 21.4% and 2.89 multiplier on $455 million recovery in case involving both government action and restatement); *In re HealthSouth Corp. Stockholder Litig.*, No. 03 Civ. 1500, slip op. at 2 (N.D. Ala. Feb. 12, 2008) (awarding 17.5% fee, equal to 3 multiplier, on $445 million recovery in case involving both government action and restatement) (Dkt. No. 1112) (Ex. N). *See also* Coffee Decl. at ¶¶ 17, 22-25.

In light of the percentage amount and lodestar multipliers of the vast majority of fee awards, the requested fee is reasonable.

### 6.    Public Policy Considerations

"'A strong public policy concern exists for rewarding firms for bringing successful securities litigation.'" *In re Telik*, 576 F. Supp. 2d at 593 (quoting *In re Ashanti Goldfields Sec. Litig.*, No. 00 Civ. 717, 2005 WL 3050284, at *5 (E.D.N.Y. Nov. 15, 2005)).  In furtherance of this important public policy, courts should award fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the government regulators. *See Anwar*, 2012 WL 1981505, at *3 ("Attorneys who take on class action matters on a contingent fee basis, enabling litigants to pool their claims, provide a service to the judicial process."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

21

The Supreme Court recently reaffirmed its longstanding recognition of the importance of private class actions to the enforcement of the securities laws. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318-19 (2007) (private securities fraud actions provide "'a most effective weapon in the enforcement' of securities laws and are 'a necessary supplement to Commission action'"); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (same). District courts in the Second Circuit have also recognized private securities class actions as encouraging enforcement of securities laws.[14] "Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Telik*, 576 F. Supp. 2d at 585 (citing *Maley*, 186 F. Supp. 2d at 369). Approval of the requested fees and expenses would be fully consistent with these important public policy considerations.

Although the FCIC conducted hearings and the SEC commenced an action relating to Citigroup's CDOs, *see* Joint Decl. at ¶ 51, there is no merit to any suggestion that Plaintiffs simply "rode the coattails" of the government in this case. The government, with its regulatory and law enforcement authority, has tremendous power not possessed by private civil litigants to investigate and uncover misconduct. Nevertheless, in this case, Lead Counsel and not the government clearly led the way. As discussed above and in the Joint Declaration, Lead Counsel conducted their own comprehensive, original and independent investigation of the matters herein and filed Plaintiffs' Complaint more than a year before any public involvement of the FCIC or

---

[14] *Telik*, 576 F. Supp. 2d at 585; *In re Priceline.com Inc. Sec. Litig.*, No. 00 Civ. 1884, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (finding award percentage encourages enforcement of securities laws and supports "attorneys' decisions to take these types of cases on a contingent fee basis"); *In re Bristol–Myers Squibb*, 361 F. Supp. 2d at 236 ("[P]ublic policy supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC").

SEC or any material media coverage of the matters at issue.  Lead Counsel were on their own in developing the allegations in this case.  *Id.* at ¶¶ 33-35. Accordingly, Plaintiffs' Counsel's requested fees are thus reasonable and should be awarded.

### 7.    The Class's Reaction to the Fee Request

In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the Class to the fee request in deciding how large a fee to award. *See Veeco*, 2007 WL 4115808, at *10; *Maley*, 186 F. Supp. 2d at 374; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("The class's reaction to the fee request supports approval of the requested fees").

The deadline to object to the settlement or fee request is December 21, 2012.  Thus far, only two Class Members out of potentially millions have objected to the fee request.  Pursuant to the Court's scheduling order, Plaintiffs' Counsel will submit a response to all timely objections on January 4, 2013.

## II.    PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR REASONABLY INCURRED LITIGATION EXPENSES

In addition to a reasonable fee award, Plaintiffs' Counsel respectfully seek $2,842,841.59 plus interest, in reimbursement of litigation expenses reasonably and necessarily incurred in prosecuting the Action.   Joint Decl. at ¶¶ 187-91.   The Notice informed Settlement Class members that Lead Counsel would seek reimbursement of expenses of up to $3,750,000. Plaintiffs' Counsel have submitted declarations attesting to the accuracy of their expenses and it is well established that expenses are properly recovered by counsel.  Joint Decl. Exs. E-L; *see, e.g.*, *Marsh & McLennan*, 2009 WL 5178546, at *20; *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citations omitted).

23

Plaintiffs' Counsel's declarations, annexed as Exhibits F-L to the Joint Declaration, itemize the various categories of expenses incurred by Plaintiffs' Counsel. *See also* Joint Decl. Ex. E. They are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as fees paid to experts, notice costs, computerized research, copying and travel in connection with this Action. *Anwar*, 2012 WL 1981505 at *3 (reimbursing expenses such as "mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type 'the paying, arm's length market' reimburses attorneys") (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 468). The fact that Plaintiffs' Counsel were willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary.[15]

These expenses were reasonable and necessary in this Action, and have been expended for the direct benefit of the Class. *See* Joint Decl. at ¶¶ 188-91. "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Anwar*, 2012 WL 1981505, at *3 (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see, e.g., In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (noting that it is common practice to grant expense request and awarding $18.7 million in expenses where the "lion's share of these expenses reflects the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses"). These expenses should be

---

[15] The request for reimbursement does not include any costs the Claims Administrator has or will incur in connection with claims processing and the eventual distribution of the settlement proceeds.

reimbursed.

## **CONCLUSION**

The total recovery of $590 million under the proposed Settlement represents an extraordinary result achieved against a single corporate defendant in a high risk case in the face of determined adverse parties and without the benefit of *any* government actions involving fraud-related claims (let alone recoveries) on behalf of investors or financial restatements.  For the reasons set forth herein and in the Joint Declaration, Plaintiffs' Counsel submit that this fee request is fair and reasonable. It satisfies the guidelines of *Goldberger*, especially in light of the complicated nature of the case and the time, effort, and skill required to litigate this Action and reach this Settlement.  Accordingly, for the foregoing reasons, Plaintiffs' Counsel respectfully request that this Court enter the accompanying corrected and proposed Final Judgment and Order of Dismissal with Prejudice awarding: (1) attorneys' fees of 16.5% of the Settlement Amount, plus any accrued interest; and (2) reimbursement of Plaintiffs' Counsel's litigation expenses in the amount of $2,842,841.59, plus any accrued interest.

Dated: December 7, 2012

Respectfully Submitted,

KIRBY McINERNEY LLP

By: _____*/s/ Ira M. Press*_____
    Ira M. Press
    Peter S. Linden
    Andrew S. McNeela
    Mark A. Strauss
    Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Tel:  (212) 371-6600
Fax:  (212) 751-2540

*Lead Counsel for Plaintiffs*

Andrew J. Entwistle
ENTWISTLE & CAPPUCCI LLP
280 Park Avenue
26th Floor West
New York, NY  10017
Tel.: 212-894-7200
Fax: 212-894-7272


James Allen, Sr.
ALLEN BROTHERS, P.L.L.C.
400 Monroe, Suite 220
Detroit, MI  48226
Tel.: (313) 962-7777
Fax: (313) 962-0581


Kenneth Gold
439 Griffith Street
Saugatuck, MI 49453
Tel: (248) 310-9870


Lionel Glancy
GLANCY  BINKOW  &  GOLDBERG  LLP
1925 Century Park East. Suite 2100
Los Angeles, CA 90067
Tel.: (310) 201-9150
Fax: (310) 201-9160


William Narwold
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Tel: 843.216.9000
Fax: 843.216.9450


Alan L. Kovacs
LAW OFFICE OF ALAN L. KOVACS
2001 Beacon St., Suite 106
Boston, MA 02135
Tel.: (617) 964-1177
Fax.: (617) 332-1223

26

Kenneth A. Elan
LAW OFFICE OF KENNETH A. ELAN
217 Broadway, Suite 606
New York, NY 10007
Tel.: (212) 619-0261
Fax.: (212) 385-2707

*Additional Plaintiffs' Counsel*