Exhibit F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CITIGROUP<br>SECURITIES LITIGATION | No. 07 Civ. 9901 (SHS)<br><br>**ECF Case** |

**DECLARATION OF ANDREW J. ENTWISTLE FILED**
**ON BEHALF OF ENTWISTLE & CAPPUCCI LLP IN SUPPORT**
**OF APPLICATION FOR AWARD OF ATTORNEYS' FEES**
**AND REIMBURSEMENT OF EXPENSES**

I, Andrew J. Entwistle, declare as follows, pursuant to 28 U.S.C. § 1746:

1.      I am a member of the law firm of Entwistle & Cappucci, LLP which represents plaintiffs in this litigation.  I submit this declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

2.      My firm, which served as counsel for the Public Employees' Retirement Association of Colorado ("Colorado PERA") and the Tennessee Consolidated Retirement System ("TCRS") in this litigation, was extensively involved in pursuing federal securities law claims against defendants from the commencement of the action through the mediated settlement of the claims.

**The Firm's Pre-Complaint Investigation**

3.      Immediately following Citigroup Inc.'s ("Citigroup") November 2007 disclosure of $43 billion in previously concealed exposure to super senior collateralized debt obligations ("CDOs") backed by subprime Residential Mortgage-Backed Securities ("RMBS"), our firm commenced an exhaustive investigation into possible legal claims on behalf of Colorado PERA and TCRS.  Both Colorado PERA and TCRS had significant investments in Citigroup securities

and wanted to ensure that their financial interests and the interests of similarly-situated shareholders were protected through possible legal remedies against Citigroup and its executives. Our firm worked closely with Colorado PERA's General Counsel and Chief Operating Officer, Gregory A. Smith, and Gina Barham of the Tennessee Attorney General's Office in exploring these potential legal claims.

4.     The attorneys at our firm engaged in a thorough investigation and analysis of Citigroup's mortgage and securitization businesses, and the company's disclosures about these business units from 2004 through 2007.  This pre-complaint investigation included the review and analysis of (i) Citigroup's relevant period filings with the United States Securities and Exchange Commission ("SEC") and the London Stock Exchange, (ii) company press releases and transcripts of company press conferences and analyst conference calls, (iii) securities analyst reports concerning Citigroup and its mortgage and securitization businesses, and (iv) news articles and other publications disseminated by or concerning Citigroup during the relevant period.  Our firm also consulted with banking, auditing, and accounting experts concerning Citigroup's business operations and audited financial statements to determine whether the company had complied with Generally Accepted Auditing Standards ("GAAS") and Generally Accepted Accounting Standards ("GAAP").

5.     Based on this analysis, the firm determined that Citigroup and certain of its executives had failed adequately to disclose information and/or made affirmative misrepresentations in its SEC filings and other public statements from 2004 through 2007. These alleged omissions and misrepresentations concerned Citigroup's significant exposure to subprime RMBS, CDOs backed by subprime RMBS, and off-balance-sheet special investment

vehicles that utilized subprime mortgages as underlying collateral ("SIVs").

6.      Our firm's investigation also found factual support for the conclusion that Citigroup had failed to disclose secret repayment guarantees on commercial paper backed by subprime mortgages issued during this same four-year period (the "liquidity puts"). Based on our review of Citigroup's relevant period financial statements and our consultation with auditing and accounting experts, the firm also concluded that Citigroup had violated relevant GAAP and SEC reporting requirements in its accounting for the SIV's and liquidity puts.

**The Class Action Complaint and Motion for Lead Plaintiff Appointment**

7.      The firm's exhaustive factual and legal investigation culminated in the drafting of a detailed 162-page class action complaint against Citigroup and certain of its former and current employees. The complaint was filed on January 7, 2008 in the United States District Court for the Southern District of New York on behalf of Colorado PERA, TCRS, and the European-based public pension funds (i) Sjunde AP-Fonden (7th Swedish National Pension Fund), (ii) Fjärde AP-Fonden (4th Swedish National Pension Fund), and (iii) Pensionskassernes Administration A/S (Danish pension fund) (collectively, the "European pension funds"), that also had significant investments in Citigroup securities during the relevant period. In addition to these named plaintiffs, the complaint sought to represent a putative class of investors who purchased or otherwise acquired Citigroup common stock during the period from January 2, 2004 through November 21, 2007, and were damaged by the alleged misrepresentations and omissions of the company and certain of its executives.

3

8.     The class action complaint asserted claims under Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 ("Exchange Act") against Citigroup and the following Citigroup executives during the alleged class period:  (i) Charles Prince (Chief Executive Officer ("CEO") and Chairman), (ii) Sallie Krawcheck (Chief Financial Officer (2004-2007) and Chairman and CEO of the Global Wealth Management Division); (iii) Gary Crittenden (Chief Financial Officer), (iv) Todd Thomson (CEO of the Global Wealth Management Division (2004-2007)), (v) Robert Druskin (Chief Operating Officer), (vi) Thomas Maheras (co-Chairman and co-CEO of Citi Markets & Banking), (vii) Michael Klein (co-Chairman and co-CEO of Citi Markets & Banking), (viii) David Bushnell (Senior Risk Officer and Chief Administrative Officer), (ix) John Gerspach (Chief Accounting Officer and Controller), (x) Stephen Volk (Vice Chairman and Senior Advisor at Citi Markets & Banking), and (xi) George David (member of Citigroup's Board of Directors).  The complaint also named KPMG LLP as a defendant for it role as Citigroup's outside auditor for fiscal years 2003 through 2006 (collectively, the "Defendants").

9.     The Firm also analyzed the Citigroup common stock trading data of Colorado PERA, TCRS, and the European pension funds to determine whether their financial interests supported a motion for appointment as lead plaintiffs for the investor class.  Colorado PERA, TCRS, and the European pension funds had all purchased their class period Citigroup stock on the open market.  Through our analysis of this trading data, the firm had a basis to conclude that Colorado PERA, TCRS, and the European pension funds had the largest financial interest in the outcome of the litigation and were best suited for appointment as lead plaintiffs.  Accordingly, our firm prepared a motion for lead plaintiff appointment, which was filed on January 7, 2008

4

together with the class action complaint.

10.     Additionally, in an effort to further protect the interests of the class, we simultaneously filed a motion to partially lift the automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and a motion to require Citigroup's non-party SIV entities to preserve all relevant documents and electronically stored information ("ESI").  The motion to partially lift the PSLRA discovery stay sought the production of any documents or ESI that Defendants produced or would produce to the SEC, the Financial Industry Regulatory Authority, any United States Attorney or State Attorney General's Office, and/or any other regulatory or governmental agency investigating the facts alleged in our complaint.

11.     Extensive briefing ensued between competing movants for lead plaintiff appointment.  At an oral argument before this Court on February 8, 2008, I presented the lead plaintiff motion of Colorado PERA, TCRS, and the European pension funds, together with the discovery-related motions intended to preserve documentary evidence relevant to the class claims.  On August 19, 2008, the Court appointed certain former employees of Automated Trading Desk, Inc. (the "ATD Group") as interim lead plaintiffs to represent the Citigroup shareholder class.  The Court also appointed the law firm of Kirby McInerney LLP as interim lead counsel.

**The Motion for Reconsideration and Discovery Requests**

12.     The ATD Group had acquired their Citigroup shares in a privately negotiated merger transaction between ATD and Citigroup in 2007.  Based on this fact, both Colorado PERA and TCRS were concerned that the ATD Group would be subject to unique defenses at

the class certification stage of the litigation because they may have received material non-public information from Citigroup prior to acquiring their Citigroup shares. After extensive consultation with our firm, Colorado PERA and TCRS decided to move for reconsideration of the Court's lead plaintiff appointment to avoid jeopardizing the certification of the Citigroup investor class.

13. On September 3, 2008, our firm filed a motion for reconsideration of the Court's lead plaintiff appointment, and requested limited discovery on the information possessed by the ATD Group at the time of the merger. As stated in the memorandum of law in support of the reconsideration motion, Colorado PERA and TCRS believed that "limited discovery at [that] stage of the litigation [would] efficiently resolve the ATD Group's adequacy and typicality issues that the Court appropriately recognized [were] likely to resurface during class certification." Additional briefing on the motion for reconsideration ensued between our firm and interim lead counsel.

14. While the motion for reconsideration was pending, the ATD Group filed the Amended Consolidated Class Action Complaint ("CAC") on February 24, 2009. The CAC named many of the same Defendants and asserted most of the same legal claims set forth in our complaint. Defendants moved to dismiss the CAC on March 13, 2009.

15. On August 31, 2009, the Court granted the motion for reconsideration filed by Colorado PERA and TCRS, and permitted limited discovery on the issue of whether "the ATD Group members relied on nonpublic information concerning Citigroup when they ratified the Citigroup-ATD merger." The Court stayed the requested discovery pending resolution of the Defendants' motion to dismiss the CAC. On November 9, 2010, the Court sustained the claims

6

asserted in the CAC in material part.

16.     Pursuant to the Court's Order, on November 16, 2010, the firm served the ATD Group with limited discovery requests on behalf of Colorado PERA and TCRS.  The document requests sought any information provided by Citigroup to ATD and/or the ATD Group in connection with the merger of the companies, including information on the contemplated or actual merger consideration and/or the value of Citigroup shares transferred in the merger.  The firm also drafted interrogatories seeking the identification of all people who participated in the merger negotiations on behalf of the ATD Group, and all information reviewed and relied upon in connection with ATD's ratification of the merger.

**Participation as Class Representatives**

17.     Following the service of the discovery demands, our firm engaged in extensive discussions with interim lead counsel on behalf of Colorado PERA and TCRS concerning representation of the class.  After thorough consultation with our firm, Colorado PERA and TCRS determined they could enhance plaintiffs' ability to obtain certification by joining the ATD Group as proposed class representatives.  Their presence ensured at least two experienced and adequate class representatives regardless of the outcome of Defendants' challenges to the ATD Group.  Accordingly, Colorado PERA and TCRS agreed to withdraw their motion for reconsideration and discovery requests and join the ATD Group's forthcoming motion for class certification.

18.     On July 14, 2011, our firm and interim lead counsel executed and filed a stipulation and proposed order with the Court that withdrew the motion for reconsideration and discovery requests (the "Stipulation").  Under the Stipulation, Colorado PERA and/or TCRS

would serve as Pension Fund Representatives for the class to the extent the court appointed them as class representatives. The Stipulation also provided that our firm would serve as non-lead class counsel for the Pension Fund Representatives. In addition, the Stipulation gave Colorado PERA and TCRS an active voice in the prosecution of the class action by entitling them to attend and participate in strategic meetings, teleconferences, settlement conferences, mediations and Court proceedings to the same extent and manner as the interim lead plaintiffs.

19.     Pursuant to the Stipulation, Colorado PERA and TCRS joined the motion for class certification filed by interim lead plaintiffs on July 15, 2011.

**The Class Certification Discovery**

20.     On August 2, 2011, Defendants served comprehensive document requests and interrogatories on Colorado PERA and TCRS concerning their decision to invest in Citigroup securities and join the motion for class certification, among other information. Our firm prepared and served written responses and objections to these discovery requests, and participated in numerous meet and confer sessions with counsel for Defendants concerning the scope of the proposed discovery. Defendants also served multiple deposition notices under Federal Rule of Civil Procedure 30(b)(6) following the interrogatory responses our firm filed on behalf of Colorado PERA and TCRS.

21.     The attorneys at our firm engaged in extensive conferences with representatives of Colorado PERA and TCRS in an effort to identify, collect, and produce documents and ESI responsive to Defendants' document requests. This involved the restoration of archived e-mails and other ESI, and the collection and review of thousands of pages of additional hard-copy material from both Colorado PERA and TCRS. From August 2, 2011 through October 5, 2011,

8

our firm produced over 450,000 pages of material to Defendants in response to their class certification discovery requests.

22.     Our attorneys also interviewed multiple current and former employees of Colorado PERA and TCRS to identify appropriate witnesses for Defendants' proposed depositions.  This included the collection of voluminous deposition preparation materials and lengthy in-person preparation sessions in New York, Tennessee, and Washington.  The attorneys at our firm ultimately presented and defended the following seven deposition witnesses who collectively testified for more than twenty-five hours: (i) Greg Smith (Colorado PERA General Counsel and COO), (ii) James Liptak (Colorado PERA Director of Equities, (iii) Bill Abney (TCRS Assistant Treasurer for Investments), (iv) Michael Keeler (TCRS Director of Equities), (v) Jim Robinson (TCRS Senior Portfolio Manager), (vi) Eddie Hennessee (former TCRS Assistant Treasurer for Investments & Benefits), and (v) Jeremy Conlin (former TCRS Senior Portfolio Manager).

23.     Following this class certification discovery, Defendants filed their opposition to class certification which challenged the adequacy of Colorado PERA and TCRS to serve as class representatives.  Through coordination with interim lead counsel, our firm drafted a section of the reply memorandum of law in support of class certification that thoroughly responded to Defendants' contentions regarding Colorado PERA and TCRS.

**The Mediation and Settlement of the Class Action**

24.     Defendants approached interim lead counsel about mediation of the federal securities law claims while the motion for class certification was pending.  Pursuant to the negotiated Stipulation with Colorado PERA and TCRS, interim lead counsel consulted with our

9

firm on the mediation process. I engaged in detailed and frequent discussions with interim lead counsel regarding the appropriate choice of mediator, the strengths and weaknesses of the claims, and the interest of Colorado PERA and TCRS in obtaining maximum recovery for the shareholder class. We also worked with interim lead counsel in assessing the appropriate value of the claims based on the expert reports submitted in the case.

25.     On March 8, 2012, interim lead counsel and I attended an all day mediation session in New York City with Defendants' counsel and the Honorable Layn Phillips, a retired United States District Judge for the Western District of Oklahoma as mediator. Greg Smith, Colorado PERA's General Counsel and COO, was also present at the mediation and actively participated in the negotiations between the parties. Greg Smith and I were also in constant contact with representatives of TCRS during this initial mediation session. Through these negotiations, the parties largely resolved liability issues in the case.

26.     In advance of the second mediation session on April 20, 2012, I regularly consulted with interim lead counsel on issues related to proposed settlement terms and class-wide damages. I also actively participated in the second mediation session on April 20, 2012 with Judge Philips, interim lead counsel, and counsel for Defendants. Greg Smith, who was the Acting Executive Director of Colorado PERA at the time, and Adam Franklin, the Acting General Counsel for Colorado PERA, also attended this second mediation session with me. Damage figures were extensively addressed at the mediation.

27.     We also participated in a subsequent telephonic mediation session to resolve various drafting and deal points concerning the proposed settlement. These combined mediation sessions ultimately resulted in a final settlement proposal by Judge Phillips. After detailed

10

subsequent discussions between my firm, Colorado PERA, TCRS, and interim lead counsel, the proposed settlement offer was accepted by all parties on May 8, 2012.

28.     The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this litigation, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court. Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

29.     The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

30.     The total number of hours expended on this litigation by my firm through November 23, 2012 is 12,635.85. The total lodestar for my firm is $6,139,737.75, consisting of $5,657,693.50 for attorneys' time and $482,044.25 for professional support staff time.

31.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

32.     As detailed in Exhibit 2, my firm has incurred a total of $236,883.54 in unreimbursed expenses in connection with the prosecution of this litigation.

11

33.     The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

I declare under penalty of perjury under the laws of New York that the foregoing is true and correct.  Executed this 7 th day of December, 2012, at New York, New York.

ANDREW J. ENTWISTLE

EXHIBIT 1

*In re Citigroup Inc. Securities Litigation*
Case No. 07 Civ. 9901 (SHS)

# ENTWISTLE & CAPPUCCI LLP

## TIME REPORT

### Inception through November 23, 2012

| NAME | YEAR OF GRADUATION | HOURS | HOURLY RATE | LODESTAR |
|------|------|------|------|------|
| **Partners** | | | | |
| Andrew J. Entwistle | 1984 | 2,878.00 | $595 | $ 1,712,410.00 |
| Vincent R. Cappucci | 1984 | 79.80 | $595 | $ 47,481.00 |
| Jonathan H. Beemer | 1998 | 1,187.30 | $575 | $ 682,697.50 |
| Robert N. Cappucci | 1993 | 59.40 | $575 | $ 34,155.00 |
| Richard Gonnello | 1998 | 927.60 | $575 | $ 533,370.00 |
| Richard Nawracaj | 1993 | 466.10 | $575 | $ 268,007.50 |
| Arthur V. Nealon | 1973 | 14.90 | $595 | $ 8,865.50 |
| Craig Nelson | 1991 | 201.50 | $595 | $ 119,892.50 |
| Joshua K. Porter | 2001 | 832.30 | $575 | $ 478,572.50 |
| Johnston deF. Whitman | 1994 | 1,067.40 | $590 | $ 629,766.00 |
| | | | | |
| **Of Counsel** | | | | |
| Stephen D. Oestreich | 1968 | 238.40 | $590 | $ 140,656.00 |
| | | | | |
| **Other Attorneys** | | | | |
| Laura J. Babcock | 2006 | 1,968.00 | $375 | $ 738,000.00 |
| Amanda J. Bagatta | 2008 | 13.00 | $375 | $ 4,875.00 |
| James C. Bitanga | 2007 | 71.50 | $375 | $ 26,812.50 |
| Jordan A. Cortez | 2005 | 488.70 | $475 | $ 232,132.50 |
| | | | | |
| **Professional Support Staff** | | | | |
| Jenifer Carbone | | 143.80 | $225 | $ 32,355.00 |
| Neave R. Casey | | 287.70 | $225 | $ 64,732.50 |
| Shannon Casey | | 484.15 | $225 | $ 108,933.75 |
| Tanya Daly | | 255.20 | $190 | $ 48,488.00 |
| Madeline B. Gayle | | 569.35 | $250 | $ 142,337.50 |
| Roy W. Gilchrist | | 116.20 | $190 | $ 22,078.00 |
| Sylvia Lo | | 21.45 | $190 | $ 4,075.50 |
| Teresa Maloney | | 28.40 | $250 | $ 7,100.00 |
| Michael Mezzina | | 124.60 | $225 | $ 28,035.00 |

| NAME | YEAR OF GRADUATION | HOURS | HOURLY RATE | LODESTAR |
|------|--------------------|-------|-------------|----------|
| Sean K. O'Mara | | 31.10 | $190 | $ 5,909.00 |
| Sarah Taggart | | 80.00 | $225 | $ 18,000.00 |
| | | | | |
| **TOTAL LODESTAR** | | **12,635.85** | | **$ 6,139,737.75** |

**EXHIBIT 2**

*In re Citigroup Inc. Securities Litigation*
**Case No. 07 Civ. 9901 (SHS)**

# ENTWISTLE & CAPPUCCI LLP

**EXPENSE REPORT**

**Inception through November 23, 2012**

| CATEGORY | AMOUNT | |
|---|---|---|
| Consultants | $ | 144,887.20 |
| Copies and Fax | $ | 6,389.22 |
| Court Fees | $ | 350.00 |
| Court Reporters and Transcripts | $ | 5,268.17 |
| Electronic Discovery/Document Production | $ | 1,983.23 |
| Hand Delivery Charges | $ | 25.82 |
| Investigative Services | $ | 10,837.50 |
| Online Legal Research | $ | 26,177.38 |
| Postage & Express Mail | $ | 2,589.58 |
| Service of Process | $ | 2,308.41 |
| Telephone/Conference Calls | $ | 354.02 |
| Travel, Hotel, Meals | $ | 35,713.01 |
| **TOTAL EXPENSES:** | $ | **$236,883.54** |

**EXHIBIT 3**

# ENTWISTLE & CAPPUCCI LLP

## FIRM RESUME

New York, NY

1

## Overview

Entwistle & Cappucci LLP is a national law firm with top-flight legal representation and exceptional service to clients that include major public corporations, a number of the nation's largest public pension funds, governmental entities, leading institutional investors, domestic and foreign financial services companies, emerging business enterprises and individual entrepreneurs.

The lawyers who founded this firm in 1998 did so with a fresh commitment to excellence, integrity and creativity. Our strong reputation among clients, adversaries and the judiciary is not inherited from prior generations. Instead, we have earned our reputation day-by-day, client-by-client and matter-by-matter. Our approach to the practice of law is business-oriented, pragmatic and collegial.

As an entrepreneurial firm, we approach the issues facing our clients not merely as lawyers but as business owners who understand the realities of the modern business environment. We partner closely with our clients both in forging efficient solutions to the challenges they face and in identifying the opportunities open to them. This practical approach assists our clients in meeting their business objectives and rewards us with a loyal and expanding client roster of which we are immensely proud.

Internally, we maintain a collegial environment that attracts and retains highly qualified lawyers. Equipped with specialized knowledge relating to their respective areas of expertise, our lawyers engage in a robust exchange of ideas aimed at expertly advancing and protecting our clients' interests with the highest degree of professionalism and integrity.

## Practice Groups

We organize the firm's lawyers into a number of highly specialized practice groups capable of responding effectively, efficiently and expeditiously to our clients' increasingly diverse needs. Our practice groups, however, do not operate in isolation; teams of lawyers from any number of these specialized groups often work together to provide a seamless interdisciplinary approach that we find critical to effective problem solving.

In the following pages, we provide summaries of our approach to the law in the principal areas of our practice:

- Antitrust Litigation;

- Appeals;

- Bankruptcy Litigation;

- Business and Commercial Litigation;

- Corporate;

- Corporate Governance;

- Governmental Affairs;

- Immigration;

- Insurance Litigation;

- Mergers, Acquisitions, Capital and Exit Strategies;

- Securities Litigation; and

- White Collar Criminal Defense and Internal Investigations.

## Antitrust Litigation

We have extensive experience in antitrust litigation, primarily in the areas of price-fixing, market division, tying and monopolization. Our lawyers have also litigated antitrust cases involving zoning, patents and major league baseball licensing among many others, and can offer related counseling.

## Appeals

The firm represents clients before state and federal appellate courts across the country. Whether seeking a reversal of an adverse result or the affirmance of a favorable outcome, clients routinely turn to our appellate lawyers for their careful assessment of the viability of an appeal, mastery of the trial court record, well-crafted briefs and effective oral argument.

## Bankruptcy Litigation

We have substantial experience litigating complex bankruptcy matters. Among other things, we have represented the Retired Employees Committee in the OMC bankruptcy, equity holders in the American Bank Note bankruptcy and the State of Florida in connection with the Enron bankruptcy. We have also served as special litigation counsel for the Global Crossing Estate Representative in connection with the Global Crossing bankruptcy. In addition, we represented the New York State Common Retirement Fund in the Refco, Inc. bankruptcy and related litigations, and in the Lehman Brothers bankruptcy.

## Business and Commercial Litigation

Our commercial litigators are devoted to the creative resolution of complex business disputes on behalf of both corporate entities and individuals. We represent a diverse client base

2

in a correspondingly broad array of matters. Although the nature of these disputes may vary greatly, our approach to resolving them is consistent. From the outset, we painstakingly marshal the relevant facts, objectively analyze the controlling law, assess the underlying commercial realities and develop a strategy to achieve the client's business objectives as efficiently and expeditiously as possible. Each of our commercial litigators understands this strategy, which is applied to every business dispute we encounter.

Our team approach guarantees that each lawyer knows who is doing what and why they are doing it. This allows us to staff our cases leanly from a deep bench of experienced litigators, and we can rapidly expand or contract our litigation teams as circumstances dictate. However, from start to finish, we maintain a core team of experienced litigators whose overriding objective is to materially advance the client's objectives on a daily basis. "Litigation for litigation's sake" has no place in our pragmatic and business-oriented approach. We understand firsthand that litigating complex business issues is enormously expensive and disruptive. For this reason, we vigilantly explore all available means short of a full-blown litigation to effect expeditious and favorable resolutions to disputes, whether through direct negotiation with our adversaries or some means of alternative dispute resolution, such as mediation or arbitration.

## Corporate

We advise clients with respect to general legal matters relating to their business operations, including the proper choice of entity and the formation of corporations, limited liability companies and partnerships; negotiation and documentation of shareholder agreements, limited liability company agreements, partnership agreements, employment agreements and severance agreements; and partnership dissolutions and other business separations.

The firm also negotiates, structures and documents a wide variety of transactions including consulting agreements and many other commercial agreements and contracts that are dictated by the business needs of our clients. For matters involving intellectual property and information technology, we negotiate and document licenses, franchise and distributorship arrangements, consulting agreements and related agreements.

A portion of our client base is comprised of foreign investors who buy and sell U.S.-based assets and businesses. We understand the various challenges facing those making cross-border investments in this country and can structure deals that maximize their opportunities and minimize their exposure, just as we assist domestic businesses explore, develop and engage in business transactions in foreign countries.

Finally, many of our clients have accumulated substantial assets and want to develop comprehensive estate plans that reflect their priorities. We work with individuals and families to integrate personal, business and philanthropic needs into estate planning.

3

## Corporate Governance

We have extensive experience advising public and private institutional clients on corporate governance matters, including board structure and composition, by-law and certificate of incorporation provisions, takeover devices, management remuneration, and accounting and reporting processes. We are well equipped to provide in-depth analyses of governance practices and promote governance issues that best serve the long-term investment objectives of our institutional clients.

We also litigate issues of corporate and board conduct arising from business transactions. These matters can involve issues such as the fairness of the transaction based on both pricing and process; the validity of take-over defenses such as poison pills and defensive restructurings; and the fairness of executive compensation. Such cases commonly include derivative claims alleging that the corporate entity's board of directors breached their fiduciary duties and failed to exercise proper business judgment.

## Governmental Affairs

Our governmental affairs practice is national in scope. We represent clients requiring expertise in the development, management and resolution of public policy issues before the governmental community. We work to ensure that our clients have the necessary access to and level of advocacy before decision-makers in government.

## Immigration

Immigration issues have proliferated as the global economy increases the demand for skilled foreign workers. We routinely counsel clients in developing strategies to address workplace immigration issues that ensure compliance with the controlling law while facilitating competition in the global marketplace.

## Insurance Litigation

We have a long history of representing insurance carriers in the negotiation and litigation of complex coverage matters. In addition, carriers routinely look to our litigators to handle the most challenging claims asserted against their insureds.

We also have served as counsel to the New York State Superintendent of Insurance in his capacity as rehabilitator of troubled insurers. In that capacity, we have been called upon to determine why those insurers failed or faltered, and prosecute actions to recover wasted or misappropriated assets. We also have pursued actions against third parties, including accountants and brokers, for their role in precipitating the failure of these insurers.

4

## Mergers and Acquisitions

We help companies, boards of directors and shareholders/owners manage their interests in mergers, acquisitions, dispositions and leveraged buy-outs. Unique issues confront entrepreneurs and capital providers who engage the firm for its experience in venture capital deals. These include start-up companies, emerging growth companies and mature businesses in a wide variety of industries -- from conventional to those that are technology-based industries. We can represent either portfolio companies or capital providers engaged in equity, mezzanine and/or senior debt financings.

Just as important as helping clients close a deal is helping clients choose the proper exit from a deal which can include sales, public offerings, refinancings, recapitalizations, restructuring or the spinning-off of businesses.

## Securities Litigation

The firm fields one of the nation's premier teams of securities litigators. This team has prosecuted a full range of securities matters on behalf of public pension funds and other institutional investors. We represent clients in direct, or opt-out, actions; class actions alleging securities fraud and ancillary matters relating to insolvency and foreign judicial proceedings. We also prosecute shareholder derivative actions alleging breach of fiduciary duty, corporate waste, and self-dealing, among other things. We seek monetary damages for investment losses attributable to fraud as well as corporate governance remedies in the majority of these matters.

Our securities litigators have recovered more than $3 billion on behalf of investors from some of the most significant securities fraud actions of the past five years, including *In re Royal Ahold Securities Litigation* (a $1.1 billion recovery), *In re BankAmerica Securities Litigation* (a $490 million recovery), *In re DaimlerChrysler Securities Litigation* (a $300 million recovery), *In re CMS Energy Securities Litigation* (a $200 million recovery), and *In re Dollar General Securities Litigation* (a $172 million recovery). Our experience and ability in litigating securities matters is demonstrated not only by the results that we have achieved, but also by the roster of institutional clients who seek our advice. We are proud to include a number of the nation's largest and most sophisticated public pension funds among our clients.

Our Securities Monitoring and Reporting Program provides our institutional clients with the most complete information available to evaluate potential courses of action - whether to pursue securities class action litigation as a lead plaintiff; whether to litigate claims directly in a private action; or whether to forego litigation entirely. This program offers regular review of our clients' latest securities holdings in light of emerging market conditions and corporate developments to identify circumstances in which investment losses are likely attributable to fraud. Using this program we calculate client losses under a variety of loss calculation methodologies. We then prepare detailed reports describing, among other things, the factual and legal underpinnings of potential claims; the likelihood of recovering all or a portion of our

client's losses; strategies for resolution; and any opportunities to advocate corporate governance changes.

## White Collar

Our white collar criminal defense group has decades of experience representing corporate entities and individuals in criminal investigations and proceedings. This group represents our clients in every phase of a criminal case -- from the inception of an investigation, before the grand jury, at trial and throughout post-trial proceedings. However some of the group's most important and sophisticated work takes place before criminal charges even materialize. Drawing on years of front-line experience, with a credibility developed over years of working with governmental authorities, our lawyers have had considerable success in persuading prosecutors not to pursue criminal charges in the first place -- thus protecting the client from the legal, financial and media fallout of a criminal prosecution.

As former prosecutors and long-time defense lawyers, members of our white collar criminal defense group are also uniquely qualified to conduct internal corporate investigations into suspected wrongdoing or improprieties. Working with accountants, computer forensic and other consultants as needed, our lawyers assist clients in taking a proactive role in uncovering improper conduct by their employees, vendors, officers, directors and others.

## **SELECTED ATTORNEY BIOGRAPHIES**

*Partners*

**Andrew J. Entwistle**

Andrew J. Entwistle is a founding partner of the firm.  The son of a Scottish coal miner and an American schoolteacher, he received his undergraduate degree from the University of Notre Dame and his law degree from the University of Syracuse College of Law.  Mr. Entwistle's practice principally involves the representation of public and private institutional investors in complex litigation and corporate finance and transactional matters.

Over the years, Mr. Entwistle has represented clients including Fortune 100 companies, public and private institutional investors, governmental and individual clients in a variety of corporate finance and transactional matters, and in complex business, securities, antitrust and bankruptcy litigation throughout the United States before federal and state courts, surrogate's and probate courts, grand juries, administrative and regulatory agencies and arbitration panels.  For example, Mr. Entwistle's representation of the Colorado Public Employees Retirement Association in *In re Royal Ahold N.V. Securities and ERISA Litigation* led to a recovery of more than $1.1 billion for his clients.  Mr. Entwistle is also actively engaged in the defense of institutional investors and international businesses in complex securities, antitrust, bankruptcy and corporate finance related matters.  Having spent years both litigating complex securities fraud and antitrust cases and litigating major coverage cases for insurers and insureds, Mr. Entwistle often now finds himself retained to litigate Directors & Officers and related coverage litigation arising out of rapidly developing complex litigation.

Appointed by Chief Judge Lifland of the United States Bankruptcy Court for the Southern District of New York to serve on the Court's Special Mediation Panel, Mr. Entwistle has actively litigated a number of complex bankruptcy matters including representing the Retired Employees Committee in the OMC Bankruptcy, equity holders in the American Bank Note Bankruptcy and the State of Florida in connection with the Enron Bankruptcy.  Mr. Entwistle is also special litigation counsel for the Global Crossing Estate Representative in connection with the Global Crossing Bankruptcy.

Mr. Entwistle has been named to the Martindale-Hubbell Bar Register of Preeminent Lawyers, to the Order of International Fellowship, Who's Who In The World, Who's Who In America, Who's Who In The East, Who's Who In American Law, Who's Who In Practicing Attorneys, Who's Who In Emerging Leaders In America and Who's Who In Finance and Industry. The International Biographical Centre of Cambridge, England named Mr. Entwistle as its International Legal Professional of the Year for 2004 and inducted him into the Centre's International Order of Merit.

Mr. Entwistle serves as a member of the Board of Directors of Hannah & Friends.  Mr. Entwistle was also named the 2003 Man of the Year by the Catholic Big Brothers for Boys and

7

Girls after more than a decade of service on the Board of that organization which service included founding Sports Buddies New York, a partnership between the youth of New York City and athletes from the New York region's professional sports teams. Mr. Entwistle has received special commendations from the President of the United States, the Governors of the States of Georgia and Hawaii, and the New York State Assembly. He also serves as outside counsel to, and is now or has previously acted as a director on several corporate, advisory and charitable boards. Mr. Entwistle is a member of the Board of Directors of the Giuliani Center for Urban Leadership. In addition to membership in the Federal Bar Council and various city, county, state and national bar associations, Mr. Entwistle is a member of the National Association of Public Pension Funds Attorneys and is an Educational Sustainer of the Council of Institutional Investors.

Mr. Entwistle also acts as Northeast Regional Editor for the Defense Research Institute publication The Business Suit (from 1998-present), is a member of various bar and business association committees (including speaking on Sarbanes-Oxley to the Federal Bar Council's 2003 Annual Bench and Bar Conference and co-chairing a New York State Bar Association Panel on Alternative Dispute Resolution for the Trial Practice Committee of the State Bar's Commercial and Federal Litigation Section), and he has lectured extensively and has been interviewed by print, radio and television journalists to provide commentary on a variety of general business law, litigation, securities antitrust, bankruptcy and trial issues. In May 2009, Mr. Entwistle was interviewed by the Insider Exclusive on the following topics: the Bernard Madoff Scandal; Wall Street's Meltdown; the American Financial System; and, the Fight to Save Tator's Dodge. In March 2009, Mr. Entwistle was a panelist on the American Bar Association's conference entitled "Implied Repeals of the Antitrust Laws: How Far Are the Courts Willing to Go?" (http://www.abanet.org/antitrust/at-bb/audio/09/03-09.shtml). Mr. Entwistle was a member on the Federal Bar Council's 2005 Winter Bench & Bar Planning Committees, he spoke on both the Class Action Litigation and 2008 Cross Border Issues Panels at the Federal Bar Council's 2005 Conference, and he co-chairs the 2008 Supreme Court Review Sub-Committee. Mr. Entwistle is also the author of articles and publications on various legal and business topics, including: "Revisiting Discovery "Best Practices" and Penalties" For The Defense, DRI, August 2010; "Unconscionable Terms Can Be Waived in Arbitration Agreement," The Business Suit, DRI, June 2010; Computer Hacker Can Be Sued for Securities Fraud, Second Circuit Rules; New York Appellate Court Reinstates Complaint Based on Adverse Interest Exception to In Pari Delicto Doctrine" The Business Suit, DRI, January 4, 2010; "Broad Arbitration Agreement Authorizes Arbitrator to Sanction A Party's Bad Faith Conduct; Absent Class Members Not Entitled Full Access to Attorney's Files; Intentional Spoliation of Evidence May Form Basis for Fraud Claims," The Business Suit, DRI, August 25, 2009; "Affiant's 'To My Knowledge' Statement Sufficient to Defeat Summary Judgment; Class Action Waiver Clause in Arbitration Agreement is Unenforceable," The Business Suit, DRI, April 13, 2009; "'Staehr' Hikes Burden of Proof to Place Investor on Inquiry Notice," New York Law Journal, December 15, 2008; "Potential Securities Fraud: 'Storm Warnings' Clarified," New York Law Journal, October 23, 2008; "'Wagoner' In Pari Delicto Defenses Aid Outside Auditors," New York Law Journal, August 29, 2008; "Second Circuit Clarifies Pleading Requirements for Scienter in Securities Fraud Class Actions; No Forum Shopping in Insurance Dispute, Second Circuit Says; New York Sets Aside Verdict Imposing Alter Ego Liability," The Business Suit, DRI, August 11, 2008; "Long-Arm Statute Does Not Confer Jurisdiction on Foreign Libel Litigant; Crime-Fraud

8

Exception Pierces Attorney-Client Privilege; New York May Seek Own Separate Arbitration," The Business Suit, DRI, May 16, 2008; "Approaches to Asset Recovery For Pension Fund Subprime Exposure," The NAPPA Report, February 2008; "Injunction Against NHL's Transfer of Website Denied; Republic of Congo's Oil Company Immune from RICO Charges; Discovery of Anonymous Bloggers Denied," The Business Suit, DRI, December 20, 2007; "Ex Parte Communications with Former Employee May Not Merit Disqualification; Accounting Firm Not Subject to Federal Jurisdiction; Statements Made by Employer Privileged," The Business Suit, DRI, September 6, 2007; "Accounting Firm Has Affirmative Duty; New York's Highest Court Rejects Insured's Single-Occurrence Theory," The Business Suit, DRI, May 2, 2007; "Imputation Doctrine No Longer Protects Auditors," The Business Suit, DRI, August 2006; "Merchant Lacks Standing to Assert Antitrust Claims Against Credit Card Companies for Chargeback Fees," The Business Suit, DRI, December 22, 2006; "Thompson Memorandum's Attorneys' Fees Provision Held Unconstitutional," The Business Suit, DRI, August 2006; "Beer Supplier and Distributor Must Arbitrate Dispute Despite New York Law to the Contrary," The Business Suit, DRI, January 5, 2006; "Corporate Exposure and Employment Practices Liability," Mealey's Reinsurance Conference, November 2000; "Distinguishing Valid Fraud Claims From Trumped Up Breach of Contract Actions," The Business Suit, DRI, Winter 2000; "New York Clarifies Its "Borrowing Statute"; New Jersey's "New Business" Rule Declared Alive and Well; Second Circuit Finds Former Corporate Executives Entitled to Fifth Amendment Privilege," The Business Suit, DRI, January 2000; "The Fine Line Between An Auditor's Recklessness and Intent to Deceive," The Business Suit, DRI, Summer 1999; "What a Web We Weave . . . Jurisdiction in Web-Related Litigation," The Business Suit, DRI, Winter 1998; "Red Light, Green Light, 1-2-3: Stop and Go Traffic on the Information Superhighway," The Business Suit, DRI, Winter 1998; "Due Deference -- The Supreme Court Confirms the Post-Daubert Discretion of the Trial Judge as the "Gatekeeper"," The Business Suit, DRI, Winter 1998; "The Inevitable Disclosure Doctrine and the Economic Espionage Act: Emerging Weapons In the Battle to Protect Trade Secrets from Theft and Misappropriation," The Business Suit, DRI, Spring 1998; "Covenants Not to Compete and the Duty of Loyalty," (DRI Spring 1997 Conference Chicago); "New York Business Law Update 1997," (New York State Society of CPA's); "New York Business Law Update 1998," (New York State Society of CPA's); "Excess Insurers Late Notice and Prejudice, American Home Puts The Issue to Rest," New York Law Journal, July 1993; and "Managing the Risks of Accountants Liability, A Legal Perspective," New York Society of CPA's, 1993, 1995, 1997, 1998. In 2005 the Texas State Bar Association asked Mr. Entwistle to videotape a talk on disaster related issues to assist lawyers and other professionals in the wake of Hurricane Katrina. The videotape also received broad distribution by the State of Mississippi Governor's office.

After a brief tenure in the District Attorney's office, Mr. Entwistle became a lead trial and appellate attorney at Wilson Elser Moskowitz Edelman & Dicker, trying a broad variety of commercial, securities, insurance, fraud and government-related matters. During the following years with the Mudge Rose firm, Mr. Entwistle's trial and appellate practice also came to include transaction-related litigation, antitrust and bankruptcy work. Mr. Entwistle's practice now focuses on representing public and private institutional investors and financial institutions in litigation, transactional and bankruptcy matters. Mr. Entwistle also works closely with the governors, treasurers and attorneys general of several states. In connection with the firm's Corporate Practice,

Mr. Entwistle has acted as lead counsel on joint ventures, restructurings, venture capital placements and a multi-billion dollar leveraged buyout.

## Martindale & Hubbell Rating

AV Preeminent 5.0 out of 5

## State Bar Admissions

New York, New Jersey, Illinois, Texas, Colorado, District of Columbia, Pennsylvania

## Court Admissions

U.S. Supreme Court; U.S. Court of Appeals for the Second, Third, Fourth, Seventh and Eighth Circuits; U.S. District Court for the Eastern and Southern Districts of New York; U.S. District Court for the District of New Jersey; U.S. District Court for the Northern District of Illinois; U.S. District Court for the District of Colorado; U.S. District Court for the Eastern District of Michigan; U.S. District Court for the Western District of Texas; and state and federal courts in the states of New York, New Jersey, Illinois, Texas, Colorado and District of Columbia.

**Vincent R. Cappucci**

Vincent R. Cappucci is a founding partner of the Firm and is Head of its Securities Litigation Practice. Throughout the years, Mr. Cappucci has served as lead counsel in many high profile securities class action and derivative litigations as well as individual actions representing the nation's largest public pension systems, investment advisory firms, hedge funds and proprietary trading firms. He has a distinguished record of success in securities litigation, having prosecuted cases in his career which have resulted in recoveries in the billions of dollars. His experience includes a multitude of complex trials, arguments in numerous state and federal appellate courts, appeals to the U.S. Supreme Court, and mediation and dispute resolution. Mr. Cappucci has also been named to the Martindale-Hubbell Bar Register of Preeminent Lawyers, for his expertise in securities litigation.

Mr. Cappucci has lectured before associations of the bar and various professional organizations, providing expert commentary on a wide range of securities markets and corporate governance issues. Recently, Mr. Cappucci addressed law professors from across the country in a discussion on The Future of Securities Fraud Litigation sponsored by the RAND Institute for Civil Justice.

Mr. Cappucci has served as a faculty member of the National Conference on Corporate Governance and Equity Offerings sponsored by the UCLA Anderson School of Management and University of California Rady School of Management. He has also addressed legal practitioners and financial professionals before the National Association of Public Pension Fund Attorneys, Council of Institutional Investors and The American Conference Institute (Trying and Defending Securities Class Actions), and before International Institutional Investors on Corporate Governance and Shareholder litigation matters at annual conferences of the International Corporate Governance Network ("ICGN"), where he also serves on the Committee on Executive Remuneration.

Mr. Cappucci is the author of numerous articles appearing in a host of publications, including: "Seeking Subprime Solutions: Fed Action, Legislation and Litigation Address the Subprime Mess," The 2007 Global Securitization Guide, May 2008; "Legislative and Regulatory Developments in U.S. Securitizations, The 2007 Global Securitization Guide, (May 2007); "Pay, Performance and Proxies: The Latest in Executive Compensation," Institutional Investor Fund Management Legal & Regulatory Report, March 2007; "Shareholder Activism and the Use of Litigation to Accomplish Investment Goals," Institutional Investor Fund Management Legal & Regulatory Report, April 2006; "Corporate Governance: 2005 in Review," Institutional Investor, 2005 Compliance Report; "Securities Class Actions: Settlements," The Review of Securities & Commodities Regulation, October 2003; "Hot Topics in Advertising Law: Investor Fraud," The Association of The Bar of the City of New York, October 22, 2003; "Did I Really Say That? The Truth Behind the DaimlerChrysler Merger," NAPPA Report, November 2003; "Beyond the Sarbanes-Oxley Bill: Additional Measures to Increase Corporate Accountability and Transparency," NAPPA Report, September 2002; "Casino Law Is Consistent With Equal Protection," New York Law Journal, March 20, 2002; "Misreading 'Gustafson' Could Eliminate Liability Under Section 11," New York Law Journal, September 22, 1997; "Liability for Excessive Executive

11

Compensation," The Corporate Governance Advisor, March/April 1997; "Must Reliance Be Proven To Certify A Class?," New York Law Journal, August 30, 1996; "Class Action Lawsuits and Securities Fraud: A Plaintiff Lawyer's View of the Litigation Reform Act," Securities Industry News, October 7, 1996; and, "Conflicts Between Rule 23 And Securities Reform Act," New York Law Journal, April 2, 1996.

  In addition to membership in various State and National Bar Associations, Mr. Cappucci currently sits on the Second Circuit Courts Committee of the Federal Bar Council and is a member of the New York State Bar Association, the American Bar Association and the Association of Trial Lawyers of America.

  Mr. Cappucci received his undergraduate degree from Fordham University with a B.S. in Accounting and his law degree from Fordham University School of Law. In 2007, he was named a Fordham Law School Centennial Founder and currently serves as Chair of the Law Advisory Committee and is a member of the Dean's Planning Council. Mr. Cappucci also serves on the Executive Committee of the Fordham University President's Council, a select group of distinguished professionals and philanthropists committed to perpetuating the profile and interests of the University.

## Martindale & Hubbell Rating

AV Preeminent 5.0 out of 5

## State Bar Admissions

New York

## Court Admissions

U.S. Supreme Court; U.S. Court of Appeals for the Second, Fifth, Seventh, Eighth and Ninth Circuits; U.S. District Court for the Eastern, Northern and Southern Districts of New York; U.S. District Court of the Central District of Illinois; U.S. District Court of the Northern District of Illinois; U.S. District Court for the Eastern District of Michigan; and all courts of the State of New York

### Arthur V. Nealon

Arthur V. Nealon concentrates his practice on the resolution of commercial, securities, employment and white-collar criminal matters.  He has represented corporations, partnerships and individuals at trials and in appeals in federal and state courts and in arbitration proceedings at the AAA, NYSE and NASD.

A graduate of Columbia College and Columbia Law School, Mr. Nealon previously served as an Assistant to the United States Special Prosecutor and an Assistant District Attorney for New York County.

Over the course of more than 20 years, Mr. Nealon has represented plaintiffs and defendants in securities, accounting and employment litigations and arbitrations.  He has also handled professional malpractice defense matters for attorneys, physicians and accountants, and defended individuals accused of securities, tax and financial crimes in federal and state court.  He is a member of the American Bar Association, the New York State Bar Association, The Association of the Bar of the City of New York and the New York County Lawyers Association.

### Martindale & Hubbell Rating

AV Preeminent 5.0 out of 5

### State Bar Admissions

New York

### Court Admissions

U.S. Supreme Court; U.S. Court of Appeals for the Second and Seventh Circuits; U.S. District Courts for the Eastern and Southern Districts of New York; U.S. District Court for the Central District of Illinois; and all courts of the State of New York

13

## Robert N. Cappucci

Robert N. Cappucci, a partner of the Firm, received his undergraduate degree from Fordham University, graduating *cum laude* and *in cursu honorum*. He received his law degree from Fordham University School of Law, where he was Articles Editor of the Fordham International Law Journal. He is the author of "Amending the Treatment of Defense Production Enterprises Under the U.S. Exon-Florio Provision: A Move Toward Protectionism or Globalism?," 16 Fordham Int'l L.J. 652 (1993). Mr. Cappucci concentrates his practice in the area of securities litigation and supervises the Firm's Market Monitoring and Reporting Program. He has particular expertise in issues impacting the Firm's hedge fund and institutional trading firm client base.

Mr. Cappucci is a member of the Commercial and Federal Litigation Sections of the New York State Bar Association and a member of the Litigation Section of the American Bar Association, The Federal Bar Council, The Association of the Bar of the City of New York and The Association of Trial Lawyers of America.

Before entering private practice, Mr. Cappucci interned with the Honorable John E. Sprizzo, United States District Court, Southern District of New York.

## Martindale & Hubbell Rating

AV Preeminent 5.0 out of 5

## State Bar Admissions

New Jersey and New York

## Court Admissions

U.S. Supreme Court; U.S. Court of Appeals for the Third and Eighth Circuits; U.S. District Court for the District of New Jersey; U.S. District Court for the Eastern and Southern Districts of New York; U.S. District Court for the Eastern District of Michigan; and all state courts of New York and New Jersey

**Jonathan H. Beemer**

Jonathan H. Beemer concentrates his practice on securities litigation and complex commercial disputes.  Mr. Beemer has represented both underwriters and institutional investors in direct and class actions in federal and state courts.  He has also represented parties in bankruptcy-related litigation, and litigation involving antitrust, False Claims Act and civil RICO claims.

Mr. Beemer has co-authored the following articles:  "'Wagoner,' In Pari Delicto Defenses Aid Outside Auditors," New York Law Journal, August 29, 2008; "Approaches to Asset Recovery For Pension Fund Subprime Exposure," The NAPPA Report, February 2008.

Mr. Beemer graduated from Oberlin College with a B.A. in History.  He received his J.D. from Brooklyn Law School, where he was the managing editor of the Brooklyn Law Review.  Mr. Beemer also served as a law clerk to the Honorable Marilyn Dolan Go, United States Magistrate Judge for the Eastern District of New York.

## State Bar Admissions

New York

## Court Admissions

U.S. Court of Appeals for the Second and Sixth Circuits; U.S. District Court for the Southern and Eastern Districts of New York; and all courts of the State of New York

**Joshua K. Porter**

Joshua K. Porter has represented financial institutions, broker-dealers, underwriters, investors and individuals in civil and white-collar matters in federal and state courts.  He has also represented parties in bankruptcy litigations and proceedings before self-regulating organizations, and in litigation involving ERISA and the Foreign Corrupt Practices Act.

**State Bar Admissions**

New York

**Court Admissions**

U.S. District Court for the Southern and Eastern Districts of New York; and all courts of the State of New York.

*Senior Associate*

**Jordan A. Cortez**

      Jordan A. Jordan A. Cortez concentrates his practice on securities litigation and complex commercial disputes.  Mr. Cortez has represented institutional investors in direct and class actions in federal and state courts.  He has also represented parties in bankruptcy-related litigation, and litigation involving antitrust, Commodities Exchange Act and civil RICO claims.  He is an honors graduate of Dartmouth College and received his J.D. from the University of Notre Dame Law School.

**State Bar Admissions**

New York

**Court Admissions**

U.S. District Court for the Southern and Eastern Districts of New York; and all courts of the State of New York.

*Additional Associates*

**Alexander Broche**
**Jeremy Gold**
**Ashley B. Graham**
**Katherine Lenahan**
**Alexandra Ober**
**Daniel Ping**
**Evan T. Raciti**
**Alexander Schlow**

*Office Address*

                              **Entwistle & Cappucci LLP**
                              280 Park Avenue,
                              26th Floor West
                              New York, New York 10017-0941
                              Telephone:212-894-7200
                              Facsimile: 212-894-7272