# EXHIBIT 9

CORNERSTONE RESEARCH



# Securities Class Action Filings

## 2011 Year in Review

**Research Sample**

• The Stanford Law School Securities Class Action Clearinghouse in cooperation with Cornerstone Research has identified 3,415 federal securities class action filings between January 1, 1996, and December 31, 2011.

• These filings include 313 IPO Allocation filings, 68 Analyst filings, 25 Mutual Fund filings, 40 Options Backdating filings, 24 Ponzi filings, and 208 Credit-Crisis filings; the last category includes 21 Auction Rate Securities filings.

• The sample used in this report is referred to as the "Classic Filings" sample and excludes IPO Allocation, Analyst, and Mutual Fund filings.

• Multiple filings related to the same allegations against the same defendant(s) are consolidated in the database through a unique record indexed to the first identified complaint.

.

## TABLE OF CONTENTS

Overview .................................................................................................................................... 1

Number of Filings ...................................................................................................................... 3

Status of Chinese Reverse Merger Filings ................................................................................. 6

Filing Lag .................................................................................................................................. 7

Filings per Issuer ....................................................................................................................... 8

Foreign Filings ......................................................................................................................... 10

Filings Related to the Foreign Corrupt Practices Act .............................................................. 11

Heat Maps ................................................................................................................................ 12

Market Capitalization Losses ................................................................................................... 14

Mega Filings ............................................................................................................................ 17

    Disclosure Dollar Loss ...................................................................................................... 17

    Maximum Dollar Loss ....................................................................................................... 17

Probability of Advancing Through Stages of Litigation .......................................................... 18

Case Experience of Judges ....................................................................................................... 19

Plaintiff Law Firms .................................................................................................................. 21

Industry .................................................................................................................................... 24

Exchange .................................................................................................................................. 25

Circuit ...................................................................................................................................... 26

Classification of Complaints ..................................................................................................... 27

New Developments ................................................................................................................... 29

    The SEC's Report on the Dodd-Frank Whistleblower Program ......................................... 29

Appendix .................................................................................................................................. 30

© 2012 by Cornerstone Research. All Rights Reserved.

## TABLE OF FIGURES

Figure 1:   Class Action Filings Summary ...........................................................................1

Figure 2:   CAF Index™—Annual Number of Class Action Filings, 1997–2011 ................3

Figure 3:   CAF Index™—Semiannual Number of Class Action Filings and
            CBOE Volatility Index® (VIX), 1997–2011................................................4

Figure 4:   CAF Index™—Quarterly Number of Class Action Filings and
            CBOE Volatility Index® (VIX), 1997–2011................................................5

Figure 5:   Chinese Reverse Merger Filings and Other Filings by Allegation Type, 7/1/10–12/31/11..............6

Figure 6:   Semiannual Median Lag between Class-End Date and Filing Date, 1997–2011 ...................7

Figure 7:   CAF-U Index™—Number of Unique Listed Issuers Subject to Filings, 1997–2011....................8

Figure 8:   FPI Index™—Percentage of Unique Listed Issuers Subject to Filings, 1996–2011 ...................9

Figure 9:   CAF-F Index™—Annual Number of Class Action Filings by
            Location of Headquarters, 1996–2011 ...........................................................10

Figure 10: Private Class Actions with FCPA Allegations, 1998–2011 ..............................11

Figure 11: Heat Maps of S&P 500 Securities Litigation,™ Percentage of Companies
            Subject to New Filings, 2000–2011 ...............................................................12

Figure 12: Heat Maps of S&P 500 Securities Litigation,™ Percentage of Market Capitalization
            Subject to New Filings, 2000–2011 ...............................................................13

Figure 13: Disclosure Dollar Loss Index,™ 1997–2011 ....................................................14

Figure 14: Maximum Dollar Loss Index,™ 1997–2011 .....................................................15

Figure 15: Filings Comparison ...........................................................................................16

Figure 16: Portion of Resolved Cases Advancing to Different Litigation Stages,
            All Circuits: 1996–2011 ...............................................................................18

Figure 17: Case Experience of Judges in Securities Class Actions,
            All Circuits: 1996–2011 ...............................................................................19

Figure 18: Case Experience of Judges in Securities Class Actions, Only Cases Reaching a Ruling on
            Summary Judgment, All Circuits: 1996–2011 ..............................................20

Figure 19: Plaintiff Law Firms Named as Lead Counsel in More Than Five Percent of Filings,
            Excluding M&A Filings, 2009–2010 .............................................................21

Figure 20: Plaintiff Law Firms Named as Lead Counsel in More Than Five Percent of M&A
            Filings, 2009–2010 ........................................................................................22

Figure 21: Top Five Plaintiff Law Firms by Maximum Dollar Loss, 2009–2010 ..............23

Figure 22: Top Five Plaintiff Law Firms by Disclosure Dollar Loss, 2009–2010..............23

Figure 23: Filings by Industry ............................................................................................24

Figure 24: Filings by Exchange Listing .............................................................................25

Figure 25: Filings by Court Circuit ....................................................................................26

Figure 26: 2011 Allegations Box Score .............................................................................28


Appendix 1:  Frequency of Resolved Cases Advancing to Different Litigation
             Stages by Circuit, 1996–2011 ....................................................................30

Appendix 2:  Frequency of Resolved Cases Advancing to Different Litigation
             Stages by Year, 1996–2011 ........................................................................31

Appendix 3:  Filings by Industry .......................................................................................32

Appendix 4:  Filings by Court Circuit ................................................................................32

© 2012 by Cornerstone Research. All Rights Reserved.

## OVERVIEW

Federal securities fraud class action filing activity increased in 2011. For the full year of 2011, there were 188 filings compared with 176 in 2010. The number of class actions filed was 3.1 percent below the annual average of 194 filings observed between 1997 and 2010 (Figure 1). Filing activity in the second half of the year equaled the activity in the first half. A total of 94 federal securities fraud class actions (filings, class actions, or cases) were filed in both the first and second halves of 2011. Building on a trend first seen last year, 43 of the filings in 2011 were associated with merger and acquisition (M&A) transactions.

Litigation against Chinese issuers listed on U.S. exchanges through reverse mergers represented a major component of filings activity during 2011, although evidence indicates that this type of litigation is subsiding. In 2011, 33 such class actions were filed, constituting 17.6 percent of all federal securities class actions. This activity occurred predominantly in the first half of the year when 24 of these actions were filed; only nine were brought in the last six months, including five filed in the last three months of the year. In 2010, there were nine such class actions filed. Figure 5 illustrates the differences in allegations between Chinese reverse merger filings since 2010 and other Classic Filings, and indicates that complaints relating to Chinese reverse mergers statistically are more likely to allege violations of generally accepted accounting principles (GAAP) and financial restatements and are less likely to allege insider trading.

As the peak of the financial crisis recedes, filings related to the crisis also continue to decline. There were only three such filings in 2011, a decrease from 13 in 2010 and 53 in 2009. Overall filings in the financial sector also decreased, as financial companies were defendants in 13.3 percent of filings in 2011 compared with 24.7 percent in 2010. The Heat Maps of S&P 500 Securities Litigation™ show that in 2011, only 1.2 percent of S&P 500 companies in the Financials sector were named defendants in a class action compared with the 10-year historical average ending December 2010 of 11.7 percent. These companies represented 6.9 percent of the Financials sector's market capitalization, well below the historical average of 24.3 percent.

The market capitalization declines associated with end-of-class-period announcements have increased from 2010 levels but remain below the historic average. The total Disclosure Dollar Loss (DDL) of $106 billion in 2011 represented a 47.2 percent increase from 2010 but remained 17.8 percent below the average of $129 billion observed between 1997 and 2010. There were four "mega DDL" filings in 2011 associated with end-of-class market capitalization losses exceeding $5 billion. These filings represented 58.9 percent of the DDL Index™ in 2011. Market capitalization declines during the class period increased slightly in 2011. The total Maximum Dollar Loss (MDL) of $493 billion in 2011 was 4.0 percent above the total MDL in 2010 and 27.5 percent below $680 billion, the average MDL observed between 1997 and 2010. The "mega MDL" filings with losses of more than $10 billion decreased in number in 2011 but increased in dollar value. Nine mega MDL filings represented 80.2 percent of the MDL Index™ in 2011, while 14 mega MDL filings represented 79.1 percent of the MDL Index™ in 2010.[1]

**Figure 1**

### CLASS ACTION FILINGS SUMMARY

|  | Average (1997–2010) | 2010 | 2011 |
|---|---|---|---|
| Class Action Filings | 194 | 176 | 188 |
| Disclosure Dollar Loss ($ Billions) | $129 | $72 | $106 |
| Maximum Dollar Loss ($ Billions) | $680 | $474 | $493 |

---

[1] Disclosure Dollar Loss and Maximum Dollar Loss are defined in the Market Capitalization Losses section of this report.

© 2012 by Cornerstone Research. All Rights Reserved.

## OVERVIEW *continued*

New for the *2011 Year in Review*:

- An analysis of filings related to the Foreign Corrupt Practices Act (FCPA). The FCPA was passed in 1977 and holds any company with securities issued in the United States liable for penalties if that company engaged in bribery of foreign officials or violated certain accounting requirements. Figure 10 documents the level of private securities class action litigation related to settled or pending FCPA investigations by the Securities and Exchange Commission (SEC) or the Department of Justice (DOJ).

- An analysis of the relative frequency that a class action advanced through various stages of litigation. Using a sample of Classic Filings from 1997 to 2011,[2] we find that 75 percent of filings reached a ruling on motion to dismiss, and only 8 percent later reached a ruling on summary judgment (Figure 16).

- An analysis of the relative experience of judges who presided over class actions between 1996 and 2011. Figure 17 indicates that relatively few judges have presided over multiple class actions. Figure 18 shows that no judge has presided over more than three cases that reached a ruling on summary judgment.

- An analysis of plaintiff law firm activity. Figure 19 shows the plaintiff law firms most commonly named lead counsel in 2009 and 2010. One firm, Robbins Geller Rudman & Dowd, represented the most class action plaintiffs in both years.

A notable development in 2011 was the finalization of the rules of the Dodd-Frank Whistleblower Program. The SEC published its annual report on the Dodd-Frank Whistleblower Program in November 2011, indicating that the SEC had received 334 tips since the rules were finalized on August 12, 2011.[3] These tips spanned 37 states and 11 different foreign countries. About 9.6 percent of the tips received were related to tips involving foreign companies.

---

[2] Data regarding the last stage of litigation are available for 94.3 percent of Classic Filings.

[3] "Annual Report on the Dodd-Frank Whistleblower Program, Fiscal Year 2011," U.S. Securities and Exchange Commission, http://www.sec.gov/about/offices/owb/whistleblower-annual-report-2011.pdf.

© 2012 by Cornerstone Research. All Rights Reserved.

## NUMBER OF FILINGS

The Class Action Filings Index™ (CAF Index) reports 188 filings in 2011, an increase of 6.8 percent from 176 filings in 2010 (Figure 2). Of these 188 filings, 33 were related to Chinese reverse mergers, an increase from nine filings in 2010. Consistent with a trend first observed in 2010, filings related to M&A transactions continued to constitute a large percentage of total filings, accounting for 22.9 percent in 2011. In 2010, M&A filings made up 22.7 percent of all filings. The number of filings related to the credit crisis continued to drop. Three were filed in 2011, a decrease from 13 filings in 2010. In 2011, there were no filings related to auction rate securities or Ponzi schemes.

**Figure 2**



CAF INDEX™—ANNUAL NUMBER OF CLASS ACTION FILINGS
1997–2011

The number of filings related to M&A transactions increased slightly in 2011. There were 20 such filings in the first half of 2011 and 23 filings in the last six months of the year. Cash transactions were the most commonly contested transactions, representing 76.7 percent of all M&A filings. Stock-for-stock transactions appeared in 14.0 percent of M&A filings. The remaining filings were related to cash and stock transactions.

© 2012 by Cornerstone Research. All Rights Reserved.

## NUMBER OF FILINGS *continued*

In the second half of 2011, the total number of filings was the same as in the first six months of the year despite a 62.5 percent decrease in Chinese reverse merger filings, which peaked with 24 filings in the first half of 2011. Over the last 18 months, M&A filings comprised 24.0 percent of all filings. Continuing the recent trend of fewer credit-crisis filings, there was only one such filing in the second half of 2011.

**Figure 3**

CAF INDEX™—SEMIANNUAL NUMBER OF CLASS ACTION FILINGS
AND CBOE VOLATILITY INDEX® (VIX)
1997–2011



© 2012 by Cornerstone Research. All Rights Reserved.

## NUMBER OF FILINGS *continued*

The number of filings in each quarter in 2011 was less volatile than in 2010. The quarterly number of filings ranged from 45 to 49 throughout 2011.

Securities litigation activity can be correlated with stock market volatility. The fourth quarter of 2008, a historic peak in stock market volatility as measured by the Chicago Board Options Exchange (CBOE) Volatility Index® (VIX), was associated with a flurry of securities class actions; in comparison, during the fourth quarter of 2006, the VIX was at its lowest level since its inception in the 1990s and was accompanied by a historically low number of filings (Figure 4). Over the last three quarters of 2011, the number of traditional filings has increased steadily with the VIX Index. The number of Chinese reverse merger filings and M&A filings appears unrelated to this measure of stock market volatility; these cases accounted for more than one-half of all filings in the second quarter of 2011 when the VIX Index was at its lowest level in the last three years. This suggests that Chinese reverse merger and M&A filings are driven by factors other than stock market volatility. It is likely that Chinese reverse merger filings will turn out to be a nonrecurring event in the securities litigation landscape, similar to the prior IPO Allocation filings, Mutual Fund filings, and Options Backdating filings. In a companion study, Cornerstone Research has found that mergers and acquisitions are routinely challenged in shareholder litigation, some of which are being filed in federal courts.[4] It is likely that these cases have very different driving factors and underlying economics than traditional securities class actions.

**Figure 4**



CAF INDEX™—QUARTERLY NUMBER OF CLASS ACTION FILINGS
AND CBOE VOLATILITY INDEX® (VIX)
1997–2011



---

[4]  *Recent Developments in Shareholder Litigation Involving Mergers and Acquisitions*, Cornerstone Research, January 2012, http://www.cornerstone.com/files/upload/Shareholder_MandA_Litigation.pdf.

© 2012 by Cornerstone Research. All Rights Reserved.

## STATUS OF CHINESE REVERSE MERGER FILINGS

Since 2010, there have been 42 class actions filed against companies based in China that gained access to the U.S. markets through a process known as a reverse merger.[5] Filings against such companies peaked in the first half of 2011 but have subsequently decreased, with only nine being filed in the second half of the year (Figure 3).

In order to determine whether filings involving Chinese reverse mergers had allegations that significantly differ from the allegations in other cases, a proportions test was undertaken (Figure 5).[6] Between July 1, 2010, and December 31, 2011, Chinese reverse merger filings (40 filings) were significantly more likely than other filings (183 filings, excluding M&A filings) to contain alleged GAAP violations, unreliable financial statement disclosures, and restatements. Such filings were also significantly less likely to have insider trading allegations, as none had such allegations. Furthermore, 97.5 percent of Chinese reverse merger filings included allegations of Rule 10b-5 violations, but this is not statistically different from the group of all other filings (87.4 percent). Note that all 40 Chinese reverse merger filings involved equity securities. At the same time, 10.9 percent of the 183 filings in the comparison group include only nonequity securities, such as bonds and mortgage-backed securities. Of these filings, 55.0 percent did not have Rule 10b-5 allegations.

**Figure 5**

### CHINESE REVERSE MERGER FILINGS AND OTHER FILINGS
### BY ALLEGATION TYPE
### 7/1/10–12/31/11

| Allegation Type | Percentage of Chinese Reverse Merger Filings with Allegation | Percentage of Other Filings (Excluding M&A) with Allegation | |
|---|---|---|---|
| GAAP Allegations | 87.5% | 29.0% | * |
| Rule 10b-5 | 97.5 | 87.4 | |
| Section 11 | 12.5 | 16.4 | |
| Section 12 | 15.0 | 10.9 | |
| Underwriter | 15.0 | 14.2 | |
| Misrepresentations in Financial Documents | 97.5 | 92.3 | |
| False Forward-Looking Statements | 57.5 | 71.6 | |
| Insider Trading | 0.0 | 22.4 | * |
| Unreliable Financial Statement Disclosures | 27.5 | 7.7 | * |
| White Collar | 27.5 | 16.4 | |
| Internal Control Over Financial Reporting Allegation | 37.5 | 26.8 | |
| Internal Control Over Financial Reporting Disclosure | 10.0 | 4.9 | |
| Bankruptcy | 0.0 | 4.4 | |
| Auditors as Defendants | 5.0 | 3.8 | |
| Restatement | 20.0 | 7.7 | * |

* Indicates a statistically significant difference at the 5 percent level from the corresponding non-Chinese reverse merger percentage.

---

[5]   For further discussion on Chinese Reverse Mergers, see *Investigations and Litigation Related to Chinese Reverse Merger Companies—Financial, Economic, and Accounting Questions*, Cornerstone Research, July 2011, http://www.cornerstone.com/files/upload/Litigation_Related_to_Chinese_Reverse_Mergers.pdf.

[6]   Significance was defined at the 95 percent level for a two-tailed test. Based on Miles Hollander and Douglas A. Wolfe, *Nonparametric Statistical Methods*, 2nd Edition (John Wiley & Sons, Inc., 1999) p. 459.

© 2012 by Cornerstone Research. All Rights Reserved.

## FILING LAG

In the second half of 2011, the median lag between the end of the alleged class period and the filing date of the lawsuit rose to 20 days, more than double the median lag of nine days in the first half of 2011. This represented the first increase in median lag since the second half of 2009 (Figure 6). Despite the increase, it is still below the historical median lag of 27 days for the 14 years ending December 2010. This increase is associated with an increase in the number of filings with a six-month or longer lag. There were 17 such filings in the second half of 2011 compared with 11 such filings in the first half of 2011 and 12 such filings in the second half of 2010. Historically there has been an average of 18 such filings per six-month period since 1997.

 M&A filings tend to be filed quickly after the end of the alleged class period and have a lower median lag. If M&A filings were excluded from the analysis for 2011, the median filing lag would increase to 17 and 44 days for the first and last six months of 2011, respectively.

**Figure 6**



SEMIANNUAL MEDIAN LAG BETWEEN CLASS-END DATE AND FILING DATE
1997–2011

© 2012 by Cornerstone Research. All Rights Reserved.

## FILINGS PER ISSUER

The Class Action Filings-Unique Issuers Index (CAF-U Index[TM]) tracks the number of unique issuers[7] whose exchange-traded securities were involved in class actions.[8] In 2011, the CAF-U Index showed a slight increase in the number of unique issuers involved in filings, continuing the trend from 2010 (Figure 7).

While the total number of filings increased by 6.8 percent between 2010 and 2011, the total number of unique issuers increased by 13.3 percent. Multiple filings against the same issuer continued to decline in 2011. Unique issuers as a percentage of total 2011 filings increased to 86.2 percent from 81.3 percent in 2010, continuing to rebound from a historic low in 2009. From 1997 to 2010, the average ratio of unique issuers to total filings was 89.1 percent.

**Figure 7**

CAF-U INDEX[TM]—NUMBER OF UNIQUE LISTED ISSUERS SUBJECT TO FILINGS
1997–2011



---

[7] When the number of issuers involved in litigation is presented in Figures 7 and 8, all filings against the same issuer have been consolidated so that the count is a count of unique issuers.

[8] The index considers securities that were traded on NYSE, NASDAQ, or Amex when the alleged fraud occurred.

© 2012 by Cornerstone Research. All Rights Reserved.

## FILINGS PER ISSUER *continued*

The Filings per Issuer (FPI) Index™ shows that the number of unique issuers involved in class actions as a percentage of total issuers on NYSE, NASDAQ, or Amex increased (Figure 8). Of the companies listed on those exchanges, 3.0 percent were defendants in class actions filed in 2011 compared with 2.5 percent in 2010. The figure for 2011 is 25 percent over the 2.4 percent historical average for the 14 years ending December 2010. Figure 8 shows no perceptible trends in the incidence of unique filings per issuer during the last decade.

**Figure 8**

FPI INDEX™—PERCENTAGE OF UNIQUE LISTED ISSUERS SUBJECT TO FILINGS
1996–2011



© 2012 by Cornerstone Research. All Rights Reserved.

## FOREIGN FILINGS

The Class Action Filings-Foreign Index (CAF-F Index™) tracks the number of filings against foreign issuers, i.e., corporations headquartered outside of the United States, relative to total filings (Figure 9). Filings against foreign issuers as a percent of total filings sharply increased in 2011. From 2008 to 2010, the average percent of total filings against foreign issuers was 13.4 percent; however, filings against foreign issuers rose to 36.2 percent in 2011. This large increase can be attributed primarily to the number of filings against Chinese firms. Filings against Chinese companies that either underwent a reverse merger or listed American Depository Receipts in U.S. exchanges accounted for 41 of the 68 filings against foreign issuers. There were 31 filings against foreign issuers in the second half of 2011, a decrease from 37 filings in the first six months of the year. This decrease can be partially attributed to the decrease in Chinese reverse merger filings in the second half of the year.

**Figure 9**

CAF-F INDEX™—ANNUAL NUMBER OF CLASS ACTION FILINGS
BY LOCATION OF HEADQUARTERS
1996–2011



© 2012 by Cornerstone Research. All Rights Reserved.

## FILINGS RELATED TO THE FOREIGN CORRUPT PRACTICES ACT

The FCPA was passed in 1977 and holds any company with securities issued in the United States liable for penalties if that company engages in bribery of foreign officials or violates certain accounting requirements. Figure 10 shows the frequency of private securities class actions with FCPA allegations from 1998 to 2011. These are cases in which a private securities class action was filed that referenced a settled or pending FCPA investigation by the SEC or DOJ.

     The cases are divided into three "tiers" based on how central the FCPA allegations are to the complaint. Tier 1 cases are those in which alleged FCPA violations were central to the plaintiffs' claims. These filings usually made a direct reference to an alleged bribery or accounting fraud early in the complaint, which served as the basis for the allegations. Tier 2 cases alleged FCPA violations that were relevant to the claims but were not central to the case due to the other allegations. For example, a complaint may have referred to acts of bribery but not an accompanying FCPA investigation or claimed that FCPA accounting rules were violated along with GAAP and SEC standards. Tier 3 cases made only a passing reference to FCPA. These cases may have included references to FCPA allegations related to acts separate from those in the complaint or mentioned the FCPA in a quote from a news source.

     In total, there have been 13 Tier 1 filings, seven Tier 2 filings, and five Tier 3 filings since 1998.

**Figure 10**



© 2012 by Cornerstone Research. All Rights Reserved.

## HEAT MAPS

The Heat Maps of S&P 500 Securities Litigation™ analyze securities class action activity by sector. The analysis focuses on companies in the S&P 500 Index, which represents 500 large, publicly traded companies in all major sectors. Starting with the composition of the S&P 500 Index at the beginning of each year, the Heat Maps examine two factors for each sector. First, what percentage of these companies was subject to new securities class actions in federal court during the year? Second, of the total market capitalization of the companies in the S&P 500 Index, what percentage was accounted for by companies named in new securities class actions?

Overall, about one out of every 31 companies in the S&P 500 Index at the beginning of 2011 was a defendant in a class action filed during the year compared with an average of about one out of every 16 companies between 2000 and 2010 (Figure 11).[9]

**Figure 11**

### HEAT MAPS OF S&P 500 SECURITIES LITIGATION™
### PERCENTAGE OF COMPANIES SUBJECT TO NEW FILINGS
### 2000–2011

| | Average 00–10 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consumer Discretionary | 5.3% | 3.3% | 2.4% | 10.2% | 4.6% | 3.4% | 10.3% | 4.4% | 5.7% | 4.5% | 3.8% | 5.1% | 3.8% |
| Consumer Staples | 3.9% | 7.3% | 8.3% | 2.9% | 2.9% | 2.7% | 8.6% | 2.8% | 0.0% | 2.6% | 4.9% | 0.0% | 2.4% |
| Energy | 2.1% | 0.0% | 0.0% | 8.0% | 0.0% | 4.2% | 0.0% | 0.0% | 0.0% | 0.0% | 2.6% | 7.7% | 0.0% |
| Financials | 11.7% | 4.2% | 1.4% | 16.7% | 8.6% | 19.3% | 7.3% | 2.4% | 10.3% | 31.2% | 13.1% | 10.3% | 1.2% |
| Health Care | 10.1% | 2.6% | 7.1% | 15.2% | 10.4% | 10.6% | 10.7% | 6.9% | 12.7% | 13.7% | 3.7% | 15.4% | 2.0% |
| Industrials | 3.4% | 2.8% | 0.0% | 6.0% | 3.0% | 8.5% | 1.8% | 0.0% | 5.8% | 3.6% | 6.9% | 0.0% | 1.7% |
| Information Technology | 6.6% | 9.7% | 18.2% | 10.3% | 5.2% | 3.6% | 7.5% | 9.0% | 2.6% | 2.9% | 0.0% | 3.9% | 6.6% |
| Materials | 1.3% | 4.1% | 0.0% | 0.0% | 2.9% | 0.0% | 3.1% | 0.0% | 0.0% | 0.0% | 0.0% | 3.2% | 0.0% |
| Telecommunication Services | 7.7% | 23.1% | 16.7% | 15.4% | 8.3% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 11.1% | 0.0% | 11.1% |
| Utilities | 6.8% | 5.0% | 7.9% | 40.5% | 2.8% | 5.7% | 3.0% | 0.0% | 3.1% | 3.2% | 0.0% | 0.0% | 8.8% |
| **All S&P 500 Companies** | **6.4%** | **5.0%** | **5.6%** | **12.0%** | **5.2%** | **7.2%** | **6.6%** | **3.6%** | **5.4%** | **9.2%** | **4.8%** | **5.4%** | **3.2%** |

Legend    0%    0%–5%    5%–15%    15%–25%    25%+

1. The chart is based on the composition of the S&P 500 as of the last trading day of the previous year.
2. Sectors are based on the Global Industry Classification Standard.
3. Percentage of Companies Subject to New Filings equals the number of companies subject to new securities class action filings in federal courts in each sector divided by the total number of companies in that sector.

---

[9]   In Figures 11 and 12, filings against the same company were consolidated so that the number and market capitalization of companies involved in new securities litigation reflect unique companies.

© 2012 by Cornerstone Research. All Rights Reserved.

## HEAT MAPS *continued*

In 2011, only 3.2 percent of the S&P 500 companies were sued, making it the least litigious year for S&P 500 companies since 2000. Analysis based on the market capitalization of the companies showed a similar pattern in 2011. Historically, larger companies have been more likely to be targets of class actions. This trend continued in 2011, with companies comprising 5.1 percent of the S&P 500 market capitalization subject to a new filing, compared to 3.2 percent based solely on the number of targeted companies. Relative to the historical patterns, 2011 was an unusually quiet year for companies in the S&P 500 Index.

There was very little activity in the Financials and Health Care sectors in 2011 compared with 2010 and with the historical average activity in these sectors. In 2011, only 1.2 and 2.0 percent of Financials and Health Care companies were subject to new filings, respectively. Historically, the Financials and Health Care sectors have been targeted most often, with 11.7 percent of Financials and 10.1 percent of Health Care companies in the S&P 500 Index subject to a new filing each year from 2000 to 2010. One large firm in the Telecommunication Services sector was sued in 2011, representing 28.4 percent of the sector's market capitalization. The Utilities sector experienced slightly more filings than average, while the Energy and Materials sectors experienced none.

**Figure 12**

HEAT MAPS OF S&P 500 SECURITIES LITIGATION™
PERCENTAGE OF MARKET CAPITALIZATION SUBJECT TO NEW FILINGS
2000–2011

| | Average 00–10 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consumer Discretionary | 7.3% | 6.5% | 1.3% | 24.7% | 2.0% | 7.9% | 5.7% | 8.9% | 4.4% | 7.2% | 1.9% | 4.9% | 4.6% |
| Consumer Staples | 5.1% | 34.5% | 6.3% | 0.3% | 2.3% | 0.1% | 11.4% | 0.8% | 0.0% | 2.6% | 3.9% | 0.0% | 0.8% |
| Energy | 3.2% | 0.0% | 0.0% | 1.7% | 0.0% | 44.9% | 0.0% | 0.0% | 0.0% | 0.0% | 0.9% | 3.3% | 0.0% |
| Financials | 24.3% | 3.3% | 0.8% | 29.2% | 19.9% | 46.1% | 22.2% | 8.2% | 18.1% | 55.0% | 36.3% | 31.1% | 6.9% |
| Health Care | 18.2% | 11.0% | 5.4% | 35.2% | 16.3% | 24.1% | 10.1% | 18.1% | 22.5% | 20.0% | 1.7% | 33.7% | 2.0% |
| Industrials | 8.0% | 3.9% | 0.0% | 13.3% | 4.6% | 8.8% | 5.6% | 0.0% | 2.2% | 26.4% | 23.2% | 0.0% | 2.1% |
| Information Technology | 9.3% | 8.5% | 37.8% | 5.7% | 1.0% | 1.5% | 12.4% | 9.9% | 4.2% | 1.7% | 0.0% | 6.8% | 11.1% |
| Materials | 2.7% | 8.6% | 0.0% | 0.0% | 1.4% | 0.0% | 5.1% | 0.0% | 0.0% | 0.0% | 0.0% | 12.5% | 0.0% |
| Telecommunication Services | 11.7% | 39.5% | 13.3% | 19.9% | 4.0% | 0.0% | 0.0% | 0.0% | 0.0% | 1.7% | 0.0% | 0.0% | 28.4% |
| Utilities | 8.7% | 5.6% | 17.4% | 51.0% | 4.3% | 4.8% | 5.6% | 0.0% | 5.5% | 4.0% | 0.0% | 0.0% | 5.6% |
| **All S&P 500 Companies** | 11.7% | 11.1% | 10.9% | 18.8% | 8.0% | 17.7% | 10.7% | 6.7% | 8.2% | 16.2% | 8.6% | 11.2% | 5.1% |

Legend   0%   0%–5%   5%–15%   15%–25%   25%+

1. The chart is based on the market capitalizations of the S&P 500 companies as of the last trading day of the previous year. If the market capitalization on the last trading day is not available, the average fourth-quarter market capitalization is used.

2. Sectors are based on the Global Industry Classification Standard.

3. Percentage of Market Capitalizations Subject to New Filings equals the total market capitalization of companies subject to new securities class action filings in federal courts in each sector divided by the total market capitalization of all companies in that sector.

© 2012 by Cornerstone Research. All Rights Reserved.

## MARKET CAPITALIZATION LOSSES

To measure changes in the size of class action filings, we track market capitalization losses for defendant firms during and at the end of class periods.[10] Declines in market capitalization may be driven by market, industry, and firm-specific factors. To the extent that the observed losses reflect factors unrelated to the allegations in class action complaints, indices based on class period losses would not be representative of potential defendant exposure in class actions. This is especially relevant in the post-*Dura* securities litigation environment.[11] This report tracks market capitalization losses at the *end* of each class period using DDL and market capitalization losses *during* each class period using MDL.

DDL is the dollar value change in the defendant firm's market capitalization between the trading day immediately preceding the end of the class period and the trading day immediately following the end of the class period. MDL is the dollar value change in the defendant firm's market capitalization from the trading day with the highest market capitalization during the class period to the trading day immediately following the end of the class period. DDL and MDL should not be considered indicators of liability or measures of potential damages. Instead, they estimate the impact of all information revealed during or at the end of the class period, including information unrelated to the litigation.

There was a 47.2 percent increase in the Disclosure Dollar Loss Index™ (DDL Index) from 2010 to 2011 despite an increase in the number of filings of only 6.8 percent. This implies that the average DDL per filing increased. However, the DDL Index is still below the historical average of $129 billion. Credit-crisis filings accounted for very little of the total DDL loss for 2011.

**Figure 13**



DISCLOSURE DOLLAR LOSS INDEX™
1997–2011
*Dollars in Billions*



---

[10] Market capitalization measures are calculated for publicly traded common equity securities, closed-ended mutual funds, and exchange-traded funds where data are available.

[11] In April 2005, the Supreme Court ruled that plaintiffs in a securities class action are required to plead a causal connection between alleged wrongdoing and subsequent shareholder losses.

© 2012 by Cornerstone Research. All Rights Reserved.

## MARKET CAPITALIZATION LOSSES *continued*

The Maximum Dollar Loss Index™ (MDL Index) for 2011 was also below the historical average of $680 billion. While the number of filings increased by 6.8 percent, the MDL increased by only 4 percent from 2010 to 2011. This can be partially attributed to the number of Chinese reverse merger filings in the first half of 2011, which generally targeted smaller companies.

**Figure 14**



MAXIMUM DOLLAR LOSS INDEX™
1997–2011
*Dollars in Billions*

© 2012 by Cornerstone Research. All Rights Reserved.

## MARKET CAPITALIZATION LOSSES *continued*

Figure 15 provides summary statistics for 2011 filings compared with 2010 filings and the annual average between 1997 and 2010. The 2011 average DDL of $864 million was higher than the average for 2010 as well as the average for the 14 years ending December 2010. However, the 2011 median DDL was below the 2010 median and the 14-year average median DDL. Filings in 2011 had a lower average MDL and median MDL than both 2010 filings and filings over the previous 14 years. The 2011 median MDL of $0.4 billion is 33.3 percent lower than the 2010 median MDL of $0.6 billion.

**Figure 15**

FILINGS COMPARISON

|  | Average (1997–2010) | 2010 | 2011 |
|---|---|---|---|
| Class Action Filings | 194 | 176 | 188 |
| **Disclosure Dollar Loss** | | | |
| Total ($ Millions) | $128,735 | $72,181 | $106,254 |
| Average ($ Millions) | $799 | $687 | $864 |
| Median ($ Millions) | $120 | $146 | $83 |
| Median DDL % Decline | 23.1% | 20.6% | 18.9% |
| **Maximum Dollar Loss** | | | |
| Total ($ Billions) | $680.3 | $474.1 | $493.5 |
| Average ($ Billions) | $4.2 | $4.5 | $4.0 |
| Median ($ Billions) | $0.7 | $0.6 | $0.4 |

Average and median numbers are calculated only for filings with MDL and DDL data.

© 2012 by Cornerstone Research. All Rights Reserved.

## MEGA FILINGS

An analysis of mega filings, as measured by MDL and DDL, shows that a few mega filings account for a majority of the total market capitalization losses associated with class actions.

### Disclosure Dollar Loss

In 2011, there were four mega DDL filings—filings with a DDL of $5 billion or more. These four filings accounted for $63 billion, or 58.9 percent, of the DDL Index in 2011. None of these cases were related to the credit crisis. In 2010, four mega DDL filings represented 49.6 percent of the DDL Index. One of these cases was related to the credit crisis. Mega DDL filings between 1997 and 2010 represented 56.4 percent of the total DDL Index in that period.

### Maximum Dollar Loss

As in prior years, mega filings represented a large portion of the MDL Index in 2011. There were nine mega MDL filings—filings with an MDL of $10 billion or more. These nine filings accounted for $396 billion, or 80.2 percent, of the MDL Index. One of the nine mega MDL filings was related to the credit crisis, and six exceeded $25 billion in MDL. In 2010, there were 14 mega MDL filings, which accounted for 79.1 percent of the MDL Index in that year. Two of the mega MDL filings in 2010 were related to the credit crisis, and five mega filings exceeded $25 billion in MDL. Mega MDL filings between 1997 and 2010 represented 73.8 percent of the total MDL Index in that period.

© 2012 by Cornerstone Research. All Rights Reserved.

## PROBABILITY OF ADVANCING THROUGH STAGES OF LITIGATION

New for the *2011 Year in Review* is an analysis of the probability of a class action advancing through different stages of litigation. This analysis uses the sample of Classic Filings from 1996 to 2011 that have been resolved and for which we have sufficient data.[12] The outcomes of these cases were tracked to identify those that reached a ruling on motion to dismiss and those that subsequently reached a ruling on summary judgment. Cases that did not reach these milestones either were voluntarily dismissed, dismissed as a consequence of a ruling, or settled. See Appendices 1 and 2 for details.

Figure 16 shows that, for cases from all circuits, 75 percent of the 2,415 Classic Filings reached a first ruling on motion to dismiss. Before the first ruling on motion to dismiss, 9 percent were voluntarily dismissed and 16 percent were settled. After the first ruling on motion to dismiss, 32 percent of all cases were dismissed at that point or subsequently, 35 percent settled thereafter but before a ruling on summary judgment, and 8 percent proceeded to a ruling on summary judgment. All cases that advanced beyond a ruling on summary judgment are included in this category.

**Figure 16**

PORTION OF RESOLVED CASES ADVANCING TO DIFFERENT LITIGATION STAGES
ALL CIRCUITS: 1996–2011



---

[12] Data regarding the last stage of litigation are available for 94.3 percent of Classic Filings.

© 2012 by Cornerstone Research. All Rights Reserved.

## CASE EXPERIENCE OF JUDGES

New for the *2011 Year in Review* is an analysis on the case experience of judges in securities class actions. Figure 17 illustrates the number of judges who presided over a specified number of class actions. Between 1996 and 2011, 329 judges presided over only one case. Only 65 judges presided over more than 10 class actions. This analysis examines only federal judges who had at least one case assigned to them.

**Figure 17**



CASE EXPERIENCE OF JUDGES IN SECURITIES CLASS ACTIONS
ALL CIRCUITS: 1996–2011

## CASE EXPERIENCE OF JUDGES *continued*

Even fewer judges during this period presided over multiple cases that reached a ruling on summary judgment. For judges who presided over cases that reached this stage, 133 presided over only one case. No judge presided over more than three federal class actions that reached a ruling on summary judgment during this period (Figure 18).

**Figure 18**



CASE EXPERIENCE OF JUDGES IN SECURITIES CLASS ACTIONS
ONLY CASES REACHING A RULING ON SUMMARY JUDGMENT
ALL CIRCUITS: 1996–2011

## PLAINTIFF LAW FIRMS

Also new for the *2011 Year in Review* is an analysis of which plaintiff law firms have most frequently been named lead counsel. Figure 19 ranks the plaintiff law firms by the number of instances the firm was named as lead counsel in cases filed in recent years, excluding M&A filings.[13] If multiple firms were named co-lead counsels, then all are counted in this analysis. Robbins Geller Rudman & Dowd was named lead or co-lead counsel more often than any other firm in each year.

**Figure 19**

PLAINTIFF LAW FIRMS NAMED AS LEAD COUNSEL
IN MORE THAN FIVE PERCENT OF FILINGS
EXCLUDING M&A FILINGS
2009–2010

| 2009 | | | | 2010 | | |
|---|---|---|---|---|---|---|
| Law Firm | Count | Percent Named Lead Counsel | | Law Firm | Count | Percent Named Lead Counsel |
| Robbins Geller Rudman & Dowd | 76 | 52% | | Robbins Geller Rudman & Dowd | 41 | 33% |
| Glancy Binkow & Goldberg | 11 | 8% | | The Rosen Law Firm | 12 | 10% |
| Scott & Scott | 8 | 5% | | Kahn Swick & Foti | 10 | 8% |
| Bernstein Litowitz Berger & Grossmann | 8 | 5% | | Labaton Sucharow | 10 | 8% |
| Labaton Sucharow | 8 | 5% | | Glancy Binkow & Goldberg | 9 | 7% |
| Cohen Milstein Sellers & Toll | 7 | 5% | | Bernstein Litowitz Berger & Grossmann | 9 | 7% |
| Kessler Topaz Meltzer & Check | 7 | 5% | | Shepherd, Finkelman, Miller & Shah | 7 | 6% |
| | | | | Scott & Scott | 7 | 6% |
| | | | | Pomerantz Haudek Grossman & Gross | 7 | 6% |

The percentages are not additive across named lead plaintiff law firms because multiple firms can be named as co-lead counsel.

---

[13] Data for 2011 are not presented because 69.1 percent of filings do not yet have named lead plaintiff law firms.

© 2012 by Cornerstone Research. All Rights Reserved.

## PLAINTIFF LAW FIRMS *continued*

Figure 20 presents data on which plaintiff law firms were named as lead counsel in M&A filings. Due to the small number of such class actions in 2009, the data for 2009 and 2010 were consolidated. Levi & Korsinsky was named as lead plaintiff in 29 percent of M&A filings, and Bull & Lifshitz and Robbins Geller Rudman & Dowd were both named in 17 percent of M&A filings.

**Figure 20**

PLAINTIFF LAW FIRMS NAMED AS LEAD COUNSEL
IN MORE THAN FIVE PERCENT OF M&A FILINGS
2009–2010

| Law Firm | Count | Percent Named Lead Counsel |
|---|---|---|
| Levi & Korsinsky | 10 | 29% |
| Bull & Lifshitz | 6 | 17% |
| Robbins Geller Rudman & Dowd | 6 | 17% |
| Faruqi & Faruqi | 4 | 11% |
| Stull, Stull & Brody | 3 | 9% |
| Robbins Umeda | 3 | 9% |
| Scott & Scott | 3 | 9% |
| Chitwood Harley Harnes | 2 | 6% |
| Bramson, Plutzik, Mahler & Birkhaeuser | 2 | 6% |
| Harwood Feffer | 2 | 6% |
| The Warner Law Firm | 2 | 6% |

The percentages are not additive across named lead plaintiff law firms because multiple firms can be named as co-lead counsel.

© 2012 by Cornerstone Research. All Rights Reserved.

## PLAINTIFF LAW FIRMS *continued*

Figures 21 and 22 show the five plaintiff law firms that were named lead counsel for cases filed in 2009 to 2010 ranked by the total MDL and DDL experienced by the defendant firms, respectively. Robbins Geller Rudman & Dowd was lead counsel in cases with the largest collective market capitalization losses in 2009 and 2010. M&A filings are not included in this analysis because stock price declines are rarely at issue in these filings.

**Figure 21**

### TOP FIVE PLAINTIFF LAW FIRMS
### BY MAXIMUM DOLLAR LOSS
### 2009–2010

| 2009 | | 2010 | |
|---|---|---|---|
| **Law Firm** | **Percent of Total MDL** | **Law Firm** | **Percent of Total MDL** |
| Robbins Geller Rudman & Dowd | 25% | Robbins Geller Rudman & Dowd | 43% |
| Kessler Topaz Meltzer & Check | 14% | Scott & Scott | 9% |
| Bernstein Litowitz Berger & Grossmann | 13% | Labaton Sucharow | 9% |
| Berman DeValerio | 13% | Bernstein Litowitz Berger & Grossmann | 7% |
| Susman Godfrey | 10% | Kaplan Fox | 7% |

The percentages are not additive across named lead plaintiff law firms because multiple firms can be named as co-lead counsel.

**Figure 22**

### TOP FIVE PLAINTIFF LAW FIRMS
### BY DISCLOSURE DOLLAR LOSS
### 2009–2010

| 2009 | | 2010 | |
|---|---|---|---|
| **Law Firm** | **Percent of Total DDL** | **Law Firm** | **Percent of Total DDL** |
| Robbins Geller Rudman & Dowd | 26% | Robbins Geller Rudman & Dowd | 40% |
| Berman DeValerio | 21% | Scott & Scott | 22% |
| Bernstein Litowitz Berger & Grossmann | 13% | Labaton Sucharow | 11% |
| Kessler Topaz Meltzer & Check | 10% | Kessler Topaz Meltzer & Check | 6% |
| Susman Godfrey | 10% | Grant & Eisenhofer | 5% |

The percentages are not additive across named lead plaintiff law firms because multiple firms can be named as co-lead counsel.

© 2012 by Cornerstone Research. All Rights Reserved.

## INDUSTRY

Figure 23 provides summary statistics on class actions by industry (as defined by the *Bloomberg Industry Classification System*). In 2011, filings in the Financial sector decreased to just 25 filings, 41.9 percent below the number of Financial sector filings in 2010. However, the Financial sector did have the highest MDL and DDL in 2011, despite the relatively low number of filings. In 2011, 24.5 percent of all filings were concentrated in the Consumer Non-Cyclical sector, making it the most targeted sector. Of the filings in the Consumer Non-Cyclical sector, 58.7 percent were related to the healthcare industry, showing that while few companies in the S&P 500 Health Care sector were sued (see Figure 11), smaller firms in the healthcare industry remained a large target for class actions in 2011. Please see Appendix 3 for details.

**Figure 23**



FILINGS BY INDUSTRY

Analysis excludes one filing in the Computer Services sector in 2006, one filing in an unknown sector in 2009, and two filings in the Government and Service sectors in 2010.

© 2012 by Cornerstone Research. All Rights Reserved.

## EXCHANGE

Issuers listed on NASDAQ had more filings in 2011 than issuers listed on NYSE or Amex, in line with average filings from 1997 to 2010 (Figure 24). In 2011, 60 class actions were filed against firms listed on NYSE or Amex and 105 against firms listed on NASDAQ. However, the market capitalization losses in filings related to issuers listed on NYSE or Amex continued to be larger than filings related to issuers listed on NASDAQ. While NASDAQ filings accounted for 63.6 percent of the total number of filings against issuers listed on major exchanges, these filings only represented 41.4 percent of the total DDL and 24.9 percent of the total MDL in 2011.

**Figure 24**

### FILINGS BY EXCHANGE LISTING

| | Average (1997–2010) | | 2010 | | 2011 | |
|---|---|---|---|---|---|---|
| | NYSE/Amex | NASDAQ | NYSE/Amex | NASDAQ | NYSE/Amex | NASDAQ |
| Class Action Filings | 79 | 98 | 75 | 73 | 60 | 105 |
| Disclosure Dollar Loss | | | | | | |
| Total ($ Millions) | $95,213 | $33,090 | $62,359 | $9,640 | $62,256 | $43,834 |
| Average ($ Millions) | $1,411 | $353 | $1,386 | $189 | $1,482 | $600 |
| Median ($ Millions) | $267 | $84 | $381 | $104 | $95 | $87 |
| Maximum Dollar Loss | | | | | | |
| Total ($ Billions) | $454 | $224 | $422 | $50 | $369 | $123 |
| Average ($ Billions) | $6.6 | $2.4 | $9.4 | $1.0 | $8.8 | $1.7 |
| Median ($ Billions) | $1.3 | $0.4 | $1.7 | $0.4 | $0.9 | $0.4 |

Average and median numbers are calculated only for filings with MDL and DDL data.

© 2012 by Cornerstone Research. All Rights Reserved.

## CIRCUIT

As in 2010, the three circuits with the highest number of filings in 2011 were the Ninth Circuit, Second Circuit, and Third Circuit, with 54, 51, and 14 filings, respectively (Figure 25). The Second Circuit and Ninth Circuit have been the most active circuits in each year since 1996. The Ninth Circuit surpassed the Second Circuit in 2010 for most filings and maintained that position in 2011, at least partially due to the decline in credit-crisis filings, which tend to be concentrated in the Second Circuit.

   The circuits with the highest total DDL in 2011 were the Ninth Circuit with $50 billion, the Second Circuit with $45 billion, and the Eighth Circuit with $3 billion. The Ninth Circuit had two of the four mega DDL filings, giving it an unusually large total DDL relative to the historical average of $19 billion observed between 1997 and 2010. The other two mega DDL filings were in the Second Circuit. Historically, the Second Circuit, Third Circuit, and Ninth Circuit have had the highest total DDL.

   The three circuits with the highest total MDL in 2011 were the Second Circuit, Ninth Circuit, and Sixth Circuit, with $290, $162, and $13 billion, respectively. Four of the nine mega MDL filings were filed in the Ninth Circuit, and the other five were filed in the Second Circuit. Historically, the Second Circuit, Third Circuit, and Ninth Circuit have had the highest total MDL levels. Please see Appendix 4 for details.

**Figure 25**



## CLASSIFICATION OF COMPLAINTS

The Securities Class Action Clearinghouse tracks allegations contained in class action complaints.[14] A comparison of class actions filed in 2011 with those filed since 2007 reveals the following findings (Figure 26).

- The percentage of filings with Rule 10b-5 claims increased to 71 percent in 2011 from 66 percent in 2010. In each year from 2007 to 2010, the percentage of filings with Rule 10b-5 claims decreased relative to the previous year. The increase in 2011 may be driven by the number of Chinese reverse merger filings, of which 97.5 percent contained Rule 10b-5 claims. However, in 2011, 23 percent of filings, mostly M&A filings, did not have Rule 10b-5, Section 11, or Section 12(2) claims.

- The percentage of filings with Section 11 and Section 12(2) claims continued to decline in 2011. Class actions with Section 11 and Section 12(2) claims accounted for only 11 percent and 9 percent of filings, respectively.

- Underwriter defendants were named in 11 percent of initial complaints in 2011, up slightly from 10 percent in 2010 but below 17 percent in 2009.

- The incidence of initial complaints naming an auditor decreased slightly to 3 percent in 2011 from 4 percent in 2010.

- The percentage of filings with allegations regarding false forward-looking statements increased to 56 percent, the highest level in the past three years.

- Only 12 percent of 2011 filings contained allegations of insider trading. This is consistent with the incidence of such allegations in 2009 and 2010, but distinctly less than the incidence in 2007 and 2008.

- In 2011, the percentage of filings alleging violations of GAAP increased to 37 percent from 26 percent in 2010, the lowest level in the past five years. Part of the increase was driven by Chinese reverse merger filings.

- Over 70 percent of filings that alleged GAAP violations did not refer to an announcement by the company that it will or may restate its financial statements or that its financial statements were unreliable.

- In 2011, 24 percent of total filings alleged Internal Control Weaknesses.[15] However, 53 percent of filings that alleged GAAP violations claimed Internal Control Weaknesses, below the 2010 level but higher than that observed between 2007 and 2009.

- The percentage of filings that alleged Internal Control Weaknesses and referred to an announcement by the company of such weaknesses has remained low.

---

[14] The classifications are based on the first identified complaint. Additional allegations and defendants may be added in subsequent complaints and are not captured in these analyses.

[15] The SEC required accelerated filers and their auditors to report on internal controls (SOX 404 Reports) beginning with fiscal years ending on or after November 15, 2004.

© 2012 by Cornerstone Research. All Rights Reserved.

## CLASSIFICATION OF COMPLAINTS *continued*

**Figure 26**

### 2011 ALLEGATIONS BOX SCORE

| | Percentage of Total Filings | | | | |
|---|---|---|---|---|---|
| General Characteristics | 2007 | 2008 | 2009 | 2010 | 2011 |
| 10b-5 claims | 80% | 75% | 69% | 66% | 71% |
| Section 11 claims | 19 | 24 | 23 | 15 | 11 |
| Section 12(2) claims | 11 | 18 | 25 | 10 | 9 |
| No 10b-5, Section 11, or Section 12(2) claims | 5 | 3 | 1 | 23 | 23 |
| Underwriter defendant | 11 | 17 | 17 | 10 | 11 |
| Auditor defendant | 1 | 3 | 7 | 4 | 3 |
| **Allegations** | | | | | |
| Misrepresentations in financial documents | 92% | 93% | 89% | 93% | 94% |
| False forward-looking statements | 62 | 68 | 51 | 45 | 56 |
| Insider trading | 27 | 23 | 14 | 16 | 12 |
| GAAP Violations[1] | 44 | 42 | 37 | 26 | 37 |
| Announced Restatement[2] | 16 | 10 | 10 | 7 | 11 |
| Internal Control Weaknesses[3] | 16 | 13 | 14 | 17 | 20 |
| Announced Internal Control Weaknesses[4] | 7 | 4 | 4 | 3 | 6 |

1. First identified complaint includes allegations of GAAP Violations. In some cases, plaintiff(s) may not have expressly referenced GAAP: however, the allegations, if true, would represent GAAP Violations.

2. First identified complaint includes allegations of GAAP Violations and refers to an announcement during or subsequent to the class period that the company will restate, may restate, or has unreliable financial statements.

3. First identified complaint includes allegations of GAAP Violations and Internal Control Weaknesses over Financial Reporting.

4. First identified complaint includes allegations of Internal Control Weaknesses and refers to an announcement during or subsequent to the class period that the company has Internal Control Weaknesses over Financial Reporting.

© 2012 by Cornerstone Research. All Rights Reserved.

## NEW DEVELOPMENTS

### The SEC's Report on the Dodd-Frank Whistleblower Program

The SEC published its annual report on the Dodd-Frank Whistleblower Program in November 2011. This annual report was the first one published since the Final Rules, which specify the terms of the whistleblower program and establish procedures for submitting tips and applying for awards, became effective on August 12, 2011. Awards are made in the amount of 10 to 30 percent of the sanctions collected by the SEC.[16] Despite only seven weeks of available whistleblower data, there were 334 whistleblower tips received from August 12, 2011, through September 30, 2011.

The most common complaint categories were market manipulation, corporate disclosures and financial statements, and offering fraud. Together, these accounted for more than 47 percent of the tips received. The SEC received whistleblower tips from 37 states and 11 different foreign countries. California was the most prolific state in terms of tips received, followed by New York, Florida, and Texas. Foreign cases accounted for 9.6 percent of the tips received. China led the foreign countries in whistleblower submissions with 10 tips, followed by the United Kingdom with nine tips.[17]

The SEC report only has seven weeks of data and it may be too soon to draw any conclusions on trends, but it is expected that the SEC will continue to increase the number of actions it brings and the sanctions it enforces.[18]

---

[16] "Annual Report on the Dodd-Frank Whistleblower Program, Fiscal Year 2011" U.S. Securities and Exchange Commission, http://www.sec.gov/about/offices/owb/whistleblower-annual-report-2011.pdf.

[17] *Ibid.*

[18] "SEC Reports Record Year for Fraud Enforcements, Expects More in 2012," Law.com, http://www.law.com/jsp/cc/PubArticleCC.jsp?id=1202532662052&amp;SEC_Reports_Record_Year_for_Fraud_Enforcements_Expects_More_in_2012.

© 2012 by Cornerstone Research. All Rights Reserved.

## APPENDIX

**Appendix 1**

### FREQUENCY OF RESOLVED CASES ADVANCING
### TO DIFFERENT LITIGATION STAGES
### BY CIRCUIT
### 1996–2011

| | Number of Cases | | | | | | |
|---|---|---|---|---|---|---|---|
| Circuit | All Resolved Cases | Voluntarily Dismissed Prior to First Ruling on Motion to Dismiss | Settled Prior to First Ruling on Motion to Dismiss | Reached First Ruling on Motion to Dismiss | Settled After First Ruling on Motion to Dismiss[1] | Dismissed Prior to Ruling on Summary Judgment | Reached Ruling on Summary Judgment |
| 1st | 134 | 12 | 21 | 101 | 50 | 40 | 11 |
| 2nd | 542 | 47 | 100 | 395 | 169 | 193 | 33 |
| 3rd | 211 | 18 | 29 | 164 | 80 | 64 | 20 |
| 4th | 88 | 6 | 13 | 69 | 25 | 35 | 9 |
| 5th | 172 | 12 | 32 | 128 | 57 | 59 | 12 |
| 6th | 116 | 6 | 20 | 90 | 43 | 38 | 9 |
| 7th | 125 | 11 | 14 | 100 | 56 | 30 | 14 |
| 8th | 101 | 8 | 12 | 81 | 31 | 40 | 10 |
| 9th | 594 | 66 | 105 | 423 | 210 | 168 | 45 |
| 10th | 81 | 6 | 13 | 62 | 40 | 16 | 6 |
| 11th | 238 | 23 | 28 | 187 | 93 | 76 | 18 |
| D.C. | 13 | 2 | 3 | 8 | 2 | 5 | 1 |
| Total | 2,415 | 217 | 390 | 1,808 | 856 | 764 | 188 |

| | Percentage of All Resolved Cases | | | | | |
|---|---|---|---|---|---|---|
| Circuit | Voluntarily Dismissed Prior to First Ruling on Motion to Dismiss | Settled Prior to First Ruling on Motion to Dismiss | Reached First Ruling on Motion to Dismiss | Settled After First Ruling on Motion to Dismiss[1] | Dismissed Prior to Ruling on Summary Judgment | Reached Ruling on Summary Judgment |
| 1st | 9% | 16% | 75% | 37% | 30% | 8% |
| 2nd | 9% | 18% | 73% | 31% | 36% | 6% |
| 3rd | 9% | 14% | 78% | 38% | 30% | 9% |
| 4th | 7% | 15% | 78% | 28% | 40% | 10% |
| 5th | 7% | 19% | 74% | 33% | 34% | 7% |
| 6th | 5% | 17% | 78% | 37% | 33% | 8% |
| 7th | 9% | 11% | 80% | 45% | 24% | 11% |
| 8th | 8% | 12% | 80% | 31% | 40% | 10% |
| 9th | 11% | 18% | 71% | 35% | 28% | 8% |
| 10th | 7% | 16% | 77% | 49% | 20% | 7% |
| 11th | 10% | 12% | 79% | 39% | 32% | 8% |
| D.C. | 15% | 23% | 62% | 15% | 38% | 8% |
| Total | 9% | 16% | 75% | 35% | 32% | 8% |

These figures are calculated using Classic Filings from 1996 to 2011 that have been resolved. Out of the 2,562 Classic Filings that were resolved, 2,415 have specified outcomes.
1. These cases were settled after the first ruling on motion to dismiss but before the first ruling on summary judgment.

© 2012 by Cornerstone Research. All Rights Reserved.

## APPENDIX *continued*

**Appendix 2**

FREQUENCY OF RESOLVED CASES ADVANCING
TO DIFFERENT LITIGATION STAGES
BY YEAR
1996–2011

| | | | | Number of Cases | | | |
|---|---|---|---|---|---|---|---|
| Year | All Resolved Cases | Voluntarily Dismissed Prior to First Ruling on Motion to Dismiss | Settled Prior to First Ruling on Motion to Dismiss | Reached First Ruling on Motion to Dismiss | Settled After First Ruling on Motion to Dismiss[1] | Dismissed Prior to Ruling on Summary Judgment | Reached Ruling on Summary Judgment |
| 1996 | 104 | 4 | 26 | 74 | 34 | 25 | 15 |
| 1997 | 160 | 9 | 34 | 117 | 66 | 34 | 17 |
| 1998 | 222 | 11 | 49 | 162 | 87 | 61 | 14 |
| 1999 | 199 | 8 | 26 | 165 | 83 | 65 | 17 |
| 2000 | 210 | 5 | 40 | 165 | 82 | 66 | 17 |
| 2001 | 169 | 9 | 27 | 133 | 79 | 37 | 17 |
| 2002 | 210 | 7 | 31 | 172 | 81 | 60 | 31 |
| 2003 | 180 | 15 | 26 | 139 | 72 | 60 | 7 |
| 2004 | 219 | 20 | 35 | 164 | 71 | 81 | 12 |
| 2005 | 168 | 16 | 19 | 133 | 62 | 61 | 10 |
| 2006 | 110 | 5 | 14 | 91 | 40 | 42 | 9 |
| 2007 | 151 | 12 | 23 | 116 | 49 | 58 | 9 |
| 2008 | 153 | 28 | 21 | 104 | 36 | 62 | 6 |
| 2009 | 78 | 17 | 8 | 53 | 11 | 36 | 6 |
| 2010 | 59 | 30 | 10 | 19 | 3 | 15 | 1 |
| 2011 | 23 | 21 | 1 | 1 | 0 | 1 | 0 |
| Total | 2,415 | 217 | 390 | 1,808 | 856 | 764 | 188 |

| | | | Percentage of All Resolved Cases | | | |
|---|---|---|---|---|---|---|
| Year | Voluntarily Dismissed Prior to First Ruling on Motion to Dismiss | Settled Prior to First Ruling on Motion to Dismiss | Reached First Ruling on Motion to Dismiss | Settled After First Ruling on Motion to Dismiss[1] | Dismissed Prior to Ruling on Summary Judgment | Reached Ruling on Summary Judgment |
| 1996 | 4% | 25% | 71% | 33% | 24% | 14% |
| 1997 | 6% | 21% | 73% | 41% | 21% | 11% |
| 1998 | 5% | 22% | 73% | 39% | 27% | 6% |
| 1999 | 4% | 13% | 83% | 42% | 33% | 9% |
| 2000 | 2% | 19% | 79% | 39% | 31% | 8% |
| 2001 | 5% | 16% | 79% | 47% | 22% | 10% |
| 2002 | 3% | 15% | 82% | 39% | 29% | 15% |
| 2003 | 8% | 14% | 77% | 40% | 33% | 4% |
| 2004 | 9% | 16% | 75% | 32% | 37% | 5% |
| 2005 | 10% | 11% | 79% | 37% | 36% | 6% |
| 2006 | 5% | 13% | 83% | 36% | 38% | 8% |
| 2007 | 8% | 15% | 77% | 32% | 38% | 6% |
| 2008 | 18% | 14% | 68% | 24% | 41% | 4% |
| 2009 | 22% | 10% | 68% | 14% | 46% | 8% |
| 2010 | 51% | 17% | 32% | 5% | 25% | 2% |
| 2011 | 91% | 4% | 4% | 0% | 4% | 0% |
| Total | 9% | 16% | 75% | 35% | 32% | 8% |

These figures are calculated using Classic Filings from 1996 to 2011 that have been resolved. Out of the 2,562 Classic Filings that were resolved, 2,415 have specified outcomes.
1. These cases were settled after the first ruling on motion to dismiss but before the first ruling on summary judgment.

© 2012 by Cornerstone Research. All Rights Reserved.

**APPENDIX** *continued*

**Appendix 3**

## FILINGS BY INDUSTRY

| Industry | Class Action Filings | | | | DDL | | | | MDL | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Average 1997–2010 | 2009 | 2010 | 2011 | Average 1997–2010 | 2009 | 2010 | 2011 | Average 1997–2010 | 2009 | 2010 | 2011 |
| Financial | 39 | 78 | 43 | 25 | $20 | $28 | $15 | $32 | $121 | $247 | $65 | $252 |
| Consumer Non-Cyclical | 45 | 34 | 58 | 46 | $39 | $8 | $37 | $8 | $143 | $33 | $233 | $30 |
| Industrial | 17 | 11 | 9 | 24 | $14 | $22 | $0 | $4 | $42 | $97 | $2 | $12 |
| Technology | 27 | 10 | 14 | 22 | $15 | $3 | $1 | $22 | $82 | $9 | $4 | $78 |
| Consumer Cyclical | 22 | 10 | 13 | 21 | $8 | $13 | $4 | $7 | $56 | $69 | $79 | $15 |
| Communications | 32 | 12 | 16 | 24 | $26 | $7 | $11 | $28 | $198 | $71 | $40 | $76 |
| Energy | 5 | 6 | 12 | 17 | $3 | $1 | $2 | $3 | $19 | $4 | $28 | $23 |
| Basic Materials | 4 | 5 | 6 | 5 | $1 | $2 | $1 | $2 | $8 | $22 | $23 | $8 |
| Utilities | 3 | 0 | 3 | 4 | $2 | $0 | $0 | $0 | $11 | $0 | $1 | $0 |
| Total | 193 | 166 | 174 | 188 | $129 | $84 | $72 | $106 | $680 | $550 | $474 | $493 |

Analysis excludes one filing in the Computer Services sector in 2006, one filing in an unknown sector in 2009, and two filings in the Government and Service sectors in 2010.

**Appendix 4**

## FILINGS BY COURT CIRCUIT

| Circuit | Class Action Filings | | | | DDL | | | | MDL | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Average 1997–2010 | 2009 | 2010 | 2011 | Average 1997–2010 | 2009 | 2010 | 2011 | Average 1997–2010 | 2009 | 2010 | 2011 |
| 1st | 10 | 5 | 7 | 7 | $6 | $14 | $2 | $1 | $23 | $51 | $8 | $3 |
| 2nd | 48 | 58 | 45 | 51 | $43 | $50 | $31 | $45 | $236 | $311 | $198 | $290 |
| 3rd | 16 | 13 | 14 | 14 | $21 | $1 | $12 | $2 | $74 | $7 | $54 | $3 |
| 4th | 7 | 3 | 6 | 9 | $3 | $2 | $0 | $1 | $15 | $9 | $4 | $6 |
| 5th | 13 | 10 | 8 | 12 | $9 | $1 | $1 | $0 | $46 | $14 | $10 | $1 |
| 6th | 10 | 5 | 10 | 9 | $8 | $1 | $1 | $1 | $32 | $6 | $6 | $13 |
| 7th | 10 | 8 | 13 | 6 | $7 | $5 | $11 | $0 | $30 | $12 | $43 | $2 |
| 8th | 8 | 2 | 10 | 7 | $4 | $0 | $3 | $3 | $16 | $2 | $26 | $5 |
| 9th | 48 | 41 | 51 | 54 | $19 | $4 | $9 | $50 | $161 | $65 | $102 | $162 |
| 10th | 6 | 7 | 1 | 8 | $3 | $5 | $0 | $0 | $14 | $53 | $0 | $3 |
| 11th | 18 | 15 | 9 | 10 | $6 | $1 | $3 | $2 | $28 | $21 | $19 | $5 |
| D.C. | 1 | 0 | 2 | 1 | $1 | $0 | $0 | $0 | $4 | $0 | $2 | $0 |
| Total | 194 | 167 | 176 | 188 | $129 | $84 | $72 | $106 | $680 | $550 | $474 | $493 |

© 2012 by Cornerstone Research. All Rights Reserved.

The authors request that you reference the Stanford Law School
Securities Class Action Clearinghouse and Cornerstone Research
in any reprint of the charts and tables included in this study. Please
direct any questions to:

Alexander Aganin

650.853.1660 or aaganin@cornerstone.com

**Boston**
617.927.3000

**Los Angeles**
213.553.2500

**Menlo Park**
650.853.1660

**New York**
212.605.5000

**San Francisco**
415.229.8100

**Washington**
202.912.8900

www.cornerstone.com

© 2012 by Cornerstone Research, Inc.
All Rights Reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C logo and design is a registered trademark of Cornerstone Research, Inc.