# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

LEHMAN BROTHERS SECURITIES AND
ERISA LITIGATION

This document applies to:

09 MD 2017 (LAK)

*In re Lehman Brothers Equity/Debt Securities
Litigation*, 08 Civ. 5523 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/29/12

**PRETRIAL ORDER NO. 35**
(Attorneys' Fees and Expenses)

LEWIS A. KAPLAN, *District Judge.*

   This securities class action was settled for an aggregate of $516,218,000 of which $90 million will be paid on behalf of the director and officer defendants and the balance on behalf of underwriter defendants. Lead Counsel apply for attorneys' fees of 16 percent of the recovery, which is $82,594,880, plus reimbursement of expenses. The proposed fees would be approximately 2.18 times the lodestar (the product of the hours expended and hourly rates) of $37,819,510, which reflects 91,876 hours devoted to the litigation.

   In passing on this application, the Court applies the factors referred to in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 42 (2d Cir. 2000). It notes that plaintiffs seek an award in terms of a percentage of the recovery. But use of that methodology, while certainly permissible, is not mandatory, the lodestar approach being appropriate also. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). So there is no need for any academic debate on the relative merits of these approaches, both in light of *McDaniel* and because the result would be the same here whichever were applied. Thus, the fact that the Court opts to express its rationale principally in terms of the lodestar approach ultimately is not material.

   Some of the *Golberger* factors warrant only minimal discussion. First, this was a big and complicated action. Second, the Court respects the performance of plaintiffs accomplished counsel. They did a great deal of work.[1] Third, despite the facts that virtually all securities class

---

[1] Although one might wonder whether all of the 91,876 hours used in computing the lodestar all were efficiently and usefully devoted to the matter, the Court assumes for present purposes that they were. This is supported by the fact that the bankruptcy examiner, whose work is discussed below, devoted 111,000 hours to his investigation. Transcript, Apr. 12, 2012 ("Tr."), at 47-48. While his mission and that of plaintiffs' counsel were different, and

actions that survive motions to dismiss are settled and that the lawyers who bring those cases are paid fees, there often is a risk of dismissal on the pleadings, and that was so here during the early stages of the case. Finally, it bears note that class counsel usually are compensated only many months or years after much of the work is done and overhead costs borne. On the other hand, there are some factors that cut in favor of an award lower than the nearly $83 million requested – which would amount to an average of almost $900 per hour for each of the 91,876 hours claimed.

First, plaintiffs' counsel here had the benefit of the quite extraordinary report of the examiner appointed by the Bankruptcy Court in the Lehman bankruptcy. It was that report that revealed the facts regarding Lehman's use of and accounting for Repo 105s, which became the most important part of plaintiffs' case.[2] Indeed, the second amended complaint, which antedated the examiner's report, did not even mention that subject while the third amended complaint ("TAC") relied heavily upon it – as did the Court in denying in significant respects defendants' motions to dismiss the TAC.[3] Thus, plaintiffs took great and good advantage of the examiner's report, which became a roadmap for the most significant part of their case.[4] They were right to do so. But the fact remains that this very significant factor in the denial of much of the motions to dismiss and, doubtless, in the price defendants eventually paid to settle was the product of the examiner's efforts. And just to be quite clear, this implies no criticism of plaintiffs' counsel, who lacked the examiner's access to the evidence. But it does bear on the amount of compensation appropriately paid to plaintiffs' counsel, particularly any amount above the lodestar.

Second, while the Court acknowledges that plaintiffs' counsel faced risks in this case, those should not be overstated.

Third, the objective in compensating common fund counsel is subject to the overriding requirement of reasonableness. Lead Counsel here claim that the settlement represents recovery of 13 percent of the theoretical maximum allowable statutory damages of $3.3 billion and a significantly larger percentage of reasonably recoverable damages.[5] But there is no contention that the class members as a result of these settlements will recover even a third of their reasonably

---

while he had access to far more evidence than did plaintiffs' counsel, the comparison tends to corroborate the order of magnitude of the plaintiffs' effort and therefore of the Court's assumption.

[2] *See In re Lehman Bros. Secur. and ERISA Litig.*, 799 F. Supp.2d 258 (S.D.N.Y. 2011).

[3] *See id.*

[4] Lead Counsel candidly acknowledged that the examiner's report provided plaintiffs with important information they had not had earlier, particular with respect to Repo 105s. *See* Tr., Apr. 12, 2012, at 6-7.

[5] *Id.* at 9-10.

recoverable damages. Yet counsel seek to recovery 2.18 times the reasonable value of their services measured by their hourly rates and the number of hours devoted to the task. Moreover, even acknowledging that class counsel, under existing law, almost always receive a greater proportion of their lodestar fee measures than the class members receive of their losses, the Court in good conscience is bound to question a legal fee of over $80 million, which would compensate the attorneys at a rate of more than $900 per hour. We live in hard times. A fee in excess of $82 million, reflecting about 2.18 times the notional reasonable value of the services rendered, even granting that some premium over the lodestar is appropriate, simply seems too much.

All of this said, the Court is frank to say that there is no magic to setting a fee in this case. There is no figure that is right or wrong. But it seems to the undersigned that a lodestar multiplier of 1.5 is appropriate in light of all of the circumstances, given the legal standards that govern this determination. The expenses sought are appropriate.

Accordingly, the motion for attorneys fees and expenses [09 MD 2017 DI 805, 08 Civ. 5523 DI 341] is granted to the extent that the Court awards attorneys' fees in the aggregate amount of $56,729,265[6] plus expenses in the amount of $1,619,669.27, to be paid *pro rata* out of the two separate settlement funds.

SO ORDERED.

Dated:   June 29, 2012

_____
Lewis A. Kaplan
United States District Judge

---

[6] For those keeping score in terms of the percentage of the recovery, this represents 10.99 percent of the aggregate amount of the settlements.