UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE CITIGROUP INC.
SECURITIES LITIGATION

07 Civ. 9901 (SHS)

ECF Case

## RESPONSES OF THE CITIGROUP DEFENDANTS TO OBJECTIONS TO THE PROPOSED SETTLEMENT

Brad S. Karp
Richard A. Rosen
Susanna M. Buergel

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

1285 Avenue of the Americas
New York, New York 10019-6064
Tel.  (212) 373-3000

Charles E. Davidow
Jane B. O'Brien

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

2001 K Street NW
Washington, DC 20006-1047
Tel.  (202) 223-7300

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 2

I.     The Settlement Is Fair, Reasonable and Adequate. ................................. 2

II.    The FA CAP Plaintiffs' Objection Does Not Provide Any Basis for
       Disapproving the Settlement ..................................................................... 5

       A.    Lead Plaintiffs Were Duly Authorized to Settle Claims of Any FA
             CAP Participants Who Are Members of the Settlement Class and
             Adequately Represented Their Interests. ........................................ 6

       B.    FA CAP Plaintiffs' Claims Arising Out of the July 2008 FA CAP
             Award Have Not Been Released. .................................................... 9

       C.    The Settlement's Release of Section 12(a)(2) Claims for FA CAP
             Participants Who Elect to Participate in the Settlement Is Not
             Unfair. ........................................................................................... 12

III.   The Lack of Contribution by Individual Defendants Does Not Impact the
       Fairness of the Settlement ....................................................................... 14

CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adair* v. *Bristol Tech. Sys., Inc.*,
  No. 97 Civ. 5874 RWS, 1999 WL 1037878
  (S.D.N.Y. Nov. 16, 1999) ............................................................................................3

*In re Auction Houses Antitrust Litig.*,
  42 F. App'x 511 (2d Cir. 2002) ..................................................................................13

*In re Bear Stearns Cos. Inc. Sec., Deriv. & ERISA Litig.*,
  08 MDL No. 1963(RWS) (S.D.N.Y. 2012) ................................................................17

*Berry Petroleum Co.* v. *Adams & Peck*,
  518 F.2d 402 (2d Cir. 1975) .........................................................................................8

*Brecher* v. *Citigroup Inc.*,
  No. 09 Civ. 7359 (SHS), 2011 WL 5525353
  (S.D.N.Y. Nov. 14, 2011) .............................................................................................5

*In re Citigroup Inc. Sec. Litig.*,
  753 F. Supp. 2d 206 (S.D.N.Y. 2010) ........................................................................14

*City of Detroit* v. *Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .........................................................................................2

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992) .........................................................................................7

*Duban* v. *Diversified Mtg. Investors*,
  87 F.R.D. 33 (S.D.N.Y. 1980) ....................................................................................14

*Dura Pharm., Inc.* v. *Broudo*,
  544 U.S. 336 (2005) ....................................................................................................10

*Fait* v. *Regions Fin. Corp.*,
  65 F.3d 105 (2d Cir. 2011) .........................................................................................14

*Falkowski* v. *Imation Corp.*,
  309 F.3d 1123 (9th Cir. 2002) ....................................................................................10

*Hanlon* v. *Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .......................................................................................8

<u>Page(s)</u>

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  Master Files Nos. 05 Civ. 10240(CM), 05 CV 10287,
  05 CV 10515, 06 CV 00304, 06 CV 00347,
  06 CV 01684, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................................3

*Janus Capital Grp., Inc.* v. *First Deriv. Traders*,
  131 S. Ct. 2296 (2011)...................................................................................................16, 17

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ................................................................................................15

*In re Lehman Bros. Sec. & ERISA Litig.*,
  No. 09 MD 2017 (LAK), 2012 WL 1920543
  (S.D.N.Y. May 24, 2012) .......................................................................................................15

*Mills* v. *Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) ..................................................................................................10

*National Super Spuds, Inc.* v. *New York Mercantile Exchange*,
  660 F.2d 9 (2d Cir. 1981) ......................................................................................................13

*Wal-Mart Stores, Inc.* v. *Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...............................................................................................2, 13

*In re Warner Commc'ns Sec. Litig.*,
  798 F.2d 35 (2d Cir. 1986) ....................................................................................................14

*Yoder* v. *Orthomolecular Nutrition Inst., Inc.*,
  751 F.2d 555 (2d Cir. 1985) ..................................................................................................10

STATUTES

Del. Code Ann. tit. 8, § 145................................................................................................16

OTHER AUTHORITIES

Peter J. Wallison, *The WorldCom and Enron Settlements:*
  *Politics Rears Its Ugly Head,* Am. Enter. Inst. for
  Pub. Pol. Res. (March 2005), *available at*
  http://www.aei.org/files/2005/03/01/20050225_18033MarchFSOnewg.pdf.........................18

Defendants Citigroup Inc. ("Citigroup" or the "Company"), Charles Prince, Robert Rubin, Gary Crittenden, Robert Druskin, Thomas G. Maheras, Michael Stuart Klein, and David C. Bushnell (together, the "Citigroup Defendants") respectfully submit this memorandum in support of the Stipulation and Agreement of Settlement of Lead Plaintiffs, Named Plaintiffs and Additional Proposed Named Plaintiffs with the Citigroup Defendants (the "Settlement") and in response to certain of the objections to the Settlement received on or before December 21, 2012.  Because the Settlement is fair, reasonable and adequate, as described more fully below, this Court should approve the terms of the Settlement.[1]

## PRELIMINARY STATEMENT

In this case, Lead Plaintiffs assert claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), principally alleging that Citigroup made material misrepresentations to investors in its financial statements and earnings calls regarding the extent and value of its subprime-related exposure to super-senior tranches of collateralized debt obligations ("CDOs") between February 2007 and April 2008 (the "Class Period").  Following almost five years of litigation, extensive motion practice, the production of approximately 40 million pages of documents, nearly 50 depositions, the exchange of expert discovery in connection with Lead Plaintiffs' motion for class certification, and two days of arm's-length mediation before the Hon. Layn Phillips (Ret.), the parties reached an agreement to settle this litigation.  Pursuant to the Settlement, Citigroup has agreed to pay $590 million in exchange for the release of all

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning set forth in the Settlement.

the Settlement Class's claims.  The Citigroup Defendants respectfully submit that this is a

fair, reasonable and adequate resolution of this litigation and should be approved.

**ARGUMENT**

**I.      THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.**

A district court should approve a class action settlement if it finds that the

settlement is "fair, adequate, and reasonable, and not a product of collusion."  *See Wal-*

*Mart Stores, Inc*. v. *Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A*. v.

*Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  This Court should assess the fairness of the

Settlement by looking both at the substantive terms of the agreement and the negotiating

process that led to it.  *Id*. at 116.  While a presumption of fairness attaches to a settlement

reached through arm's-length negotiations of experienced counsel after meaningful

discovery, such as this one, courts within the Second Circuit evaluate the substantive

fairness of a class action settlement using the "*Grinnell* factors."  *Id*. at 117 (citing *City of*

*Detroit* v. *Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974), *abrogated on other grounds*

*by Goldberger* v. *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

Lead Plaintiffs previously have addressed the *Grinnell* factors in their

motion for final approval of the Settlement, so we limit our discussion of *Grinnell* to just

one of these factors:  the risk of establishing liability, which the Citigroup Defendants

submit is particularly high in this case.  *See Grinnell Corp.*, 448 F.2d at 454.  Among

other significant risks, the Citigroup Defendants believe that Lead Plaintiffs face a

significant likelihood of being unable ultimately to prove the falsity of the alleged

misstatements at issue, the materiality of the alleged misstatements prior to the third

quarter of 2007, that the alleged misstatements actually caused plaintiffs' losses, or that

the Citigroup Defendants acted intentionally to mislead investors at any time—each an essential element of Lead Plaintiffs' claims.

In particular, with respect to the difficulty Lead Plaintiffs will have proving scienter, we note that the Securities and Exchange Commission ("SEC") and another federal district court judge previously have reached the conclusion that the evidence does not support a claim for intentional fraud in connection with Citigroup's subprime-related disclosures.[2]  Following an exhaustive, multi-year investigation into Citigroup's subprime-related disclosures, involving the review of 28 million pages of documents (also produced to Lead Plaintiffs in this litigation) and interviews of numerous current and former Citigroup employees, the SEC expressly determined that scienter-based fraud claims were *not* supported by the evidence.  As the SEC explained to the Hon. Ellen Huvelle of the United States District Court for the District of Columbia, in connection with seeking approval of its settlement with Citigroup:  "[T]he evidence did not warrant the assertion of scienter-based claims under Section 10(b) of the Exchange Act or other scienter-based fraud provisions of the federal securities laws." (Ex. 1 at 4–5.)[3]  According to the

---

[2]   The difficulty Section 10(b) plaintiffs face in proving scienter often has been cited as a litigation risk weighing strongly in favor of settlement approval.  *See, e.g.*, *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, Master Files Nos. 05 Civ. 10240(CM), 05 CV 10287, 05 CV 10515, 06 CV 00304, 06 CV 00347, 06 CV 01684, 2007 WL 2230177, at *7 (S.D.N.Y. July 27, 2007) (noting plaintiffs' "high burden in demonstrating that Defendants acted with scienter" as significant litigation risk and approving class action settlement); *Adair* v. *Bristol Tech. Sys., Inc.*, No. 97 Civ. 5874 RWS, 1999 WL 1037878, at *2 (S.D.N.Y. Nov. 16, 1999) (approving settlement and observing that "Plaintiffs would have had to prove that Defendants acted with *scienter*, a difficult burden to meet"); (*see also* Pls.' Mem. 13–16 (outlining "significant risks" faced by plaintiffs in establishing liability)).

[3]   Citations in the form of Ex. __ refer to exhibits annexed  to the Declaration of Richard A. Rosen in Support of the Responses of the Citigroup Defendants to Objections to the Proposed Settlement, dated January 18, 2013.  Citations in the form of Pls. Mem. __ refer to Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Proposed Class Action Settlement and Approval of Plan of Allocation, dated December 7, 2012.  Citations in the form of FA CAP Br. __ refer to the Memorandum of Points and Authorities in Support of FA CAP Lead Plaintiffs' Objection to the Proposed Settlement and Plan of Allocation, dated December 21, 2012, filed by named plaintiffs in *Brecher* v. *Citigroup Inc., et al.*, 09 Civ. 7359 (SHS) (S.D.N.Y.) (the "FA CAP Plaintiffs").  Citations in the form of Settlement ¶ __ refer to the Stipulation and Agreement of Settlement, dated August 28,

SEC, its investigation did not support the view that "certain individuals intentionally [failed to include] information about these assets in the disclosures," but instead reflected "a breakdown in communication in the disclosure process." (Ex. 2 at 11:3–6.) After hearing oral argument, reviewing extensive written submissions, and considering several key pieces of evidence, Judge Huvelle agreed:  "I understand why there has not been a charge of scienter." (Ex. 3 at 57:17.)

        In light of the substantial risk that Lead Plaintiffs would be unable to survive a motion for summary judgment or to prevail at trial, the resolution of this matter for $590 million is plainly fair, reasonable and adequate, and the Settlement should be approved.[4]

---

2012, as modified by the Amendment to Stipulation and Agreement of Settlement, dated October 18, 2012.  Citations in the form of Preliminary Approval Order ¶ __ refer to the Order Preliminarily Approving Proposed Settlement and Providing for Notice, dated August 29, 2012, as modified by the Court on September 6, 2012 and September 28, 2012.

[4]    Certain objectors to the Settlement contend that Citigroup, rather than Settlement Class members, should be responsible for providing any trade information required by the Preliminary Approval Order because Citigroup is allegedly already in possession of such information.  (*See* Objection to Proposed Settlement by Steve A. Miller ¶3(a), Dec. 20, 2012; Objection of David E. Breskin ¶¶ 1–3, Dec. 19, 2012; Objection of Paul L. Agnew 1 (undated); *see also* Letter from Dennis DeConcini to Hon. Sidney H. Stein (Dec. 28, 2012).)  There are several reasons why this objection is without merit.

First, Citigroup does not possess any information regarding Citigroup shares held in street name, which is the case for the vast majority of Citigroup stock.  For Settlement Class members whose shares are held in street name by their broker-dealers, such as Messrs. Miller, Breskin and Agnew, as well as Senator DeConcini, it is the broker-dealer that possesses transaction-level information, not Citigroup.  Moreover, even for Settlement Class members that are registered in their own names as shareholders of record with Citigroup's transfer agent, the transfer agent's transaction records for these shareholders is not an accurate and complete source of actual purchases and sales of Citigroup stock, as the transaction records merely reflect transfers in and out of a shareholder's registered account.

Second, even if Citigroup did have access to relevant data, which it does not, there is no reason to require Citigroup to make this undertaking for all members of the Settlement Class.  The great majority of Settlement Class members will be able to gather the information necessary on their own, and many class members ultimately do not opt out, object, or file proofs of claim at all.  An order requiring Citigroup to gather and provide trading information would be unprecedented in our experience, and no objector cites any authority imposing such a requirement.  However, should the Court wish to take this dramatic step, the costs properly should be borne by the Settlement Fund.

## II.     THE FA CAP PLAINTIFFS' OBJECTION DOES NOT PROVIDE ANY BASIS FOR DISAPPROVING THE SETTLEMENT.

As the Court is aware, there are several related putative class actions pending before this Court asserting claims arising out of substantially the same events and allegations at issue in this case.  One of these actions, *Brecher* v. *Citigroup Inc., et al.*, 09 Civ. 7359 (SHS) (S.D.N.Y.) (the "FA CAP Action"), was brought on behalf of a putative class of Citigroup financial advisors who acquired Citigroup common stock through the Company's voluntary Financial Advisor Capital Accumulation Program ("FA CAP" or the "Program").  After the FA CAP Plaintiffs' first amended complaint was dismissed in its entirety, they were granted leave to replead (i) a Section 10(b) claim only for the same time period for which Exchange Act claims were sustained in this case—*i.e.*, from February 2007 through April 2008—and (ii) a Section 12(a)(2) claim under the Securities Act of 1933 (the "Securities Act") for alleged misrepresentations relating to CDO and SIV asset quality and valuation, loan loss reserves and capital adequacy.  *Brecher* v. *Citigroup Inc.*, No. 09 Civ. 7359 (SHS), 2011 WL 5525353, at *7 (S.D.N.Y. Nov. 14, 2011).  Defendants' motion to partially dismiss FA CAP Plaintiffs' second amended complaint currently is pending before the Court.  FA CAP Plaintiffs have not yet moved to certify a class.

Named plaintiffs in the FA CAP Action have filed an objection to the Settlement on the following grounds:  (i) Lead Plaintiffs were not authorized to settle the claims of FA CAP participants and did not adequately represent their interests; (ii) the Settlement releases claims arising out of shares acquired by FA CAP participants pursuant to the July 2008 FA CAP award for no consideration; and (iii) the Settlement does not compensate FA CAP participants for their Securities Act claims.  (FA CAP Br.

1–2.)  These objections are without merit and do not justify FA CAP Plaintiffs' request to

disapprove the Settlement in whole or in part.

> ### A.  Lead Plaintiffs Were Duly Authorized to Settle Claims of Any FA CAP Participants Who Are Members of the Settlement Class and Adequately Represented Their Interests.

FA CAP Plaintiffs argue that the Settlement is unfair because plaintiffs'

counsel in this action lacked the authority to settle the claims alleged in the FA CAP

Action and failed adequately to represent the interests of the Program participants.  (FA

CAP Br. 12.)  Neither of these arguments warrant disapproval of the Settlement.

First, FA CAP Plaintiffs contend that when Judge Lorenz of the United

States District Court for the Central District of California entered an order appointing

lead counsel (the "FA CAP Order"), the order conferred on FA CAP Plaintiffs' counsel

exclusive authority to conduct settlement negotiations on behalf of the members of that

putative class.  (*Id*. at 13.)  Thus, they argue that because FA CAP Plaintiffs' counsel did

not have a seat at the negotiating table, the Settlement is unfair and should be rejected.[5]

(*Id*. at 13–14.)  This objection ignores the undisputed fact that certain putative members

of the FA CAP class also are members of the Settlement Class in <u>this</u> action.  Although

the precise degree of overlap has been disputed by FA CAP Plaintiffs, *see infra* Part II.B,

all parties—including the FA CAP Plaintiffs—agree that FA CAP participants who were

awarded shares through the Program on July 1, 2007 and January 2, 2008 are members of

the Settlement Class.  (*See* Settlement ¶ 1(gg).)  This Court appointed Lead Plaintiffs'

counsel to represent this class both as interim lead counsel and lead class counsel, duly

---

[5]    FA CAP Plaintiffs conspicuously do not argue that counsel's lack of authority to engage in settlement negotiations on behalf of FA CAP participants has invalidated the Settlement and its releases as to members of the putative FA CAP Action class only.  Rather, they argue that this alleged deficiency renders the Settlement unfair as to the entire Settlement Class.

authorizing them to represent all members of the Settlement Class—including any FA

CAP participants who also are members of the Settlement Class.  (Ex. 4 ¶ 4; Preliminary

Approval Order ¶ 3.)  That the Settlement Class in this action includes members of a

putative class in another action—a case in which no motion for class certification has

been made, no class has been certified, and which already has been dismissed once, in its

entirety—has no bearing on the fairness of the Settlement.  Lead Plaintiffs in this action

were authorized to represent all members of the Settlement Class, including FA CAP

participant members, and acted well within their authority in reaching this Settlement.[6]

FA CAP Plaintiffs also overstate the importance and meaning of the FA

CAP Order.  The FA CAP Order governs only settlement negotiations in the FA CAP

Action itself; it did not, and could not, grant FA CAP Plaintiffs' counsel the sole

authority to settle claims on behalf of putative FA CAP class members in an entirely

separate litigation with an overlapping putative class definition.  The FA CAP Order did

not confer on FA CAP Plaintiffs' counsel any right to participate in settlement

negotiations in this action, and their absence from the negotiations has no effect on the

fairness of the Settlement.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285,

293 (2d Cir. 1992) (rejecting argument that objectors' "absence from negotiations

irreparably tainted the settlement process" and noting that including all claimants in

negotiations would hinder the possibility of settlement).

Ultimately, FA CAP Plaintiffs' argument is an assertion that counsel has

the right to object to or opt out of the Settlement on behalf of the entire putative class in

---

[6]    Whether or not the FA CAP Action was formally consolidated into this litigation pursuant to the Case Management Order is irrelevant.  (*See* FA CAP Br. 13.)  Members of the putative class FA CAP Plaintiffs purport to represent remain members of the Settlement Class in this action regardless of whether their lawsuit is a separate litigation or not.  FA CAP Plaintiffs have not argued otherwise.

the FA CAP Action.  Counsel to FA CAP Plaintiffs cannot make that decision for absent Program participants.  As the Second Circuit has explained, "[t]he decision regarding which of two classes a plaintiff wishes to belong to is as important as the decision whether he will remain in a class or proceed on his own.  That decision must be made by the individual after notice of his options."  *Berry Petroleum Co.* v. *Adams & Peck*, 518 F.2d 402, 412 (2d Cir. 1975) (requiring attorneys for uncertified class to notify prospective members of the putative class and receive authorization before withdrawing any putative class member from the certified class), *abrogated on other grounds by Menowitz* v. *Brown*, 991 F.2d 36, 41 (2d Cir. 1993).  It is well settled that the right to opt out of a class action is an individual right; in accordance with due process, named plaintiffs may not exercise the right to opt out in a representative capacity on behalf of a putative class.  *See, e.g.*, *Berry Petroleum Co.*, 518 F.2d at 411–12; *Hanlon* v. *Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998).  This is especially true where, as in the FA CAP Action, a class has not even been certified.  Recognizing the FA CAP participants' position and their individual right to opt out, the notice of the Settlement disseminated to potential Settlement Class members expressly stated that FA CAP participants could be members of the putative FA CAP Action class and advised them of their right to opt out in order to preserve those claims.  (Preliminary Approval Order Ex. 1 ¶ 48 (class notice).)

Second, FA CAP Plaintiffs argue that Lead Plaintiffs in this action did not adequately represent the interests of the putative FA CAP Action class because Lead Plaintiffs' counsel was unfamiliar with the precise mechanics of the Program prior to negotiating the Settlement.  (*See* FA CAP Br. 14–17.)  Again, FA CAP Plaintiffs attach too much significance to their allegedly unique position.  Lead Plaintiffs and FA CAP

8

participants possess the same cause of action based on the same allegations and facts and purchased the same type of security.  The manner of purchase has no bearing on the adequacy of representation in this case.  Indeed, none of the allegations in this case or in the FA CAP Action depend in any way on the manner in which shareholders acquired their stock.  In any event, due process does not require that class representatives acquire their securities in the same manner as all class members, or that class counsel study the process by which every member in that class received his or her shares.

Moreover, FA CAP Plaintiffs' contention that Program participants have suffered a disadvantage because they lacked their own representation in these settlement negotiations is belied by the recovery they stand to receive under the Settlement. Program participants purchased their shares at a 25% discount to the average of the closing prices on the last trading day of each of the six months before the shares were awarded (Ex. 5 at 4), yet are eligible to receive undiscounted damages under the terms of the Settlement.  Under such circumstances, FA CAP Plaintiffs cannot credibly argue that FA CAP participants were not adequately represented by Lead Plaintiffs in this Settlement.

**B.    FA CAP Plaintiffs' Claims Arising Out of the July 2008 FA CAP Award Have Not Been Released.**

FA CAP Plaintiffs assert that the Settlement is unfair because it purportedly releases the claims of Program participants awarded shares on July 1, 2008 without compensation.  As set forth in the Settlement, however, only claims "arising out of or relating to investments in . . . Citigroup common stock through April 18, 2008, inclusive" are released.  (Settlement ¶ 1(cc)(i).)  The Citigroup Defendants and Lead Plaintiffs previously have advised FA CAP Plaintiffs that claims arising out of the July

2008 award will <u>not</u> be released by the Settlement.  Because the date that shares are awarded to participants pursuant to the Program is the relevant date for determining membership in the Settlement Class, the July 2008 award falls outside the scope of the Settlement's release (and the Settlement Class).  (Ex. 6 at 2; *see also* Settlement ¶ 1(gg).) In order to assert a claim under Section 10(b), a plaintiff must, among other things, allege a purchase (or sale) of the relevant security.  *See Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 341–42 (2005).  The nature of the FA CAP transaction demonstrates that Program participants "purchased" or "acquired" their shares on the date the shares were awarded to them.

Specifically, under the Exchange Act, the grant of shares pursuant to a voluntary compensation plan is a "sale" by the employer (and thus a "purchase" by the employee).  *See Mills* v. *Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Yoder* v. *Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 558–61 (2d Cir. 1985); *Falkowski* v. *Imation Corp.*, 309 F.3d 1123, 1129–30 (9th Cir. 2002), *abrogated on other grounds as recognized by Proctor* v. *Vishay Intertech. Inc.*, 584 F.3d 1208 (9th Cir. 2009).  In this instance, the number of shares awarded and the price paid under the Program were not ascertainable until the day before those shares were awarded or granted under the Program, because CAP shares are priced at a 25% discount from the average of the closing prices of Citigroup common stock on the last trading day of each of the six months prior to the award date.  (Ex. 5 at 4.)

Moreover, FA CAP participants had no ownership interest in the CAP shares prior to the award date.  Only *after* the award date were CAP share recipients able to exercise any rights as shareholders or receive dividends.  (*Id.* at 10.)  Likewise, prior to

the award date, if a Program participant's employment was terminated for any reason, she would not be entitled to any Citigroup shares; rather, she would receive a cash payment equal to the amount of compensation she would have received had she not elected to participate in FA CAP for that period.  (*Id.* at 9.)  The conclusion that, under these circumstances, CAP shares were acquired on the relevant award date is reinforced further by FA CAP Plaintiffs' own PSLRA certifications, in which they identified their purchases of Citigroup stock to have occurred on the dates they were awarded shares pursuant to the FA CAP plan.  (Exs. 7–12.)  In sum, because the July 2008 award falls outside the scope of the Settlement Class, recipients of the award are not class members based on those awards and their claims relating to those awards have not been released.

FA CAP Plaintiffs argue that recipients of the July 2008 award should be considered members of the Settlement Class because (i) the price of the CAP shares was calculated, in part, using month-end prices from January, February, and March 2008 and (ii) the CAP shares were paid for in part by compensation deducted from Program participants' pay during the Class Period.  (FA CAP Br. 17–22.)  The fact that three of the six month-end prices used to calculate the cost of the shares fell within the Class Period is irrelevant, however, to the question of when FA CAP participants acquired the shares.  The price of the shares (and the number to be awarded) could not be ascertained at the end of January, February, or March 2008, and as of that time FA CAP participants had not purchased and did not own any of the shares eventually awarded in July.  Instead, the average month-end prices for these three months are merely an input into the calculation of a price determined on the last day of June—more than two months after the conclusion of the Class Period.  Nor does the fact that FA CAP participants set aside

11

compensation earned during the Class Period to pay for shares purchased later change the analysis.  FA CAP Plaintiffs cite no authority in support of their novel theory, and the Citigroup Defendants are aware of none.

Even if FA CAP Plaintiffs were correct that some portion of the July 2008 award should come within the scope of the Settlement—which the Citigroup Defendants dispute—the Settlement should nonetheless be approved as fair.  In the event the Court were to determine that FA CAP Plaintiffs' theory has merit, the Plan of Allocation could be modified to account for these additional claims.  Under the terms of the Settlement, modifications to the Plan of Allocation do "not affect the enforceability of the Settlement, provide any of the Parties with the right to terminate the Settlement, or impose an obligation on the Citigroup Defendants to increase the consideration paid in connection with the Settlement."  (*See* Settlement ¶ 7.)

**C.     The Settlement's Release of Section 12(a)(2) Claims for FA CAP Participants Who Elect to Participate in the Settlement Is Not Unfair.**

FA CAP Plaintiffs also contend that the Settlement is unfair because it allegedly releases, "without compensation," claims they have asserted in the FA CAP Action under Section 12(a)(2) of the Securities Act.  (*See* FA CAP Br. 22–23.)  The Settlement releases "all claims of every nature and description, known and unknown, arising out of or relating to investments in . . . Citigroup common stock through April 18, 2008, inclusive . . . ."  (Settlement ¶ 1(cc)(i).)  It is true, therefore, that FA CAP participants who are members of the Settlement Class who did not timely opt out of the Settlement will release any other claims they may have arising out of investments in Citigroup common stock made prior to April 18, 2008, including potential claims under

Section 12(a)(2).[7]  But the requirement that Settlement Class members give up their right to pursue any additional claims they may have in exchange for their participation in the Settlement is commonplace, and does not render the release unfair.  *See Wal-Mart Stores, Inc.* v. *Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").  Here, even though Lead Plaintiffs did not bring a Section 12 claim, the allegations in both this action and the FA CAP Action concern the same conduct, disclosures and underlying securities.  Indeed, vast swathes of the second amended complaint in the FA CAP Action were copied and pasted from the operative complaint in this action.[8]  Like other Settlement Class members, many of whom may also have other causes of action arising out of their investments in Citigroup common stock, FA CAP participants were free to opt out of the Settlement if they believed they might achieve a greater recovery by continuing to pursue their Securities Act claims.

        In any event, FA CAP Plaintiffs' Section 12(a)(2) claims are extremely weak and do not warrant additional compensation.  As set forth more fully in defendants'

---

[7]    Any Section 12(a)(2) claims arising out of the July 2008 award, however, will not be released by the Settlement.  (*See supra* Part II.B.)

[8]    FA CAP Plaintiffs' reliance on *National Super Spuds, Inc.* v. *New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981), and *In re Auction Houses Antitrust Litigation*, 42 F. App'x 511 (2d Cir. 2002), is misplaced.  In both cases, the "uncompensated claims" the settlement agreements at issue purported to release stemmed from wholly distinct factual elements that undermined the alignment of interests between members of the class.  In *Super Spuds*, a case concerning potato futures contracts, the claimant's payment depended on the status of her contract; only liquidated contracts were eligible for the settlement, while claims concerning unliquidated contracts were released.  660 F.2d at 17.  In *Auction Houses*, payment depended on the method of the claimant's purchase; only purchases made in domestic auctions were eligible, while claims concerning foreign auction purchases were released.  42 F. App'x at 513.  No such factual distinctions are present here.

pending motion to dismiss, FA CAP Plaintiffs' Section 12(a)(2) claims were not timely brought under the Securities Act's statute of repose and one-year statute of limitations and are not adequately pleaded under the Second Circuit's decision in *Fait* v. *Regions Financial Corp.*, 65 F.3d 105 (2d Cir. 2011).  Defs.' Mem. of Law in Support of Their Mot. to Dismiss the Second Am. Consol. Class Action Compl., *Brecher* v. *Citigroup Inc.*, 09 Civ. 7359 (SHS) (S.D.N.Y. Dec. 21, 2011), Dkt No. 35.

## III.  THE LACK OF CONTRIBUTION BY INDIVIDUAL DEFENDANTS DOES NOT IMPACT THE FAIRNESS OF THE SETTLEMENT.[9]

The fact that the parties have agreed that Citigroup will pay the entire Settlement Amount, without contribution from any of the Individual Defendants,[10] does not render the Settlement unfair or unreasonable.  It is well established that a court's obligation in reviewing a class action settlement is limited to determining whether the aggregate settlement is fair to the class and does not extend to apportioning liability among defendants.  *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("If the total compensation to class members is fair, reasonable, and adequate, the court is not required to supervise how the defendants apportion liability for that compensation among themselves." (citing *Masterson* v. *Pergament*, 203 F.2d 315, 330 (6th Cir.), *cert. denied*, 346 U.S. 832 (1953))); *Duban* v. *Diversified Mtg. Investors*, 87 F.R.D. 33, 40

---

[9]   One putative objection to the Settlement draws attention to the lack of contribution by the Individual Defendants to the Settlement.  (*See* Amicus Curiae Objection of Robert Shattuck to Settlement and Attorneys [*sic*] Fees 6, Dec. 11, 2012.)  However, Mr. Shattuck's objection is not properly before the Court because he is not a member of the class.  (*Id.* 1 ("To my knowledge, I am not a member of the plaintiff class . . . ."); Preliminary Approval Order ¶ 18 ("Any Settlement Class Member who does not submit a valid and timely request for exclusion from the Settlement Class may file written objections to any aspect of the proposed Settlement . . . .").)

[10]   The remaining individual defendants in this action include: Charles Prince, Robert Rubin, Gary Crittenden, Robert Druskin, Thomas G. Maheras, Michael Stuart Klein, and David C. Bushnell (the "Individual Defendants").  Claims against Lew Kaden, Sallie Krawcheck, Steven Freiberg, Todd Thompson, John Gerspach, Stephen Volk, and Vikram Pandit were dismissed in their entirety at the motion to dismiss stage.  *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 249 (S.D.N.Y. 2010).

(S.D.N.Y. 1980) ("[T]he court cannot question the wisdom of the corporation in choosing to pay the cost of settlement in order to finally terminate the litigation . . . .").[11]

In this case, through arm's-length negotiations the parties have agreed that Citigroup will pay the entire $590 million into the Settlement Fund.  The Citigroup Defendants respectfully submit that this is a fair and reasonable way to resolve this litigation for several reasons.  First, none of the Individual Defendants is willing to contribute to the Settlement Amount, and Citigroup is not willing to settle the action without obtaining releases for each of the Individual Defendants.  The alternative to approving the Settlement, therefore, would be for the parties to complete discovery, proceed to motions for summary judgment and, if necessary, trial.  In light of the strength of the Citigroup Defendants' defenses, *see supra* Part I, and the inherent risks of continued litigation, there is a serious risk that in such a scenario the Settlement Class could receive no compensation for their claims whatsoever.  Such an outcome is undoubtedly not in the best interests of the class.  As Judge Kaplan recently observed, "[w]hile some may be concerned at the lack of any contribution by the former director and officer defendants to the settlement, Lead Counsel's judgment that the [settlement amount] bird in the hand is worth at least as much as whatever is in the bush, discounted for the risk of an unsuccessful outcome of the case, is reasonable." *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2012 WL 1920543, at *2 (S.D.N.Y. May 24, 2012).

---

[11]  *See also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) ("[F]or Rule 23(e) to be satisfied, the court must determine only that sufficient compensation is being paid to the class, without necessarily speculating as to the appropriateness of the contributions of the various settling defendants.").

Second, the contribution by the Individual Defendants of some portion of the total amount would not enhance recovery by the Settlement Class. Either way, the Settlement Class will receive $590 million—an amount for which no shareholder has articulated a reasoned basis for finding inadequate.

Third, pursuant to Citigroup's charter and by-laws, the Individual Defendants are indemnified to the fullest extent permitted under Delaware law. *See* Del. Code Ann. tit. 8, § 145. As a result, if Individual Defendants did contribute to the Settlement, they would be entitled to be fully reimbursed by the Company. Thus, whether Individual Defendants were to "contribute" or not, Citigroup would be contractually obligated to reimburse them for the full amount paid into the Settlement Fund.

The Citigroup Defendants also note that the claims against the Individual Defendants in this case are extremely weak—a point that underscores the reasonableness of the parties' determination that only Citigroup should pay to resolve this action. As discussed above, the record is devoid of evidence that any Individual Defendant acted intentionally to mislead investors. The SEC investigated the same disclosures and ultimately concluded that the "evidence did not . . . clearly demonstrate an intent to deceive by Citigroup executives." (Ex. 1 at 4.) As a result, the SEC filed only negligence-based charges against Citigroup and administrative charges against only one of the Individual Defendants, former CFO Gary Crittenden. (*See* Ex. 13.)

In addition, if the parties were to continue to litigate this case, the claims against some or all of the Individual Defendants would likely be dismissed under the Supreme Court's decision in *Janus Capital Group, Inc.* v. *First Derivative Traders*, 131

S. Ct. 2296 (2011).  In *Janus*, the Supreme Court held that "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Id*. at 2302.  The vast majority of the Individual Defendants did not make or have ultimate authority for any allegedly false or misleading statement at issue in this matter.

Finally, contributions to the Settlement from the Individual Defendants would also be contrary to common practice.  Recent major class action settlements of financial crisis-related litigations have not involved any contribution from individual defendants.  *See, e.g.*, Am. Stip. and Agreement of Settlement ¶ 2, *In re Countrywide Fin. Corp. Sec. Litig.*, CV 07-05295 MRP (MANx) (C.D. Cal. 2011), Dkt No. 841; Stip. and Agreement of Settlement ¶ 5, *Pub. Emps. Ret. Sys. of Miss.* v. *Merrill Lynch*, No. 08-cv-10841 (S.D.N.Y. 2012), Dkt No. 174; Stip. and Agreement of Settlement with the Bear Stearns Defs. ¶ 6, *In re Bear Stearns Cos. Inc. Sec., Deriv. & ERISA Litig.*, 08 MDL No. 1963(RWS) (S.D.N.Y. 2012), Dkt No. 279.  On the other hand, matters in which individual defendants have contributed to the settlement amount often involve famous frauds and criminal conduct, including WorldCom, Enron and Tyco.  And unlike plaintiffs here, the plaintiffs in Enron and WorldCom insisted on payments from individual defendants.  *See* Peter J. Wallison, *The WorldCom and Enron Settlements: Politics Rears Its Ugly Head,* Am. Enter. Inst. for Pub. Pol. Res. 1 (March 2005), *available at* http://www.aei.org/files/2005/03/01/20050225_18033MarchFSOnewg.pdf.

In sum, the Settlement  is fair and reasonable as written.

## CONCLUSION

For the foregoing reasons, the Citigroup Defendants respectfully request that the Court should approve the Stipulation and Agreement of Settlement of Lead Plaintiffs, Named Plaintiffs, and Additional Proposed Named Plaintiffs with the Citigroup Defendants.

Dated:  New York, New York
         January 18, 2013

Respectfully submitted,

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

By:  _____/s/ Richard A. Rosen_____

Brad S. Karp (bkarp@paulweiss.com)
Richard A. Rosen (rrosen@paulweiss.com)
Susanna M. Buergel (sbuergel@paulweiss.com)
    1285 Avenue of the Americas
    New York, New York 10019-6064
    Tel.  (212) 373-3000
    Fax  (212) 757-3980

Charles E. Davidow (cdavidow@paulweiss.com)
Jane B. O'Brien (jobrien@paulweiss.com)
    2001 K Street NW
    Washington, DC 20006-1047
    Tel.  (202) 223-7300

*Attorneys for Defendants*