Honorable U.S. District Judge Sidney H. Stein  
Daniel Patrick Moynihan US Court House  
500 Pearl Street; Court Room 23A  
New York, NY 10007-1312  
Fax: 212-805-0389

APR - 8 2013

K.P. Desai  
7185 Schafer Street  
Dallas, TX 75252  
April 6, 2013

*Docket file*  
*07 Civ. 9901 (SHS)*

USDC SDNY  
DOCUMENT  
ELECTRONICALLY FILED  
DOC #: _____  
DATE FILED: 4/11/13

Reference: Citigroup Settlement

Honorable Judge Sidney H. Stein:

I was happy to read that you decided not to rubber-stamp Citigroup's proposed 590 million dollars settlement of the shareholders' lawsuit. I request Your Honor reject the settlement for the following reasons:

1. Payment is made by the same shareholders who lost the money rather than Citigroup's executives and Board Members who made millions of dollars.

2. I understand that the prosecuting attorney claims to have examined millions of documents; yet the "Artificial Inflation Per Share" given in table A, in the range of 4.94 to $0.10, is very low.
I personally paid the following:
   On August 1, 2007 I paid $ 47,510 for 1000 shares ($47.51 per Share)
   On August 6, 2007 I paid $46,033.00 for 1000 shares.

3. On November 19 2008 I paid $18,188 for 2000 shares yet the settlement does not cover this; it covers only from February 26, 2007 through April 18, 2008.

4. It was in the early part of the year 2009 when Citigroup's subprime mortgage debt in 2007 was exposed. On March 9, 2009 share price was $0.99. Later Citi made a reverse split issuing 1 share for every 10 share.

In 2010, the Securities and Exchange Commission submitted its $75 million settlement with Citigroup to the Honorable Judge Segal Huvelle of the Federal District Court for the District of Columbia. The settlement was for Citigroup's failure to adequately disclose its exposure to the subprime mortgage debt in 2007. The Honorable Judge directed that agreement be reworded it to make clear that the $75 million would be used to compensate shareholders. I wrote to the SEC to report that I, as an individual investor, had been badly hurt financially; the SEC never responded. The SEC also reported to Judge Huvelle that Citigroup's CFO Mr. Crittenden had agreed to pay $100,000. It is noteworthy that in 2007 Citi's compensation to CFO was $19,369,506!

Attached are the copies of the SEC Settlement submitted to Honorable Judge Huvelle, Citi's compensation to Mr. Gary Crittenden, and my letter to the SEC.

In summary, I request Your Honor disapprove the present $590 million settlement that is expected to distribute about 19 cents per share to shareholders. A fair settlement would be to order Citigroup's executives and Board Members, who collected millions of dollars yearly, to fully compensate the shareholders for their losses.

Sincerely,

*K. P. Desai*

K.P. Desai

Page 1 of 5

# Judge Accepts Citigroup's Settlement With S.E.C.

WASHINGTON — A federal judge said Friday that she would accept the $75 million settlement between the Securities and Exchange Commission and Citigroup over the bank's failure to adequately disclose its exposure to subprime mortgage debt in 2007

But Judge Ellen Segal Huvelle of the Federal District Court for the District of Columbia told lawyers for the government that she wanted the S.E.C. to certify that the procedural remedies Citigroup claimed to have put in place to prevent a similar failure were adequate and would remain for a given period of time.

"If you are so enamored of their proposals, I should have some assurance that they will be in place for a period of time and they will not change them," Judge Huvelle told the S.E.C.'s lawyer, Erica Y. Williams.

**The judge also directed that the settlement agreement be reworded to make clear that the $75 million would be used to compensate shareholders who had suffered losses because of Citigroup's misstatements, and she told the S.E.C. and the bank to return in two weeks with new language that did that.**

In issuing her opinion, Judge Huvelle both drew parallels and distinctions between the Citigroup case and the Bank of America case, which last year was the subject of a judicial review of an S.E.C. settlement. Unlike in the Bank of America case, she said, here the S.E.C. amassed adequate evidence of why the settlement amount made sense in light of how much the company had gained by its failure to disclose.

But, she added, the public deserved to know why the S.E.C. had said in its original complaint that "senior management" knew that the undisclosed subprime debt was contributing to losses but failed to charge any senior managers with securities violations beyond the chief financial officer and the director of investor relations.

Lawyers representing the S.E.C. and Citigroup argued that other senior managers had not been involved in the decision whether to disclose the subprime exposure and had not certified the federal filings that included the information.

Judge Huvelle acknowledged that she was bound to accept that decision. "I have to defer to the expertise of the agency," she said. "I have no control over who the S.E.C. charges or doesn't charge."

The hearing resulted from the judge's review of a proposed settlement in the S.E.C.'s case against Citigroup arising from the collapse of the subprime mortgage market and subsequent financial crisis. In July, the S.E.C. charged Citigroup with material misstatements of its exposure to subprime mortgages. The company advised investors in conference calls in 2007 that it held $13 billion in subprime investments when in fact it held more than $50 billion. In August, the judge declined to accept the proposed settlement and asked the parties to return with evidence of why it was adequate and why only two Citigroup executives had been charged with misconduct.

The commission also brought administrative proceedings against Gary L. Crittenden, the company's chief financial officer at the time of the misstatements, and Arthur Tildesley, then director of investor relations, for their roles in the wrongful disclosures. Mr. Crittenden agreed to pay $100,000 and Mr. Tildesley agreed to pay $80,000 as part of their settlements.

Judge Huvelle said that given the S.E.C.'s economic analysis in reaching the $75 million settlement, "I can't really in good faith say that this figure is right or wrong."

But, she added, "there is nothing here to address the flawed systems" that caused the company to so misstate its subprime exposure. None of the penalties were likely to prove to be an adequate deterrent, she added.

"Seventy-five million dollars will not deter anyone from doing anything," she said. Referring to the individual fines, "a $100,000 fine is not a deterrent in corporate America to do a better job."

Brad S. Karp, a lawyer representing Citigroup, sought to assure Judge Huvelle that the company had significant incentive not to violate securities laws, given that it had signed statements promising not to do so and noting that it had changed its entire senior management team since the events of 2007.

Mr. Karp added that because the evidence showed that Citigroup had not intentionally concealed its subprime exposure, "Citi's heart was in the right place."

"Don't overdo it," Judge Huvelle warned, evoking laughter in the courtroom. "I've never seen Citigroup's heart. I've seen its building, but not its heart."

The judge also said there was little value to having Citigroup executives sign statements that they would not violate securities laws. "They're supposed to be obeying the law," she said, "without writing it down."

The hearing resulted from the judge's review of a proposed settlement in the S.E.C.'s case against Citigroup arising from the collapse of the subprime mortgage market and subsequent financial crisis. In July, the S.E.C. charged Citigroup with material misstatements of its exposure to subprime mortgages. The company advised investors in conference calls in 2007 that it held $13 billion in subprime investments when in fact it held more than $50 billion. In August, the judge declined to accept the proposed settlement and asked the parties to return with evidence of why it was adequate and why only two Citigroup executives had been charged with misconduct.

The commission also brought administrative proceedings against Gary L. Crittenden, the company's chief financial officer at the time of the misstatements, and Arthur Tildesley, then director of investor relations, for their roles in the wrongful disclosures. Mr. Crittenden agreed to pay $100,000 and Mr. Tildesley agreed to pay $80,000 as part of their settlements.

Judge Huvelle said that given the S.E.C.'s economic analysis in reaching the $75 million settlement, "I can't really in good faith say that this figure is right or wrong."

But, she added, "there is nothing here to address the flawed systems" that caused the company to so misstate its subprime exposure. None of the penalties were likely to prove to be an adequate deterrent, she added.

"Seventy-five million dollars will not deter anyone from doing anything," she said. Referring to the individual fines, "a $100,000 fine is not a deterrent in corporate America to do a better job."

Brad S. Karp, a lawyer representing Citigroup, sought to assure Judge Huvelle that the company had significant incentive not to violate securities laws, given that it had signed statements promising not to do so and noting that it had changed its entire senior management team since the events of 2007.

Mr. Karp added that because the evidence showed that Citigroup had not intentionally concealed its subprime exposure, "Citi's heart was in the right place."

"Don't overdo it," Judge Huvelle warned, evoking laughter in the courtroom. "I've never seen Citigroup's heart. I've seen its building, but not its heart."

The judge also said there was little value to having Citigroup executives sign statements that they would not violate securities laws. "They're supposed to be obeying the law," she said, "without writing it down."

# Judge Accepts Citigroup's Settlement With S.E.C.

WASHINGTON — A federal judge said Friday that she would accept the $75 million settlement between the Securities and Exchange Commission and Citigroup over the bank's failure to adequately disclose its exposure to subprime mortgage debt in 2007

But Judge Ellen Segal Huvelle of the Federal District Court for the District of Columbia told lawyers for the government that she wanted the S.E.C. to certify that the procedural remedies Citigroup claimed to have put in place to prevent a similar failure were adequate and would remain for a given period of time.

"If you are so enamored of their proposals, I should have some assurance that they will be in place for a period of time and they will not change them," Judge Huvelle told the S.E.C.'s lawyer, Erica Y. Williams.

**The judge also directed that the settlement agreement be reworded to make clear that the $75 million would be used to compensate shareholders who had suffered losses because of Citigroup's misstatements, and she told the S.E.C. and the bank to return in two weeks with new language that did that.**

In issuing her opinion, Judge Huvelle both drew parallels and distinctions between the Citigroup case and the Bank of America case, which last year was the subject of a judicial review of an S.E.C. settlement. Unlike in the Bank of America case, she said, here the S.E.C. amassed adequate evidence of why the settlement amount made sense in light of how much the company had gained by its failure to disclose.

But, she added, the public deserved to know why the S.E.C. had said in its original complaint that "senior management" knew that the undisclosed subprime debt was contributing to losses but failed to charge any senior managers with securities violations beyond the chief financial officer and the director of investor relations.

Lawyers representing the S.E.C. and Citigroup argued that other senior managers had not been involved in the decision whether to disclose the subprime exposure and had not certified the federal filings that included the information.

Judge Huvelle acknowledged that she was bound to accept that decision. "I have to defer to the expertise of the agency," she said. "I have no control over who the S.E.C. charges or doesn't charge."

Page 2 of 5

## Compensation Tables

The following tables show Citi's compensation for any person serving as Chief Executive Officer or Chief Financial Officer during 2007 and Citi's three other most highly compensated executive officers. The form of the tables is set by SEC regulations.

### Summary Compensation Table

| Name and Principal Position | Year | Salary ($) | Bonus ($) | Stock Awards ($)[1] | Stock Options ($)[2] | Non-Equity Incentive Plan Compensation ($) | Change in Pension Value and Nonqualified Deferred Compensation Earnings ($) | All Other Compensation ($)[3] | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| [illegible] Chairman[?] | 2007 | $373,734 | $1,950,000[5] | $3,305,848[6] | $ | 0 | $0 | $500,[illegible][7] | 0 | [illegible] |
| Vikram Pandit CEO[8] | 2007 | $250,000 | $0 | $323,813[9] | $0 | $0 | $0 | $0 | $573,813 |
| [illegible] Officer[10] | 2007 | $403,410 | $14,030,000[11] | $4,850,872[12] | $ | 0 | $0 | $0 | [illegible] |
| Sallie Krawcheck Chair and CEO—GWM[13] | 2007 | $500,000 | $2,910,000[5] | $3,421,762[14] | $266,888[15] | $0 | $6,740[16] | $34,402 | $7,139,792 |
|  | 2006 | $500,000 | $5,820,000 | $2,946,251[17] | $645,701[18] | $0 | $6,315[19] | $0 | $9,918,267 |
| Lewis Kaden Vice Chairman | 2007 | $500,000 | $4,000,000[29] | $2,239,862[21] | $ | 0 | $0 | $10,643[?] | [illegible] | [illegible] |
| Michael Klein CEO—Global Banking | 2007 | $212,500 | $5,500,000[20] | $1,151,707[23] | $976,885[24] | $0 | $14,596[25] | $5,750 | $7,861,438 |
| Stephen Volk Vice Chairman | 2007 | $212,500 | $1,300,000[20] | $6,061,786[26] | $ | 0 | $0 | $11,114[27] | 12,[illegible] | [illegible] |
|  | 2006 | $200,000 | $5,670,000 | $3,915,520[28] | $ | 0 | $0 | $10,928[29] | 29,[illegible] | [illegible] |
| Charles Prince Former Chairman and CEO[30] | 2007 | $1,000,000 | $10,400,958[31] | $3,132,408[32] | $337,367[33] | $0 | $55,367[34] | $179,276 | $15,105,376 |
|  | 2006 | $1,000,000 | $13,200,000 | $13,765,741[35] | $746,607[36] | $0 | $137,441[37] | $258,338 | $29,108,127 |

(1) The values in this column represent the applicable portions of the fair values on the grant dates of the shares awarded to the named executive officers, as described in more detail in the applicable footnotes below.

(2) The assumptions made when calculating the amounts in this column for 2007, 2006 and 2005 awards are found in footnote 8 to the Consolidated Financial Statements of Citigroup Inc. and its Subsidiaries, as filed with the SEC on Form 10-K for 2007. The assumptions made when calculating the amounts in this column for 2004 awards are found in footnote 8 to the Consolidated Financial Statements of Citigroup Inc. and its Subsidiaries, as filed with the SEC on Form 10-K for 2006. The assumptions made when calculating the amounts in this column for 2003 and 2002 awards are found in footnote 23 to the Consolidated Financial Statements of Citigroup Inc. and its Subsidiaries, as filed with the SEC on Form 10-K for 2003.

(footnotes continued on following page)

Securities and Exchange Commission  
100 F Street N.E.  
Washington DC 20549  
Attn: Ms. Erica Y. Williams  

K.P.Desai  
7103 Schafer St.  
Dallas TX 75252  
October 4, 2010  

Ref: Settlement with Citi

Dear Ms. Williams:

I understand that Honorable Judge Ellen Segal Huvelle conditionally approved Citi's payment of $75 million to SEC for misleading investors. She also directed you that the $75 million would be used to compensate shareholders who had suffered losses because of Citigroup's misstatements. I do not know how you plan to implement the judge's order, especially since some major shareholders may have already received some compensation from Citi. However I am reporting to you how I, as an individual investor, have been badly hurt financially by Citi's actions.

As I remember, in July 2007 Citi's share price was close to its book value, paying almost 8% dividend, and reasonable debt to equity ratio. Citi bank is well established in more than 100 countries and has board members who are well respected in the financial world. On July 27, 2007 I bought 1000 Citi shares in my ROTH portfolio at the cost of $47,510 and on August 6, 2007 I bought 1000 shares in my regular IRA account at the cost of $46,033. The share price started decreasing as Citi cut the dividend. In late 2008 one major share holder publicly expressed confidence in Citi bank. Thus on November 19, 2008 I bought 2000 shares at a cost of $18,188, hoping to lower the average cost per share.

Finally the share price plummeted even below $1 when Citi's true financial position came to light. I had no courage to buy even one share as there were all sorts of speculations as to what Citi may have to do.

This significant loss is hard to absorb, as I retired a long time ago and primarily depend on withdrawals from my IRA account. I am relieved to read the instruction Honorable Judge Ellen Segal Huvelle has issued as I am one of the Citi shareholders who should be compensated through the $75 million settlement. I can submit the necessary brokerage statements when needed. Meanwhile, I look forward to hearing of a just plan for compensating us Citi shareholders in the updated settlement plan you will soon submit.

Sincerely


Kantilal P. Desai

cc:  
Honorable Judge Ellen Segal Huvelle  
Federal District Court for the District of Columbia  
333 Constitution Ave. NW  
Washington, DC 20001  

Page 5 of 5

*(footnotes continued from previous page)*

(3) Set forth below is a breakdown of All Other Compensation (i.e., personal benefits):

| Name | Security Services/ Systems ($) | Aircraft ($) | Ground Transportation ($) | Financial and Tax Planning ($) | Medical and Dental Benefits ($) | Hart-Scott-Rodino Filing Fees ($) | Other Income ($) | Tax Gross-Up ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| Sir Winfried Bischoff | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Vikram Pandit | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Gary Crittenden | $0 | $0 | $85,224 | $0 | $0 | $0 | $0 | $0 | $85,224 |
| Sallie Krawcheck | $0 | $2,479 | $31,923 | $0 | $0 | $0 | $0 | $0 | $34,402 |
| Lewis Kaden | $0 | $0 | $20,802 | $0 | $0 | $0 | $0 | $0 | $20,802 |
| Michael Klein | $0 | $0 | $5,750 | $0 | $0 | $0 | $0 | $0 | $5,750 |
| Stephen Volk | $0 | $0 | $12,447 | $0 | $0 | $0 | $0 | $0 | $12,447 |
| Charles Prince | $1,844 | $170,972 | $6,460 | $0 | $0 | $0 | $0 | $0 | $179,276 |

Each named executive officer's personal use of corporate aircraft is calculated based on the aggregate incremental cost of the flight to Citi. Aggregate incremental cost is calculated based on a cost-per-flight-hour charge developed by a nationally recognized and independent service. The flight-hour charge reflects the direct operating cost of the aircraft, including fuel, lubricants and the like, aircraft hangaring, insurance, airport fees and assessments, customs and permit fees, in-flight food and flight planning and weather services. In addition, the flight-hour charge also reflects an allocable allowance for the indirect costs of operating the aircraft including a reserve for periodic maintenance, a reserve for engine maintenance and a reserve for general maintenance. Sir Winfried and Mr. Pandit have entered into Aircraft Time Sharing Agreements with Citiflight, Inc. (a subsidiary of Citigroup Inc.) that allow them to reimburse Citi for the cost of their personal use of corporate aircraft. During 2007 as CEO, Mr. Prince was required under Citi's security policy to use corporate aircraft for all of his flights.

(4) Sir Winfried became Chairman of the Board effective December 11, 2007 and served as acting CEO of Citi from November 9, 2007 through December 11, 2007.

(5) This amount is a discretionary cash bonus paid in January 2008 for performance in 2007.

(6) This amount is the sum of (a) the fair value of the CAP shares granted to Sir Winfried in January 2008 in respect of 2007 performance ($3,092,039), plus (b) the portion of the SFAS 123(R) accounting cost attributable to Sir Winfried's participation in the LTIP ($213,809). No awards were earned by any executive under the LTIP for 2007.

(7) The change in pension value for Sir Winfried's benefit under the Citigroup Global Markets Limited Pension and Life Assurance Scheme RBS Section for 2007 was $500,808. Sir Winfried's above-market or preferential earnings on compensation that was deferred on a basis that was not tax-qualified was $0.

(8) Mr. Pandit became CEO of Citi effective December 11, 2007.

(9) The amount represents the portion of the SFAS 123(R) accounting cost attributable to Mr. Pandit's participation in the LTIP. No awards were earned by any executive under the LTIP for 2007.

(10) Mr. Crittenden became CFO on March 12, 2007, when he commenced employment with Citi.

(11) The amount is the sum of (a) $11,180,000, which is Mr. Crittenden's award paid in cash on March 30, 2007 pursuant to his employment agreement with Citi dated February 23, 2007 in respect of forfeited options on stock of his former employer, and (b) $2,850,000, which is the cash component of the $9,500,000 annual incentive and retention award in respect of 2007 paid in January 2008 pursuant to the terms of Mr. Crittenden's employment. The remainder of the guaranteed amount was awarded in Citi stock, all of which is expensed under SFAS 123(R) in 2008 and later years.

(12) This amount includes $4,527,059 in respect of the SFAS 123(R) fair value of Mr. Crittenden's sign-on awards described in more detail under the discussion below of his employment agreement, plus $323,813 in SFAS 123(R) accounting cost attributable to the LTIP. No awards were earned by any executive under the LTIP for

*(footnotes continued on following page)*

4B/5