MAR 18 2013

ACC Association of Corporate Counsel

1025 Connecticut Avenue, NW, Suite 200
Washington, DC 20036-5425 USA
tel +1 202.293.4103
fax +1 202.293.4701
www.acc.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/13

March 15, 2013

Hon. Sidney H. Stein
United States District Court for
 the Southern District of New York
United States Courthouse
Courtroom 23A
500 Pearl Street
New York, NY 10007-1312
**Sent by facsimile to (212) 805-7924
and by express delivery**

> Re: Amicus letter from Association of Corporate Counsel regarding legal fees
> in In re Citigroup Securities Litigation, Case No. 1:07-cv-09901-SHS

Dear Judge Stein:

On behalf of the Association of Corporate Counsel, we are writing to offer the views of the in-house counsel bar on the fee request submitted by plaintiffs counsel in *In re Citigroup Securities Litigation*. The plaintiffs lawyers here seek fees for contract attorneys that today's legal market won't support. Even without the fee-multiplier, the plaintiffs lawyers request hundreds of dollars per hour for many individual contract lawyers. But almost no law firms today charge such high rates for contract lawyers.

There are two reasons for this. First, in a trend that ACC has led, clients in recent years have increasingly forced law firms to deliver more value for less money. As a result, many clients hire contract lawyers directly, cutting out law firms and their profit margins. Clients who do permit law firms to hire contract lawyers expect the firms to bill them for only small mark-ups, or none at all. Second, in the last several years, an excess of legal talent has become available to work as contract lawyers, for just a fraction of what the plaintiffs would charge. A survey of ACC's members, discussed below, illustrates that ACC's members are quite aware of today's market rate for contract lawyers.

Under the governing legal standards, since the market does not permit law firms to use contract attorneys to drive fat profits, neither can the court allow the plaintiffs lawyers to do so here.

### I. ACC's Interest In Maximizing Legal Value

The Association of Corporate Counsel is a global bar association that promotes the common professional and business interests of in-house counsel. ACC has over 30,000 members who are in-house lawyers employed by over 10,000 organizations in more than

75 countries. Many of our members work for companies that routinely hire law firms for some of the biggest and most complicated litigation in the United States.

For 30 years, ACC has advocated across the country to ensure that courts, legislatures, regulators, bar associations, and other law or policy-making bodies understand the role and concerns of in-house counsel and the legal departments where they work. One of ACC's missions is to promote methods that in-house counsel and outside law firms can use to deliver more legal value for lower costs.

Building on seismic changes occurring within the legal services industry, our "ACC Value Challenge" presses law departments within companies and the outside counsel they retain to adopt common sense business principles, such as project and process management or value-based fee arrangements. In particular, to dissuade outside counsel from looking under every rock, even those far from shore, the in-house bar has increasingly moved away from hourly-based fee agreements to various versions of fixed fee agreements (incorporating success fees and holdbacks). By introducing these and other efficiencies into legal practice, "law firms can reduce their costs to corporate clients and still maintain strong profitability,"[1] and also more closely align their practice with the client's real-world objectives. As part of our efforts to secure more value from law firms, ACC in 2011 polled our members specifically about how they hire and use contract lawyers, and how much they pay.[2]

## II.     *Clients Today Refuse To Pay Large Mark-Ups For Contract Attorneys.*[3]

As the balance of power has shifted from law firms to the clients over the last few years, ACC's members have aggressively sought to secure more value for each dollar their companies spend on legal work. To that end, our members have used contract lawyers widely, and are very much aware of the rates that the market will support. According to a joint survey conducted in 2011 by ACC and the *Wall Street Journal*,[4] about 33.8 percent of our responding members used contract attorneys in the previous year. Of those, 65.1 percent hired the contract lawyers themselves, and another 20.4 percent used third-party hiring agencies. Only 12.3 percent used contract lawyers hired by law firms. In other words, the great majority of our members who use contract attorneys paid no mark-up on the fees of the contract lawyers. And only a sliver paid any mark-up at all to law firms.

---

[1] *See ACC Value Challenge – About, available at* http://www.acc.com/valuechallenge/about/index.cfm.

[2] *See ACC/The Wall Street Journal Contract-Attorney Use Survey* (June 2011), *available at* http://www.acc.com/legalresources/resource.cfm?show=1285843.

[3] "[A] judge may rely in part on its own knowledge of private firm hourly rates in the community" when awarding fees. *Assoc. for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir.1995) (internal citation and punctuation omitted).

[4] *See ACC/The Wall Street Journal Survey, supra* note 2. The *Wall Street Journal* article is Vanessa O'Connell, *Lawyers Settle . . . for Temp Jobs*, WALL ST. J., June 15, 2011, *available at* http://online.wsj.com/article/SB10001424052702303714704576383641752966666.html.

And most of our members who used temporary attorneys also paid far less than the rates that the plaintiffs here seek for work done by contract attorneys. Specifically, 65.6 percent of our responding members paid *$80 per hour or less.*

ACC's survey demonstrates that the majority of the market permits no mark-up at all, because clients hire the temporary attorneys themselves. To the extent that the current market permits law firms to mark up the fees for contract attorneys, they can do so by adding only a small percentage of the contract attorney fee. A small increase not only tracks the market, but better reflects the lower overhead costs for temporary attorneys versus full-time lawyers.

But that is not what the plaintiffs lawyers here have done. They instead ask this court to mark up the actual rate of contract attorneys by hundreds of percentage points. If the plaintiffs lawyers paid a contract attorney $50 per hour, and seek this Court to approve a base fee of $500, that constitutes a mark-up of *one thousand percent*, even before running it through the fee multiplier. No paying client today would ever permit such runaway rate inflation.

### III. *The Market For Legal Talent Has Softened Significantly In Recent Years.*

ACC's members are also aware of the significant changes that have occurred in the legal market generally in recent years, which have depressed the market rate for contract lawyers. Almost precisely when the plaintiffs here filed suit in 2007, the demand for legal services began to soften significantly. A spate of articles has chronicled the difficulties that lawyers, both new and experienced, now encounter finding work.[5] As early as 2008 a *Wall Street Journal* dispatch on the legal market concluded that "[i]t's getting ugly out there."[6] A survey taken the following year estimated that 44 percent of firms around the

---

[5] *See, e.g.*, Janice Fioravante, *Contract lawyers in hot demand*, CRAIN'S N.Y. BUS., Jan. 8, 2012, *available at* http://www.crainsnewyork.com/article/20120108/SMALLBIZ/301089988; Mark Greenbaum, *No more room at the bench*, L.A. TIMES, Jan. 8, 2010, *available at* http://articles.latimes.com/print/2010/jan/08/opinion/la-oe-greenbaum8-2010jan08; Annie Lowrey, *How law school went from being a sure thing to a bum deal*, WASH. POST, Oct. 31, 2010, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2010/10/30/AR2010103000211.html; David Segal, *Is Law School a Losing Game?*, N.Y. TIMES, Jan. 8, 2011, at BU1, *available at* http://www.nytimes.com/2011/01/09/business/09law.html?pagewanted=all&_r=0; Catherine Rampell, *The Lawyer Surplus, State by State*, N.Y. TIMES ECONOMIX BLOG, June 27, 2011, 11:00 AM, *available at* http://economix.blogs.nytimes.com/2011/06/27/the-lawyer-surplus-state-by-state/.

[6] Peter Lattman, *Open Thread – Law Firm Layoffs*, WALL ST. J. LAW BLOG, Jan. 11, 2008, 7:40 PM, *available at* http://blogs.wsj.com/law/2008/01/11/open-thread-law-firm-layoffs/.

country cut associates.[7] An article in the *Washington Post*, surveying the national landscape in which the number of legal jobs had dropped by 7.8 percent from 2007 to 2010, concluded flatly that "the job market for lawyers is terrible."[8] In 2011, one *New York Times* posting noted "the glut of diplomas, the dearth of jobs."[9] Another *New York Times* article that same year concluded that "[i]n raw numbers, New York has the greatest legal surplus by far" in the United States.[10]

In the marketplace, when demand slackens and supply swells, wages fall. This happened to New York contract lawyers. *Crain's New York Business* reported in 2012 that "[w]hereas $60 to $80 an hour was the pre-recession norm for contract lawyers, current rates have dropped to between $32 and $40, and sometimes as low as $25."[11] Recent *Wall Street Journal* articles confirm that the standard fee for litigator contract lawyers who lacked rare skills ranged from $20 to $40 per hour.[12] Some contract litigators, it is true, can secure higher fees. Those fluent in other languages – especially Asian languages – can earn from $45 to $70 per hour.[13] And those with two levels of expertise – such as a foreign language plus skills in patent law – make as much as $85 to $100.[14]

In this case, nothing that the plaintiffs have submitted indicates that the case required the plaintiffs lawyers to hire temporary litigators with either special legal expertise, or with rare language skills. Rather, the plaintiffs lawyers state that the contract lawyers reviewed documents that the defendants produced, and helped analyze them for depositions and summary judgment. And one contract lawyer apparently took one or more depositions. No matter the level of skill and experience of the individual contract attorneys, the market simply does not value their services at hundreds of dollars per hour. According to the market, they could demand only a fraction of such inflated fees.

---

[7]   Altman Weil, Inc., *Law Firms in Transition Flash Survey 2010*, June 22, 2010, *available at* http://www.altmanweil.com/index.cfm/fa/r.resource_detail/oid/6ddd4b8a-88a3-44ef-85a1-5a9a7ce501ac/resource/New_Law_Firm_Survey_A_Consensus_on_Change.cfm.

[8]   Lowrey, *supra* note 5.

[9]   Segal, *supra* note 5.

[10]  Rampell, *supra* note 5.

[11]  Fioravante, *supra* note 5.

[12]  Jennifer Smith, *Wanted: Temp Attorneys With Foreign-Language Skills*, WALL ST. J., July 23, 2012, *available at* http://online.wsj.com/article/SB10000872396390443295404577543223388869162.html; O'Connell, *supra* note 4 (graphic in article pegging standard rate at a lower maximum, of $30 per hour.).

[13]  Smith, *supra* note 13.

[14]  *Id.*

By in-house counsel, for in-house counsel.®

### IV. *The Second Circuit Requires Courts To "Disciplin[e] The Market" As If They Were "Thrifty" Clients.*

The plaintiffs lawyers here seek extravagant fees, but in determining fee awards, the Second Circuit calls for the opposite. A district court "bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hills Concerned Cits. Neigh. Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2008), *clarified on other grounds* in *Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009). Courts should not approve fees that are "too high for a thrifty, hypothetical client," *Arbor Hills*, 522 F.3d at 185, or beyond "what a reasonable, paying client would be willing to pay," *id.* at 184. The Second Circuit confirmed its approach in *Simmons*, stating that the proper approach to setting court-award fees "promotes cost-consciousness" and "increases the probability that attorneys will receive no more than the relevant market would normally permit." *Simmons*, 575 F.3d at 176.

Even authority cited by the plaintiffs lawyers here makes this point. *In re AOL Time Warner Shareholder Deriv. Lit.*, Case. No. 02 Civ. 6302 (CM), 2010 WL 363113, at *19 (S.D.N.Y. Feb. 1, 2010) relies explicitly on *Arbor Hills* and *Simmons*, and states a "sophisticated but thrifty client would not unquestioningly accept an hourly rate dictated by the law firm, especially where other firms were competing for the work." (*See* Plaintiffs' Reply Mem., Doc. No. 195 (Jan. 18, 2013), at 15-16).

Indeed, it is a bedrock principle of judicial fee awards that courts can approve only fees that match the local market for legal services. The Supreme Court has made this clear in a different statutory setting. *See Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (reasonable attorneys fees are those "in line with those rates prevailing in the community for similar services") (internal punctuation omitted) *quoting Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see also Hensley v. Eckerhart*, 461 U.S. 424 (1983) (also quoted by *Missouri*). So have the New York Rules of Professional Conduct, which state at Rule 1.5 that a "lawyer shall not . . . charge, or collect an excessive . . . fee or expense," and must look to "the fee customarily charged in the locality for similar legal services," *id.* at Rule 1.5(a)(3). The *Restatement (Third) of the Law Governing Lawyers* (2000) makes the same point, at Section 34.

The American Bar Association has repeated the same directive in multiple authorities. *See ABA Mod. Rules Prof. Cond.* 1.5 (7th ed. 2011) ("[a] lawyer shall not . . . charge, or collect an unreasonable fee"), R. 1.5(a)(3) (using same language as New York's rule); ABA Formal Ethics Op. 00-420 (Nov. 29, 2000) (allowing a "surcharge" for contract attorneys "*if* the total charge represents a reasonable fee for services provided to the client) (emphasis added); ABA Formal Ethics Op. 08-451 (Aug. 5, 2008) ("[t]he fees charged must be reasonable and otherwise in compliance with [ABA Model] Rule 1.5").

So, these legal authorities permit law firms to charge a surplus on contract attorneys as profit. But those rules make clear that the profits must be reasonable and must track the market. Where the paying party has no opportunity to negotiate fees in advance – as is

the case here – courts must step in after the fact to approximate what a "thrifty" client would have bargained for. No thrifty client would agree to the swollen rates the plaintiffs lawyers have submitted here.

## VI. Conclusion

The law limits courts to awarding only reasonable fees, using the market for legal services as the mandated benchmark. Today, the market for contract attorneys in New York is saturated. Absent rare skills that a case demands – such as fluency in a Asian language, or experience in patent law – contract attorneys in New York earn modest hourly fees. Additionally, clients today refuse to pay high rates for contract lawyers, and specifically refuse to tolerate law firms rates that lard profits onto their contract lawyers' fees.

Here, the plaintiffs' fee request ignores these marketplace realities. Maybe the plaintiffs attorneys paid their contract lawyers far more than the market demanded. Or maybe they padded the actual rates with the sort of unjustifiable profit margins that paying clients would refuse. Either way, there is no basis in the law or in the market to justify the fee request for contract lawyers.

Therefore, ACC requests that this court re-calculate the fees for contract attorneys at the drastically lower level that the market would support. That way, they might approximate what a paying client could actually negotiate.

Sincerely yours,

*Amar Sarwal*

Amar D. Sarwal
Vice President and Chief Legal Strategist
sarwal@acc.com

Evan P. Schultz
Senior Counsel and Director of Advocacy


cc:
– James Stuart Notis (jnotis@gardylaw.com)
– Andrew J. Entwistle (aentwistle@entwistle-law.com, mgayle@entwistle-law.com)
– Mark C. Rifkin (rifkin@whafh.com)
– Susanna Michele Buergel (sbuergel@paulweiss.com)
– Jeffrey Craig Block (jeff@blockesq.com, jason@blockesq.com)
– Michael Jameson Pucillo (mpucillo@bermanesq.com, jputnam@bermanesq.com)
– Richard A. Rosen (rrosen@paulweiss.com)
– Anne Faith O'Berry (aoberry@bermanesq.com, clesnick@bermanesq.com, eavila@bermanesq.com)

– Samuel Howard Rudman (srudman@rgrdlaw.com, e_file_ny@rgrdlaw.com, e_file_sd@rgrdlaw.com, mblasy@rgrdlaw.com)
– Ira M. Press (ipress@kmllp.com, amcneela@kmllp.com, plinden@kmllp.com)
– Peter S. Linden (plinden@kmllp.com, aking@kmllp.com, mstrauss@kmllp.com)
– Joseph Harry Weiss (jweiss@weisslawllp.com, infony@weisslawllp.com)
– Gerald H. Silk (jerry@blbglaw.com, ellen@blbglaw.com, errol.hall@blbglaw.com, garyw@blbglaw.com)
– Matthew Moylan Guiney (guiney@whafh.com)
– Lawrence B. Pedowitz (lbpedowitz@wlrk.com, CAlert@wlrk.com)
– Jane Baek O'Brien (jobrien@paulweiss.com)
– Dustin Peter Mansoor (dmansoor@law.nyc.gov, ECF@law.nyc.gov, dustin.mansoor@gmail.com)
– Steve A. Miller, P.C. Profit Sharing Plan (sampc01@gmail.com)
– Theodore H. Frank (tedfrank@gmail.com)

By in-house counsel, for in-house counsel.®