USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/21/2014__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE CITIGROUP INC. SECURITIES
LITIGATION

09-Md-2070 (SHS)
This document relates to:
07-Cv-9901 (SHS)

<u>OPINION & ORDER</u>

SIDNEY H. STEIN, U.S. District Judge.

  This class action concluded with a $590 million settlement between defendants (Citigroup Inc. and several of its officers, directors, and agents) and plaintiffs' class (acquirers of Citigroup common stock between February 26, 2007 and April 18, 2008). Defendants agreed to pay that substantial price in exchange for the class's release of fraud claims relating to the subprime meltdown of the last decade. Notwithstanding that release, claimants Gary L. Burgess and Joseph Icon have now asserted essentially the same fraud allegations against Citigroup in an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"). As a result, Citigroup has applied to this Court for an order enjoining claimants' arbitration as foreclosed by the class settlement in this action.

  Claimants offer a plethora of reasons why the settlement's release should not bind them. Burgess attempts to escape class membership by pointing to his failed request to opt out of the class, and Icon urges that he misunderstood the release. Neither excuse is availing: Burgess's earlier request was riddled with inaccuracies, and Icon's misunderstanding was unreasonable based on the ample notice provided to the class as a whole.

Although claimants are begrudging members of the settlement class, they are members nonetheless. Accordingly, the Court grants Citigroup's motion to enjoin claimants from now arbitrating their claims.

## I.   BACKGROUND

### A.   The *Securities* Class Action and Settlement

The Court assumes familiarity with the facts and history of the class action underlying this motion, which are fully set forth in a trilogy of opinions: *In re Citigroup Inc. Securities Litigation*, 753 F. Supp. 2d 206 (S.D.N.Y. 2010) ("*Citigroup Securities I*"); *In re Citigroup Inc. Securities Litigation*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ("*Citigroup Securities II*"); and *In re Citigroup Inc. Securities Litigation*, No. 07 Civ. 9901, 2014 WL 2445714 (S.D.N.Y. May 30, 2014) ("*Citigroup Securities III*"). In short, the class alleged that, in the period leading up to the subprime meltdown of the last decade, Citigroup and several of its directors, officers, and agents fraudulently misled investors by materially understating the value of collateralized debt obligations ("CDOs") backed by subprime mortgages.

Specifically, from February 26, 2007 to November 4, 2007, Citigroup allegedly "gave the impression that [it] had minimal, if any exposure to CDOs when, in fact, it had more than $50 billion in exposure." *Citigroup Securities I*, 753 F. Supp. 2d at 235. Those CDOs were backed by subprime mortgages and improperly valued at par despite objective indications that such mortgage-backed CDOs had lost value by February 2007. "On November 4, 2007, Citigroup disclosed that it held $43 billion of super senior CDO tranches simultaneously with the fact of their writedown by an expected $8-$11 billion." *Id.* at 239-40. Even that disclosure allegedly overstated the CDOs' value (thus understating the loss) and omitted $10.5 billion in hedged CDOs. *Id.* at 240. According to plaintiffs' class, Citigroup's disclosures continued to overstate the value of the CDOs until a final corrective disclosure on April 18, 2008. *Id.* The effect of the alleged fraud, for purpose of the class action, was massive overvaluation of

Citigroup common stock. Class members are those who acquired or held stock based on this artificially inflated market price.

The parties ultimately settled the litigation for $590 million, entering into a Stipulation of Agreement and Settlement on August 28, 2012. Plaintiffs then moved for—and the Court granted—preliminary approval of the settlement and certification of the class for settlement purposes. (*See* Order Preliminarily Approving Proposed Settlement and Providing for Notice, Aug. 29, 2012, Dkt. No. 156 ("Preliminary Approval Order").) The Court set forth a schedule for providing notice to the class and procedures by which class members were to either submit claim forms, object to the proposed settlement, opt out of the class, or appear at a fairness hearing. (*Id.*)

The notice to the class set forth the background of the litigation, details of the settlement, and instructions for submitting claims, objecting to the settlement, or opting out of the class. (Preliminary Approval Order Ex. 1 ("Class Notice").) The document set forth the definition of the settlement class, including:

> all persons who purchased or otherwise acquired common stock issued by Citigroup during the period between February 26, 2007 and April 18, 2008, inclusive, or their successor in interest, and who were damaged thereby. . . . [T]he Settlement Class includes persons or entities who acquired shares of Citigroup common stock during the Class Period by any method.

(Class Notice ¶ 24.) Alongside that definition appeared the following warning: "If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded." (*Id.*)

The notice also contained a section titled "WHAT RIGHTS AM I GIVING UP BY REMAINING IN THE SETTLEMENT CLASS?," with a highlighted border surrounding the heading, which was set in all capital letters. (*Id.* at 13.) That section of the notice includes the settlement's release language under the boldfaced and underlined heading "**<u>Released</u>**

**Claims**." (*Id.* ¶ 49.) The scope of the release, as provided in the notice, extended to:

> all claims . . . arising out of or relating to investments in (including, but not limited to, purchases, sales, exercises, and decisions to hold) Citigroup common stock through April 18, 2008, including without limitation all claims arising out of or relating to any disclosures, registration statements or other statements made or issued by any of the Citigroup Defendants concerning subprime-related assets, [CDOs], residential mortgage-backed securities, . . . or structured investment vehicles.

(*Id.*)

On August 1, 2013, after the period for objections and exclusions had concluded and after a fairness hearing had taken place, this Court approved the settlement as fair, reasonable, and adequate. *See Citigroup Securities II*, 965 F. Supp. 2d at 401-02. Among the many findings that supported approval, the Court specifically found "that the claims administrator provided individual notice to those class members who could 'be identified through reasonable effort.'" *Id.* at 380 (quoting Fed. R. Civ. P. 23(c)(2)(B)). The Court further found "that the notice here complied with Rule 23 and due process." *Id.* Finally, the Court dismissed the litigation, while "retain[ing] continuing jurisdiction" to implement, distribute, and enforce the settlement. (Final Judgment & Order of Dismissal with Prejudice, August 1, 2013, Dkt. No. 276 ("Final Judgment Order") ¶ 23.)

Since then, class members have submitted at least 670,869 claims to the claims administrator, and the claims administrator has calculated approximately $3.3 billion in recognized losses from those claims. *See Citigroup Securities III*, 2014 WL 2445714, at *1. On the basis of those claims and the exhaustive work of the claims administrator in processing them, the Court authorized distribution of the net settlement fund. *See id.* at *4.

4

### B. Burgess and Icon's FINRA Arbitration

Burgess and Icon are former employees of a division of Citigroup who acquired and held Citigroup common stock during the class period, both in the open market and as part of their compensation packages. (*See* Claimants' Mem. of Law in Response to Respondents' Mot. For a Permanent Injunction, filed July 15, 2014, Dkt. No. 349 ("Claimants' Mem."), Ex. B. ("Burgess Decl.") ¶¶ 9-10; Claimants' Mem. Ex. C. ("Icon Decl.") ¶¶ 3-4.) According to these claimants they entered "numerous annual [a]greements, which . . . force arbitration as 'the required and exclusive resolution of all employment disputes.'" (Claimants' Mem. at 17.)[1]

More than four months after the Court approved the class settlement and dismissed the action, Burgess and Icon commenced an arbitration before FINRA. They jointly filed a Statement of Claim on December 18, 2013. (Tannenbaum Decl., June 11, 2014, Dkt. No. 336, Ex. A ("FINRA Claim").) The arbitral complaint names as respondents Citigroup, Inc., Citigroup Global Markets, Inc., Charles Prince, Gary Crittenden, Sallie L. Krawcheck, and Vikram Pandit. (*Id.* at 1.) Claimants are former employees of a Citigroup division, and their "compensation package included . . . equity awards." (*Id.* ¶¶ 2-3, 13, 15.)

Claimants' allegations describe a "cover-up scheme" to mislead stakeholders with respect to Citigroup's "reckless investment scheme focused on non-prime related financial instruments"—especially CDOs. (*Id.* ¶¶ 24-25.) Specifically, in the alleged fraud scheme, respondents "deliberately concealed the scope of ownership of toxic assets such as

---

[1] Although claimants refer extensively to these agreements and even purport to quote from them, the record does not contain the agreements or any sworn statements regarding their existence. Nonetheless, the parties agree that each claimant signed an agreement containing an arbitration clause at some point. (*See* Claimants' Mem. at 15-18; Reply Mem. in Further Support of Mot. for a Permanent Injunction, filed July 7, 2014, Dkt. No. 345, at 4.)

CDOs backed by non-prime mortgages as well as the heightened risks associated with such ownership." (*Id.* ¶ 29.) That fraud scheme, according to Burgess and Icon's Statement of Claim in the arbitration, gives rise to several causes of action: breach of contract (*id.* at 13), breach of the covenant of good faith and fair dealing (*id.*), breach of fiduciary duties (*id.* at 15-16), unjust enrichment (*id.* at 19), negligent misrepresentation (*id.* at 20), fraud (*id.* at 21), and prima facie tort (*id.* at 22).

## II. LEGAL STANDARD

"An injunction is a matter of equitable discretion." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). Nonetheless, a party seeking a permanent injunction generally must show first, "that it will be irreparably harmed if an injunction is not granted," and second, "actual success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2011) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348-49 (2d Cir. 2003)) (internal quotation marks omitted).

## III. DISCUSSION

### A. The jurisdictional question and the merits question depend on the same analysis; therefore, this Court has jurisdiction if the motion is meritorious.

"A federal court does not automatically retain jurisdiction to hear a motion to enforce or otherwise apply a settlement in a case that it has previously dismissed." *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) ("*Am. Express*") (internal quotations omitted). Because respondents now ask this Court to enforce the class settlement in the dismissed *Securities* litigation, the threshold question is whether the Court has jurisdiction to do so.

"[A] federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Thus, when a

6

jurisdictional issue and a merits issue merge, it is "necessary for the [court] to address the merits" at the same time as deciding whether the case is properly before it. *Id.*

Jurisdiction to enforce a class settlement after dismissal of the class action is defined by the court's pre-dismissal orders:

> [W]here . . . the court makes the parties' obligation to comply with the terms of the settlement agreement . . . part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order—the proper forum for litigation of a breach is that same federal court. . . . A district court therefore has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction.

*Am. Express*, 672 F.3d at 134.

When this Court dismissed the class action it explicitly "retain[ed] continuing jurisdiction over . . . all parties hereto for the purpose of construing, enforcing and administering the Stipulation." (Final Judgment Order ¶ 23.) Citigroup's motion is properly before the Court only if it falls within this jurisdictional provision. Accordingly, the Court has jurisdiction to enforce the settlement (including the release of claims) against claimants only if claimants were "parties hereto" (*id.*) when the Court dismissed the class action.

To determine whether the Court has jurisdiction is to address the merits of Citigroup's motion. After all, if claimants were parties to the class action such that the Court has jurisdiction, then claimants were parties to the class action such that they released their claims against Citigroup. As explained below, the Court concludes that claimants were members of the class, so the Court has jurisdiction to decide Citigroup's motion and the motion should be granted.

### B. Claimants, as members of the class, released the claims that their arbitration now asserts against Citigroup.

When a class action resolves by a settlement, each class member is "required to opt out at the class notice stage if it [does] not wish to be bound." *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 115 (2d Cir. 2005). Only in two situations may a class member avoid the binding nature of the class settlement: (1) a showing of "excusable neglect for failure to timely opt out," or (2) "a violation of due process." *Am. Express*, 672 F.3d at 129. Burgess contends that his failure to opt out was a product of excusable neglect and Icon contends that he was deprived of due process. Neither contention survives analysis.

#### *1. Burgess's manifold errors in attempting to opt out were not excusable neglect; the class settlement therefore binds him.*

Burgess in fact did attempt to exclude himself from the settlement class, but two critical errors impeded his attempt: (1) his submission contained incorrect numbers describing his Citigroup securities, such that his request for exclusion was invalid, and (2) he provided a return address that was not his own, as a result of which the claims administrator's explanation of the substantive inaccuracies never reached him. Because it was Burgess's own inexcusable neglect that prevented him from opting out of the class, he is subject to the class's release.

Excusable neglect is an equitable determination. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993). Courts consider four factors in connection with this determination: "(1) 'the danger of prejudice' to the party opposing the extension; (2) 'the length of the delay and its potential impact on judicial proceedings'; (3) 'the reason for the delay, including whether it was within the reasonable control' of the party seeking the extension; and (4) whether the party seeking the extension 'acted in good faith.'" *Am. Express*, 672 F.3d at 129 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395). In the Second Circuit, the analysis is "focused

on the third factor: the reason for the delay, including whether it was within the reasonable control" of the party claiming excusable neglect. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366-67 (2d Cir. 2003).

In the case of Burgess's failure to opt out, it was his own errors—and nobody else's—that derailed his attempt to exclude himself from the class.[2] On November 28, 2012, Burgess mailed to the claims administrator two separate requests for exclusion. (Burgess Decl. ¶ 3.) As he admits, Burgess did not report accurately his positions in Citigroup common stock. (*Id.* ¶¶ 8-10.) His request for exclusions took the form of two separate letters, one for each of two claim numbers. (*Id.* ¶ 8; *see* Tannenbaum Decl. Ex. 7 at 1, 3.) On his first letter he listed acquisitions during the class period amounting to 1,199 shares and sales of 6,925 shares. (Tannenbaum Decl. Ex. 7 at 1.) His second letter listed different transactions during the class period: acquisitions totaling 11,145.6 shares and no sales. (*Id.* at 3.) Yet the letters' accounts of Burgess's holdings at the beginning and end of the class period listed his *combined* holdings—16,409.29 shares held at the beginning and 20,721.61 shares held at the end—not separated to reflect the distinctions between the letters. (*Id.* at 1, 3.) As a consequence, the arithmetic in

---

[2] The class notice explained the requirements for opting out as follows:

> Each Request for Exclusion must (1) state the name, address and telephone number of the person or entity requesting exclusion; (2) state that such person or entity "requests exclusion from the Settlement Class . . ."; (3) state the date(s), price(s) and number of shares of Citigroup common stock that the person or entity requesting exclusion purchased or otherwise acquired and sold during the period February 26, 2007 through and including July 17, 2008; (4) state the number of shares held at the start of the Class Period; (5) state the number of shares held through the close of trading on July 17, 2008; and (6) be signed by such person or entity requesting exclusion or an authorized representative. A request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

(Class Notice ¶ 58.)

Burgess's letters did not balance on either letter: the shares held at the beginning of the class period plus shares acquired during the class period minus shares sold during the class period did not equal shares held at the end of the class period. As an additional error, Burgess recalls that he erroneously "included a purchase of 1170 shares on November 20, 2008, which was outside of the Class Period." (Burgess Decl. ¶ 8; Tannenbaum Decl. Ex 7 at 1.)

As a result of these errors, the claims administrator sent Burgess two Notices of Deficient Request for Exclusion, explaining the incongruities in detail and providing instructions for Burgess to "cure this deficiency by providing . . . the requested information" in a corrected request for exclusion. (Tannenbaum Decl. Ex. 8 at 1-2; *see* Burgess Decl. ¶ 4.) But Burgess never received those notices because, he has forthrightly concedes, he "mistakenly included the wrong address" on the face of both of his requests for exclusion. (*Id.* ¶ 5.)  Unsurprisingly, then, the claims administrator "sent the Notices to the incorrect address contained on the face of the Letters." (*Id.*) Burgess's blunder effectively foreclosed his opportunity to correct his request for exclusion, because he learned neither of the deficiencies in his first request nor of his opportunity to cure those deficiencies

While Burgess's neglect was both entirely in his control and unfortunate, it is respondents who would bear the brunt of the prejudice if Burgess could now relocate himself outside of the settlement class. Respondents would be forced to arbitrate Burgess's claims—claims they reasonably believed Burgess to have released. And the prejudice would extend beyond Citigroup's renewed liability: if Burgess's errors were to free him from the class settlement, the systemic interest in class actions and class settlements would suffer. "As a general matter, the more loose ends that remain after the [class] litigation has been resolved, the less successful the process has been." *Am. Express*, 672 F.3d at 134. The benefits of class action settlements and the safeguards of the class's interests

depend on accurate calculations of a settlement's value, including the parties' estimation of how much the class's release is worth and the court's analysis of whether the settlement is fair, reasonable, and adequate to the class members who will divide the settlement fund. To be sure, a class member's later evasion of the settlement's constraints diminishes the accuracy of those calculations.

Even accepting as true Burgess's account of the facts, his failure to opt out was not excusable neglect. Having considered Burgess's errors, the delays that they caused, and the potential prejudice to the parties and the judicial system, the Court concludes that Burgess remains bound by the class settlement.

### 2. *Icon had notice that the class settlement encompassed all of his claims against Citigroup and therefore cannot assert those claims in a separate arbitration.*

Icon never even attempted to exclude himself from the settlement class. He now contends that he misunderstood the settlement class and release as excluding some of his potential claims. This misunderstanding is not objectively reasonable. Icon had ample, clear, explicit notice that the class definition encompassed all of his Citigroup common stock holdings and that the class settlement released all of his claims against Citigroup. He is therefore bound by the full extent of the release.

"[A]dequacy of notice to the class *as a whole* determines the binding effect of a class settlement on an individual class member." *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (emphasis added) (internal quotation marks omitted), *aff'd* 107 F.3d 3 (2d Cir. 1996). Accordingly, an absent class member receives due process even without receiving actual notice so long as there has been a "reasonable effort" made to notify the class as a whole. *Id.* (citing *Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982)).

A notice of class settlement must reasonably put class members on notice of the scope of the settlement's release provision. The U.S. Court of Appeals for the Second Circuit opinion in *National Super Spuds v. N.Y. Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981), deftly illustrates this principle. In that case, the class definition was limited to those "who liquidated their long positions" in certain potato futures, yet the release applied to both liquidated and unliquidated futures. *Id.* at 20-21. The settlement notice defined the class but did not mention the broader scope of the release, and the Second Circuit appropriately concluded that "[w]ith respect to claims on unliquidated contracts, the notice did not fairly apprise the [] members of the class of the terms of the settlement." *Id.* at 21 (internal quotation omitted).

In this case, Icon reports that he believed the class settlement and its release did not pertain to claims arising from Citigroup stock that he either (a) acquired as part of his compensation package, rather than in open market purchases, or (b) acquired prior to the class period and held during the class period. (Icon Decl. ¶¶ 4-5.) He asserts that he would have opted out of the class if he had understood the true breadth of the release. (Icon Decl. ¶¶ 8-9.) Finally, he contends that his errors resulted from a due process violation, because he "was never put on notice by anyone" that the release encompassed those shares. (Claimants' Mem. at 8.)

This argument ignores the unambiguous statements in the class notice. Unlike the class in *National Super Spuds*, Icon and his fellow class members received a notice that detailed *both* the class definition and the scope of the release. (*See* Class Notice ¶¶ 24, 49.) While Icon believed the release applied only to stock *purchases* during the class period, the notice explicitly warned that the settlement released "any and all claims that . . . relate[] to or arise out of Plaintiffs' or any other Settlement Class Member's *purchase, acquisition, holding or sale or other disposition* of Citigroup common stock during the Class Period." (*Id.* at 30 (emphasis added).)

Because Icon's misunderstanding ignored explicit language in the notice, his mistake was not objectively reasonable. The settlement notice afforded him the benefit of due process. He cannot now take refuge in a subjective and unsupported misunderstanding of the notice.

### C. The claims released by Burgess and Icon arise from the same facts as the claims they have brought in their FINRA arbitration.

Class members bound by a settlement—such as Burgess and Icon—may not thereafter relitigate claims that the settlement has released. *See, e.g.*, *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011). The release can extend beyond the precise claims alleged in the class action, limited by the principle that "[a]ny released claims not presented directly in [a class action] complaint . . . must be based on the identical factual predicate as that underlying the claims in the settled class action." *Id.* Accordingly, "[c]lass actions may release claims, even if not pled, when such claims arise out of the same factual predicate as the settled class claims." *Wal-Mart Stores, Inc.*, 396 F.3d at 108.

A comparison of this class action with claimants' FINRA allegations reveals the exact same underlying factual predicate. The crux of claimants' FINRA arbitration is that Citigroup "deliberately concealed the scope of ownership of toxic assets such as CDOs backed by non-prime mortgages as well as the heightened risks associated with such ownership." (FINRA Claim ¶ 29.) The class action's predicate allegation was the same, namely that "Citigroup responded to the widely-known financial crisis by concealing both the extent of toxic assets—most prominently, CDOs backed by nonprime mortgages—and the risks associated with them." (Am. Consolidated Class Action Compl., Dkt. No. 74, ¶ 1.) The identity of these factual predicates is obvious. The class action and the FINRA arbitration are directed to the same alleged facts.

### D. In the absence of an injunction, Citigroup will suffer irreparable harm.

A party suffers irreparable harm when it is "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (quoting *Md. Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997). By prosecuting released claims in their FINRA arbitration, claimants are attempting to force Citigroup to do exactly that. Ongoing arbitration would impose irreparable harm upon respondents.

### E. Claimants' arbitration agreements do not undercut their class membership.

Claimants argue that the class settlement cannot preclude their arbitration because they had previously entered employment-related agreements that provided for arbitration as their exclusive recourse for dispute resolution. (*See, e.g.*, Claimants' Mem. at 17-18.) Such a contention is bootless. It is settled law that class membership can release all claims, including arbitration claims, notwithstanding a class member's earlier arbitration agreement. *See, e.g., Am. Express*, 672 F.3d at 133 ("[W]here a party initially consents . . . to arbitrate certain types of claims, but later enters into a settlement agreement that releases claims that had been subject to the initial consent to arbitrate, the claims that have been released by such a settlement are no longer subject to arbitration.") As members of the settlement class, claimants entered a new agreement with Citigroup—the Settlement Agreement—thereby displacing their arbitration agreements. The arbitration agreements do not alter the Court's conclusion that claimants are bound by the settlement's release.

## IV. CONCLUSION

Although Burgess and Icon released certain claims against respondents, they now endeavor to avoid the ramifications of that release.

Burgess released his claims by failing to effectively exclude himself from the class: his request for exclusion was error-riddled and one of those errors—providing the wrong address for further correspondence—prevented him from learning of his opportunity to cure his other errors. Icon released his claims by purposefully remaining in the settlement class, which he unreasonably mistook as providing for a release narrower than the extent of his claims against Citigroup. Claimants cannot now prosecute their released claims in arbitration against respondents.

Accordingly, it is hereby ORDERED that Gary L. Burgess and Joseph Icon are permanently enjoined from pursuing the arbitration captioned *Burgess et al. v. Citigroup, Inc., et al.*, FINRA Case No. 13-03237.

Dated: New York, New York
July 21, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.