**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CITIGROUP INC.<br>SECURITIES LITIGATION | No. 07 Civ. 9901 (SHS)<br><br><br>**ECF Case** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION TO AUTHORIZE DISTRIBUTION OF THE RESERVE FUND**

**KIRBY McINERNEY LLP**
Peter S. Linden
Ira M. Press
Andrew M. McNeela
Beverly Tse Mirza
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 371-6600
Fax: (212) 751-2540

*Lead Counsel for Plaintiffs*

Dated:  November 4, 2014

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................. 2

III.    CLAIMS ADMINISTRATION OF THE CLAIMS-IN-PROCESS AND NEW CLAIMS 3

IV.     ARGUMENT ................................................................................................. 5

    A.      The Court Should Authorize the Distribution of the Reserve Fund to Authorized Claimants ........................................................................................... 5

        1.   Claims-in-Process and Revised Authorized Claimants .................................. 5

        2.   New Authorized Claimants ............................................................ 5

    B.      The Court Should Accept the Claims Administrator's Administrative Recommendations to Reject the Ineligible and Rejected Claims ......................... 6

        1.   Lead Plaintiffs Recommend That Claims That Did Not Fit the Definition of the Class Should be Rejected ..................................................... 6

        2.   Lead Plaintiffs Recommend That Duplicate Claims Should be Rejected ........ 7

        3.   Lead Plaintiffs Recommend That Deficient Claims That Were Never Cured Should be Rejected ................................................................. 7

        4.   Lead Plaintiffs Recommend That Claims That Did Not Result in a Recognized Loss Should be Rejected ............................................... 8

        5.   Lead Plaintiffs Recommend That Late Claims Should be Rejected ............... 8

        6.   Lead Plaintiffs Recommend That the Late Objection by the Disputed Claimant Should be Rejected ......................................................... 9

    C.      The Court Should Authorize Distribution of the Reserve Fund ......................... 10

    D.      The Court Should Authorize Payment of GCG's Fees and Expenses for Claims Administration ......................................................................... 10

V.      CONCLUSION ............................................................................................. 11

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Agent Orange Prods. Liab. Litig.*,
  689 F. Supp. 1250 (E.D.N.Y. 1988) .................................................................. 8

*In re Citigroup Inc. Sec. Litig.*,
  No. 07 Civ. 9901 (SHS), 2014 U.S. Dist. LEXIS 74239 (S.D.N.Y. May 30, 2014)................. 4

*In re Gilat Satellite Networks Ltd.*,
  No. 02 Civ. 1510, 2009 WL 803382 (E.D.N.Y. Mar. 25, 2009) ................................. 8

*In re Gypsum Antitrust Cases*,
  565 F.2d 1123 (9th Cir. 1977) ........................................................................ 8

*Zients v. LaMorte*,
  459 F.2d 628 (2d Cir. 1972)............................................................................. 8

**Statutes**

Fed. R. Civ. P. 23(e) ....................................................................................... 1

## I.     INTRODUCTION

On August 1, 2013, this Court granted final approval to the settlement of this securities class action.[1]   The Final Judgment and Order, entered by the Court in this case, provides that the Court retains continuing jurisdiction over, *inter alia*, "implementation of this Settlement and any award or distribution of the Settlement Fund" and instructs that "[a]fter completion of the processing of all claims by the Claims Administrator, Lead Plaintiff shall file a motion for disbursement of the Net Settlement."  *See* Dkt. No. 276 at ¶¶ 17, 23.

On April 25, 2014, Lead Plaintiffs filed their motion for an Order Authorizing Distribution of the Net Settlement Fund ("Distribution Motion").  *See* Dkt. Nos. 313-316.  The Court granted this motion on May 30, 2014 ("Distribution Order").  *See* Dkt. No. 331.  As set forth in the Distribution Order, 5% of the Net Settlement Fund "shall be held in reserve to address any contingencies that may arise, including the payment of any Claim-in-Process that ultimately may be deemed eligible to participate in the Settlement. . . ."  Distribution Order at p. 4.

Now, pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiffs, on behalf of the Class, respectfully submit this memorandum of law in support of their motion for an Order Authorizing Distribution of the Reserve Fund ("Reserve Distribution Order") authorizing, *inter alia*: (i) distribution of the Reserve Fund to pay eligible and valid claims that required additional processing ("Claims-in-Process") as well as new claims that were received through and including April 18, 2014 (the "Claims-in-Process Cut-Off Date"), as set forth in the accompanying

---

[1]   Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated August 28, 2012, as amended (the "Stipulation"), filed with the Court on August 29, 2012 [Dkt. No. 155-1], and as modified by the Court's September 28, 2012 order further amending the preliminary approval order [Dkt. No. 159]; and the May 30, 2014 Order Authorizing Distribution of the Net Settlement Fund (the "Distribution Order") [Dkt No. 331].

Affidavit of Stephen J. Cirami in Support of Motion to Authorize Distribution of the Reserve Fund with annexed exhibits (the "Cirami Reserve Aff."), filed concurrently herewith; (ii) rejection of the ineligible claims and directing these claims not be paid; and (iii) payment of $581,651.30 to the Claims Administrator for its balance of fees and expenses in connection with the services performed in processing the Proofs of Claim and in administering the Settlement, as described more fully in the Cirami Reserve Affidavit.

Pursuant to the Stipulation, Defendants have no interest in the relief sought by this motion.[2]

## II.    BACKGROUND

The Stipulation provided for an all-cash payment of $590 million, plus accruing interest, to compensate members of the Class and to pay attorneys' fees and expenses as awarded by the Court.  Stipulation ¶¶ 1(ff), 8.  On August 1, 2013, this Court granted final approval to the $590 million cash Settlement between and among Lead Plaintiffs, on behalf of the Class, and Defendants under the terms set forth in the Stipulation, and dismissed this action with prejudice. *See* Final Judgment and Order [Dkt. No. 276].

As of March 31, 2014, GCG received a total of 670,869 Proof of Claim and Release forms in connection with this action.  Cirami Aff.[3] ¶¶ 17, 65.  Following the completion of

---

[2] *See* Stipulation ¶ 22 (the "Citigroup Defendants, and their respective counsel shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith."); ¶ 13 ("This is not a claims-made settlement.  As of the Effective Date, the Citigroup Defendants shall not have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Proofs of Claim filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Settlement Fund.").

[3] "Cirami Aff." refers to the Affidavit of Stephen J. Cirami in Support of Motion to Authorize Distribution of the Net Settlement Fund with annexed exhibits, filed on April 25, 2014 [Dkt. No. 316].

claims processing for the majority of these claims, rather than delaying payment to the over 392,000 eligible Authorized Claimants, Plaintiffs moved this Court for a Distribution Order on April 25, 2014 [Dkt. Nos. 313-316].  The key components of the Distribution Plan provide for the initial distribution of 95% of the Net Settlement Fund to all eligible Authorized Claimants whose claims were recommended for payment and reserving 5% of the Net Settlement Fund to accommodate the Reserve Distribution to approved Claims-in-Process that are deemed eligible to participate in the Settlement.  Under the Distribution Plan, payments from the Reserve Distribution to any approved Claims-in-Process will be made on the same *pro rata* share basis to bring them into a state of parity with the Authorized Claimants whose claims were approved for payment in the initial distribution.  Cirami Aff. ¶¶ 18-20, 75.  Also, in order to facilitate the efficient distribution of the Net Settlement Fund, Plaintiffs requested a final cut-off after which no other claims or adjustments to claims may be accepted.  The Distribution Motion set forth a bar date of April 18, 2014 (the "Claims-in-Process Cut-off Date") whereby claims, or adjustments to previously filed claims, that are postmarked or received after the Claims-in-Process Cut-off Date are barred.

The Court approved the Distribution Order on May 30, 2014 [Dkt No. 331].  In accordance with the Distribution Order, GCG distributed payments to 258,524 Authorized Claimants (whose payments were $10.00 or greater) for total proceeds of $483,091,186.61, or 95% of the Net Settlement Fund, on July 25, 2014.  *See* Cirami Reserve Aff. ¶ 5 and n.2.

## III.   CLAIMS ADMINISTRATION OF THE CLAIMS-IN-PROCESS AND NEW CLAIMS

At the time of the filing of the Distribution Motion, GCG had identified approximately 478 Claim-in-Process received through March 31, 2014 that required additional processing. Cirami Aff. ¶ 18; Cirami Reserve Aff. ¶ 7.  Since March 31, 2014 and on or before the Claims-

3

in-Process Cut-off Date approved by the Court, an additional 53 claimants submitted adjustments to existing claims ("Revised Claims").  These Revised Claims have been designated as Claims-in-Process.  Cirami Reserve Aff. ¶¶ 8, 9.

Since March 31, 2104 and on or before the Claims-in-Process Cut-off Date approved by the Court, GCG received 26 new claims ("New Claims").  These claims were received on or before the Claims-in-Process Cut-off Date and were also processed with the Claim-in-Process. *Id.* at ¶¶ 12-14.

In handling the Claims-in-Process and New Claims received on or before the Claims-in-Process Cut-off Date, GCG followed the same extensive claims processing procedures previously described in the Distribution Motion and the Cirami Affidavit.  *Id.* at ¶ 6.  Claimants with deficient claims were given the opportunity to cure any fixable deficient claims.  Such claimants were given 20 days from the date of the deficiency letter to submit the appropriate information and/or documentary evidence to complete the Proof of Claim.  *Id.* at ¶¶ 10, 11, 14.

GCG continues to receive late claims and adjustments to existing claims ("Late Claims").  To date, after the Claims-in-Process Cut-Off Date, GCG received over 2,000 new claims and over 90 adjustments to existing claims.  *Id.* at ¶ 16.  Each of these Late Claims was issued a "Notice of Rejection of Your Late Submission", which explained that the claim or adjustment had been rejected and would not be processed as the claim or adjustment had been made after the Claims-in-Process Cut-Off Date.  *Id.*

Previously, the Court addressed the disputed claimants who had written to the Court to object to the rejection of their claims by the Claims Administrator.  The Court found that those objections "lack[ed] merit" and granted the Distribution Motion.  *See In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901 (SHS), 2014 U.S. Dist. LEXIS 74239, at *6 (S.D.N.Y. May 30, 2014).

After the Claims-in-Process Cut-Off Date however, one additional claimant has disagreed with GCG's administrative determinations.  As described in Section IV.B.6 below, Lead Counsel believes that the disputed claim is untimely and recommends that it be rejected by the Court.

## IV.   ARGUMENT

### A.   The Court Should Authorize the Distribution of the Reserve Fund to Authorized Claimants

#### 1.  Claims-in-Process and Revised Authorized Claimants

A total of 58 Authorized Claimants were Claims-in-Process and Revised Authorized Claimants who submitted or completed their claims on or before the Claims-in-Process Cut-off Date.  Cirami Reserve Aff. ¶¶ 7, 8, 17 and Ex. A.  The aggregate Recognized Loss of these Authorized Claimants is $2,535,458.26.  *Id*.

Accordingly, Lead Plaintiffs respectfully request that the Court approve the 58 Claims-in-Process and Revised Authorized Claimants listed in Exhibit A to the Cirami Reserve Affidavit.

#### 2.  New Authorized Claimants

A total of 13 Authorized Claimants were New Authorized Claimants who submitted and completed their claims between March 31, 2014 and on or before the Claims-in-Process Cut-off Date.  Cirami Reserve Aff. ¶¶ 12, 13, 17 and Ex. C.  The aggregate Recognized Loss of these Authorized Claimants is $1,523,905.53.  *Id*.

Accordingly, Lead Plaintiffs respectfully request that the Court approve the 13 New Authorized Claimants listed in Exhibit C to the Cirami Reserve Affidavit.

**B.      The Court Should Accept the Claims Administrator's Administrative Recommendations to Reject the Ineligible and Rejected Claims**

While processing the checks approved in the initial distribution, GCG identified 17 claims that required additional information pursuant to the guidelines of the U.S. Office of Foreign Assets Control ("OFAC").  Cirami Aff. ¶ 64.  These claimants were potential matches to persons who appeared on OFAC's restricted persons list or resided in countries to which payments are prohibited.   GCG requested the required information from these claimants. However, 13 of these claims that were previously approved failed to provide the required information.  Cirami Reserve Aff. n.2 and Exhibit H.  Lead Plaintiffs respectfully request that the Court reject these 13 claims.

GCG rejected a total of 476 claims received on or before Claims-in-Process Cut-off Date. GCG mailed (or emailed, in the case of Electronic Claims) each of the 476 claimants a Notice of Conditional Rejection Letter.   Cirami Reserve Aff. ¶¶ 10, 11, 14.   The reasons for rejections included: (1) claims did not fit the definition of the Class; (2) claims were duplicate claims; (3) claims were deficient and were never cured; and (4) claims did not result in a Recognized Loss under the Court-approved Plan of Allocation.   The methodology and process that GCG used to identify ineligible and rejected claims is the same as previously described in detail in the Cirami Affidavit.  *Id.* at ¶ 6.

**1.   Lead Plaintiffs Recommend That Claims That Did Not Fit the Definition of the Class Should be Rejected**

Only Settlement Class Members as defined in the Notice are eligible to participate in the Settlement.   *See* Notice ¶ 24.   GCG received claims that did not fit the definition of the Settlement Class and thus are not eligible to participate in the Settlement.  Notices of Conditional Rejection were mailed (or emailed, in the case of Electronic Claims) to each of these claimants. Among the Claims-in-Process and New Claims, GCG has identified 267 claims in this group.

6

Cirami Reserve Aff. ¶¶ 11, 14.  Accordingly, Lead Plaintiffs respectfully request that the Court reject these claims that do not fit the definition of the Settlement Class (as reflected in the Cirami Reserve Affidavit Exhibits B and D).

      **2.   Lead Plaintiffs Recommend That Duplicate Claims Should be Rejected**

Among the Claims-in-Process and New Claims, GCG identified 11 duplicate claims. Cirami Reserve Aff. ¶¶ 11, 14.  GCG mailed (or emailed, in the case of Electronic Claims) Notices of Conditional Rejection to each of these claimants.  Accordingly, Lead Plaintiffs respectfully request that the Court reject these duplicate claims (as reflected in the Cirami Reserve Affidavit Exhibits B and D).

      **3.   Lead Plaintiffs Recommend That Deficient Claims That Were Never Cured Should be Rejected**

GCG received claims from claimants who did not provide complete transactional information and/or supporting documentation needed to properly calculate their Recognized Losses and as required by the Court-approved Notice and Proof of Claim form.  GCG mailed (or emailed, in the case of Electronic Claims) Notices of Conditional Rejection to each of these claimants.  Cirami Reserve Aff. ¶¶ 11, 14.

Among the Claims-in-Process and New Claims, GCG has received 27 deficient and uncured claims.  For all of these claims, because it is unknown if these shares were (a) sold during the Settlement Class Period or (b) held at the close of trading on July 17, 2008, GCG can neither fully process these uncured claims nor properly calculate a Recognized Loss.  Lead Plaintiffs respectfully request that the Court reject these deficient claims that were never cured (as reflected in the Cirami Reserve Affidavit Exhibits B and D).

## 4. Lead Plaintiffs Recommend That Claims That Did Not Result in a Recognized Loss Should be Rejected

The Plan of Allocation sets forth a formula to calculate Recognized Losses.  *See* Notice at pp. 7-8.  There are various scenarios where transactional information did not result in a Recognized Loss under the Plan of Allocation, including: (1)  purchases and sales occurred when the artificial inflation was the same; (2) overall market gain where sale proceeds exceed total purchase amounts; (3) short sales or purchases made to cover short sales.  *See* Distribution Memo [Dkt. No. 314] at 17-19.  GCG mailed (or emailed, in the case of Electronic Claims) Notices of Conditional Rejection to each of these claimants.

Among the Claims-in-Process and New Claims, GCG has identified 171 claims which did not result in a Recognized Loss under the Plan of Allocation.  Cirami Reserve Aff. ¶¶ 11, 14. Accordingly, Lead Plaintiffs respectfully request that the Court reject these claims with no Recognized Loss (as reflected in the Cirami Reserve Affidavit Exhibits B and D).

## 5. Lead Plaintiffs Recommend That Late Claims Should be Rejected

Courts have the equitable power to include late-filed claims as part of a settlement distribution even where the parties agreed to a claims deadline pursuant to the terms of a settlement agreement.[4]  But "[t]here is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'"  *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) (citation omitted).

Here, the Distribution Order set forth a bar date of April 18, 2014 (the Claims-in-Process Cut-off Date) whereby claims or adjustments to previously filed claims that are postmarked or

---

[4] *See, e.g., Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972); *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) (allowing payment of late claims); *In re Agent Orange Prods. Liab. Litig.*, 689 F. Supp. 1250, 1262-63 (E.D.N.Y. 1988) (a "district court overseeing settlement distribution has inherent power to accept late claims" where there is no prejudice to the defendants and no delay of pay-out to timely claimants) (internal citation omitted).

received after that Claims-in-Process Cut-off Date will be barred.  Distribution Order at p. 4.

After the Claims-in-Process Cut-off Date, GCG has received over 2,000 Late Claims and

continues to receive late submissions.  Cirami Reserve Aff. ¶ 16.  GCG mailed (or emailed, in

the case of Electronic Claims) Notice of Rejection of Your Late Submission to each of these

claimants and will continue to do so with any new Late Claims.  *Id.* at n. 7 and ¶ 16.

Accordingly, Lead Plaintiffs respectfully request that the Court use the Claims-in-Process

Cut-off Date and reject these claims (as reflected in the Cirami Reserve Affidavit at Exhibit F) as

untimely.

### 6.  Lead Plaintiffs Recommend That the Late Objection by the Disputed Claimant Should be Rejected

Disputed Claimant No. 16 (Claim 1820585) disputed his rejection in August 2013.  GCG

responded to the claimant.  Cirami Reserve Aff. ¶ 15.  At the time, after speaking with the

claimant, GCG was not given any indication that the claimant was still contesting his rejection.

*Id.*  Thus, the Disputed Claimant was included as a rejected claim in the Cirami Affidavit filed

on April 25, 2014.  However, after over 10 months of silence and after the Claims-in-Process

Cut-off Date, the claimant reached out to GCG again in June 2014.  *Id.*  All told, he waited more

than a year following the receipt of the rejection letter to dispute his rejection.

With respect to the calculation itself, GCG finds that there is no Recognized Loss under

the plan of allocation for Disputed Claimant No. 16.  *Id.*  Lead Counsel agrees with GCG's

determinations that under the plan of allocation, this claimant is not entitled to any recovery

because his option sale proceeds exceed his Recognized Loss.  *See* Cirami Reserve Aff. ¶ 15 and

Ex. E.  Further, the time to object to the plan of allocation has long passed.  *See* Notice at ¶¶ 7,

64, 65.  Redacted versions of his claim form as well as the written correspondence related to the

claim are annexed as Exhibit E to the Cirami Reserve Affidavit.

Disputed Claimant No. 16 contested his rejection after the Claims-in-Process Cut-off Date. For the reasons set forth above in Section 5 regarding the rejection of the Late Claims, Lead Plaintiffs respectfully request that the Court also reject this disputed claim as a Late Claim.

### C.     The Court Should Authorize Distribution of the Reserve Fund

The Reserve Fund is ready to be distributed at this time to eligible Authorized Claimants[5] who would receive a Distribution Amount of at least $10.00 pursuant to the Court-approved Plan of Allocation in the Notice. *See* Notice ¶ 34. The Reserve Distribution shall be completed in the manner described in detail in the Cirami Affidavit. *See* Cirami Aff. ¶¶ 75-81.

### D.     The Court Should Authorize Payment of GCG's Fees and Expenses for Claims Administration

The Stipulation authorized payment from the Settlement Fund for the reasonable fees and expenses associated with, *inter alia*, the dissemination of notice to the Settlement Class and the review of claims and administration of the Settlement. Stipulation ¶¶ 1(u), 19. In accordance with GCG's agreement with Lead Counsel to act as the Claims Administrator herein and pursuant to its appointment as Claims Administrator in the Preliminary Approval Order, GCG was responsible for, among other things, mailing and publishing notice to the Settlement Class, maintaining a website for the Settlement, processing the claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants.

GCG has received interim payments for its fees and out-of-pocket expenses through March 15, 2014 in the amount of $8,889,889.37 from the Settlement Fund. Cirami Reserve Aff. ¶ 20. Through October 15, 2014, GCG has incurred fees and out-of-pocket expenses in the

---

[5] Pursuant to the Stipulation, the Net Settlement Fund will be distributed to Authorized Claimants after, *inter alia*, the outstanding fees and expenses of claims administration and any further tax liabilities are satisfied. *See* Stipulation ¶ 19.

amount of $581,651.30.   *See* Cirami Reserve Aff. ¶ 20 and Ex. G.[6]   Accordingly, there is an outstanding balance of $581,651.30 payable to GCG for its work performed through October 15, 2014.  Cirami Reserve Aff. Ex. G at p. 7.  GCG respectfully requests approval of payment for the remainder of its fees and expenses through October 15, 2014.  GCG will incur additional fees and expenses to complete the distribution of the Net Settlement Fund, including the printing and mailing of checks and follow up with and from Class Members.   Pursuant to the Court's Preliminary Approval Order, at a future date, Lead Plaintiffs will submit a supplemental request for the Court to approve any additional Notice and Administration Costs.

## V.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that this Court issue the accompanying proposed Reserve Distribution Order granting the relief sought herein.

Dated:   November 4, 2014                                     Respectfully Submitted,

**KIRBY McINERNEY LLP**

By:    */s/Peter S. Linden*
          Peter S. Linden
          Ira M. Press
          Andrew M. McNeela
          Beverly Tse Mirza
          825 Third Avenue, 16th Floor
          New York, NY 10022
          Tel: (212) 371-6600
          Fax: (212) 751-2540

*Lead Counsel for Plaintiffs*

---

[6]   The Notice disclosed the following: "Lead Class Counsel are authorized by the Stipulation to pay the Claims Administrator's fees and expenses incurred in connection with giving notice, administering the Settlement, and distributing the Net Settlement Fund to Settlement Class Members."  Notice at 10.