UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/29/14
```

IN RE CITIGROUP INC. SECURITIES
LITIGATION

09-Md-2070 (SHS)
This document relates to:
07-Cv-9901 (SHS)

MEMORANDUM OPINION

SIDNEY H. STEIN, U.S. District Judge.

On August 1, 2013, this Court approved a $590 million settlement of this consolidated class action, resolving allegations that Citigroup Inc. and certain of its directors, officers, and agents materially misled investors regarding the value of assets backed by subprime mortgages. (*See* Final Judgment and Order of Dismissal with Prejudice ("Final Judgment"), Dkt. Nos. 275-76.)

On May 30, 2014, this Court granted lead counsel's motion to distribute the Net Settlement Fund and to endorse the claims administrator's rejection of fifteen disputed claims. (*See* Memorandum Opinion and Order Authorizing Distribution of the Net Settlement Fund ("Distribution Order"), Dkt. Nos. 329, 331.) On July 25, 2014, in accordance with the Distribution Order, the claims administrator distributed payments to 258,524 authorized claimants for total proceeds of $483,091,186.61, or 95% of the Net Settlement Fund. (*See* Affidavit of Stephen J. Cirami, dated November 3, 2014, ¶ 5 ("Cirami Aff."), Dkt. No. 360.)

As provided in the Distribution Order, 5% of the Net Settlement Fund was "held in reserve to address any contingencies that may arise, including the payment of any Claims-in-Process that ultimately may be deemed eligible to participate in the Settlement." (Dkt. No. 331.)

Accordingly, on November 4, 2014, lead plaintiffs, on behalf of the class, moved for an order authorizing distribution of the reserve fund to pay those eligible and valid claims that required additional processing as well as new claims received on or before April 18, 2014 (the "Cut-Off Date"). (Dkt. No. 358.) Lead plaintiffs also moved the Court to authorize the rejection of ineligible claims, including those filed after the Cut-off Date, and to direct that the claims administrator be paid the balance of fees and expenses incurred in connection with administering the settlement. One claimant disputes the rejection of his claim and objects to lead counsel's motion. (*See* Dkt. No. 362-1.) The Court finds that objection lacks merit and grants lead counsel's motion.

## I. LEGAL STANDARD

"Federal Rule of Civil Procedure 23(e) mandates that courts oversee the distribution of class settlement funds." *In re Citigroup Sec. Litig.*, 2014 WL 2445714, at *1 (S.D.N.Y. May 30, 2014) (citing, *inter alia*, *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978)). District courts retain "broad supervisory powers with respect to the administration and allocation of settlement funds." *In re Holocaust Victims Assets Litig.*, 413 F.3d 183, 185 (2d Cir. 2001). In distributing the funds, a court must act "in the best interests of the class as a whole" by "exercis[ing] its independent judgment to protect the interests of class absentees . . . [and] the interests of more vocal members." *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179, 182 (2d Cir. 1987) (internal quotation marks omitted); *see also Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972) ("[A] court supervising the distribution of a [settlement] fund has the inherent power and the duty to protect unnamed, but interested persons.")

## II. DISCUSSION

In accordance with Fed. R. Civ. P. 23(e), this Court reserved jurisdiction over: "(i) implementation of this Settlement and any award or

distribution of the Settlement Fund; (ii) disposition of the Settlement Fund; and (iii) all parties hereto for the purpose of construing, enforcing and administering the Stipulation [and Agreement of Settlement]." (Final Judgment ¶ 23.) In analyzing the present motion, the Court proceeds from the premise that the non-objecting eligible claimants are due an expeditious recovery. *See In re Citigroup Sec. Litig.*, 2014 WL 2445714, at *2.

### A. The claims administrator properly denied the claim of Norman Powell.

The facts surrounding Mr. Powell's claim are not disputed. Mr. Powell sold 20 put options on October 19, 2007 for a net sale price of $12,374.82. (*See* Ex. E to Cirami Aff.) The purchaser of the put later exercised the options, which obligated Mr. Powell to purchase 2000 shares of Citigroup stock on February 11, 2009. (*Id.*) Mr. Powell disagrees with the claim administrator's interpretation of the Settlement's Plan of Allocation, specifically the calculation of the losses on his put option sale.[1]

The Plan of Allocation as set forth in paragraph 44 of the Class Notice provides, in pertinent part:

> For shares of Citigroup common stock purchased or otherwise acquired between February 26, 2007 and April 18, 2008, inclusive, the Recognized Loss will be calculated as set forth below:
>
> A. For shares held at the end of trading on July 17, 2008, the Recognized Loss shall be that number of shares multiplied by the lesser of:

---

[1] On August 1, 2013, this Court "approved a plan of allocation . . . derived from the alleged corrective disclosures and the market's reaction to those disclosures . . . [which] sets forth a schedule of estimated share-price inflation that forms the basis for determining any recognized loss." *See In re Citigroup Sec. Litig.*, 2014 WL 2445714, at *2 (internal quotation marks omitted).

> (1) the applicable purchase/acquisition date artificial inflation per share figure, as found in Table A below; or
>
> (2) the difference between the purchase/acquisition price per share and $21.07 [the Holding Value].
>
> . . .
>
> D. To the extent an Authorized Claimant had an aggregate gain from his, her or its transactions in Citigroup common stock during the Class Period, the value of his, her or its total Recognized Loss will be zero. To the extent that an Authorized Claimant suffered an overall loss on his, her or its transactions in Citigroup common stock during the Class Period, but the loss was less than the Recognized Loss calculated above, then the Recognized Loss shall be limited to the amount of the actual loss. . . .

(Class Notice ¶ 44, Dkt. No. 159.) As related to put options, the Plan of Allocation also states:

> [F]or Citigroup shares that were put to investors pursuant to put options sold by those investors, the purchase of the Citigroup shares shall be deemed to have occurred on the date that the put option was sold, rather than the date on which the stock was subsequently put to the investor pursuant to that option. *The proceeds of any put option sales shall be offset against any losses from shares that were purchased as a result of the exercise of the put option.*
>
> (*Id.* (emphasis added).)

Mr. Powell's written objection only addresses his contention that his claim included Class Period purchases. (*See* Ex. A to Dkt. No. 362.) However, lead plaintiffs and the claims administrator do not dispute that his 2009 purchase of Citigroup common stock, although after the Class Period, is deemed a Class Period purchase because it was the result of the sale of put options sold during the Class Period. (Cirami Aff. ¶ 15; *see also* Class Notice ¶ 44 ("[T]he purchase of the Citigroup shares shall be deemed

to have occurred on the date that the put option was sold . . . .").) Rather, the claims administrator rejected Mr. Powell's claim because there is no Recognized Loss under the Plan of Allocation. (*See* Cirami Aff. ¶ 15 and Ex. E; Supplemental Affidavit of Stephen J. Cirami, dated November 13, 2014, ¶ 5, Dkt. No. 361-1.)

As the disputed claimant incorporated by reference his interpretation of the Plan of Allocation in his email correspondence with the claims administrator (*see* Ex. E to Cirami Aff), the Court must review whether the claims administrator's determination that there is no Recognized Loss is valid and equitable.

Mr. Powell asserts that he "lost" $33.82/share or $67,645.17 on the purchase of the 2000 shares.[2] He contends that the put option proceeds of $12,374.82 should be offset against this loss of $67,645.17 such that his actual loss is reduced to $55,270.35. (*See* Ex. E to Cirami Aff.) Since he held the stock after July 17, 2008, Mr. Powell believes his Recognized Loss is the lesser of (1) the appropriate purchase/acquisition date artificial inflation per share figure and (2) the difference between the purchase/acquisition price per share and the holding value. (*Id.*) Accordingly, he contends that his Recognized Loss is $9,880 ($4.94/share[3] x 2000 shares). Since his "actual" loss exceeds his Recognized Loss, Mr. Powell believes he has a valid claim for $9,880.

The claims administrator concluded that Mr. Powell has no Recognized Loss because the proceeds he received on the put option sale ($12,374.82) exceed his loss of $9,880 ($4.94/share x 2000 shares). (*See* Ex. E to Cirami Aff.) That is, since Mr. Powell had an "aggregate gain" from his

---

[2] The purchase price of the 2000 shares is unclear. In an email to the claims administrator, Mr. Powell writes that he "paid $67,645.17 for the shares put to me." (Ex. E to Cirami Aff. at 19.) Elsewhere, an account statement appears to indicate that he purchased the shares for $80,019.99 at $40/share. (*Id.* at 11.)

[3] This figure represents the artificial inflation per share for shares acquired between February 28, 2007 and November 4, 2007. (*See* Table A of Class Notice ¶ 44, at 7.)

5

transactions during the Class Period, his Recognized Loss is zero. (*See* Class Notice ¶ 44(D).)

The claims administrator's interpretation of the Plan language, offsetting the losses by the amount of the proceeds of the put option contract, is correct. Although the Plan of Allocation states that "[t]he proceeds of any put option sales shall be offset against any *losses*" (Class Notice ¶ 44), the disputed claimant's interpretation is illogical. Whether Mr. Powell paid $80,019.99 or $67,645.17 for the 2000 shares, he certainly did not lose $67,645.17 in the transaction because the stocks he received (presumably) had value in February 2009.[4] Further, where "overall loss" or "loss" is mentioned elsewhere in the Plan of Allocation, it describes the actual loss suffered on a claimant's transactions in Citigroup common stock *during* the Class Period. (*See* Class Notice ¶ 44.) Here, there were no actual losses suffered by Mr. Powell during the Class Period because he held onto the put after July 17, 2008, which marked the end of the 90-day period following the day information correcting the misstatements was disseminated to the market. As Mr. Powell suffered no actual losses during the Class Period, his only loss is the loss calculated pursuant to the Plan of Allocation for the artificial inflation of the stock price (*i.e.*, $9,880).

Insofar as the disputed claimant contends that the claims administrator's interpretation would preclude any put option sellers from recovering under the Plan of Allocation, lead plaintiffs counter that 659 class members received payment for shares purchased pursuant to put option contracts. (*See* Second Supplemental Affidavit of Stephen J. Cirami, dated November 28, 2014, ¶ 4, Dkt. No. 363.)

---

[4] The Court does not know if or when the disputed claimant sold these shares, or whether he ultimately made or lost money on such a sale. However, in checking the historical price of Citigroup shares, the shares closed on February 9, 2011 (the date the shares were put to Mr. Powell) at a price of $36.90, surely not a nominal value. CITI HISTORICAL PRICE LOOKUP, Powered by EDGAROnline, http://www.citigroup.com/citi/ajax/historical_price_lookup.html.

6

In sum, Mr. Powell received $12,374.82 on the sale of his put options. Any money lost as a result of the artificial inflation of shares deemed purchased and held through the Class Period was $9,880, as calculated pursuant to the Plan of Allocation. Since the disputed claimant received more than $9,880 for the sale of the options, his Recognized Loss is zero. (*See* Class Notice ¶ 44(D).) It is therefore equitable to deny his claim for relief.

### B. The claims administrator properly rejected the Late Claims.

Lead plaintiffs also request that the Court reject the claims filed after the Cut-off Date ("Late Claims"). Courts have the equitable power to include late-filed claims as part of a settlement. *See, e.g., Zients*, 459 F.2d at 630-31 (approving payment to late claims where (1) certain late claimants had not received notice of the settlement or the deadline to file claims and (2) "the administration of the fund would be insignificantly hampered by allowing" the late claims); *see also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS/SMG, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009).

However, at some point in the distribution of a large class action settlement, such as this one, "a cutoff date is essential and . . . the matter must be terminated." *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977). This litigation has been ongoing for seven years, and the settlement process has been ongoing for over two years. The Court approved the Cut-off Date of April 18, 2014 in the May 30 Distribution Order. (Dkt No. 331.) Because the pay-out of the Reserve Fund is predicated on a *pro rata* distribution (*see* Class Notice ¶ 34), processing the Late Claims would delay pay-out to the current authorized claimants, and "much of the value of a settlement lies in the ability to make funds available promptly." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1406 (E.D.N.Y. 1985). Since no potential claimants who received rejections based on late submissions objected to the present motion, no further delay

is necessary. The Court therefore finds that the claims administrator properly rejected the Late Claims.

### III. CONCLUSION

This Court has reviewed the single objection to the distribution of the reserve fund and agrees with the claims administrator's rejection of that claim as well as that of the other ineligible claims. The Court authorizes the claims administrator to distribute the reserve fund as set forth in the motion and the Stephen J. Cirami Net Settlement Fund Distribution Affidavit, dated April 24, 2014 (Dkt. No. 316). The Court also directs lead counsel to pay the claims administrator $581,651.30 in fees and expenses incurred in administering the settlement during the period from March 16, 2014 through October 15, 2014. (*See* Ex. G to Cirami Aff.)

Dated: New York, New York
December 29, 2014

Sidney H. Stein, U.S.D.J.